# EXHIBIT A

**NORTON SHORES POLICE DEPARTMENT** **Official Complaint**



| Complainants Name: Daniel W. Rudd | Control Number: IA | | |
|---|---|---|---|
| Address: 201 S Lake Ave Spring Lake, MI 49456 | Assigned Investigator: | ☐ Inquiry ☐ Informal ☐ Formal | |
| Phone Number / E-mail: 231-557-2532 daniel@stock20.com | Reviewed/Assigned by: | Date | |
| Date of Incident: 7/21/2013 | Time of Incident: 10AM | Location of Incident: Norton Shores, MI | |
| Employee(s) Involved: Daniel Shaw, Officer Rhyndress, Officer Wasilewski | | | |

## NARRATIVE (provide detailed description of the incident/complaint):

I have lived in West Michigan for most of my life. My parents have been Norton Shores residents for more than 25 years. As an adult, I also have resided in Norton Shores for a time and paid property taxes. I continue to be active in the Norton Shores community (my children play soccer for the West Michigan Storm) and I have volunteered as a coach for Sailor Soccer.

Prior to July of 2013, I have **never** had a negative interaction with **any** Law Enforcement agency or received even a warning for any type of criminal activity. I have always made it a priority to assist and support Law Enforcement to the best of my ability.

On the weekend of July 21, 2013, I requested assistance from the Norton Shores Police Department.

I reported a custodial abduction with a serious and certain risk of harm to my eight year old sons.

As the situation progressed, I also informed the NSPD that I had received a number of text messages attempting to extort a favorable custody agreement as a condition of returning the children.

In my conversations with 2 officers and dispatch, I communicated to the NSPD that this was not simply a "custody and parenting time dispute." I clearly indicated that my children were at risk AND that a history of abuse, neglect, and domestic violence could all be verified through law enforcement records and the central registry.

I also offered to provide extensive evidence and documentation to verify that:

1. my children were being held in violation of court orders and the parental kidnapping statute.
2. that this had gone on for more than two days.
3. that their location had been concealed (the mother would not even tell her own brothers or parents where they were).
4. that the mother was embroiled in a high conflict separation from her third husband – a man who was clearly violent, armed, had a history of domestic violence and was fresh out of jail on his most recent assault convictions (with a firearm).
5. that the estranged third husband had recently been substantiated for abuse/maltreatment of my sons, that he had recently threatened myself and my sons.

The Norton Shores Police Department could have easily verified these risk factors, the recent substantiations for abuse and neglect, and a number of assaultive criminal convictions (including domestic assault and weapons). The Norton Shores Police Department had absolutely no reason to doubt the truth of what I was saying.

**NOTICE: This document is considered an official police report. Knowingly filing a false police report may be a violation of Michigan Compiled Law 750.411a.**

On Sunday, July 21, 2013,

- I again requested help, informing the department that I had not been given any reason to believe that the children would be returned and that I had been receiving communication stating that I would be allowed to "see that the children are safe" IF I agreed to a growing list of unreasonable demands from the children's mother.
- I also informed the department that I had good reason to believe that an attorney residing in Norton Shores (Melissa Meyers) was assisting and enabling these dangerous and illegal behaviors instead of advising her client to return the children immediately and unconditionally.
- I told the officer that on previous occasions, the mother had brought the children to her attorney's home and that it was possible that the children were being kept there. I also offered to provide evidence which indicated that Attorney Meyers' involvement in this case was not "strictly professional" but laden with animus toward me and a disregard for court orders.
- I requested that an officer would speak to Attorney Meyers so that she would effectuate the immediate return of my children instead of illegally supporting and assisting her client in efforts to prolong the ordeal while trying to negotiate an agreement.

Per Michigan Statute, internal policies and the code of ethical conduct, the Norton Shores Police Department had an obligation to do the following:

1. Enter a missing child report into the LEIN database without delay.
2. Pursue any reasonable lead for the purpose of ensuring the safe return of my children.
3. Follow procedures for complaints involving domestic violence and risk to children.
4. Follow department protocols for recording all police contact with citizens.
5. Investigate and thoroughly document any findings regarding the allegations of Attorney collusion in the parental kidnapping and/or extortionate communication.
6. Treat all citizens of Norton Shores equally, protecting all their rights, and enforcing the law without showing preferential treatment.

The NSPD did not administer their duties appropriately. Instead, at the request of City Manager Mark Meyers, the police department was used an instrument of retaliation against me.

While I was waiting to hear back from Officer Wasileski, City Manager Mark Meyers contacted the chief of Police directly to make requests of his own. From that point on, NSPD did not follow statutory requirements, department protocols, or internal procedure.

Though they knew, or should have known that my efforts to protect my children were warranted, lawful and necessary, the NSPD immediately deviated from policy and instead began to interfere with my efforts to protect my children and intimidate me from further efforts.

