UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL W. RUDD,

      Plaintiff,                          Case No. 1:18-cv-124

v.                                    HON.  GORDON J. QUIST/KENT

CITY OF NORTON SHORES,
MAYOR GARY NELUND,
Individually and in his official capacity;
POLICE CHIEF DANIEL SHAW,
Individually and in his official capacity;
SERGEANT MATTHEW RHYNDRESS,
Individually and in his official capacity;
OFFICER MICHAEL WASSILEWSKI,
Individually and in his official capacity;
MARK MEYERS, individually and as city manager;
F/LT. CHRIS MCINTIRE, Michigan State Police
Only in his individual capacity;
ATTORNEY DOUGLAS HUGHES,
Individually and acting on behalf of his law firm;
WILLIAM HUGHES, PLLC a Michigan
law firm, ATTORNEY MELISSA MEYERS,
individually and acting on behalf of her law firm;
ATTORNEY JOEL BAAR, individually and
acting on behalf of his law firm; BOLHOUSE,
BAAR & HOFSTEE PC; a Michigan
law firm,

      Defendants.
_____

| | |
|---|---|
| Daniel W. Rudd (Pro Se) | Michael S. Bogren (P34835) |
| 201 S. Lake Ave | Attorney for Defendants |
| Spring Lake, Michigan   49456 | CITY OF NORTON SHORES, MAYOR |
| (231-557-2532) | NELUND, POLICE CHIEF SHAW, SGT. |
| daniel@stock20.com | RHYNDRESS, OFC. WASSILEWSKI, MARK |
| | MEYERS, DOUGLAS HUGHES and WILLIAM |
| | HUGHES, PLLC |
| | PLUNKETT COONEY |
| | 950 Trade Centre Way, Suite 310 |
| | Kalamazoo, Michigan   49002 |
| | (269-226-8822) |
| | mbogren@plunkettcooney.com |

<u>**ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES**</u>
<u>**AND JURY DEMAND AS TO DEFENDANTS THE CITY OF NORTON SHORES,**</u>
<u>**MAYOR GARY NELUND, POLICE CHIEF DANIEL SHAW,**</u>
<u>**SERGEANT MATTHEW RHYNDRESS, OFFICER MICHAEL WASSILEWSKI,**</u>
<u>**MARK MEYERS, ATTORNEY DOUGLAS HUGHES, AND**</u>
<u>**WILLIAM HUGHES, PLLC**</u>

NOW COME the defendants, the City of Norton Shores, Mayor Gary Nelund, Police Chief Daniel Shaw, Sergeant Matthew Rhyndress, Officer Michael Wassilewski, Mark Meyers, Attorney Douglas Hughes, and William Hughes, PLLC, by and through their attorneys, PLUNKETT COONEY, and for their Answer to Plaintiff's Complaint, state:

ALLEGATION 1.       This case is about a coordinated effort by the Norton Shores Police Department and City Government, to retaliate against a vulnerable citizen who alleged misconduct by police officers, criticized department policy, and alleged some of these individuals had broken the law.

**ANSWER 1.   In that there has been no such effort on the part of Norton Shores or its officers or employees, the allegations contained in paragraph 1 are denied as untrue.**

ALLEGATION 2.       Plaintiff, Daniel W. Rudd resides in Ottawa County, Michigan. The Muskegon County Family Court awarded plaintiff sole custody of his children in 2014 due to substantiated abuse, neglect, domestic violence and chronic alcohol abuse in the mother's home.   Plaintiff has been subjected to extensive scrutiny in the child custody proceedings.   The record of those proceedings unequivocally demonstrates that plaintiff has acted in good faith and for the benefit of his children at all times.   No evidentiary findings suggest otherwise.   Plaintiff has never been convicted of any crime or been involved in any adverse interactions with law enforcement prior to the evens alleged herein. Plaintiff is not a lawyer and hopes to retain counsel as soon as possible.

**ANSWER 2.   The defendants object to paragraph 2 as it fails to comply with Fed. R. Civ. P. 8(d)(1). Without waiving this objection, the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2.**

ALLEGATION 3.       Upon information and belief, all defendants conduct business in Muskegon County and reside in Muskegon County, Ottawa County, or Kent County.

**ANSWER 3.   To the extent the allegations contained in paragraph 3 are directed to these defendants the defendants admit they conduct business in Muskegon County.**

ALLEGATION 4.      Attorney Melissa Meyers has represented the opposing party (non-custodial mother) in plaintiff's child custody proceedings for many years.  During this time, Melissa Meyers has relentlessly accused plaintiff of criminal activity without any support for these allegations.  At all relevant times, Melissa Meyers has been married to the city manager of Norton Shores.  Attorney Melissa Meyers is a private actor who conspired with the Norton Shores Defendants to injure plaintiff under color of state law.

**ANSWER 4.   The defendants object to paragraph 4 as it fails to comply with Fed. R. Civ. P. 8(d)(1). Without waiving this objection, in that no officer or employee of Norton Shores conspired with anyone to injure the plaintiff, the allegations contained in paragraph 4 are denied as untrue.**

ALLEGATION 5.      Mark Meyers has been employed as the Norton Shores city manager for many years.  He is one of the highest city executives with substantial authority over employment determinations which impact Norton Shores Police officers.   Mark Meyers is the husband of Melissa Meyers.

**ANSWER 5.   It is admitted that Mark Meyers is the City Administrator – not the City Manager. It is admitted Mark Meyers is married to Melissa Meyers. The defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 5.**

ALLEGATION 6.      At all relevant times, Officer Michael Wassilewski was an officer of the Norton Shores Police Department and maintained a personal relationship with Melissa Meyers and Mark Meyers.

**ANSWER 6.   It is admitted that Michael Wassilewski was a police officer employed by the City of Norton Shores. The defendants do not understand the remaining allegations contained in paragraph 6 and are therefore without**

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations.

ALLEGATION 7.    At all relevant times, Sergeant Matthew Rhyndress was a supervisory police officer for the City of Norton Shores and maintained a personal relationship with Melissa Meyers and Mark Meyers.  When Sergeant Rhyndress testified against plaintiff in October 2013, he failed to disclose that Melissa Meyers was representing him in his own contentious divorce proceedings (which included a similar PPO requests against the opposing party in that case).

**ANSWER 7.   It is admitted that Matthew Rhyndress was a police officer**

**employed by the City of Norton Shores. The defendants do not understand the**

**remaining allegations contained in paragraph 7 and are therefore without**

**knowledge or information sufficient to form a belief as to the truth of the remaining**

**allegations.**

ALLEGATION 8.    Daniel Shaw was the Chief of the Norton Shores Police department in on 7/20/13 when plaintiff was seeking assistance from the Norton Shores Police Department.  He retired in November of 2014.

**ANSWER 8.   It is admitted Daniel Shaw was Chief of Police for the City of**

**Norton Shores in July 2013 and that he retired in November 2014. The defendants**

**are without knowledge or information sufficient to form a belief as to the truth of the**

**remaining allegations contained in paragraph 8.**

ALLEGATION 9.    Jon Gale hired as the new chief in November of 2014 but has been employed in a supervisory capacity with the Norton Shores Police Department for many years.

**ANSWER 9.   Admitted.**

ALLEGATION 10.    At all relevant times, Gary Nelund was the Mayor of Norton Shores.  Mr. Nelund participated in the conspiracy of various points and did not take remedial action upon becoming aware of constitutional violations.

**ANSWER 10. It is admitted Gary Nelund is the mayor of the City of Norton**

**Shores. In that Mr. Nelund has not participated in any conspiracy, and in that there**

have been no constitutional violations, the remaining allegations contained in paragraph 10 are denied as untrue.

ALLEGATION 11.     At all relevant times, Attorney Douglas Hughes was acting as a corporate counsel for the City of Norton Shores.  Attorney Hughes is a senior partner and executive decision-maker for his firm, William Hughes, PLLC.  The firm may be liable for some portion of damages.

**ANSWER 11. It is admitted Douglas Hughes has been the appointed City Attorney for the City of Norton Shores for many years. It is also admitted Mr. Hughes is a principal in the firm of Williams Hughes, PLLC. The defendants do not understand the remaining allegations contained in paragraph 11 and are therefore without knowledge or information sufficient to form a belief as to the truth of those allegations.**

ALLEGATION 12.     The City of Norton Shores is a Michigan municipality responsible for the proper training and discipline of the Norton Shores Police officers.  The misconduct alleged herein reflects customs and policies adopted or tacitly approved by the city government.  Plaintiff also alleges that the highest ranking Norton Shores officials conspired together with private actors to retaliate against plaintiff.  Government resources, authority, and influence were used to further a conspiracy to retaliate and silence plaintiff. Accordingly, the City of Norton Shores is liable for damages.