I was immediately informed by the supervising officer that no assistance would be provided. This officer did not know me, did not request to see court documents, and did not ask any questions. He informed me that he was the supervisor of the officer I had previously spoken with. He stated that there would be no investigation or assistance, and then he ordered me to leave the public street I was parked on – threatening me with arrest.

I had trusted the Norton Shores Police Department to assist in protecting my children. I had gone through the proper channels. I was calm, cooperative, and respectful. There was no reason to doubt my credibility.

NOTICE: This document is considered an official police report. Knowingly filing a false police report may be a violation of Michigan Compiled Law 750.411a.

Also, since I was alleging criminal activity, I was subjecting myself to criminal prosecution if my claims were not made in good faith. I offered evidence and documentation for scrutiny by the department. Numerous witnesses were also available for this purpose.

The Norton Shores Police Department had no reason whatsoever to ignore my request for help. But once the city manager Mark Meyers made a call to the police chief, the officers began to treat me very differently. Instead of helping me ensure the safe return of my children, my efforts were hindered by the police.

In the subsequent months, the Norton Shores Police Department continued to interfere with efforts to keep my children safe. Chief Daniel Shaw was not on duty during the weekend of July 21, 2013. He has never spoken to me or inquired into the details of the situation, but he did not hesitate to utilize substantial department resources to further the personal agenda of City Manager Mark Meyers.

Further, at the direction of Chief Shaw and Mr. Meyers, the NSPD withheld important records and documents, even when they were appropriately requested under the Freedom of Information Act.

In Octoboer of 2013, City Manager Mark Meyers asked the NSPD to disclose privileged information about me from the LEIN Database for the purpose of assisting his wife in her civil litigation against me.

Mr. Meyers is presumably aware of the laws which govern the LEIN database. He knew, or should know that any such disclosure of information from the LEIN database would be illegal. Chief Daniel Shaw also knew that this was a breach of the public trust and a violation of State and Federal law. However, Chief Shaw sent an e-mail to his subordinate officer authorizing the disclosure of this privileged information to a civilian (City Manager Mark Meyers).

It is a telling contrast that the NSPD expended so much effort to assist the City Manager when he asked for help regarding a car parked across the street from his home – but so little effort to facilitate the safety of my children who were caught in the middle of a dangerous domestic violence situation.

The testimony given by three officers indicates either a failure to make a full and forthright disclosure before that court, or a larger failure of those officers to properly and impartially administer their duties during the weekend of July 21, 2013. An appropriate response and investigation by the NSPD would have required minimal department resources and would have resulted in much more favorable result for my children.

The subsequent misconduct of Chief Daniel Shaw at the request of City Manager Meyers was instrumental in the efforts of Attorney Melissa Meyers to distract, delay, and obstruct the administration of justice on behalf of my children in family court.

Eventually, the family court was able to get to the truth of the matter and orders have been issued to protect my children from this type of situation. But the misinformation from Mr. Meyers and his wife (Attorney Melissa Meyers) have created numerous delays, needless suffering for my children, extreme stress for the people who love my children, and debilitating financial hardship.

Prior to this experience, I have always trusted the integrity of the Norton Shores Police Department.

When I requested help, I was aware that Attorney Melissa Meyers was married to the Norton Shores City Manager. However, I expected that the Law Enforcement Professionals would put aside any personal bias resulting from relationships or workplace hierarchy.

I trusted my police department to prioritize the welfare of children and treat all citizens equally. I did not expect that a brief phone call from the City Manager to the Chief of Police would immediately end any investigation or assistance on behalf of children who were credibly alleged to be in danger.

If Mr. Meyers—or anyone else-- had offered some evidence to Chief Shaw which contradicted my allegations, then this evidence should have been appropriately documented per Department policy.

I requested all such documentation with a proper FOIA request immediately after the incident. I was only given the police reports and the 911 dispatch recording. I was told that there was no recording of the officers interacting with me or anyone else.

We faced considerable delays on other documents and were later told that Norton Shores is not able to access phone records for the city's cellular phones. Again, even a small amount of transparency in offering these public records would have spared me and my family a lot of hardship.

I now live in Spring Lake, but many parts of my life are based in Norton Shores. It has been difficult to adjust to a new reality of feeling anxiety at the sight of a police car. I used to consider this an assurance of safety.

Now I am left wondering if the actions of law enforcement officers may be arbitrary, retaliatory, or unduly influenced by the personal agenda of a city official.

I believe/hope that most or all of the officers involved in this were honest men who were unfortunately deceived and/or pressured to do the wrong thing. But there are policies and laws in place to prevent that from happening.

How can the public have confidence in law enforcement if City Officials are permitted to supercede law and policy –especially as retaliation against a citizen making a legitimate complaint.