**ANSWER 12.  The defendants object to paragraph 12 as it fails to comply with Fed. R. Civ. P. 8(d)(1). Without waiving this objection, it is admitted the City of Norton Shores is a Michigan municipal corporation. In further answer, in that no officer or employee of Norton Shores conspired with anyone to injure or retaliate against the plaintiff, the remaining allegations contained in paragraph 12 are denied as untrue.**

ALLEGATION 13.     At all relevant times F/LT Chris McIntire was employed as a commander of the Rockford Post for the Michigan State Police.  It appears that defendant McIntire acted in violation of MSP policy and without approval from any superior officer. Unless evidence indicates otherwise, Lt. McIntire is sued only in his individual capacity.

**ANSWER 13. The allegations contained in paragraph 13 are not addressed to these defendants and no response is required by these defendants.**

ALLEGATION 14.    Attorney Michelle McLean substituted into plaintiff's custody proceedings in 2014.  She was fully aware of an extensive body of evidence which contracted the false allegations against plaintiff.  In spite of this knowledge, Attorney McLean conspired with the other defendants to retaliate against plaintiff, abuse legal process and institute a baseless prosecution of criminal contempt proceedings against plaintiff.  Attorney McLean was a partner with the firm "Bolhouse, Baar & Hofstee, P.C." out of Grandville, MI.  Attorney Melissa Meyers was hired into this firm at some point in 2014.

**ANSWER 14. The defendants object to paragraph 14 as it fails to comply with Fed. R. Civ. P. 8(d)(1). Without waiving this objection, to the extent paragraph 14 is attempting to allege McLean conspired with officers or employees of Norton Shores, the allegations are denied as untrue.**

ALLEGATION 15.    At all relevant times, Attorney Joel Baar was a senior and managing partner of Bolhouse, Baar & Hofstee, PC.  Attorney Baar became involved in the prosecution of criminal contempt against plaintiff and participated in the conspiracy even after it became clear that the legal action was unwarranted and unjust.

**ANSWER 15. To the extent paragraph 15 is attempting to allege Baar conspired with officers or employees of Norton Shores, the allegations are denied as untrue.**

ALLEGATION 16.    At all relevant times, Bolhouse, Baar & Hofstee, P.C. was a Michigan Law firm.  The firm appeared in the PPO litigation against plaintiff and continued to pursue the litigation after it became clear that the claims against plaintiff were unwarranted.  The firm is liable because the managing partner(s) in this firm approved and supported the actions alleged herein.

**ANSWER 16. The allegations contained in paragraph 16 are not addressed to these defendants and no response is required by these defendants.**

ALLEGATION 17.    This Honorable Court has jurisdiction because this case involves federal questions and violations of civil rights under 42 U.S.C. § 1983.  Plaintiff requests that this court would exercise supplemental jurisdiction over the related state law claims.

**ANSWER 17.  The defendants admit this Court has jurisdiction over the federal claims asserted and has discretion to exercise supplemental jurisdiction over the state law claims.**

ALLEGATION 18.     In July of 2013, plaintiff, Daniel W. Rudd requested assistance from the Norton Shores Police Department.

**ANSWER 18. It is admitted only that plaintiff contacted the Norton Shores police department in July 2013.**

ALLEGATION 19.     Along with several other credible witnesses, plaintiff offered substantial evidence indicating that his children were in danger due to a volatile domestic violence situation between the children's mother and her third husband (whom she had just left).

**ANSWER 19.  The allegations contained in paragraph 19 are denied as untrue.**

ALLEGATION 20.     Plaintiff, and members of the mother's immediate family expressed great concerns that the mother had been behaving erratically for several days, had absconded with the children, and had hidden them away from plaintiff (their father) and all of her immediate family members.

**ANSWER 20. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20.**

ALLEGATION 21.     NSPD officers reviewed court orders regarding the mother's parenting time, confirmed the recent assaultive criminal history of the stepfather, verified the CPS substantiations for abuse and neglect in the mother's home, and reviewed the language of MCL 750.350a, which designated the mother's actions of felony.  All objective and verifiable sources of information demanded prompt attention.

**ANSWER 21.  The allegations contained in paragraph 21 are denied as untrue.**

ALLEGATION 22.     However, the department refused to conduct a criminal investigation, refused to properly question witnesses who could have identified the location of the children, and refused to enter a missing or endangered child report in the LEIN database.

**ANSWER 22.  The allegations contained in paragraph 22 are denied as untrue.**

ALLEGATION 23.    The NSPD refused to take reasonable steps which could have quickly diffused a dangerous and traumatic situation.   They refused to conduct the investigation and complete a report which is required by MCL 764.15c.

**ANSWER 23.  The allegations contained in paragraph 23 are denied as untrue.**

ALLEGATION 24.    By the following morning, the situation had grown more volatile.   It also became apparent that the mother's attorney was helping the mother draft extortionate messages (demanding specific legal concessions before the children would be returned or even allowed to speak on the phone).

**ANSWER 24. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24.**

ALLEGATION 25.    On 7/21/15, Plaintiff reported this to the Norton Shores Police Department, reiterated the risk factors and respectfully insisted that this was not just a "parenting time" squabble which could be ignored or addressed by a motion in family court.

**ANSWER 25. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.**

ALLEGATION 26.    The Norton Shores Police Department ignored the evidence, refused to help and ultimately threatened plaintiff with an unwarranted arrest.   These actions were retaliatory.

a)    Plaintiff had persistently asked the Norton Shores Police Department to uphold the law and to discharge their statutory duties.  This persistence was perceived as a challenge to the departments policy or custom of "not getting involved" when a custodial parent accuses the other custodial parent of a crime.

b.    Plaintiff had accused a prominent attorney, Melissa Meyers, of intentionally placing innocent children in a dangerous situation for the purpose of illegal extorting a more favorable custody agreement.  3 of the officers involved had a personal relationship with the attorney.  She was also the wife of the city manager (highest ranking Norton Shores executive).

**ANSWER 26. The allegations contained in paragraph 26, sub-paragraphs a and b inclusive, are denied as untrue.**

ALLEGATION 27.    Upon information and belief, Mark Meyers (city manager), Chief Daniel Shaw, and supervising officer Matthew Rhyndress conspired together to chill plaintiff's petitioning activity.

**ANSWER 27.  The allegations contained in paragraph 27 are denied as untrue.**

ALLEGATION 28.    Sergeant Rhyndress briefly detained plaintiff (without probable cuase) and aggressively informed plaintiff that the Norton Shores Police Department would not be investigating anything or providing any assistance.   When plaintiff sought an explanation, Sergeant Rhyndress threatened an unlawful arrest and issued a "trespass warning."

**ANSWER 28.  The allegations contained in paragraph 28 are denied as untrue.**

ALLEGATION 29.    Because the Norton Shores Police Department refused to take appropriate action, the dangerous and stressful ordeal was unnecessarily extended until a different police agency intervened and eventually facilitated the safe return of the minor children.

**ANSWER 29.  The allegations contained in paragraph 29 are denied as untrue.**

ALLEGATION 30.    Attorney Melissa Meyers was able to continue her efforts to extort a more favorable custody agreement for several more hours, subjecting the children greater risk.

**ANSWER 30. The allegations contained in paragraph 30 are not addressed to these defendants and no response is required by these defendants.**

ALLEGATION 31.    Shortly thereafter, orders were entered restricting the mother's parenting time, however, the court process was overwhelmed and delayed by the barrage of false allegations stemming from the abusive PPO litigation brought by Melissa Meyers.

**ANSWER 31. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31.**

ALLEGATION 32.    From July-November of 2013, substantial NSPD resources were deployed to support the efforts of Melissa Meyers in alleging that plaintiff had been stalking and harassing her.  She improperly obtained an ex parte PPO against plaintiff by fabricating claims and failing to notify plaintiff's counsel.  Thereafter, the PPO litigation became valuable leverage for Melissa Meyers.  This was especially true once the PPO case was inexplicably assigned to Judge Pittman, a long-time resident of Norton Shores who was also presiding over plaintiff's custody proceedings.

**ANSWER 32. Paragraph 32 does not contain properly pled allegations of fact but contains improper subjective contentions to which no response is required. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the subjective contentions contained in paragraph 32.**

ALLEGATION 33.     Officer Wassileski and officer Rhyndress falsified their reports by excluding all mention of the risk factors which had been credibly presented to the department.  This was a deliberate effort to cover up the departments failure to comply with statutory requirements regarding complaints involving domestic violence.  This also served to cover up the participation of their friend, Melissa Meyers, in a custodial abduction for the purpose of extorting a more favorable custody agreement.

**ANSWER 33. The allegations contained in paragraph 33 are denied as untrue.**

ALLEGATION 34.     Officer Rhyndress created a "supplemental report" which fabricates critical details to support of the false narrative created by Melissa Meyers.  For example, Sergeant Rhyndress claimed that plaintiff had announced his intention to use his vehicle to "block" people from leaving the Meyers home.  This was completely false and contrary to any logical interpretation of the facts.  The intent was to portray plaintiff as a dangerous vigilante.  However, the documented actions of the NSPD officers demonstrates that they had ZERO concern that plaintiff actually posed any risk to anyone.