I have been hesitant to file this complaint out of fear of retaliation, but I am now asking NSPD to make this situation right, provide real explanations for how this happened, offer assurances that these laws and policies will not be ignored in the future and indemnify those who were impacted by the City's failures.

I can provide documentation for everything I am alleging here. Let me know if you would like to discuss this or if I can be of assistance in your investigation of these matters.

| Complainant Signature | | Date 7/20/2015 |
|---|---|---|
| Received by | ID # | Date / Time |

NOTICE: This document is considered an official police report. Knowingly filing a false police report may be a violation of Michigan Compiled Law 750.411a.

# EXHIBIT B

STATE OF MICHIGAN
IN THE 14TH CIRCUIT COURT FOR THE COUNTY OF MUSKEGON

DANIEL W. RUDD,

Plaintiff,

Case No. 2017-004334-CZ

v.

HON. TIMOTHY G. HICKS

CITY OF NORTON SHORES,

Defendant.

Daniel W. Rudd (Pro Se)
201 S. Lake Ave
Spring Lake, Michigan 49456
(231-557-2532)
daniel@stock20.com

Michael S. Bogren (P34835)
Attorney for Defendant
PLUNKETT COONEY
950 Trade Centre Way, Suite 310
Kalamazoo, Michigan 49002
(269-226-8822)
mbogren@plunkettcooney.com

**AFFIDAVIT OF JON GALE**

Jon Gale, first having been duly sworn, states that if called as a witness in this matter could testify to the following facts:

1. My name is Jon Gale and I have personal knowledge of the facts stated in this Affidavit.

2. I am the Chief of Police for the City of Norton Shores Police Department and have held that position since 12/2014.

3. I was contacted by Anthony Chandler, Director of Administrative Services and the City of Norton Shores' Freedom of Information Act Coordinator regarding a FOIA Request sent to the City by Daniel Rudd.

4. Mr. Rudd's FOIA Request sought, among other things, a copy of any/all complaints submitted against the Norton Shores Police Department's policies or employees

from January 1, 2014 until the present. The Request also sought a copy of any corresponding written report, disposition or document describing the results of the internal investigation.

5. Based on my consultation with Mr. Chandler, the FOIA Request was denied based on the exemption for personnel records of a law enforcement agency.

6. In my opinion the public interest in disclosure of these records did not outweigh the public interest in nondisclosure for the following reasons:

a. When citizen complaints are received by the Norton Shores Police Department an internal investigation file is opened and all records related to the complaint are kept together in a single file.

b. The complaint is investigated by a command officer at the Norton Shores Police Department.

c. In order to obtain all pertinent information necessary to complete the investigation the cooperation of the person making the complaint is necessary.

d. Based on my experience as a law enforcement officer and as a Chief of Police, public disclosure of the name of the person making a complaint against police officers would have a chilling effect on the willingness of other citizens to make a complaint.

e. Even if the name of the individual making the complaint were not disclosed, a disclosure of the nature of the events complained of would have the same chilling effect, as the identity of those involved can often be ascertained by a description of the event itself.

f. This chilling effect is especially pronounced if an internal complaint is made by one officer against another because in my experience officers are reluctant to give statements about the conduct and actions of other officers.

g. If statements made during the course of internal investigations were made public, in the future officers would be unwilling to provide statements, or if they did provide statements would be guarded and not as candid as they otherwise would be.

h. Disclosing the information requested would, in my opinion, severely hamper, if not destroy, the ability of the Department to conduct meaningful internal affairs investigations.

i. Disclosing the results of the internal investigations would, based on my experience, have a serious negative impact on officer morale and would impair the ability of the Department to properly function, as many people would assume the truth of the allegations made against an officer even if the allegations were deemed to be unfounded.

7. When Mr. Rudd appealed the denial of his FOIA Request to the Mayor, the Mayor consulted with me and I expressed the same concerns about disclosure of the records.

8. It is my understanding the appeal was denied for those reasons.

Jon Gale

STATE OF MICHIGAN )
COUNTY OF Muskegon ) SS.
)

On this 29th day of November 2017, before me, a Notary Public, in and for said county and state, personally appeared ***Jon Gale,*** who being duly sworn, deposes and says that he has read the foregoing Affidavit and knows the contents thereof, and that the same are true of his knowledge, except as to those matters therein stated to be upon his inform knowledge and belief and as to those matters he believes them to be true.

COLLETTE J. DEBLOCK
NOTARY PUBLIC,
MUSKEGON COUNTY, MICHIGAN
MY COMMISSION EXPIRES: 09/03/2021
ACTING IN THE COUNTY OF MUSKEGON

Notary Public 9/3/2021 County, Michigan. My commission expires:

Open.00560.72801.19411803-1