**ANSWER 34. In that Mr. Rhyndress did not fabricate anything in any report the allegations contained in paragraph 34 are denied as untrue.**

ALLEGATION 35.     Although department police requires a recording to be made whenever an officer interacts with a civilian, these recordings were destroyed, concealed, or otherwise made unavailable by the intention of the department.

**ANSWER 35. The allegations contained in paragraph 35 are denied as untrue.**

ALLEGATION 36.     In October of 2013, Chief Daniel Shaw sent an e-mail to a subordinate officer authorizing the disclosure of LEIN information to Mark Meyers for the sole purpose of assisting Melissa Meyers in her efforts to portray plaintiff as a dangerous stalker.  It is important to note that on the morning of 7/21/13, the department was fully aware of plaintiff's location because plaintiff was pleading for their help and was following their instructions.  During this period of time, NONE of the defendants expressed any concern that plaintiff might have a weapon in his vehicle.  No one inquired about this until months later when Mark Meyers was subpoenaed to testify regarding the PPO.  Whatever

the motive, it was illegal for Chief Shaw to authorize the disclosure of ANY LEIN information to Mark Meyers.  (Also, plaintiff did not have any weapons)

**ANSWER 36. The defendants object to paragraph 36 as it fails to comply with Fed. R. Civ. P. 8(d)(1). Moreover, paragraph 36 does not contain properly pled allegations of fact but contains improper subjective contentions to which no response is required. Without waiving this objection, and to the extent a response is required the allegations contained in paragraph 36 are denied as untrue.**

ALLEGATION 37.    The department also destroyed, concealed or improperly withheld phone records which, along with the police recordings, would have clearly proven many of the claims made by Melissa Meyers to be false.  In spite of the fact that 4 Norton Shores employees (including top level executive and supervisory staff) were dedicating significant time to testify on this matter, the department mysteriously failed to preserve any of the records which would have objectively settled material disputes in the proceedings.

**ANSWER 37. The defendants object to paragraph 37 as it fails to comply with Fed. R. Civ. P. 8(d)(1). Moreover, paragraph 37 does not contain properly pled allegations of fact but contains improper subjective contentions to which no response is required. Without waiving this objection, and to the extent a response is required the allegations contained in paragraph 37 are denied as untrue.**

ALLEGATION 38.    In the weeks prior to the second PPO hearing (November 2013), Melissa Meyers indicated that she would be ending her involvement in plaintiff's child custody case and also filed motions urging the judge to refer the parties to an outside agency for a comprehensive resolution of the custody issues  (instead of setting the matter for a custody trial).

**ANSWER 38. The allegations contained in paragraph 38 are not addressed to these defendants and no response is required by these defendants.**

ALLEGATION 39.    On 11/26/15, the PPO hearing was cut short by Judge Pittman. Acknowledging that the parties had not yet presented all their witness Judge Pittman stated his intention to give both parties a little bit of what they needed:

a)     The PPO would remain in place for a few weeks while the contested motion for a custody evaluation was litigated.  The judge emphasized his strong preference for the resolving the custody issues through the referral proposed by Melissa Meyers, instead of setting the matter for trial as plaintiff's attorney had requested.

b)     Judge Pittman specifically and repeatedly advised Melissa Meyers that the PPO would be terminated PRIOR to the original six-month term which had been set based upon the (false) allegations in an ex parte hearing.

c)     Judge Pittman instructed that this would be a prophylactic measure and that the order would be terminated early.  He instructed that the order should include working which allowed him to terminate the PPO early (without conducting another hearing) after the upcoming custody hearings.

**ANSWER 39. The defendants object to paragraph 39 as being in violation of Fed. R. Civ. P. 12(f) as the allegations contained in paragraph 39 are immaterial. Without waiving this objection the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39.**

ALLEGATION 40.     In spite of the substantial help which she received from the Norton Shores Police Department, Melissa Meyers did not establish by evidence that ANY of her false claims of stalking/harassment were true.

**ANSWER 40. The defendants object to paragraph 40 as being in violation of Fed. R. Civ. P. 12(f) as the allegations contained in paragraph 40 are immaterial. Moreover, paragraph 40 does not contain properly pled allegations of fact but contains improper subjective contentions to which no response is required. Without waiving this objection and to the extent a response is required, it is denied as untrue that the Norton Shores police department provided Ms. Meyers with substantial help.**

ALLEGATION 41.     In December of 2013, the Norton Shores Police Department assisted Melissa Meyers in her efforts to initiate frivolous criminal contempt proceedings against plaintiff in December of 2013.  This was simply intended to harass plaintiff and create leverage in the custody proceedings.

**ANSWER 41. Paragraph 41 does not contain properly pled allegations of fact but contains improper subjective contentions to which no response is required. To the extent a response is required the allegations contained in paragraph 41 are denied as untrue.**

ALLEGATION 42.    In January of 2014, Melissa Meyers sued plaintiff for costs/sanctions, claiming that plaintiff had offered perjured testimony and moved to terminate the PPO for the sole purpose of harassing Melissa Meyers.  This also was completely frivolous.

**ANSWER 42. The allegations contained in paragraph 42 are not addressed to these defendants and no response is required by these defendants.**

ALLEGATION 43.    The court rejected these claims (1/23/14) and found in plaintiff's favor:

> THE COURT:  Well, I think by virtue of the decision that this Court reached, and whether you agree or not, that's certainly your prerogative, but by virtue of simply the idea that the term of the order was modified indicates that there was some arguable merit.  **That I made a decision based upon that merit to shorten the term of the PPO's existence…**  Mr. Rudd did receive some relief as he was seeking here.  **There was a modification.**  Of course you have the right to disagree that I was correct in finding that merit, but I have not heard that argument."

**ANSWER 43. The defendants object to paragraph 43 as being in violation of Fed. R. Civ. P. 12(f) as the allegations contained in paragraph 43 are immaterial. Without waiving this objection the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43.**

ALLEGATION 44.    The exhaustive custody evaluation requested by Melissa Meyers took approximately six months to be completed.  The evaluator conducted extensive collateral interviews, document review and psychological testing.  The findings unequivocally contradicted the false allegations which Melissa Meyers and her client had been manufacturing for years.

**ANSWER 44. The defendants object to paragraph 44 as being in violation of Fed. R. Civ. P. 12(f) as the allegations contained in paragraph 44 are immaterial. Without waiving this objection the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44.**

ALLEGATION 45.     The evaluator, who had been hand-picked by Melissa Meyers, specifically rejected the "stalking" narrative which Melissa Meyers had fabricated with the assistance of the Norton Shores Police Department.

> There is plenty of evidence to warrant Daniel's concerns about child welfare.  It isn't common in high conflict custody disputes such as this to have an overwhelming amount of evidence such as criminal records, CPS investigations, collateral reports, and text/email feeds to confirm and validate Daniel's concerns, This isn't a simple "he said, she said" case – Daniel represents copious and reliable data beyond his self-report.  I n fact, the psychological testing suggests that although he may have some emotional reactivity/dramatization to data/facts,  his self-report of factual information is reliable, He doesn't have a psychological profile suggestive of lying, deceiving, and manipulating information.  (Randy Flood Report, 5/2014 p. 25).

> We read in the news about children being abused and witness to violence in families where domestic violence, alcohol abuse, love triangles, and custody disputes exist. Sometimes the writing is on the wall, but often people will comment on how they didn't see it coming.  Daniel is aware, smart, and analytical while also possessing deep love and care for his children  <u>Although no severe or lethal violence has occurred in this case, the risk factors were present.  (Randy Flood Report, 5/2014 p. 26).</u>

**ANSWER 45. The defendants object to paragraph 45 as being in violation of Fed. R. Civ. P. 12(f) as the allegations contained in paragraph 45 are immaterial. Without waiving this objection the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45.**

ALLEGATION 46.     At this point, even Melissa Meyer's client (the mother) indicated that the referral to the Fountain Hill Center had been a wakeup call.  She testified that she now appreciated plaintiff's advocacy for the children, that he was great dad, and

that he always prioritized the needs of the children.   Regarding the domestic violence issues which Melissa Meyers had adamantly denied for years, the mother conceded that:

> I can see where Randy Flood would come to that conclusion because, you know, with [the stepfather] drinking, you know, his temper gets out of control sometimes. And that's why I am doing whatever it takes to make sure my boys are in a safe and stable environment.  And I am willing to be done with [the stepfather] if he can't stick to this plan and put my boys first.  (7/11/17, 27)

**ANSWER 46. The defendants object to paragraph 46 as being in violation of Fed. R. Civ. P. 12(f) as the allegations contained in paragraph 46 are immaterial. Without waiving this objection the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46.**

ALLEGATION 47.     The mother advised the court that the stepfather had started an intensive outpatient substance abuse program and that he would pursue follow up care for the rest of his life.  She also testified that she was aggressively pursuing the therapeutic objections regarding her role in minimizing and covering p the issues which had compromised the welfare of her children.

> "I started back at counseling as soon as the report came out.  I've been to see my counselor three or four times and he just recently referred me to a Dr. Dorothy Berg to help get through the recommendations that Randy Flood suggested.

**ANSWER 47. The defendants object to paragraph 47 as being in violation of Fed. R. Civ. P. 12(f) as the allegations contained in paragraph 47 are immaterial. Without waiving this objection the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 47.**

ALLEGATION 48.     The mother's new attorney, Michelle Mclean, elicited this testimony AND had full access to the extensive body of objective evidence regarding plaintiff's good faith efforts to appropriately advocate for his children.  Attorney McLean did not challenge the extensive findings of the evaluator regarding plaintiff's exemplary conduct.  In fact, attorney Michelle McLean advised the court that "my coming into this case was in part because Ms. Meyers admitted she was a little too emotional.  And I think the

attorneys do have a lot of control.  There's a lot of attorney control over our clients."
(7/11/14)

**ANSWER 48. The defendants object to paragraph 48 as being in violation of Fed. R. Civ. P. 12(f) as the allegations contained in paragraph 48 are immaterial. Without waiving this objection the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 48.**

ALLEGATION 49.     Plaintiff was awarded sole legal and sole physical custody of his children.  (Order Changing Custody 8/4/14).  However, in spite of her numerous statements that she would no longer be involved in the case, Attorney Melissa Meyers continued to insert herself into the custody litigation—perpetuating creating needless conflicts and discouraging her client from making actual progress in her therapeutic objectives.

**ANSWER 49. Paragraph 49 does not contain properly pled allegations of fact but contains improper subjective contentions to which no response is required. Additionally, defendants object to paragraph 49 as being in violation of Fed. R. Civ. P. 12(f) as the allegations contained in paragraph 49 are immaterial. Without waiving this objection and to the extent that a response is required, the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49.**

ALLEGATION 50.     In 2015, a new police chief had assumed leadership of the Norton Shores Police Department (Jon Gale) and announced his efforts to build trust in the community through transparency and accountability.

**ANSWER 50. It is admitted that Jon Gale became Chief of Police of the City of Norton Shores Police Department in 2015.**

ALLEGATION 51.     Since the court had made extensive findings exonerating plaintiff, and had already granted plaintiff sole custody of his children, plaintiff hoped that a new police chief would be able to objectively address the concerns regarding what had occurred under the previous chief in 2013.

**ANSWER 51. Paragraph 51 does not contain properly pled allegations of fact but contains improper subjective contentions to which no response is required. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the subjective contentions contained in paragraph 51.**

ALLEGATION 52.   Plaintiff submitted an official complaint to Chief Gale on 7/20/15.  The complaint (attached as Exhibit A) details plaintiff's concerns regarding the department's violations of plaintiff's constitutional rights, failure to enforce the law, and retaliatory actionis in 2013.  Plaintiff incorporates Exhibit A into this complaint.

**ANSWER 52. The allegations contained in paragraph 52 are denied as untrue. While plaintiff did prepare a complaint he told Chief Gale in a face-to-face meeting that he was not submitting a formal complaint.**

ALLEGATION 53.   Chief Gale met with plaintiff in his office for approximately an hour and fifteen minutes on 7/23/15 to discuss the complaint.

a)   During the course of this meeting, plaintiff described numerous ways that Chief Gale could objectively verify the truth of plaintiff's claims regarding what had occurred.  Plaintiff emphasized his willingness to provide additional documentary evidence and subject to himself to any type of scrutiny.

b)   Chief Gale thanked plaintiff for coming forward with these concerns and repeatedly emphasized his awareness that abusive litigation tactics in family court can be devastating.  Chief Gale went out of his way relate that his own best friend had recently been made the target of scheme to obtain a fraudulent PPO against him for ulterior purposes.  Chief Gale indicated that the PPO had been obtained through false testimony with devastating consequence for his friend.  Chief Gale believed that his friend would probably lose "everything."

c)   Although Chief Gale did make statements which minimized some of plaintiff's concerns, Chief Gale did not express any specific doubts about the credibility of the facts presented by plaintiff.

d)    Chief Gale assured plaintiff that he would conduct a fair and thorough investigation of any internal policy violations by NSPD officers who were still employed by the city.

e)    Regarding the portions of plaintiff's complaint which alleged criminal acts (i.e. destruction/concealment of evidence, unauthorized disclosure of LEIN information for the PPO litigation, cover-ups, extortion, etc..) Chief Gale advised that these matters would need to be independently investigated by someone from the Michigan State Police who did not "know anybody" from the Norton Shores Police Department.   Chief Gale offered to make these arrangements to ensure that it would be performed objectively.

**ANSWER 53. The defendants object to paragraph 53 as it fails to comply with Fed. R. Civ. P. 8(d)(1). Without waiving this objection, it is admitted Chief Gale informed plaintiff that allegations of criminal wrongdoing would have to be investigated by an outside agency. The remaining relevant allegations are denied as untrue.**

ALLEGATION 54.    However, Chief Gale's representations during this meeting were false.  Chief Gale did not conduct an objective internal investigation and he did not arrange for an independent outside investigation with the Michigan State Police.  At the time of this meeting 7/23/15, Chief Gale had already begun collaborating with Mark Meyers, Melissa Meyers, Mayor Gary Nelund, and the other Norton Shores defendants to prevent plaintiff from seeking or obtaining relief in state or federal court.

**ANSWER 54. The allegations contained in paragraph 54 are denied as untrue.**

ALLEGATION 55.    Although Chief Gale's sworn affidavit (Exhibit B) describes a long-standing policy of keeping citizen complaints strictly confidential (to prevent a chilling effect upon complainants) chief Gale immediately circulated copies of plaintiff's 7/20/15 complaint among the civilians which plaintiff had named as the primary conspirators (Mark Meyers, Melissa Meyers & Daniel Shaw).  Chief Gale did before taking any steps to objectively investigate the claims afforded by plaintiff.  This precluded any opportunity for a meaningful investigation to occur.

**ANSWER 55. The allegations contained in paragraph 55 are denied as untrue.**

ALLEGATION 56.    Also contrary to his representations, Chief Gale did not ever seek a referral for an independent investigation by the Michigan State Police.  Instead, he arranged for a trusted colleague (F/Lt. Chirs McIntire) to contact plaintiff and go through the motions of "investigating" the complaint without any documentation or scrutiny.

**ANSWER 56.  The allegations contained in paragraph 56 are denied as untrue.**

ALLEGATION 57.       Immediately after receiving it, Chief Gale provided Mark and Melissa Meyers with plaintiff's complaint, Melissa Meyers began conspiring with her client (non-custodial mother) to engineer a "PPO violation" by plaintiff.  An ambush was planned for a soccer tournament where plaintiff would be coaching his children's teams.

**ANSWER 57.  The allegations contained in paragraph 57 are denied as untrue.**

ALLEGATION 58.       Although plaintiff never saw Melissa Meyers or any of her family members at this crowded tournament and never had any credible reason to believe that Melissa Meyers was present, Melissa Meyers claimed that plaintiff's presence at the tournament constituted deliberate "unconsented contact" and the basis for a fresh batch of hysterical allegations against plaintiff.

**ANSWER 58. The allegations contained in paragraph 58 are not addressed to these defendants and no response is required by these defendants. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 58.**

ALLEGATION 59.       On 7/28/15, Melissa Meyers contacted plaintiff's attorney and alleged a criminal violation of the PPO (which had expired approximately 18 months prior).

"Upon seeing Mr. Rudd, Mr. Rudd was immediately informed of my presence and that of my family.  However, rather than leaving in compliance with the PPO, Mr. Rudd chose to stay."

**ANSWER 59. The allegations contained in paragraph 59 are not addressed to these defendants and no response is required by these defendants. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 59.**

ALLEGATION 60.       This claim was absolutely baseless in every way.  Among other inconsistencies, Melissa Meyers has never provided any explanation for why she did not contact plaintiff's lawyer <u>before</u> the tournament and work out a solution.

**ANSWER 60. The allegations contained in paragraph 60 are not addressed to these defendants and no response is required by these defendants. To the extent a**

response is required the defendants are without knowledge or information sufficient

to form a belief as to the truth of the allegations contained in paragraph 60.

ALLEGATION 61.    The e-mail conveyed that Melissa Meyers and her client intended to create a similar situation at any future soccer events where there "is even a remote possibility" of Attorney Meyers being present.

**ANSWER 61. The allegations contained in paragraph 61 are not addressed to**

**these defendants and no response is required by these defendants. To the extent a**

**response is required the defendants are without knowledge or information sufficient**

**to form a belief as to the truth of the allegations contained in paragraph 61.**

ALLEGATION 62.    The e-mail to plaintiff's attorney also emphasizes the possibility that Melissa Meyers may have to put plaintiff's children "through the trauma of police interaction because Mr. Rudd is non-compliant with the PPO."

**ANSWER 62. The allegations contained in paragraph 62 are not addressed to**

**these defendants and no response is required by these defendants. To the extent a**

**response is required the defendants are without knowledge or information sufficient**

**to form a belief as to the truth of the allegations contained in paragraph 62.**

ALLEGATION 63.    Melissa Meyers arranged for her client to also send plaintiff messages threatening Norton Shores Police action at the children's soccer events.

**ANSWER 63. The allegations contained in paragraph 63 are not addressed to**

**these defendants and no response is required by these defendants. To the extent a**

**response is required the defendants are without knowledge or information sufficient**

**to form a belief as to the truth of the allegations contained in paragraph 63.**

ALLEGATION 64.    Although the claims that plaintiff is violating a PPO, Melissa Meyers also indicated that she had been advised (via Chief Gale) that her 2013 ex parte PPO had expired and been removed from the LEIN database a long time ago.

**ANSWER 64. The allegations contained in paragraph 64 are not addressed to**

**these defendants and no response is required by these defendants. To the extent a**

response is required the defendants are without knowledge or information sufficient

to form a belief as to the truth of the allegations contained in paragraph 64.

ALLEGATION 65.    The 7/28/15 e-mail attempts to remedy this issue by demanding that plaintiff agree to stipulated entry of a court order authorizing the Norton Shores Police Department to enter a non-expiring Stalking/PPO record into the LEIN database against plaintiff.

**ANSWER 65. The allegations contained in paragraph 65 are not addressed to**

**these defendants and no response is required by these defendants. To the extent a**

**response is required the defendants are without knowledge or information sufficient**

**to form a belief as to the truth of the allegations contained in paragraph 65.**

ALLEGATION 66.    The message repeatedly conveys that Melissa Meyers is primarily motivated by the fact that plaintiff had complained to the Norton Shores Police Department on 7/20/15:

> "Mr. Rudd has recently brought up issues from the past involving the events surrounding the issuance of my PPO against Mr. Rudd.  He has made false, defamatory comments again about myself and my husband in a clear attempt to get my husband, the former police chief and Norton Shores Police department into some sort trouble.  In doing so he has renewed my concerns about his behavior and intent with regard to myself, my children and my husband."

**ANSWER  66.  The allegations contained in paragraph 66 are not addressed to**

**these defendants and no response is required by these defendants. To the extent a**

**response is required the defendants are without knowledge or information sufficient**

**to form a belief as to the truth of the allegations contained in paragraph 66.**

ALLEGATION 67.    The message is clear:  Plaintiff must drop his complaint with the NSPD or risk an arrest every time he brings his children to a soccer event in Norton Shores.

> "…I certainly do not want my family subjected to police involvement, however, if we do not figure out some sort of solution immediately, I am afraid that is exactly what will occur."

**ANSWER 67. The allegations contained in paragraph 67 are not addressed to these defendants and no response is required by these defendants. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 67.**

ALLEGATION 68.     Plaintiff reported this extortion attempt to Chief Gale.  Chief Gale relayed that information to Melissa Meyers.

**ANSWER 68. The allegations contained in paragraph 68 are denied as untrue.**

ALLEGATION 69.     On 7/30/15, Melissa Meyers responded with another message to plaintiff's attorney regarding plaintiff's failure to comply with her demand.  This message also concludes with an ominous threat:

**"Additionally, I will be taking any/all necessary steps to ensure Mr. Rudd's compliance"**

**ANSWER 69. The allegations contained in paragraph 69 are not addressed to these defendants and no response is required by these defendants. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69.**

ALLEGATION 70.     Melissa Meyers then began conspiring with attorney Michelle McLean to fraudulently obtain a court order authorizing the Norton Shores Police Department to enter a Stalking/PPO record into the LEIN database.

**ANSWER 70. The allegations contained in paragraph 70 are not addressed to these defendants and no response is required by these defendants. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 70.**

ALLEGATION 71.     On or about 8/2/15, Attorney Michelle McLean filed a motion on behalf of Melissa Meyers, claiming that a "clerical error" had occurred which needed to be corrected by the court.  Under this pretense, she supplied the Judge with a prepared order and requested that he sign it immediately and without a hearing.

**ANSWER 71. The allegations contained in paragraph 71 are not addressed to these defendants and no response is required by these defendants. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 71.**

ALLEGATION 72.     This was a fraudulent scheme to manipulate the courts and deprive plaintiff of any semblance of due process.

**ANSWER 72. The allegations contained in paragraph 72 are not addressed to these defendants and no response is required by these defendants. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 72.**

ALLEGATION 73.     Plaintiff's attorney  filed a response on 8/5/2015 citing specific rulings in the record which clearly contradicted Attorney Mclean's suggestion that the court intended to expand the duration of the 6 month ex parte PPO which Melissa Meyers had been granted in July of 2013.  Plaintiff's attorney requested sanctions and scheduled a hearing.

**ANSWER 73. The allegations contained in paragraph 73 are not addressed to these defendants and no response is required by these defendants. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 73.**

ALLEGATION 74.     On 8/12/2015, Attorney Mclean filed another motion asking Judge Pittman to authorize LEIN entry by the NSPD (without conducting a hearing or making any of the necessary findings to justify a stalking/ppo).  This motion alleged that plaintiff had committed several acts of felony aggravated stalking and violated the 2013 PPO by submitting his complaint to the Norton Shores Police Department:

On Monday July 20, 2015, Respondent began engaging in a willful course and pattern of conduct directed toward and involving Petitioner and her family that defined by MCR 750.411(h) (sic) constitutes harassment which caused and continues to cause Petitioner and her family to feel harassed, embarrassed, threatened and emotionally distressed as follows:

**ANSWER 74. The allegations contained in paragraph 74 are not addressed to these defendants and no response is required by these defendants. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 74.**

ALLEGATION 75.    The motion then proceeds to list several pages of excerpts from plaintiff's 7/20/15 written complaint—along with quotations form a recording of the meeting with Chief Gale on 7/23/15.  Without any support, the motion alleges that plaintiff was repeatedly advised that his complaints had been fully investigated and found to be false.  However, if this was the case, the Norton Shores Police Department should have charged plaintiff with falsely reporting a felony.

**ANSWER 75. The allegations contained in paragraph 75 are not addressed to these defendants and no response is required by these defendants. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 75.**

ALLEGATION 76.    Chief Gale, Attorney McLean, Attorney Meyers, and the NSPD LEIN operator where all fully aware of the statutory requirements for entering a stalking/ppo record into the LEIN database.  That is why defendants Mclean and Meyers submitted a petition to Judge Pittman asking for such an order to be entered.

**ANSWER 76. The defendants do not understand the allegations contained in paragraph 76 and are therefore without knowledge or information sufficient to form a belief as to the truth of those allegations.**

ALLEGATION 77.    Both of Michelle McLean's motions provided a proposed order which included the required components.  They requested that Judge Pittman would immediately enter the order because this was the only way that such an entry could be permitted.

**ANSWER 77. The allegations contained in paragraph 77 are not addressed to these defendants and no response is required by these defendants. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 77.**

ALLEGATION 78.     However, the department decided to bypass this due process protection shortly after plaintiff submitted a FOIA request to the Norton Shores Police Department seeking documents which pertained to his 7/20/15 complaint.  (8/25/15)

**ANSWER 78.  The allegations contained in paragraph 78 are denied as untrue.**

ALLEGATION 79.     A few days later (8/28/15), the Norton Shores Police Department decided to enter the stalking/PPO record into the LEIN database without a valid court order.

**ANSWER 79.  The allegations contained in paragraph 79 are denied as untrue.**

ALLEGATION 80.     Attorney McLean then contacted Plaintiff's lawyer and requested that the 9/8/15 hearing regarding the PPO would be cancelled because Melissa Meyers was withdrawing her request.  Attorney Mclean knew, but did not disclose that the Norton Shores Police Department had circumvented the courts and entered a stalking/PPO order against plaintiff already.

**ANSWER 80. The allegations contained in paragraph 80 related to the Norton Shores Police Department are denied as untrue. The defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 80.**

ALLEGATION 81.     Plaintiff did not learn about the LEIN entry until 9/10/15 when he received an automated letter from the Michigan State Police.  The letter advised that a recent disposition/order the 14th circuit Court had resulted in the entry of a "Stalking/PPO" against plaintiff.

**ANSWER 81. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 81.**

ALLEGATION 82.     Plaintiff immediately contacted the Norton Shores Police Department advising that the 14th Circuit Court had certainly <u>not</u> authorized the entry of such an order in spite of numerous requests.  Plaintiff explained the circumstances and was assured that these concerns would be immediately reviewed by Chief Gale.

**ANSWER 82. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 82.**

ALLEGATION 83.     Chief Gale did not take any corrective action. Attorney Melissa Meyers and Attorney Michelle Mclean continued to use the fraudulent Stalking/PPO as

leverage in plaintiff's custody proceedings AND as a vehicle to intimidate plaintiff from bringing an action against the City of Norton Shores in federal court.

**ANSWER 83. The defendants do not understand the allegations contained in paragraph 83 and are therefore without knowledge or information sufficient to form a belief as to the truth of those allegations.**

ALLEGATION 84.     On 10/20/15, plaintiff filed a motion in the circuit court seeking a declaratory ruling regarding unauthorized entry of a stalking/PPO record in the LEIN database and the false allegations of harassment, criminal contempt and aggravated stalking.  Plaintiff obtained a hearing date and served notice.

**ANSWER 84. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 84.**

ALLEGATION 85.     Attorney Mclean responded with several frivolous filings, totaling around 145 pages with exhibits.  The pleadings were comprised of approximately 46 pages (single spaced) primarily rehashing the same in more dramatic form.  Once again, plaintiff's complaint to the Norton Shores Police Department was a central theme.

**ANSWER 85. Paragraph 85 does not contain properly pled allegations of fact but contains improper subjective contentions to which no response is required. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the subjective contentions contained in paragraph 85.**

ALLEGATION 86.     Attorney McLean asked the court to initiate criminal contempt proceedings against plaintiff, seeking 30 days of incarceration and around $5000 in fines and costs.

**ANSWER 86. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 86.**

ALLEGATION 87.     Attorney McLean's sworn affidavit falsely claimed that she could offer competent testimony regarding her first-hand knowledge that plaintiff had willfully violated the courts orders and the aggravated stalking statute (a felony).  In addition to providing more leverage against plaintiff, Attorney McLean scheduled her contempt hearing on top of the hearing which plaintiff had scheduled for declaratory relief.

**ANSWER 87. Paragraph 87 does not contain properly pled allegations of fact but contains improper subjective contentions to which no response is required. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the subjective contentions contained in paragraph 87.**

ALLEGATION 88.    Plaintiff received Judge Pittman's order authorized criminal contempt proceedings on 11/5/15.  On the same day, Attorney Douglas Hughes and his staff began sending plaintiff numerous copies of a threatening letter (emphasis added):

RE:  Mark Meyers

Dear Mr. Rudd

This office represents the City of Norton Shores.  **Their Mayor has asked us to monitor your conduct and behavior as it relates to the employment of Mark Meyers** as the City Administrator for the City of Norton Shores.

We have information that leads us to believe that you have made serious defamatory and disparaging remarks about Mr. Meyers, as well as other members of the Norton Shores Police Department.  **Please treat this letter as a notice to you that we will take whatever action is legally necessary to protect the professional and privacy rights of Mr. Meyers.**

**You are to cease and desist from any further contact or conversation with him. Also be mindful that the statements you make to others about Mr. Meyers,** [sic] If you have had hired legal counsel, please make a copy of this letter and give it to that individual and instruct him to contact me.

Sincerely, Douglas M. Hughes, City Attorney for the City of Norton Shores

**ANSWER 88. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation regarding when plaintiff received a court order. It is admitted City Attorney Hughes sent correspondence to plaintiff and that plaintiff has accurately recited the contents of that correspondence. It is denied**

as untrue the correspondence is threatening or that a reasonable person would construe the correspondence as threatening.

ALLEGATION 89.    After receiving a third copy of the letter on 11/7/15, plaintiff responded to Mr. Hughes, advising that he (plaintiff) had not <u>ever</u> had contact with or conversation with Mark Meyers.   That being the case, plaintiff advised that the misinformed and vague statements in the letter were coming across intimidating.

**ANSWER 89. It is admitted plaintiff related these incorrect subjective beliefs to Mr. Hughes.**

ALLEGATION 90.    Plaintiff indicated that he did not consent to further communication unless Attorney Hughes could send something more productive or helpful in articulating what it was he wanted.

**ANSWER 90. It is admitted plaintiff related that subjective sentiment to Mr. Hughes.**

ALLEGATION 91.    Mr. Hughes responded by promptly sending another vague and ominous message:

**Doug Hughes                              Sat. Nov 7, 2015 @ 9:20 PM
To:  Daniel Rudd**

**Good.  Stay away from the Meyer's and we will get along just fine.  Take Care**

**ANSWER 91. It is admitted City Attorney Hughes sent correspondence to plaintiff and that plaintiff has accurately recited the contents of that correspondence. It is denied as untrue the correspondence is vague or ominous or that a reasonable person would construe the correspondence as vague or ominous.**

ALLEGATION 92.    Doug Hughes sent the above response to plaintiff at 9:30pm on a Saturday night (11/7/15).  Doug Hughes proceeded <u>immediately</u> forward Chief Gale a copy of the message indicating plaintiff (Daniel Rudd) felt intimidated.  Commenting on plaintiff's message Doug Hughes wrote to Chief Gale(9:23pm 11/7/15):

"Check this out.  I will share w mark tomorrow.  I told Daniel, good, stay away from The Meyer's and he and will get along just fine."  (sic)

**ANSWER 92. The defendants do not understand the allegations contained in paragraph 92 and are therefore without knowledge or information sufficient to form a belief as to the truth of those allegations.**

ALLEGATION 93.    Two days later (11/9/2015), plaintiff met with Attorney Michelle McLean and Attorney Joel Baar, managing partner of Bolhouse, Baar & Hofstee, P.C.; Attorney Baar had requested a meeting just prior to the contempt hearing for the purpose of reaching a "global resolution on all issues in the case."

**ANSWER 93. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 93.**

ALLEGATION 94.    Attorneys Baar and McLean repeatedly indicated that plaintiff could avoid incarceration by agreeing that he would no longer engage in "conduct" which was "concerning" to Melissa Meyers and Mark Meyers – specifically referring to plaintiff's 7/20/15 complaint and corresponding FOIA requests.

**ANSWER 94. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 94.**

ALLEGATION 95.    Mr. Baar specifically stated that they were looking for an agreement that plaintiff would not take "any action" against Mark Meyers or Melissa Meyers.  Attorney Mclean specifically asked plaintiff if he was willing to "stop going to the city."

**ANSWER 95. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 95.**

ALLEGATION 96.    Plaintiff indicated that attorney Mclean had certainly misconstrued plaintiff's actions in submitting a complaint to Norton Shores, but advised that nothing related to that complaint had anything to do with violations of the ex parte PPO which had been obtained by Melissa Meyers in July of 2013.

**ANSWER 96. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 96.**

ALLEGATION 97.    Attorneys Mclean and Baar disagreed and advised that Police Chief Jon Gale, First Lieutenant Chris McIntire (Michigan State Police), Attorney Doug Hughes and city manager Mark Meyers were outside in the hall and prepared to testify that plaintiff had been engaging in very concerning behavior.  These attorneys knew that there

false allegations could damage plaintiff's credibility before Judge Pittman, who also presided over plaintiff's custody case.

**ANSWER 97. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 97.**

ALLEGATION 98.    Attorney McLean specifically stated that since Judge Pittman had authorized criminal contempt "this could turn into an arraignment today."

**ANSWER 98. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 98.**

ALLEGATION 99.    Attorney Baar made several references to Judge Pittman's reputation for unpredictable and hasty rulings (i.e. "who knows what Pittman will do?").

**ANSWER 99. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 99.**

ALLEGATION 100.   Throughout the meeting, attorneys Baar and Mclean repeatedly attempted to coerce plaintiff into dropping any complaints against the City of Norton Shores.  Plaintiff ultimately advised Joel Barr (sic.) and Michelle Mclean that this was completely inappropriate.  No agreements were reached.

**ANSWER 100. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 100.**

ALLEGATION 101.    Attorney Doug Hughes, Chief Gale, City Manager Mark Meyers, and Lt. Christ (sic.) McIntire all appeared at the hearing.  Their presence alone sent a strong message to plaintiff, confirming their unified commitment to damage, intimidate, and silence plaintiff:

"I will be taking **any/all necessary steps to ensure Mr. Rudd's compliance.**" (Melissa Meyers, 7/30/15 e-mail)

We have information that leads us to believe that you have made serious defamatory and disparaging remarks about Mr. Meyers, as well as other members of the Norton Shores Police Department.  Please treat this letter as notice to you that **we will take whatever action is legally necessary to protect the professional and privacy rights of Mr. Meyers.**  (Attorney Dough (sic.) Hughes, 11/5/15 letter)

**ANSWER 101.   Paragraph 101 does not contain properly pled allegations of fact but contains improper subjective contentions to which no response is required. To the extent a response is required the subjective contentions contained in paragraph 101 are denied as untrue.**

ALLEGATION 102.   Attorney McLean's claims were immediately found meritless by Judge Pittman, however the dramatic show of force from high ranking Norton Shores officials predictably caught Judge Pittman's attention.   The record indicates that the meritless criminal prosecution would have been dismissed on that day if it had not been for the veneer of credibility provided by these influential witnesses.   These actions alos furthered several objectives of the conspiracy:

a)   Plaintiff was intimidated.   A person of ordinary firmness would certainly been chilled from engaging in any more petitioning activity.

b)   Plaintiff, who had scheduled the hearing, was deprived of any opportunity to be heard, or to make a record regarding what had occurred.

c)   The adjournment allowed the defendant to maintain their leverage through a continuous threat of an unjustified arrest.

d)   Contrary to the court rules, Judge Pittman ordered the parties to mediate the dispute.   This was exactly what Melissa Meyers, Joel Baar, and the Norton Shores Defendants needed in order to continue their efforts to silence plaintiff.

**ANSWER 102.   Paragraph 102 does not contain properly pled allegations of fact but contains improper subjective contentions to which no response is required. To the extent a response is required the subjective contentions contained in paragraph 102 are denied as untrue.**

ALLEGATION 103.   Shortly after this hearing, Melissa Meyers was replaced by a new lawyer in the custody proceedings.   This eliminated the only remaining pretense for maintaining these actions against plaintiff.   However, with the approval of managing partners, Bolhouse, Baar & Hofstee continued in their efforts to keep this abusive litigation alive.   The ulterior purpose behind these efforts is plainly evident in written correspondence between plaintiff and the firm.

**ANSWER 103.  The allegations contained in paragraph 103 are not addressed to these defendants and no response is required by these defendants.**

ALLEGATION 104.  The malicious prosecution and abusive litigation was maintained until Judge Pittman dismissed all charges with prejudice.  Even at this point, attorney McLean attempted to keep the criminal contempt prosecution alive, so that plaintiff would be required to mediate.

**ANSWER 104.  The allegations contained in paragraph 42 are not addressed to these defendants and no response is required by these defendants. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 104.**

ALLEGATION 105.   At plaintiff's request, the court also entered an order directing the Norton Shores Police Department to "immediately" remove the stalking/ppo record from the LEIN database.

**ANSWER 105.   The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 105.**

ALLEGATION 106.  Throughout the course of these events, plaintiff had a constitutional right to petition the government for help, to insist upon <u>equal</u> protection under the law, to seek redress for grievances, and to challenge the customs and policies of the Norton Shores Police Department.  Plaintiff had the right to persistently engage in these protected activities without fear of retaliation.

**ANSWER 106.  Paragraph 106 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 106.**

ALLEGATION 107.   Plaintiff had a right to bring good-faith complaints of criminal activity to the Norton Shores Police Department even if those allegations are directed at prominent and connected members of the Norton Shores community.

**ANSWER 107.  Paragraph 107 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the extent a response is required the defendants are without knowledge or information sufficient to form a belief as to the truth of the legal contentions contained in paragraph 107.**

ALLEGATION 108.   If Plaintiff's complaints of criminal activity, or plaintiff's requests for police intervention were not brought in good faith, the department should have sought charges with the prosecutor for submitting false reports.  Instead the Norton Shores defendants conspired with the private actors to launch a subversive collateral assault on plaintiff's ability to protect his children in family court and protect his constitutional rights in federal proceedings.

**ANSWER 108.  In that no officer or employee of the City of Norton Shores conspired with anyone against the plaintiff, the allegations contained in paragraph 108 are denied as untrue.**

### COUNT 1.     VIOLATION OF 42 U.S.C. 1983; CONSPIRACY

(Denial of Access to State & Federal Court Remedies)

ALLEGATION 109.   Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 108 above.

**ANSWER 109.  The defendants incorporate by reference paragraphs 1 through 108 of their Answer.**

ALLEGATION 110.   The actions of all defendants, as described herein, demonstrated a deliberate and continued course of concerted effort to prevent plaintiff from pursuing any claims against Mark Meyers, Melissa Meyers, and the city of Norton Shores.

**ANSWER 110.  To the extent the allegations contained in paragraph 110 are directed to these defendants the allegations are denied as untrue.**

ALLEGATION 111.   The conspiracy initially targeted the relief in plaintiff sought through the Muskegon County Family Court including but not limited to:

a)   Relief under the parental kidnapping statute, which includes protective orders and indemnification of losses resulting from the custodial abduction.

b)   A prompt resolution of the pending custody suit, wherein the Guardian Ad Litem had already recommended that plaintiff receive sole custody of the children.

c)   Sanctions and contempt proceedings against Melissa Meyers for encouraging her client to violate court orders and subject the children to risk of harm.

**ANSWER 111.  To the extent the allegations contained in paragraph 111 are directed to these defendants the allegations are denied as untrue.**

ALLEGATION 112.   The conspiracy served to render these remedies ineffective and/or overwhelm the court to prevent a proper and timely adjudication of the disputes.  If it weren't for the actions of defendants, these state matters would have been resolved much more quickly, with less suffering and with less expense.

**ANSWER 112. To the extent the allegations contained in paragraph 112 are directed to these defendants the allegations are denied as untrue.**

ALLEGATION 113.   Another object of the conspiracy was to prevent any civil litigation or criminal investigations pertaining to Melissa Meyer's participation in her client's parental kidnapping, her assistance in drafting extortionate messages, and any efforts to obstruct law enforcement agencies by providing false information.

**ANSWER 113.  To the extent the allegations contained in paragraph 113 are directed to these defendants the allegations are denied as untrue.**

ALLEGATION 114.   When plaintiff alleged that Norton Shores officers had had participated in these violations, common objectives began to emerge between the state actors (Norton Shores Defendants) and the private actors.

**ANSWER 114.  The defendants do not understand the allegations contained in paragraph 114. To the extent paragraph 114 is attempting to allege these defendants participated in a conspiracy against plaintiff, the allegations are denied as untrue. To the extent paragraph 114 is attempting to allege something else, the defendants are**

**without knowledge or information sufficient to form a belief as to the truth of those**

**allegations.**

ALLEGATION 115.    At all relevant times, all of the defendant knew, or should have known that plaintiff was acting in good faith and in full alignment with the state's interest in protecting vulnerable children.  Knowing this, all defendants participated in various portions of the scheme to violate plaintiff's civil rights and silence plaintiff through various abuses under color of state law.

**ANSWER 115.  To the extent the allegations contained in paragraph 115 are**

**directed to these defendants the allegations are denied as untrue.**

ALLEGATION 116.    This count is alleged against all defendants.

**ANSWER 116. The defendants are without knowledge or information**

**sufficient to form a belief as to the truth of the allegations contained in paragraph**

**116.**

**COUNT 2.        VIOLATION OF 42 U.S.C. 1983:  1st Amendment Retaliation**

ALLEGATION 117.    Plaintiff hereby realleges and incorporates by reference paragraphs 1-116.

**ANSWER 117.  The defendants incorporate by reference paragraphs 1 through**

**116 of their Answer.**

ALLEGATION 118.    All defendant's participated in the conspiracy to retaliate against plaintiff with the adverse actions described in this complaint.  These actions were motivated, at least in part, by plaintiff's persistent efforts to seek assistance and the redress of grievances by the government.

**ANSWER 118.  To the extent the allegations contained in paragraph 118 are**

**directed to these defendants the allegations are denied as untrue.**

ALLEGATION 119.    Plaintiff brings this count against all defendants by way of retaliatory acts or participation in the conspiracy to retaliate against plaintiff.

**ANSWER 119.  To the extent the allegations contained in paragraph 119 are directed to these defendants it is denied as untrue these defendants participated in a conspiracy against plaintiff or retaliated against plaintiff.**

**COUNT 3.      VIOLATION OF 42 U.S.C. 1983:  Malicious Prosecution**

ALLEGATION 120.    Plaintiff hereby realleges and incorporates by reference paragraphs 1-121.

**ANSWER 120.  The defendants incorporate by reference paragraphs 1 through 119 of their Answer.**

ALLEGATION 121.    All defendants conspired together and participated in an effort to initiate and maintain an unwarranted prosecution against plaintiff for criminal contempt.

**ANSWER 121.  To the extent the allegations contained in paragraph 121 are directed to these defendants the allegations are denied as untrue.**

ALLEGATION 122.    All defendants participated in the effort to have plaintiff prosecuted for aggravated stalking and other criminal violations.  The prosecution was intended to retaliate against plaintiff and chill his petitioning activities.

**ANSWER 122.  To the extent the allegations contained in paragraph 122 are directed to these defendants the allegations are denied as untrue.**

ALLEGATION 123.    The city of Norton Shores (via Doug Hughes) expressed an ominous warning against plaintiff's protected activity, before devoting substantial department resources to maintain the malicious prosecution against plaintiff.

**ANSWER 123.  The allegations contained in paragraph 123 are denied as untrue.**

ALLEGATION 124.    The Norton Shores defendants used their influence, authority, and department resources to intimidate plaintiff as part of the effort by Joel Baar and Michelle McLean to extort a "global resolution" just before the contempt hearing.  These actions also allowed the malicious prosecution to continue for several more months until the charges were finally dismissed in plaintiff's favor on 2/4/16.

**ANSWER 124.   The allegations contained in paragraph 124 are denied as untrue.**

ALLEGATION 125.    Plaintiff alleges malicious prosecution against Melissa Meyers, Michelle Mclean, Joel Baar, and their firm BOLHOUSE, BAAR & HOFSTEE PC.

**ANSWER 125.   Paragraph 125 does not contain properly pled allegations of fact to which a response is required.**

ALLEGATION 126.    Plaintiff alleges conspiracy to maliciously prosecute plaintiff against all defendants.

**ANSWER 126.   To the extent paragraph 126 is directed against these defendants, it is denied as untrue these defendants participated in a conspiracy against plaintiff.**

COUNT 4.    VIOLATION OF 42 U.S.C. 1983: Abuse of Process

ALLEGATION 127.    Plaintiff hereby realleges and incorporates by reference paragraphs 1-127.

**ANSWER 127.   The defendants incorporate by reference paragraphs 1 through 119 of their Answer.**

ALLEGATION 128.    The criminal contempt and civil proceedings were instituted and maintained under fraudulent pretenses and for ulterior purposes which were unrelated to the true nature of the legal actions which were before the court.

**ANSWER 128.   To the extent the allegations contained in paragraph 128 are directed to these defendants the allegations are denied as untrue.**

ALLEGATION 129.    All defendants conspired to violate plaintiff's civil rights through abusive ligation (sic.) as set forth in this complaint.

**ANSWER 129.   To the extent paragraph 129 is directed against these defendants, it is denied as untrue these defendants participated in a conspiracy against plaintiff.**

ALLEGATION 130.   The defendants were attempting to pressure plaintiff into making agreements and to prevent plaintiff from taking legal action against Melissa Meyers, Mark Meyers and the Norton Shores defendants.   This ulterior purpose is plainly evident in the legal pleadings which were filed in the PPO litigation but primarily focused on plaintiff's petitioning activity.

**ANSWER 130.   To the extent paragraph 130 is directed against these defendants, it is denied as untrue these defendants participated in a conspiracy against plaintiff.**

ALLEGATION 131.   Norton Shores expressed (via Douglas Hughes letter) the intention to "take whatever action is legally necessary to protect the professional and privacy rights of Mr. Meyers." This reflects the statements and actions of the private actors.

**ANSWER 131. The allegations contained in paragraph 131 are denied as untrue.**

ALLEGATION 132.   Plaintiff alleges abuse of process against Melissa Meyers, Michelle Mclean, Joel Baar, and their firm BOLHOUSE, BAAR & HOFSTEE PC.

**ANSWER 132. Paragraph 132 does not contain properly pled allegations of fact to which a response is required.**

ALLEGATION 133.   Plaintiff alleges conspiracy to abuse process against all defendants.

**ANSWER 133. To the extent paragraph 133 is directed against these defendants, it is denied as untrue these defendants participated in a conspiracy against plaintiff.**

**COUNT 5.    State Law:  Abuse of Process**

ALLEGATION 134.    In exactly the same terms and against the same defendants in Count 4, Plaintiff also alleges a state law claim for abuse of process and conspiracy to abuse process.

**ANSWER 134.  Paragraph 134 does not contain properly pled allegations of fact but contains improper legal contentions to which no response is required. To the**

**extent a response is required, to the extent the allegations contained in paragraph**

**134 are directed to these defendants the allegations are denied as untrue.**

COUNT 6.     State Law:  Malicious Prosecution

ALLEGATION 135.    In exactly the same terms and against the same defendants in Count 3, Plaintiff also alleges a state law claim for malicious prosecution and conspiracy to maliciously prosecute plaintiff.  This count is alleged under MCL 600.2907 and common law.

**ANSWER 135. Paragraph 135 does not contain properly pled allegations of fact**

**but contains improper legal contentions to which no response is required. To the**

**extent a response is required, to the extent the allegations contained in paragraph**

**135 are directed to these defendants the allegations are denied as untrue.**

COUNT 7.      State Law:  Intentional Infliction of Emotional Distress &amp; Negligent Infliction of Emotional Distress

ALLEGATION 136.    Plaintiff hereby realleges and incorporates by reference paragraphs 1-136.

**ANSWER 136. The defendants incorporate by reference paragraphs 1 through**

**135 of their Answer.**

ALLEGATION 137.    Plaintiff alleges that Melissa Meyers and Michelle McLean intentionally inflicted emotional distress on plaintiff and others.

**ANSWER 137. Paragraph 137 does not contain properly pled allegations of fact**

**to which a response is required.**

ALLEGATION 138.    Plaintiff alleges that the remaining defendants demonstrated gross negligence in violation of their statutory or official duties, resulting in severe emotional distress to plaintiff and others.

**ANSWER 138. Paragraph 138 does not contain properly pled allegations of fact**

**but contains improper legal contentions to which no response is required. To the**

**extent a response is required, to the extent the allegations contained in paragraph 138 are directed to these defendants the allegations are denied as untrue.**

WHEREFORE, for the foregoing reasons, the Defendants respectfully request this Honorable Court enter judgment of no cause of action in their favor, deny all of Plaintiff's requests for relief, and award the Defendants their costs and fees as allowed by law.

Respectfully submitted,

DATED:  March 5, 2018                    PLUNKETT COONEY

BY: /s/ Michael S. Bogren
      Michael S. Bogren (P34835)
      Attorney for Defendants
      City of Norton Shores, Mayor Nelund,
      Police Chief Shaw, Sgt. Rhyndress,
      Officer Wassilewski, Mark Meyers,
      Doug Hughes and William Hughes PLLC

## AFFIRMATIVE DEFENSES

NOW COME the Defendants, City of Norton Shores, Mayor Gary Nelund, Police Chief Daniel Shaw, Sergeant Matthew Rhyndress, Officer Michael Wassilewski, Mark Meyers, Attorney Douglas Hughes, and William Hughes, PLLC, by and through their attorneys, PLUNKETT COONEY and raise the following Affirmative Defenses to the Plaintiff's Complaint:

1.  The individual defendants are entitled to dismissal of the federal claims on the basis of qualified immunity as reasonable officials in their position could have believed their actions were lawful in light of clearly established law.

2.      The state law claims against these defendants are barred by the Governmental Tort Liability Act.

3.      One or more of the plaintiff's claims may be barred by expiration of the statute of limitations.

4.      Plaintiff's Complaint is an improper attempt to collaterally attack and re-litigate claims that have been, or should be, litigated in state court child custody proceedings.

5.      Plaintiff's claims for malicious prosecution under state and federal law fail as plaintiff was never charged and his liberty was never restrained.

6.      There is no claim for abuse of process under federal law.

7.      Plaintiff's state law claim of abuse of process fails as a matter of law.

8.      Plaintiff has not alleged any factual basis that will support a claim against any of the individually named defendants.

9.      Plaintiff has not alleged any factual basis that will support a claim of intentional or negligent infliction of emotional distress.

                                    Respectfully submitted,

DATED:  March 5, 2018               PLUNKETT COONEY


                                    BY:  /s/Michael S. Bogren
                                        Michael S. Bogren (P34835)
                                        Attorney for Defendants
                                        City of Norton Shores, Mayor Nelund,
                                        Police Chief Shaw, Sgt. Rhyndress,
                                        Officer Wassilewski, Mark Meyers,
                                        Doug Hughes and William Hughes PLLC

**JURY DEMAND**

NOW COME the defendants, City of Norton Shores, Mayor Gary Nelund, Police Chief Daniel Shaw, Sergeant Matthew Rhyndress, Officer Michael Wassilewski, Mark Meyers, Attorney Douglas Hughes, and William Hughes, PLLC, by and through their attorneys PLUNKETT COONEY and hereby demand a Trial by Jury in this matter.

Respectfully submitted,

DATED:  March 5, 2018                PLUNKETT COONEY


BY: /s/Michael S. Bogren
        Michael S. Bogren (P34835)
        Attorney for Defendants
        City of Norton Shores, Mayor Nelund,
        Police Chief Shaw, Sgt. Rhyndress,
        Officer Wassilewski, Mark Meyers,
        Doug Hughes and William Hughes PLLC


Open.00560.80616.19921308-1