UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL WILLIAM RUDD,                                    HON. GORDON J. QUIST
                                                       U.S. District Judge
              Plaintiff,

v                                                      Case No. 1:18-cv-124

THE CITY OF NORTON SHORES;
MAYOR GARY NELUND, individually
and in his official capacity;
POLICE CHIEF DANIEL SHAW,
individually and in his official capacity;
SERGEANT MATTHEW RHYNDRESS,                            **ANSWER TO COMPLAINT**
individually and in his official capacity;             **& AFFIRMATIVE, SPECIAL, & OTHER**
OFFICER MICHAEL WASSILEWSKI,                           **DEFENSES**
individually and in his official capacity;
MARK MEYERS, Individually and as city
manager,
----
F/LT. CHRIS MCINTIRE, Michigan State Police
only in his individual capacity;
----
ATTORNEY DOUGLAS HUGHES,
individually and acting on behalf of his law firm;
WILLIAM HUGHES,PLLC, a Michigan law firm.
----
ATTORNEY MELISSA MEYERS, individually and
acting on behalf of her law firm;
ATTORNEY MICHELLE MCLEAN, individually and
acting on behalf of her law firm;
ATTORNEY JOEL BAAR, individually and
acting on behalf of his law firm;
BOLHOUSE, BAAR & HOFSTEE PC; a Michigan
Law firm.
              Defendants.
_____

| | |
|---|---|
| Daniel W. Rudd | Richard L. Bolhouse (P29357) |
| Plaintiff, In Pro Per | Bolhouse, Hofstee, & McLean PC |
| 201 S. Lake Ave | Attorneys for Defendants Meyers, |
| Spring Lake, MI 49456 | McLean, Baar, and Bolhouse, |
| 231-446-2532 | Hofstee & McLean PC |
| daniel@stock20.com | 39996 Chicago Dr. SW |
| | Grandville, MI  49418 |
| | 616-531-7711 |
| | rickb@bolhouselaw.com |

# DEFENDANTS' ANSWER[1] TO COMPLAINT AND AFFIRMATIVE, SPECIAL, AND OTHER DEFENSES

---

[1] The Defendants object to the form of the Plaintiff's Complaint, as it fails to comply with Fed. R. of Civ. P. 8(d)(1), and 12(f). Plaintiff's Complaint also does not contain properly pled allegations of fact, and instead contains improper

**Nature of the Case:**

1) This case is about a coordinated effort by the Norton Shores Police Department and City Government, to retaliate against a vulnerable citizen who alleged misconduct by police officers, criticized department policy, and alleged some of these individuals had broken the law.

**ANSWER:   Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff Daniel Rudd ("Plaintiff") to his strictest proofs. The Defendants Melissa Meyers ("Meyers"), Michelle McLean ("McLean"), Joel Baar ("Baar"), and the law firm Bolhouse, Hofstee, & McLean PC (f/k/a Bolhouse, Baar, & Hofstee PC) ("the Firm") (hereafter collectively "the Defendants") formerly represented the Plaintiff's ex-wife, Andrea Averill ("Ms. Averill") in contentious custody proceedings before Muskegon Circuit Court. Attorney McLean also represented Attorney Meyers in personal protection order ("PPO") proceedings against Plaintiff as the respondent and with Attorney Meyers as the petitioner. There has been no efforts on behalf of the named Defendants to retaliate against Plaintiff.**

**Plaintiff:**

2) Plaintiff, Daniel W. Rudd resides in Ottawa County, Michigan. The Muskegon County Family Court awarded plaintiff sole custody of his children in 2014 due to substantiated abuse, neglect, domestic violence and chronic alcohol abuse in the mother's home. Plaintiff has been subjected to extensive scrutiny in the child custody proceedings. The record of those proceedings unequivocally demonstrates that plaintiff has acted in good faith and for the benefit of his children at all times. No evidentiary findings suggest otherwise.   Plaintiff  has never been convicted of any crime or been involved in any adverse interactions with law enforcement prior to the events alleged herein.  Plaintiff is not a lawyer and hopes to retain counsel as soon as possible.

**ANSWER:   All sentences in this paragraph do not apply to Defendants; and the Defendants do not have the knowledge or information to respond. To the extent that the court requires a response, the Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

**Defendants:**

3) Upon information and belief, all defendants conduct business in Muskegon County and reside in Muskegon County, Ottawa County, or Kent County.

**ANSWER:   Defendants admit that the Defendants conduct business in Muskegon County, and reside in Muskegon County, Ottawa County, or Kent County.**

4) Attorney Melissa Meyers has represented the opposing party (non-custodial mother) in plaintiff's child custody proceedings for many years.  During this time, Melissa Meyers has relentlessly accused plaintiff of criminal activity without any support for these allegations.

---

subjective contentions to which no response is required. Without waiving their objections, the Defendants have answered the allegations contained in the Complaint to the best of their ability.

At all relevant times, Melissa Meyers has been married to the city manager of Norton Shores.  Attorney Melissa Meyers is private actor who conspired with the Norton Shores Defendants to injure plaintiff under color of state law.

**ANSWER:   With respect to the first sentence of this paragraph, the Defendants admit that Attorney Meyers represented Ms. Averill in child custody proceedings against the Plaintiff. With respect to the second sentence of this paragraph, the Defendants deny the same as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. With respect to the third sentence in this paragraph, Defendants admit that Attorney Meyers is married to Mark Meyers, the city manager of Norton Shores. With respect to the fourth sentence of this paragraph, the Defendants deny the same as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. For further answer, Attorney Meyers was advocating for her client, Ms. Averill. At all times, Attorney Meyers, as well as Attorneys McLean and Baar, conducted themselves in accordance with the Michigan Rules of Professional Conduct and the Michigan Court Rules.**

5)   Mark Meyers has been employed as the Norton Shores city manager for many years. He is one of the highest city executives with substantial authority over employment determinations which impact Norton Shores Police officers. Mark Meyers is the husband of Melissa Meyers.

**ANSWER:      This first sentence of this paragraph does not apply to Defendants, and so Defendants are not with information or knowledge to respond. To the extent that the Court requires a response, the same is denied as untrue in the manner and form alleged. The second sentence of this paragraph also does not apply to Defendants, and so Defendants are not with information or knowledge to respond. To the extent that the Court requires a response, the same is denied as untrue in the manner and form alleged. With regard to the third sentence of this paragraph, Defendants admit that Mark Meyers is married to Attorney Meyers, a/k/a Melissa Meyers.**

6)   At all relevant times, Officer Michael Wassilewski was an officer of the Norton Shores Police Department and maintained a personal relationship with Melissa Meyers and Mark Meyers.

**ANSWER:      This first allegation set forth in this compound sentence regarding Officer Michael Wassilewski ("Officer Wassilewski") does not apply to Defendants, and so Defendants are not with information or knowledge to respond. To the extent that the Court requires a response, the same is denied as untrue in the manner and form alleged. Defendants deny as untrue the allegation that Attorney Meyers maintained a personal relationship with Officer Wassilewski. The remaining allegations set forth herein regarding Officer Wassilewski and Mark Meyers do not apply to the Defendants, and the Defendants are without information or knowledge to respond. To the extent that the Court requires a response, the same is denied as untrue in the manner and form alleged.**

7) At all relevant times, Sergeant Matthew Rhyndress was a supervisory police officer for the City of Norton Shores and maintained a personal relationship with Melissa Meyers and Mark Meyers. When Sergeant Rhyndress testified against plaintiff in October of 2013, he failed to disclose that Melissa Meyers was representing him in his own contentious divorce proceedings (which included a similar PPO request against the opposing party in that case).

**ANSWER: With regard to the allegations contained in the first sentence of this paragraph regarding Sergeant Matthew Rhyndress ("Sergeant Rhydress"), this allegation does not apply to Defendants, and the Defendants are not with information or knowledge to respond. To the extent that the Court requires a response, the same is denied as untrue in the manner and form alleged. Defendants furthermore deny as untrue the allegation that Attorney Meyers maintained a personal relationship with Sergeant Rhyndress. The remaining allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny as untrue the allegations in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

8) Daniel Shaw was the Chief of the Norton Shores Police department in on 7/20/13 when plaintiff was seeking assistance from the Norton Shores Police Department. He retired in November of 2014.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny as untrue the allegations in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

9) Jon Gale hired as the new chief in November of 2014 but has been employed in a supervisory capacity with the Norton Shores Police Department for many years.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny as untrue the allegations in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

10) At all relevant times, Gary Nelund was the Mayor of Norton Shores.  Mr. Nelund participated in the conspiracy at various points and did not take remedial action upon becoming aware of constitutional violations.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny as untrue the allegations in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

11) At all relevant times, Attorney Douglas Hughes was acting as corporate counsel for the City of Norton Shores. Attorney Hughes is a senior partner and executive decision-maker for his firm, Williams Hughes, PLLC.  The firm may be liable for some portion of damages.

4

**ANSWER:   These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

12) The City of Norton Shores is a Michigan municipality responsible for the proper training and discipline of the Norton Shores Police officers.  The misconduct alleged herein reflects customs and policies adopted or tacitly approved by the city government.  Plaintif also alleges that the highest ranking Norton Shores officials conspired together with private actors to retaliate against plaintiff.  Government resources, authority, and influence were used to further a conspiracy to retaliate and silence plaintiff.  Accordingly, the City of Norton Shores is liable for damages.

**ANSWER:   With regard to all five sentences in this paragraph, the allegations contained therein do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

13) At all relevant times F/LT Chris McIntire was employed as the commander of the Rockford Post for the Michigan State Police.  It appears that defendant McIntire acted in violation of MSP policy and without approval from any superior officer.  Unless evidence indicates otherwise, Lt. McIntire is sued only in his individual capacity.

**ANSWER:   With regard to all three sentences in this paragraph, the allegations contained therein do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

14) Attorney Michelle McLean substituted into plaintiff s custody proceedings in 2014. She was fully aware of an extensive body of evidence which contracted the false allegations against plaintiff.  In spite of this knowledge, Attorney McLean conspired with the other defendants to retaliate against plaintiff, abuse legal process and institute a baseless prosecution of criminel contempt proceedings against plaintiff. Attorney McLean was a partner with the firm "Bolhouse, Baar & Hofstee, P.C" out of Grandville, MI.  Attorney Melissa Meyers was hired into this firm at some point in 2014.

**ANSWER:   With regard to the first sentence in this paragraph, the Defendants admit that Attorney McLean appeared as legal counsel for Ms. Averill in the custody proceedings against Plaintiff. With regard to the second sentence of this paragraph, the Defendants deny this allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proof. With regard to the third sentence of this paragraph, the Defendants deny as untrue that Attorney McLean was a partner with the firm of Bolhouse, Baar, & Hofstee P.C (n/k/a Bolhouse, Hofstee & McLean PC) (the "Firm") at the times relevant in this complaint. Defendants admit that Attorney Meyers eventually was hired by the Firm sometime in the year 2014. It is denied as untrue that Attorney**

**Meyers, Attorney McLean, Attorney Baar, or any attorneys of the Firm conspired with officers or employees of Norton Shores, and these allegations are untrue.**

15) At all relevant times, Attorney Joel Baar was a senior and managing partner of Bolhouse, Baar & Hofstee, PC. Attorney Baar became involved in the prosecution of criminal contempt against plaintiff and participated in the conspiracy even after it became clear that the legal action was unwarranted and unjust. On information and belief, Joel Baar conspired with the Norton Shores defendants to pursue common goals.

**ANSWER:    With regard to the first sentence of this paragraph, the Defendants admit that Attorney Baar was a senior and managing partner of the Firm. Defendants deny all remaining allegations in this paragraph as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. It is denied as untrue that Attorney Meyers, Attorney McLean, Attorney Baar, or any attorneys of the Firm conspired with officers or employees of Norton Shores, and these allegations are untrue.**

16) At all relevant times, Bolhouse, Baar & Hofstee, P.C was a Michigan Law firm. The firm appeared in the PPO litigation against plaintiff and continued to pursue the litigation after it became clear that the claims against plaintiff were unwarranted. The firm is liable because the managing partner(s) in this firm approved and supported the actions alleged herein.

**ANSWER:    With regard to the first sentence of this paragraph, the Defendants admit that the Firm was/is a Michigan law firm, and further admit that the Firm appeared as counsel of record on behalf of Attorney Meyers (the petitioner) in Personal Protection Order ("PPO") proceedings against Plaintiff (the respondent). Defendants deny as untrue the remaining allegations in the manner and form alleged, and leave Plaintiff to his strictest proofs. It is denied as untrue that Attorney Meyers, Attorney McLean, Attorney Baar, or any attorneys of the Firm conspired with officers or employees of Norton Shores, and these allegations are untrue.**

17) This Honorable Court has jurisdiction because this case involves federal questions and violations of civil rights under 42 U.S.C. § 1983. Plaintiff requests that this court would exercise supplemental jurisdiction over the related state law claims.

**ANSWER:    Defendants admit that this Court has jurisdiction over federal claims and has discretion to exercise supplemental jurisdiction over state law claims. Defendants deny the legal and factual merit of the Plaintiff's federal claims; therefore, upon a finding that the Plaintiff's Complaint is without a meritorious federal claim, this Court no longer should retain subject matter jurisdiction.**

### Background Information:

18) In July of 2013, plaintiff, Daniel W. Rudd requested assistance from the Norton Shores Police Department.

**ANSWER:    These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a**

**response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

19) Along with several other credible witnesses, plaintiff offered substantial evidence indicating that his children were in danger due to a volatile domestic violence situation between the children's mother and her third husband (whom she had just left).

**ANSWER:      These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

20) Plaintiff, and members of the mother's immediate family expressed great concern that the mother had been behaving erratically for several days, had absconded with the children, and had hidden them away from plaintiff (their father) and all of her immediate family members.

**ANSWER:      These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

21) NSPD officers reviewed court orders regarding the mother's parenting time, confirmed the recent assaultive criminal history of the stepfather, verified the CPS substantiations for abuse and neglect in the mother's home, and reviewed the language of MCL 750.350a, which designated the mother's actions a felony. All objective and verifiable sources of information demanded prompt action.

**ANSWER:      These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

22) However, the department refused to conduct a criminal investigation, refused to properly question witnesses who could have identified the location of the children, and refused to enter a missing or endangered child report in the LEIN database.

**ANSWER:      These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

23) The NSPD refused to take reasonable steps which could have quickly diffused a dangerous and traumatic situation. They refused to conduct the investigation and complete a report which is required by MCL 764.l5c.

**ANSWER:      These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a**

**response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

24) By the following morning, the situation had grown more volatile. It also became apparent that the mother's attorney was helping the mother draft extortionate messages (demanding specific legal concessions before the children would be returned or even allowed to speak on the phone).

**ANSWER: The first sentence in this paragraph does not apply to the Defendants and the Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegation as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. With regard to the second sentence in this paragraph, the Defendants assume that the Plaintiff is referring to Attorney Meyers (i.e.-when he refers to "mother's attorney"). Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. For further answer, any communications between Attorney Meyers and Ms. Averill, made in the course of Attorney Meyers' representation of Ms. Averill, are protected by the attorney-client privilege.**

25) On 7/21/15, Plaintiff reported this to the Norton Shores Police Department, reiterated the risk factors and respectfully insisted that this was not just a "parenting time" squabble which could be ignored or addressed by a motion in family court.

**ANSWER:  These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

26) The Norton Shores Police Department ignored the evidence, refused to help and ultimately threatened plaintiff with an unwarranted arrest. These actions were retaliatory.

**ANSWER:    These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

a) Plaintif had persistently asked the Norton Shores Police Department to uphold the law and to discharge their statutory duties. This persistance was perceived as a challenge to the department's policy or custom of "not getting involved" when a custodial parent accuses the other custodial parent of a crime.

**ANSWER:    These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

b) Plaintif had accused a prominent attorney, Melissa Meyers, of intentionally placing innocent children in a dangerous situation for the purpose of illegal extorting a more favorable custody agreement. 3 of the officers involved had a personal relationship with the attorney. She was also the wife of the city manager (highest ranking Norton Shores executive).

**ANSWER:     The allegations in the first sentence does not apply to the Defendants and Defendants do not have knowledge or information sufficient to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. Defendants deny that Attorney Meyers had a personal relationship with three of the officers involved. Defendants admit that Attorney Meyers is married to Mark Meyers, the city manager of Norton Shores.**

27) Upon information and belief, Mark Meyers (city manager), Chief Daniel Shaw, and supervising officer Matthew Rhyndress conspired together to chill plaintiff's petitioning activity.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

28) Sergeant Rhyndress briefly detained plaintiff (without probable cause) and aggressively informed plaintiff that the Norton Shores Police Department would not be investigating anything or providing any assistance. When plaintiff sought an explanation, Sergeant Rhyndress threatened an unlawful arrest and issued a "trespass warning."

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

29) Because the Norton Shores Police Department refused to take appropriate action, the dangerous and stressful ordeal was unnecessarily extended until a different police agency intervened and eventually facilitated the safe return of the minor children.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

30) Attorney Melissa Meyers was able to continue her efforts to extort a more favorable custody agreement for several more hours, subjecting the children to greater risk.

**ANSWER:     Defendants deny this allegation as untrue  in the manner and form alleged, and leave Plaintiff to his strictest proofs. For further answer, Attorney Meyers denies**

**that she engaged in "efforts to extort a more favorable custody agreement" and that she personally subjected Plaintiff's children to "greater risk."**

31) Shortly thereafter, orders were entered restricting the mother's parenting time, however, the court process was overwhelmed and delayed by the barrage of false allegations stemming from the abusive PPO litigation brought by Melissa Meyers.

**ANSWER:      The allegation in the first part of this compound sentence do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. Defendants deny the allegations as untrue in the manner and form alleged as set forth in the second part of the compound sentence regarding the court process. Finally, Defendants deny the allegation as untrue that Attorney Meyers barraged the court with false allegations, and Defendants further deny as untrue that Attorney Meyers' personal protection order ("PPO") litigation was abusive. Judge Pittman, in the PPO proceedings, determined that sufficient evidence existed to warrant Attorney Meyers maintaining a PPO against Plaintiff, as a result of Plaintiff's conduct.**

## Norton Shores assists Melissa Meyers in abusive PPO litigation

32) From July-November of 2013, substantial NSPD resources were deployed to support the efforts of Melissa Meyers in alleging that plaintiff had been stalking and harassing her. She improperly obtained an ex parte PPO against plaintiff by fabricating claims and failing to notify plaintiff's counsel. Thereafter, the PPO litigation became valuable leverage for Melissa Meyers. This was especially true once the PPO case was inexplicably reassigned to Judge Pittman, a long-time resident of Norton Shores who was also presiding over plaintiff s custody proceedings.

**ANSWER:      This paragraph does not contain properly pled allegations of fact but contains improper subjective contentions to which no response is required. To the extent that the Court requires a response, and without waiving this objection: With regard to the first sentence in this paragraph, the Defendants state that the allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegation as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. With regard to the second sentence of this paragraph, the Defendants deny the allegation as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. Attorney Meyers obtained a personal protection order against Plaintiff which was signed by the Honorable Greg Pittman, a Circuit Court Judge sitting on the bench of the Muskegon Circuit Court. Attorney Meyers did not fabricate claims, and since the PPO was obtained on an ex-parte basis, Attorney Meyers was not under a duty to notify Plaintiff or Plaintiff's attorney. Attorney Meyers felt threatened, harassed, and in danger of imminent harm as a result of Plaintiff's behaviors. With regard to the third and fourth sentences of this paragraph, these allegations do not apply to the Defendants, and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the same as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

33) Officer Wassileski and officer Rhyndress falsified their reports by excluding all mention of the risk factors which had been credibly presented to the department. This was a deliberate effort to cover up the department's failure to comply with statutory requirements regarding complaints involving domestic violence. This also served to cover up the participation of their friend, Melissa Meyers, in a custodial abduction for the purpose of extorting a more favorable custody agreement.

**ANSWER:      With regard to all sentences set forth in this paragraph, these allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Defendants further deny that Attorney Meyers participated in a "custodial abduction" for the purpose of extorting a more favorable custody agreement" and Plaintiff is left to his strictest proofs.**

34) Officer Rhyndress created a "supplemental report" which fabricates critical details to support of the false narrative created by Melissa Meyers. For example, Sergeant Rhyndress claimed that plaintiff had announced his intention to use his vehicle to "block" people from leaving the Meyers home. This was completely false and contrary to any logical interpretation of the facts. The intent was to portray plaintiff as a dangerous vigilante. However, the documented actions of the NSPD officers demonstrates that they had ZERO concern that plaintiff actually posed any risk to anyone.

**ANSWER:      With regard to all sentences set forth in this paragraph, these allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Defendants deny as untrue that Attorney Meyers created a "false narrative" and state that it was the Plaintiff's conduct towards Attorney Meyers that created the factual basis upon which Judge Pittman determined that a PPO be issued against Plaintiff.**

35) Although department police requires a recording to be made whenever an officer interacts with a civilian, these recordings were destroyed, concealed, or otherwise made unavailable by the intention of the department.

**ANSWER:      These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

36) In October of 2013, Chief Daniel Shaw sent an email to a subordinate officer authorizing the disclosure of LEIN information to Mark Meyers for the sole purpose of assisting Melissa Meyers in her efforts to portray plaintiff as a dangerous stalker. It is important to note that on the morning of 7/21/13, the department was fully aware of plaintiff's location because plaintiff was pleading for their help and was following their instructions. During this period of time, NONE of the defendants expressed any concern that plaintiff might have a weapon in his vehicle. No one inquired about chis until months later when Mark Meyers was subpoenaed to testify regarding the PPO. Whatever the motive, it was illegal for Chief

Shaw to authorize the disclosure of ANY LEIN information to Mark Meyers.  (also, plaintiff did not have any weapons)

**ANSWER:      These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Defendants deny that Attorney Meyers engaged in efforts to portray Plaintiff as a dangerous stalker. Plaintiff's own conduct created a factual basis for Judge Pittman to issue a PPO against Plaintiff for the protection of Attorney Meyers.**

37) The department also destroyed, concealed or improperly withheld phone records which, along with the police recordings, would have clearly proven many of the claims made by Melissa Meyers to be false.  In spite of the fact that 4 Norton Shores employees (including top level executive and supervisory staff) were dedicating significant time to testify on this matter, the department mysteriously failed to preserve any of the records which would have objectively settled material disputes in the proceedings.

**ANSWER:      These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

38) In the weeks prior to the second PPO hearing (November 2013), Melissa Meyers indicated that she would be ending her involvement in plaintiff's child custody case and also filed motions urging the judge to refer the parties to an outside agency for a comprehensive resolution of the custody issues (instead of setting the matter for a custody trial).

**ANSWER:      Defendants deny these allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proofs. Any action taken in the child custody proceedings by Attorney Meyers was done at the direction of her client, Ms. Averill. Communications between Ms. Averill and Attorney Meyers were then, and remain, protected by the attorney-client privilege.**

39) On 11/26/15, the PPO hearing was cut short by Judge Pittman.  Acknowledging that the parties had not yet presented all their witness[es] (sic} Judge Pittman stated his intention to give both parties a little bit of what they needed:

**ANSWER:      These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

a) The PPO would remain in place for a few weeks while the contested motion for a custody evaluation was litigated. The judge emphasized his strong preference for resolving the custody issues through the referral proposed by Melissa Meyers, instead of setting the matter for trial as plaintiff's attorney had requested.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

    b) Judge Pittman specifically and repeatedly advised Melissa Meyers that the PPO would be terminated PRIOR to the original six-month term which had been set based upon the (false) allegations in an ex parte hearing.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Attorney Meyers specifically denies making any "false" allegations to obtain the PPO. Additionally, the Court speaks through its written orders, and no orders contain the terms or conditions as articulated by Plaintiff herein.**

    c) Judge Pittman instructed that this would be a prophylactic measure and that the order would be terminated early.  He instructed that the order should include wording which allowed him to terminate the PPO early (without conducting another hearing) after the upcoming custody hearings.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Additionally, the Court speaks through its written orders, and no orders contain the terms or conditions as articulated by Plaintiff herein.**

40) In spite of the substantial help which she received from the Norton Shores Police Department, Melissa Meyers did not establish by evidence that ANY of her false claims of stalking/harassment were true.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Attorney Meyers denies the allegation that she received "substantial help" from the Norton Shores Police Department and or that she made any "false claims." Attorney Meyers received services from the Norton Shores Police Department according to normal processes and procedures. Additionally, the Court ordered that the PPO remain in effect as long as Attorney Meyers continued to represent Ms. Averill in the custody proceedings.**

41) In December of 2013, the Norton Shores Police Department assisted Melissa Meyers in her efforts to initiate frivolous criminal contempt proceedings against plaintiff in December of 2013. This was simply intended to harass plaintiff and create leverage in the custody proceedings.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Attorney Meyers specifically denies the allegation that she instituted "frivolous contempt proceedings to harass plaintiff and create leverage in the custody proceedings." Plaintiff's inappropriate contact with Attorney Meyers warranted the PPO to remain in effect.**

42)   In January of 2014, Melissa Meyers sued plaintiff for costs/sanctions, claiming that plaintiff had offered perjured testimony and moved to terminate the PPO for the sole purpose of harassing Melissa Meyers.  This also was completely frivolous.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Attorney Meyers specifically denies engaging in any course of litigation that would have violated MCR 2.114.**

43)   The court rejected these claims (1/23/14) and found in plaintiff's favor:

> THE COURT: Well, I think by virtue of the decision that this Court reached, and whether you agree or not, that's certainly your prerogative, but by virtue of simply the idea that the term of the order was modified indicates that there was some arguable merit. That I made a decision based upon that merit to shorten the term of the PPO's existence... Mr. Rudd did receive some relief as he was seeking here. There was a modification.  Of course you have the right to disagree that I was correct in finding that merit, but I have not heard that argument."

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

44)   The exhaustive custody evaluation requested by Melissa Meyers took approximately six months to be completed. The evaluator conducted extensive collateral interviews, document review and psychological testing.  The findings unequivocally contradicted the false allegations which Melissa Meyers and her client had been manufacturing for years.

**ANSWER:     Defendants state that these allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Attorney Meyers specifically denies that she made or manufactured "false" allegations in the course of representing Ms. Averill.**

45)   The evaluator, who had been hand-picked by Melissa Meyers, specifically rejected the "stalking" narrative which Melissa Meyers had fabricated with the assistance of the Norton Shore Police Department.

There is plenty of evidence to warrant Daniel's concerns about child welfare, It isn't common in high conflict custody disputes such as this to have an overwhelming amount of evidence such as criminal records, CPS investigations, collateral reports, and text/email feeds to confirm and validate Daniel's concerns, This isn't a simple "he said, she said" case-Daniel presents copious and reliable data beyond his self-report, In fact, the psychological testing suggests that although he may have some emotional reactivity/ dramatization to data/facts, his self-report of factual information is reliable, He doesn't have a psychological profile suggestive of lying, deceiving, and manipulating information. (Randy Flood Report, 5/2014 p. 25).

We read in the news about children being abused and witness to violence in families where domestic violence, alcohol abuse, love triangles, and custody disputes exist. Sometimes the writing is on the wall, but often people will comment on how they didn't see it coming. Daniel is aware, smart, and analytical while also possessing deep love and care for his children. Although no severe or lethal violence has occurred in this case, the risk factors were present. (Randy Flood Report t. 5 /2014 p. 26).

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Attorney Meyers specifically denies that she fabricated any narratives. Upon information and belief, the evaluator Randy Flood ("Flood") did not "reject" any "narratives" about Plaintiff.**

46) At this point, even Melissa Meyers's client (the mother) indicated that the referral to the Fountain Hill Center had been a wakeup call. She testified that she now appreciated plaintiff's advocacy for the children, that he was great dad, and that he always prioritized the needs of the children.  Regarding the domestic violence issues which Melissa Meyers had adamantly denied for years, the mother conceded that:

I can see where Randy Flood would come to that conclusion because, you know, with [the stepfather] drinking. you know, his temper gets out of control sometimes. And that's why I am doing whatever it takes to make sure my boys are in a safe and stable environment. And I am willing to be done with [the stepfather] if he can't stick to this plan and put my boys first. (7/11/14, 27)

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proofs. Any action taken in the child custody matter by Attorney Meyers was done at the direction of Ms. Averill, and would have been taken pursuant to Ms. Averill's litigation strategy. Communications between Ms. Averill and Attorney Meyers were then, and remain, protected by the attorney-client privilege. Plaintiff is making broad generalizations which are untrue, and in order for plaintiff to even attempt to prove the veracity of his allegations, would require inquiry into attorney-client privileged communications.**

47) The mother advised the court that the stepfather had started an intensive outpatient substance abuse program and that he would pursue follow up care for the rest of his life. She also testified that she was aggressively pursuing the therapeutic objections regarding

her role in minimizing and covering up the issues which had compromised the welfare of her children.

> "I started back at counseling as soon as the report came out. I've been to see my counselor three or four times and he just recently referred me to a Dr. Dorothy Berg to help get through the recommendations that Randy Flood suggested."

**ANSWER:** These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.

48) The mother's new attorney, Michelle Mclean, elicited this testimony AND had full access to the extensive body of objective evidence regarding plaintiff's good faith efforts to appropriately advocate for his children. Attorney McLean did not challenge the extensive findings of the evaluator regarding plaintiff's exemplary conduct In fact, attorney Michelle McLean advised the court that "my coming into this case was in part because Ms. Meyers admitted she was a little too emotional. And I think the attorneys do have a lot of control. There's a lot of attorney control over our clients." (7/11/14)

**ANSWER:** These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Attorney McLean specifically denies that "extensive evidence" suggested that plaintiff's conduct was done in "good faith to appropriately advocate for his children." Any action taken in the child custody matter by Attorney McLean was done at the direction of Ms. Averill, and would have been taken pursuant to Ms. Averill's litigation strategy. Communications between Ms. Averill and Attorney McLean were then, and remain, protected by the attorney-client privilege. Plaintiff is making broad generalizations which are untrue, and in order for plaintiff to even attempt to prove the veracity of his allegations, would require inquiry into attorney-client privileged communications.

49) Plaintif was awarded sole legal and sole physical custody of his children. (Order Changing Custody 8/4/14). However, in spite of her numerous statements that she would no longer be involved in the case, Attorney Melissa Meyers continued to insert herself into the custody litigation-perpetually creating needless conflict and discouraging her client from making actual progress in her therapeutic objectives.

**ANSWER:** Defendants deny these allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proofs. Attorney Meyers's decision to continue on as Ms. Averill' attorney of record as not improper in any way. Communications between Ms. Averill and Attorney Meyers were then, and remain, protected by the attorney-client privilege. Attorney Meyers specifically denies perpetually creating needless conflict or "discouraging her client from making actual progress" with Ms. Averill's therapeutic objectives. Any action taken in the child custody matter by Attorney Meyers or Attorney McLean was done at the direction of Ms. Averill, and would have

been taken pursuant to Ms. Averill's litigation strategy. Communications between Ms. Averill and her attorneys were then, and remain, protected by the attorney-client privilege. Plaintiff is making broad generalizations which are untrue, and in order for plaintiff to even attempt to prove the veracity of his allegations, would require inquiry into attorney-client privileged communications.

### Plaintiff's 2015 Complaint to the Norton Shores Police Department

50) In 2015, a new police chief had assumed leadership of the Norton Shores Police Department (Jon Gale) and announced his efforts to build trust in the community through transparency and accountability.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

51) Since the court had made extensive findings exonerating plaintiff, and had already granted plaintiff sole custody of his children, plaintiff hoped that a new police chief would be able to objectively address the concerns regarding what had occurred under the previous chief in 2013.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

52) Plaintiff submitted an official complaint to Chief Gale on 7/20/2015. The complaint (attached as Exhibit A) details plaintiff s concerns regarding the department's violations of plaintiff's constitutional rights, failure to enforce the law, and retaliatory actions in 2013. Plaintiff incorporates Exhibit A into this complaint.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. With regard to the any allegations contained in plaintiff's "official complaint to Chief Gale on 7/20/2015" (which Plaintiff "incorporated" into his complaint), the Defendants object to the form of this allegation as it fails to comply with the Rule 10 (b) of the Fed. Rules of Civ Procedure. Without waiving this objection, the Defendants state that they do not have knowledge or information sufficient to respond to allegations contained in the Plaintiff's "official complaint to Chief Gale." To the extent that the Court requires a response, the same is denied as untrue in the manner and form alleged, and Plaintiff is left to his strictest proofs.**

53) Chief Gale met with plaintiff in his office for approximately an hour and fifteen minutes on 7/23/15 to discuss the complaint.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

   a) During the course of this meeting, plaintiff described numerous ways that Chief Gale could objectively verify the truth of plaintiff's claims regarding what had occurred. Plaintiff emphasized his willingness to provide additional documentary evidence and subject to himself to any type of scrutiny.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

   b) Chief Gale thanked plaintiff for coming forward with these concerns and repeatedly emphasized his awareness that abusive litigation tactics in family court can be devastating. Chief Gale went out of his way relate that his own best friend had recently been made the target of scheme to obtain a fraudulent PPO against him for ulterior purposes. Chief Gale indicated that the PPO had been obtained through false testimony with devastating consequences for his friend. Chief Gale believed that his friend would probably lose "everything."

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

   c) Although Chief Gale did make statements which minimized some of plaintiff's concerns, Chief Gale did not express any specific doubts about the credibility of the facts presented by plaintiff.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

   d) Chief Gale assured plaintiff that he would conduct a fair and thorough investigation of any internal policy violations by NSPD officers who were still employed by the city.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

   e) Regarding the portions of plaintiff's complaint which alleged criminal acts (i.e. destruction/concealment of evidence, unauthorized disclosure of LEIN information

for the PPO litigation, cover-ups, extortion, etc..) Chief Gale advised that these matters would need to be independently investigated by someone from the Michigan State Police who did not "know anybody" from the Norton Shores Police Department. Chief Gale offered to make these arrangements to ensure that it would be performed objectively.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

## Another Round of Retaliation Against Plaintiff:

54) However, Chief Gale's representations during this meeting were false. Chief Gale did not conduct an objective internal investigation and he did not arrange for an independent outside investigation with the Michigan State Police.  At the time of this meeting 7/23/15, Chief Gale had already begun collaborating with Mark Meyers, Melissa Meyers, Mayor Gary Nelund, and the other Norton Shores defendants to prevent plaintiff from seeking or obtaining relief in state or federal court.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Attorney Meyers specifically objects to the allegation that she "had begun collaborating" with Mark Meyers, Mayor Gary Nelund, or any other Norton Shores defendants. At no time was Plaintiff ever prevented by the Defendants from "seeking or obtaining relief in state or federal court."**

55) Although Chief Gale's sworn affidavit (Exhibit B) describes a long-standing policy of keeping citizen complaints strictly confidential (to prevent a chilling effect upon complainants) Chief Gale immediately circulated copies of plaintiff's 7/20/15 complaint among the civilians which plaintiff had named as the primary conspirators (Mark Meyers, Melissa Meyers & Daniel Shaw). Chief Gale did before taking any steps to objectively investigate the claims offered by plaintiff. This precluded any opportunity for a meaningful investigation to occur.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

56) Also contrary to his representations, Chief Gale did not ever seek a referral for an independent investigation by the Michigan State Police.  Instead, he arranged for a trusted colleague (F/Lt. Chris McIntire) to contact plaintiff and go through the motions of "investigating" the complaint without any documentation or scrutiny.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

57) Immediately after receiving it, Chief Gale provided Mark and Melissa Meyers with plaintiff's complaint, Melissa Meyers began conspiring with her client (non-custodial mother) to engineer a "PPO violation" by plaintiff.  An ambush was planned for a soccer tournament where plaintiff would be coaching his children's team.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proofs. For further answer, communications between Ms. Averill and Attorney Meyers were then, and remain, protected by the attorney-client privilege. Attorney Meyers specifically denies "conspiring" with Ms. Averill to "engineer a PPO violation by plaintiff." Communications between Ms. Averill and her attorneys were then, and remain, protected by the attorney-client privilege. Plaintiff is making broad generalizations which are untrue, and in order for plaintiff to even attempt to prove the veracity of his allegations, would require inquiry into attorney-client privileged communications.**

58) Although plaintiff never saw Melissa Meyers or any of her family members at this crowded tournament and never had any credible reason to believe that Melissa Meyers was present, Melissa Meyers claimed that plaintiff's presence at the tournament constituted deliberate "unconsented contact" and the basis for a fresh batch of hysterical allegations against plaintiff.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. For further answer, the "crowded tournament" was a youth soccer tournament for a Muskegon-area youth soccer league. Attorney Meyers children participate with this particular Muskegon-area soccer league. Plaintiff, for reasons unknown, enrolled his minor children in the same Muskegon-area league where Attorney Meyers had enrolled her children, even though he could have enrolled his children in the Spring Lake based league. Thus, Plaintiff had a reasonable believe that Plaintiff knew or should have known that she and her children would be at the soccer tournament. Plaintiff indeed appeared at the soccer tournament, despite the existence of the PPO. Attorney Meyers felt threatened and feared for her safety and the safety of her children and acted accordingly in requesting the Muskegon County Circuit Court to find that Plaintiff had violated the terms of the PPO.**

59) On 7/28/15, Melissa Meyers contacted plaintiff's attorney and alleged a criminal violation of the PPO (which had expired approximately 18 months prior).

"Upon seeing Mr. Rudd, Mr. Rudd was immediately informed of my presence and that of my family. However, rather than leaving in compliance with the PPO, Mr. Rudd chose to stay."

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proofs. The PPO was in full force and effect at the time of the soccer tournament, and Plaintiff's actions in remaining at the tournament despite being informed of Attorney Meyers' and her children's presence amounted to a violation of the terms of the PPO.**

60) This claim was absolutely baseless in every way. Among other inconsistencies, Melissa Meyers has never provided any explanation for why she did not contact plaintiff's lawyer before the tournament and work out a solution.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proofs. The PPO was in full force and effect at the time of the soccer tournament, and plaintiff's actions in remaining at the tournament despite being informed of Attorney Meyers' and her children's presence amounted to a violation of the terms of the PPO. Attorney Meyers was not under any duty whatsoever to contact plaintiff's lawyer before the tournament and work out a solution."**

61) The e-mail conveyed that Melissa Meyers and her client intended to create a similar situation at any future soccer events where there "is even a remote possibility" of Attorney Meyers being present.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proofs. As long as the PPO remained in effect, plaintiff had a duty to comply with it. Since plaintiff knew or should have known that Attorney Meyers' children participated in the Muskegon-area soccer league, plaintiff should have not attended future soccer tournaments if there was any possibility that he would run into Attorney Meyers or her children, which would be a violation of the PPO.**

62) The e-mail also emphasizes the possibility that Melissa Meyers may have to put plaintiff s children "through the trauma of police interaction because Mr. Rudd is non-compliant with the PPO."

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proofs. As long as the PPO remained in effect, plaintiff had a duty to comply with it. Since plaintiff knew or should have known that Attorney Meyers' children participated in the Muskegon-area soccer league, plaintiff should have not attended future soccer tournaments if there was any possibility that he would run into Attorney Meyers or her children, which would be a violation of the PPO.**

63) Melissa Meyers arranged for her client to also send plaintiff messages threatening Norton Shores Police action at the children's soccer events.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proofs. As long as the PPO remained in effect, plaintiff had a duty to comply with it. Since plaintiff knew or should have known that Attorney Meyers' children participated in the Muskegon-area soccer league, plaintiff should have not attended future soccer tournaments if there was any possibility that he would run into Attorney Meyers or her children, which would be a violation of the PPO.**

64) Although she claims that plaintiff is violating a PPO, Melissa Meyers also indicated that she had been advised (via Chief Gale) that her 2013 ex parte PPO had expired and been removed from the LEIN database a long time ago.

**ANSWER:      Defendants deny these allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proofs. For further answer, the PPO remained in full force and effect, and the plaintiff had a duty to comply with its terms. The PPO was never correctly entered into LIEN by the Court clerk, and so Attorney Meyers sought to have this oversight corrected. MCL 600.2950(15)(a),(16), (17). (19)(a), (19)(b), and (20).**

65) The 7/28/15 e-mail attempts to remedy this issue by demanding that plaintiff agree to stipulated entry of a court order authorizing the Norton Shores Police Department to enter a non-expiring Stalking/FPO record into the LEIN database against plaintiff.

**ANSWER:      Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. The PPO remained in full force and effect, and the Plaintiff had a duty to comply with its terms. Attorney Meyers learned that the Muskegon County Circuit Court had failed to enter the PPO in the LIEN database, and so Attorney Meyers requested that the Court correct this oversight. MCL 600.2950(15)(a),(16), (17). (19)(a), (19)(b), and (20).**

66) The message repeatedly conveys that Melissa Meyers is primarily motivated by the fact that plaintiff had complained to the Norton Shores Police Department on 7/20/15:

"Mr. Rudd has recently brought up issues from the past involving the events surrounding the issuance of my PPO against Mr. Rudd. He has made false, defamatory comments again about myself and my husband in a clear attempt to get my husband, the former police chief and Norton Shores Police Department into some sort trouble. In doing so he has renewed my concerns about his behavior and intent with regard to myself, my children and my husband."

**ANSWER:      Defendants deny these allegation as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. The PPO remained in full force and effect, and the Plaintiff had a duty to comply with its terms. Attorney Meyers learned that the Muskegon County Circuit Court had failed to enter the PPO in the Law Enforcement Information Network ("LIEN"), and so Attorney Meyers requested that the Court correct this error. Plaintiff's behaviors towards Attorney Meyers appear to be in retaliation for Attorney Meyers having represented Plaintiff's ex-wife, Ms. Averill. Plaintiff sued Ms. Averill's subsequent attorney as well, and Plaintiff's behavior appears to be an attempt to stifle Ms. Averill's ability to secure legal counsel in the Circuit Court's custody proceedings.**

67) The message is clear: Plaintiff must drop his complaint with the NSPD or risk an arrest every time he brings his children to a soccer event in Norton Shores.
"...I certainly do not want my family subjected to police involvement, however, if we do not figure out some sort of solution immediately, I am afraid that is exactly what will occur."

**ANSWER:      Defendants deny these allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proofs. The Muskegon County Circuit Court determined that a valid reason remained for the continuance of the PPO against plaintiff (as respondent). Thus, plaintiff had a duty to comply with the terms of the PPO; and Attorney Meyers had a legal right to demand plaintiff's compliance with the terms of the**

**PPO.**

68)  Plaintiff reported this extortion attempt to Chief Gale.  Chief Gale relayed that information to Melissa Meyers.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proofs. The Muskegon County Circuit Court determined that a valid reason remained for the continuance of the PPO against plaintiff (as respondent). Thus, plaintiff had a duty to comply with the terms of the PPO; and Attorney Meyers had a legal right to demand plaintiff's compliance with the terms of the PPO.**

69)  On 7/30/15, Melissa Meyers responded with another message to plaintiff's attorney regarding plaintiff s failure to comply with her demands.  This message also concludes with an ominous threat:

"Additionally, I will be taking any/all necessary steps to ensure Mr. Rudd's compliance."

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proofs. The Muskegon County Circuit Court determined that a valid reason remained for the continuance of the PPO against plaintiff (as respondent). Thus, plaintiff had a duty to comply with the terms of the PPO; and Attorney Meyers had a legal right to demand plaintiff's compliance with the terms of the PPO.**

70)  Melissa Meyers then began conspiring with attorney Michelle McLean to fraudulently obtain a court order authorizing the Norton Shores Police Department to enter a Stalking/PPO record into the LEIN database.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proofs. The Muskegon County Circuit Court determined that a valid reason remained for the continuance of the PPO against plaintiff (as respondent). Thus, plaintiff had a duty to comply with the terms of the PPO; and Attorney Meyers had a legal right to demand plaintiff's compliance with the terms of the PPO.**

71)  On or about 8/2/15, Attorney Michelle McLean filed a motion on behalf of Melissa Meyers, claiming that a "clerical error" had occurred which needed to be corrected by the court. Under this pretense, she supplied the judge with a prepared order and requested that he sign it immediately and without a hearing.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. The Muskegon County Circuit Court determined that a valid reason remained for the continuance of the PPO against Plaintiff (as respondent). A PPO is effective and immediately enforceable upon the judge's signature, regardless if the PPO is entered into LIEN. MCL 600.2950(9),(12),(18), .2950a(9),(12), (18).**

72) This was a fraudulent scheme to manipulate the courts and deprive plaintiff of any semblance of due process.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. The Muskegon County Circuit Court determined that a valid reason remained for the continuance of the PPO against Plaintiff (as respondent), and Plaintiff had notice and an opportunity to be heard in those PPO proceedings pursuant to MCL 600.2950(13) A PPO is effective and immediately enforceable upon the judge's signature, regardless if the PPO is entered into LIEN. MCL 600.2950(9),(12),(18), .2950a(9),(12), (18).**

73) Plaintiff's attorney filed a response on 8/5/2015 citing specific rulings in the record which clearly contradicted Attorney Mclean's suggestion that the court intended to expand the duration of the 6 month ex parte PPO which Melissa Meyers had been granted in July of 2013. Plaintiff's attorney requested sanctions and scheduled a hearing.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

74) On 8/12/2015, Attorney Mclean filed another motion asking Judge Pittman to authorize LEIN entry by the NSPD (without conducting a hearing or making any of the necessary findings to justify a stalking/ppo). This motion alleged that plaintiff had committed several acts of felony aggravated stalking and violated the 2013 PPO <u>by submitting his complaint to the Norton Shores Police Department</u>:

> On <u>Monday Jul v 20, 2015</u>, Respondent began engaging in a willful course and pattern of conduct directed toward and involving Petitioner and her family that defined by MCR 750.411(h) (sic) constitutes harassment which caused and continues to cause Petitioner and her family to feel harassed, embarrassed, threatened and emotionally distressed as follows:

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. The Muskegon County Circuit Court determined that a valid reason remained for the continuance of the PPO against plaintiff (as respondent), and plaintiff had notice and an opportunity to be heard in those PPO proceedings pursuant to MCL 600.2950(13) A PPO is effective and immediately enforceable upon the judge's signature, regardless if the PPO is entered into LIEN. MCL 600.2950(9),(12),(18), .2950a(9),(12), (18).**

75) The motion then proceeds to list several pages of excerpts from plaintiff's 7/20/15 written complaint--along with quotations from a recording of the meeting with Chief Gale on 7/23/15. Without any support, the motion alleges that plaintiff was repeatedly advised that his complaints had been fully investigated and found to be false. However, if this was the case, the Norton Shores Police Department should have charged plaintiff with falsely reporting a felony.

**ANSWER:    Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

76) Chief Gale, Attorney McLean, Attorney Meyers, and the NSPD LEIN operator where all fully aware of the statutory requirements for entering a stalking/ppo record into the LEIN database. That is why defendants Mclean and Meyers submitted a petition to Judge Pittman asking for such an order to be entered.

**ANSWER:    Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

77) Both of Michelle McLean's motions provided a proposed order which included the required components. They requested that Judge Pittman would immediately enter the order because this was the only way that such an entry could be permitted.

**ANSWER:    Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

78) However, the department decided to bypass this due process protection shortly after plaintiff submitted a FOIA request to the Norton Shores Police Department seeking documents which pertained to his 7/20/15 complaint. (8/25/15).

**ANSWER:    These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

79) A few days later (8/28/15), the Norton Shore Police Department decided to enter the stalking/FPO record into the LEIN database without a valid court order.

**ANSWER:    These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

80) Attorney McLean then contacted plaintiff s lawyer and requested that the 9/8/15 hearing regarding the PPO would be cancelled because Melissa Meyers was withdrawing her request. Attorney Mclean knew, but did not disclose that the Norton Shores Police Department had circumvented the courts and entered a stalking/PPO order against plaintiff already.

**ANSWER:    Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

81)   Plaintiff did not learn about the LEIN entry until 9/10/15 when he received an automated letter from the Michigan State Police. The letter advised that a recent disposition/order the 14th Circuit Court had resulted in the entry of a "Stalking/PPO" against plaintiff.

**ANSWER:    These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

82)   Plaintiff immediately contacted the Norton Shores Police Department advising that the 14th Circuit Court Circuit Court had certainly <u>not</u> authorized the entry of such an order in spite of numerous requests. Plaintiff explained the circumstances and was assured that these concerns would be immediately reviewed by Chief Gale.

**ANSWER:    These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

83)   Chief Gale did not take any corrective action.  Attorney Melissa Meyers and Attorney Michelle Mclean continued to use the fraudulent Stalking/PPO as a leverage in plaintiff s custody proceedings AND as a vehicle to intimidate plaintiff from bringing an action against the City of Norton Shores in federal court.

**ANSWER:    The first allegation this paragraph does not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Defendants deny the remaining allegations regarding Attorney Meyers and Attorney McLean as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

### Plaintiff seeks declaratory relief--Defendants retaliate:

84)   On 10/20/2015, plaintiff filed a motion in the circuit court seeking a declaratory ruling regarding unauthorized entry of a stalking/PPO record in the LEIN database and the false allegations of harassment, criminal contempt and aggravated stalking. Plaintiff obtained a hearing date and served notice.

**ANSWER:    These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

85)   Attorney Mclean responded with several frivolous filings, totaling around 145 pages with exhibits. The pleadings were comprised of approximately 46 pages (single spaced) primarily rehashing the same in more dramatic form. Once again, plaintiff's complaint to the Norton Shores Police Department was a central theme.

**ANSWER:    Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

86) Attorney McLean asked the court to initiate criminal contempt proceedings against plaintiff, seeking 30 days of incarceration and around $5000 in fines and costs.

**ANSWER:    Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. For further answer, Attorney McLean, on behalf of her client, Attorney Meyers, sought Plaintiff's strict compliance with the PPO. Refusal to comply with a PPO is subject to criminal contempt powers of the court. MCL 600.2950(23), see also MCR 3.708 (procedure for contempt proceedings for violation of a PPO).**

87) Attorney McLean's sworn affidavit falsely claimed that she could offer competent testimony regarding her first-hand knowledge that plaintiff had willfully violated the courts orders and the aggravated stalking statute (a felony). In addition to providing more leverage against plaintiff, Attorney McLean scheduled her contempt hearing on top of the hearing which plaintiff had scheduled for declaratory relief.

**ANSWER:    Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. For further answer, Attorney McLean, on behalf of her client, Attorney Meyers, filed a sworn affidavit with the knowledge that her client, Attorney Meyers, would testify based on her first-hand personal knowledge that Plaintiff had willfully violated the Court's orders. Attorney McLean, on behalf of her client, Attorney Meyers, sought Plaintiff's strict compliance with the PPO. Refusal to comply with a PPO is subject to criminal contempt powers of the court. MCL 600.2950(23), see also MCR 3.708 (procedure for contempt proceedings for violation of a PPO). Plaintiff engaged in a series of two or more separate, non-continuous acts of unconsented contact as defined by MCL 750.411h (1)(e), which evidenced his continuity of purpose and which Plaintiff knew or should have known would cause a reasonable person emotional distress, feel harassed, terrorized, frightened, intimidated, threatened, and or be molested and which actually caused a reasonable person to suffer emotional distress, feel harassed, terrorized, frightened, intimidated, threatened, and or molested.**

### Norton Shores ALSO will "take whatever action is legally necessary"

88) Plaintiff received Judge Pittman's order authorized criminal contempt proceedings on 11/5/15. On the same day, Attorney Douglas Hughes and his staff began sending plaintiff numerous copies of a threatening letter (emphasis added):

RE: Mark Meyers

Dear Mr. Rudd

This office represents the City of Norton Shores. **Their Mayor has asked us to monitor your conduct and behavior as it relates to the employment of Mark Meyers** as the City Administrator for the City of Norton Shores.

We have information that leads us to believe that you have made serious defamatory and disparaging remarks about Mr. Meyers, as well as other members of the Norton

Shores Police Department. **Please treat this letter as notice to you that we will take whatever action is legally necessary to protect the professional and privacy rights of Mr. Meyers**.

You are to cease and desist from any further contact or conversation with him. Also be mindful that the statements you make to others about Mr. Meyers. [sic] If you have had hired legal counsel, please make a copy of this letter and give it to that individual and instruct him to contact me.

Sincerely, Douglas M. Hughes, City Attorney for the City of Norton Shores

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

89) After receiving a third copy of the letter on 11/7/15, plaintiff responded to Mr. Hughes, advising that he (plaintiff) had not ever had contact with or conversation with Mark Meyers. With that being the case, plaintiff advised that the misinformed and vague statements in the letter were coming across as intimidating.

**ANSWER:     These as do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

90) Plaintiff indicated that he did not consent to further communication unless Attorney Hughes could send something more productive or helpful in articulating what it was he wanted.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

91) Mr. Hughes responded by promptly sending another vague and ominous message:

---

Doug Hughes <doughughes@wlliamshugheslaw.com>                    Sat, Nov 7, 2015 at 9:20
To: Daniel Rudd <daniel@stock20.com>

Good. Stay away from the Meyer's and we will get along just fine. Take care.

*Sent from my Verizon Wireless 4G LTE DROID*

---

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

92) Doug Hughes sent the above response to plaintiff at 9:20pm on a Saturday night (11/7/15). Doug Hughes proceeded to <u>immediately</u> forward Chief Gale a copy of the message

indicating plaintiff (Daniel Rudd) felt intimidated.  Commenting on plaintiff's  message Doug Hughes wrote to Chief Gale(9:23pm  11/7/15):

"Check this out. I will share w mark tomorrow. I told Daniel, good, stay away from The Meyer's and he and will get along just fine." (sic)

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

## Attorney McLean & Attorney Baar seek a "global resolution"

93) Two days later (11/9/2015), plaintiff met with Attorney Michelle McLean and Attorney Joel Baar, managing partner of Bolhouse, Baar & Hofstee, P.C.; Attorney Baar had requested a meeting just prior to the contempt hearing for the purpose of reaching a "global resolution on all issues in the case."

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. For further answer, Attorney McLean and Attorney Baar, in the course of representing their clients, Ms. Averill and Attorney Meyers, were engaging in settlement discussions on Ms. Averill's and Attorney Meyers' behalves. The goal was to resolve the disputes involving Plaintiff in both matters: the custody proceedings against Ms. Averill and the personal protection order proceedings against Attorney Meyers, i.e.-a "global resolution."**

94) Attorneys Baar and McLean repeatedly indicated that plaintiff could avoid incarceration by agreeing that he would no longer engage in "conduct" which was "concerning" to Melissa Meyers and Mark Meyers-specifically referring to plaintiff s 7/20/15 complaint and corresponding FOIA requests.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. Plaintiff has been repeatedly abusing the legal process to harass and annoy Attorney Meyers, and Plaintiff has targeted Attorney Meyers' husband to further victimize Attorney Meyers. This lawsuit is an example of Plaintiff's conduct as Plaintiff is now targeting Attorney Meyers, her employer (the Firm), and the persons who Plaintiff believed were partners of the Firm, Attorney McLean and Attorney Baar.**

95) Mr. Baar specifically stated that they were looking for an agreement that plaintiff would not take "any action" against Mark Meyers or Melissa Meyers.  Attorney Mclean specifically asked plaintiff if he was willing to "stop going to the city."

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave plaintiff to his strictest proofs. Plaintiff has been repeatedly abusing the legal process to harass and annoy Attorney Meyers, and Plaintiff has targeted Attorney Meyers' husband to further victimize Attorney Meyers. This lawsuit is an**

**example of Plaintiff's conduct as Plaintiff is now targeting Attorney Meyers, her employer (the Firm), and the persons who Plaintiff believed were partners of the Firm, Attorney McLean and Attorney Baar.**

96) Plaintiff indicated that attorney Mclean had certainly misconstrued plaintiff's actions in submitting a complaint to Norton Shores, but advised that nothing related to that complaint had anything to do with violations of the ex parte PPO which had been obtained by Melissa Meyers in July of 2013.

**ANSWER:    These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

97) Attorneys Mclean and Baar disagreed and advised that Police Chief Jon Gale, First Lieutenant Chris McIntire (Michigan State Police), Attorney Doug Hughes and city manager Mark Meyers were outside in the hall and prepared to testify that plaintiff had been engaging in very concerning behavior. These attorneys knew that their false allegations could damage plaintiff s credibility before Judge Pittman, who also presided over plaintiff's custody case.

**ANSWER:    Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs. For further answer, Attorney McLean and Attorney Baar, on behalf of their client, Attorney Meyers, subpoenaed witnesses to testify at the hearing before the Muskegon County Circuit Court.**

98) Attorney McLean specifically stated that since Judge Pittman had authorized criminal contempt "this could turn into an arraignment today."

**ANSWER:    Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

99) Attorney Baar made several references to Judge Pittman's reputation for unpredictable and hasty rulings (i.e. "who knows what Pittman will do?").

**ANSWER:    Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

100) Throughout the meeting, attorneys Baar and Mclean repeatedly attempted to coerce plaintiff into dropping any complaints against the city of Norton Shores. Plaintiff ultimately advised Joel Barr and Michelle Mclean that this was completely inappropriate. No agreements were reached.

**ANSWER:    Defendants deny the first sentence in this paragraph in the manner and form alleged, and leave plaintiff to his strictest proofs. The second sentence in this paragraph does not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants**

deny the allegation as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Defendants admit that Plaintiff refused to reach a compromise and settle the disputed issues between himself and Ms. Averill and Attorney Meyers.

## Dramatic Norton Shores presence at the contempt hearing:

101)   Attorney Doug Hughes, Chief Gale, city Manager Mark Meyers, and Lt. Christ McIntire all appeared at the hearing.  Their presence alone sent a strong message to plaintiff, confirming their unified commitment to damage, intimidate, and silence plaintiff:
"I will be taking **any/all necessary steps to ensure Mr Rudd's compliance.**"
(Melissa Meyers, 7/30/15 e-mail)

We have information that leads us to believe that you have made serious defamatory and disparaging remarks about Mr. Meyers, as well as other members of the Norton Shores Police Department. Please treat this letter as notice to you that **we will take whatever action is legally necessary to protect the professional and privacy rights of Mr. Meyers.**   (Attorney Dough Hughes, 11/5/15 letter)

**ANSWER:     These as do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Plaintiff has been repeatedly abusing the legal process to harass and annoy Attorney Meyers, and Plaintiff has targeted Attorney Meyers' husband to further victimize Attorney Meyers. This lawsuit is an example of Plaintiff's conduct as Plaintiff is now targeting Attorney Meyers, her employer (the Firm), and the persons who Plaintiff believed were partners of the Firm, Attorney McLean and Attorney Baar.**

102)   Attorney McLean's claims were immediately found meritless by Judge Pittman, however the dramatic show of force from high ranking Norton Shores officials predictably caught Judge Pittman's attention. The record indicates that the meritless criminal prosecution would have been dismissed on that day if it had not been for the veneer of credibility provided by these influential witnesses.  These actions also furthered several objectives of the conspiracy:

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged, and leave Plaintiff to his strictest proofs.**

a)   Plaintiff was intimidated. A person of ordinary firmness would certainly been chilled from engaging in any more petitioning activity.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

b) Plaintiff, who had scheduled the hearing, was deprived of any opportunity to be heard, or to make a record regarding what had occurred.

**ANSWER:      These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Upon information and belief, the hearing was adjourned and set to be re-noticed by Judge Pittman because the Court did not have sufficient time allocated on its docket to conduct a full evidentiary hearing.**

c) The adjournment allowed the defendant to maintain their leverage through a continuous threat of an unjustified arrest.

**ANSWER:      These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Upon information and belief, the hearing was adjourned and set to be re-noticed by Judge Pittman because the Court did not have sufficient time allocated on its docket to conduct a full evidentiary hearing.**

d) Contrary to the court rules, Judge Pittman ordered the parties to mediate the dispute.  This was exactly what Melissa Meyers, Joel Baar, and the Norton Shores Defendants needed in order to continue their efforts to silence plaintiff.

**ANSWER:      Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. Upon information and belief, the hearing was adjourned and set to be re-noticed by Judge Pittman because the Court did not have sufficient time allocated on its docket to conduct a full evidentiary hearing.**

103) Shortly after this hearing, Melissa Meyers was replaced by a new lawyer in the custody proceedings. This eliminated the only remaining pretense for maintaining these actions against plaintiff. However, with the approval of managing partners, Bolhouse, Baar & Hofstee continued in their efforts to keep this abusive litigation alive. The ulterior purpose behind these efforts is plainly evident in written correspondence between plaintiff and the firm.

**ANSWER:      Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

104) The malicious prosecution and abusive litigation was maintained until Judge Pittman dismissed all charges with prejudice.  Even at this point, attorney McLean attempted to keep the criminal contempt prosecution alive, so that plaintiff would be required to mediate.

**ANSWER:      Defendants deny these allegations as untrue in the manner and form**

**alleged and leave Plaintiff to his strictest proofs.**

105)   At plaintiff's request, the court also entered an order directing the Norton Shore Police Department to "immediately" remove the stalking/ppo record from the LEIN database.

**ANSWER:   Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

## Summary of Constitutional Violations:

106)   Throughout the course of these events, plaintiff had a constitutional right to petition the government for help, to insist upon equal protection under the law, to seek redress for grievances, and to challenge the customs and policies of the Norton Shores Police Department.  Plaintiff had the right to persistently engage in these protected activities without fear of retaliation.

**ANSWER:   These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

107)   Plaintiff had a right to bring good-faith complaints of criminal activity to the Norton Shores Police Department even if those allegations were directed at prominent and connected members of the Norton Shores community.

**ANSWER:   These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

108)   If Plaintiff's complaints of criminal activity, or plaintiff's requests for police intervention were not brought in good faith, the department should have sought charges with the prosecutor for submitting false reports. Instead the Norton Shores defendants conspired with the private actors to launch a subversive collateral assault on plaintiff's ability to protect his children in family court and protect his constitutional rights in federal court proceedings.

**ANSWER:   These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

[This part of page left intentionally blank].

## COUNT 1. VIOLATION OF 42 U.S.C. 1983: CONSPIRACY
### (Denial of Access to State & Federal Court Remedies)

109) Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 108 above.

**ANSWER: Defendants hereby reincorporate their above responses by reference to paragraphs 1 through 108.**

110) The actions of all defendants, as described herein, demonstrated a deliberate and continued course of concerted effort to prevent plaintiff from pursuing any claims against Mark Meyers, Melissa Meyers, and the city of Norton Shores.

**ANSWER: Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

111) The conspiracy initially targeted the relief in plaintiff sought through the Muskegon County Family Court including but not limited to:

**ANSWER: Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

 a) Relief under the parental kidnapping statute, which includes protective orders and indemnification of losses resulting from the custodial abduction.

**ANSWER: Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

 b) A prompt resolution of the pending custody suit, wherein the Guardian Ad Litem had already recommended that plaintiff receive sole custody of the children.

**ANSWER: Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

 c) Sanctions and contempt proceedings against Melissa Meyers for encouraging her client to violate court orders and subject the children to risk of harm.

**ANSWER: Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

112) The conspiracy served to render these remedies ineffective and/or overwhelm the court to prevent a proper and timely adjudication of the disputes. If it weren't for the actions of defendants, these state law matters would have been resolved much more quickly, with less suffering and with less expense.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

113)    Another object of the conspiracy was to prevent any civil litigation or criminal investigations pertaining to Melissa Meyer's participation in her client's parental kidnapping, her assistance in drafting extortionate messages, and any efforts to obstruct law enforcement agencies by providing false information.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

114)    When plaintiff alleged that Norton Shores officers had had participated in these violations, common objectives began to emerge between the state actors (Norton Shores Defendants) and the private actors.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

115)    At all relevant times, all of the defendants knew, or should have known that plaintiff was acting in good faith and in full alignment with the state's interest in protecting vulnerable children. Knowing this, all defendants participated in various portions of the scheme to violate plaintiff s civil rights and silence plaintiff through various abuses under color of state law.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

116)    This count is alleged against all defendants.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

## COUNT 2.  VIOLATION OF 42 U.S.C. 1983

### (1st Amendment Retaliation)

117)    Plaintiff hereby realleges and incorporates by reference paragraphs 1-116.

**ANSWER:     Defendants hereby reincorporate their above responses by reference to paragraphs 1 through 116.**

118)    All defendants participated in the conspiracy to retaliate against plaintiff with the adverse actions described in this complaint. These actions were motivated, at least in part, by plaintiff's persistent efforts to seek assistance and the redress of grievances by the government.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

119)   Plaintiff brings this count against all defendants by way of retaliatory acts or participation in the conspiracy to retaliate against plaintiff.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

## COUNT 3.   VIOLATION OF 42 U.S.C. 1983
### Malicious Prosecution

120)   Plaintiff hereby realleges and incorporates by reference paragraphs 1-121.

**ANSWER:     Defendants hereby reincorporate their above responses by reference to paragraphs 1 through 116.**

121)   All defendants conspired together and participated in an effort to initiate and maintain an unwarranted prosecution against plaintiff for criminal contempt.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

122)   All defendants participated in the effort to have plaintiff prosecuted for aggravated stalking and other criminal violations. The prosecution was intended to retaliate against plaintiff and chill his petitioning activities.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

123)   The city of Norton Shores (via Douglas Hughes) expressed an ominous warning against plaintiff's protected activity, before devoting substantial department resources to maintain the malicious prosecution against plaintiff.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

124)   The Norton Shores defendants used their influence, authority, and department resources to intimidate plaintiff as part of the effort by Joel Baar and Michelle McLean to extort a "global resolution" just before the contempt hearing. These actions also

allowed the malicious prosecution to continue for several more months until the charges were finally dismissed in plaintiff's favor on 2/4/16.

**ANSWER:     These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs. As to the allegations contained regarding Attorney Baar and McLean, the same are denied as untrue in the manner and form alleged and Plaintiff is left to his strictest proofs.**

125)    Plaintiff alleges malicious prosecution against Melissa Meyers, Michelle Mclean, Joel Baar, and their firm BOLHOUSE, BAAR & HOFSTEE PC.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

126)    Plaintiff alleges conspiracy to maliciously prosecute plaintiff against all defendants.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

## COUNT 4.   VIOLATION OF 42 U.S.C. 1983
### (Abuse of Process)

127)    Plaintiff hereby realleges and incorporates by reference paragraphs 1-127.

**ANSWER:     Defendants hereby reincorporate their above responses by reference to paragraphs 1 through 127.**

128)    The criminal contempt and civil proceedings were instituted and maintained under fraudulent pretenses and for ulterior purposes which were unrelated to the true nature of the legal actions which were before the court.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

129)    All defendants conspired to violate plaintiff's civil rights through abusive ligation as set forth in this complaint.

**ANSWER:     Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

130) The defendants were attempting to pressure plaintiff into making agreements and to prevent plaintiff from taking legal action against Melissa Meyers, Mark Meyers and the Norton Shores defendants.  This ulterior purpose is plainly evident in the legal pleadings which were filed in the PPO litigation but primarily focused on plaintiff s petitioning activity.

**ANSWER:    Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

131) Norton Shores expressed (via Douglas Hughes letter) the intention to "take whatever action is legally necessary to protect the professional and privacy rights of Mr. Meyers." This reflects the statements and actions of the private actors.

**ANSWER:    These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

132) Plaintiff alleges abuse of process against Melissa Meyers, Michelle Mclean, Joel Baar, and their firm BOLHOUSE, BAAR & HOFSTEE PC.

**ANSWER:    Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

133) Plaintiff alleges conspiracy to abuse process against all defendants.

**ANSWER:    Defendants deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

## COUNT 5.   STATE LAW: ABUSE OF PROCESS

134) In exactly the same terms and against the same defendants in Count 4, Plaintiff also alleges a state law claim for abuse of process and conspiracy to abuse process.

**ANSWER:    Defendants hereby reincorporate their above responses by reference to paragraphs 1 through 133. Defendants further deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

## COUNT 6.   STATE LAW: MALICIOUS PROSECUTION

135) In exactly the same terms and against the same defendants in Count 3, Plaintiff also alleges a state law claim for malicious prosecution and conspiracy to maliciously prosecute plaintiff.  This count is alleged under MCL 600.2907 and common law.

**ANSWER:    Defendants hereby reincorporate their above responses by reference to**

paragraphs 1 through 134. Defendants further deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.

## COUNT 7.   STATE LAW: INTENTION INFLICTION OF EMOTIONAL DISTRESS & NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

136)   Plaintiff hereby realleges and incorporates by reference paragraphs 1-136.

**ANSWER:    Defendants hereby reincorporate their above responses by reference to paragraphs 1 through 136. Defendants further deny these allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

137)   Plaintiff alleges that Melissa Meyers and Michelle McLean intentionally inflicted emotional distress on plaintiff and others.

**ANSWER:    Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

138)   Plaintiff alleges that the remaining defendants demonstrated gross negligence in violation of their statutory or official duties, resulting in severe emotional distress to plaintiff and others.

**ANSWER:    These allegations do not apply to the Defendants and Defendants do not have knowledge or information to respond. To the extent that the Court requires a response, Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

## Response to Relief Requested:

As a direct and/or proximate result of the constitutional violations and tortious actions set forth in this complaint, plaintiff has been deprived of his liberty, subjected to extreme distress, fear, stress, humiliation, financial hardship, damage to reputation, loss of income, loss of income opportunity, loss of property, loss of statutory remedies, and other substantial damages.

**ANSWER:    Defendants deny the allegations as untrue in the manner and form alleged and leave Plaintiff to his strictest proofs.**

**WHEREFORE, Defendants request that this lawsuit be dismissed in its entirety and that they be awarded attorney fees and costs for having to defend this frivolous lawsuit which lacks any scintilla of factual or legal merit.**

[This part of page left intentionally blank.]

Respectfully submitted,

Dated: <u>March 5, 2018</u>   Bolhouse, Baar & Hofstee, P.C.


By: <u>/s/ Richard L. Bolhouse   </u>
   Richard L. Bolhouse (P29357)

Grandville State Bank Building
3996 Chicago Drive SW
Grandville MI 49418
Phone: (616) 531-7711

Attorneys for Defendants Melissa Meyers, Michelle McLean, Joel Baar, and Bolhouse, Hofstee, & McLean PC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL WILLIAM RUDD,

          Plaintiff,

v

THE CITY OF NORTON SHORES;
MAYOR GARY NELUND, individually
and in his official capacity;
POLICE CHIEF DANIEL SHAW,
individually and in his official capacity;
SERGEANT MATTHEW RHYNDRESS,
individually and in his official capacity;
OFFICER MICHAEL WASSILEWSKI,
individually and in his official capacity;
MARK MEYERS, Individually and as city
manager,
----
F/LT. CHRIS MCINTIRE, Michigan State Police
only in his individual capacity;
----
ATTORNEY DOUGLAS HUGHES,
individually and acting on behalf of his law firm;
WILLIAM HUGHES,PLLC, a Michigan law firm.
----
ATTORNEY MELISSA MEYERS, individually and
acting on behalf of her law firm;
ATTORNEY MICHELLE MCLEAN, individually and
acting on behalf of her law firm;
ATTORNEY JOEL BAAR, individually and
acting on behalf of his law firm;
BOLHOUSE, BAAR & HOFSTEE PC; a Michigan
Law firm.

          Defendants.

HON. GORDON J. QUIST
U.S. District Judge

Case No. 1:18-cv-124

**DEFENDANTS' AFFIRMATIVE,
SPECIAL AND OTHER DEFENSES**

---

Daniel W. Rudd
Plaintiff, In Pro Per
201 S. Lake Ave
Spring Lake, MI 49456
231-446-2532
daniel@stock20.com

Richard L. Bolhouse (P29357)
Bolhouse, Hofstee, & McLean PC
Attorneys for Defendants Meyers,
  McLean, Baar, and Bolhouse,
Hofstee & McLean PC
39996 Chicago Dr. SW
Grandville, MI  49418
616-531-7711
rickb@bolhouselaw.com

## DEFENDANTS' AFFIRMATIVE, SPECIAL, AND OTHER DEFENSES

NOW COMES Defendants Melissa Meyers ("Attorney Meyers"), Michelle McLean ("Attorney McLean"), Joel Baar ("Attorney Baar"), and the law firm of Bolhouse, Hofstee, & McLean PC ("the Firm")(hereafter collectively, "the Defendants") and do hereby state the following as Defendants' Affirmative, Special, and Other Defenses:

1.      Plaintiff has failed to state a claim upon which relief can be granted and Defendants  are entitled to summary judgment pursuant to Fed. R. Civ. P. 12(b)(6), and 12(c).

2.      Plaintiff's complaint failed to comply with Fed. R. of Civ. P. 8(a)(2), and should be stricken.

3.      One or more of the Plaintiff's claims are barred pursuant to the expiration of the Statute of Limitations. For example, the United States Supreme Court has directed that 42 U.S.C. §1988 requires courts to borrow and apply to all §1983 claims the one most analogous state statute of limitations. Owens v Okure, 488 US 235, 240 (1989). Thus, for tort based actions brought in Michigan under §1983, the appropriate statute of limitations is 3 years, pursuant to MCL 600.5805(10), and the appropriate statute of limitations for malicious prosecution is 2 years, pursuant to MCL 600.5805(5).

4.      One or more of Plaintiff's claims are barred pursuant to the doctrine of res judicata, issue preclusion, and or claim preclusion. Plaintiff has sought the same or similar relief against Defendants in requesting sanctions in the State Court in his pleadings filed and on the record in the case of *Rudd v. Averill*, Muskegon County Circuit Court, No. 07 36874-DM before the Honorable Gregory Pittman.  Plaintiff's requests were denied. Plaintiff also sought similar relief in the matter of *Meyers v. Rudd*, Muskegon County Circuit Court, No. 13-257503-PH, before the Honorable Gregory Pittman. Plaintiff's requests were denied.

5.      There is no federal question in dispute which applies to the Defendants and so the claims against Defendants should be dismissed for lack of subject matter jurisdiction.

6.      The Defendants are not state actors and have not acted at any time under any color of law.

7.      Defendant has failed to establish any facts which would show that Defendants acted in concert with any government, governmental agency, governmental agent or employee to deprive Plaintiff of a constitutional right.

8.      Plaintiff has improperly attempted to use 42 U.S.C. §1983 to enforce state law causes of action, which is not permitted, as 42 U.S.C. §1983 can only be used to enforce rights, privileges, or immunities guaranteed under federal law of the United States' Constitution.

9.      Plaintiff has not been deprived of any constitutional or federal statutory rights.

10.     Defendants are protected by a qualified or absolute immunity.

11.     One or more of Plaintiff's claims are barred pursuant to the doctrine of unclean hands.

12.     Plaintiff's has failed to establish a sufficient factual basis to support the elements of his claims; therefore, his complaint should be dismissed with prejudice. See Bell Atlantic Corp. v. Twombly, 550 US 544 (2008); and Ascroft v Iqbal, 556 US 662 (2009). Defendants are entitled to Summary Judgment pursuant to Fed. R. of Civ. P. 56.

13.     Plaintiff's complaint has failed to plead sufficient facts to raise a reasonable expectation that discovery will reveal evidence of unlawful activity or any misconduct by the Defendants. See Bell Atlantic Corp. v. Twombly, 550 US 544 (2008); and Ascroft v Iqbal, 556 US 662 (2009). Defendants are entitled to Summary Judgment pursuant to Fed. R. of Civ. P. 56.

14.     Plaintiff's claims should be dismissed pursuant to the doctrine of claim preclusion. Plaintiff has sought the same or similar relief against Defendants in the State Court

in his pleadings filed and on the record in the case of Rudd v. Averill, Muskegon County Circuit Court, No. 07-36874-DM, and Meyers v. Rudd, Muskegon County Circuit Court, No. 13-257503-PH, before the Honorable Gregory Pittman. Plaintiff's requests were denied.

15.     Plaintiff's claims are barred pursuant to the doctrine of collateral estoppel. Plaintiff has sought the same or similar relief against Defendants in the State Court both in pleadings filed and on the record in the case of Rudd v. Averill, Muskegon County Circuit Court, Case No.-07-36874-DM before the Honorable Gregory Pittman, and the case of Meyers v. Rudd, Muskegon County Circuit Court, Case No. 13-257503-PH, before the Honorable Gregory Pittman. Plaintiff's requests were denied.

16.     Plaintiff's claims are also barred under the doctrine of res judicata, claim preclusion, and or judicial estoppel. For example, there are current and pending litigations filed by the Plaintiff against the City of Norton Shores and other parties in courts for the State of Michigan, and also a lawsuit filed in the state courts by Plaintiff against James Marek, the attorney who represented Plaintiff's ex-wife in the Muskegon County Circuit Court action subsequent to the Defendants. Further, Plaintiff has requested relief by filing multiple grievances against the Honorable Gregory Pittman, the judge assigned to both the Plaintiff's custody case and the Plaintiff's PPO case in the Muskegon County Circuit Court.  He has also filed various grievances against the Norton Shores Police Department.

17.     Plaintiff's claims are estopped, in full or in part, due to Plaintiff's own failure to mitigate his damages. In the custody case and the PPO case, the Plaintiff was an active participant in needlessly protracting the litigation. He is responsible for current and pending litigations against the City of Norton Shores and other parties in courts for the State of Michigan, has filed various grievances against the Norton Shores Police Department, and filed a lawsuit against James Marek, an attorney who represented Plaintiff's ex-wife in the Muskegon County Circuit Court action subsequent to the Defendants. Further, Plaintiff has

filed multiple grievances against the Honorable Gregory Pittman, the judge assigned to the Plaintiff's custody case and the PPO case referenced in the Plaintiff's Complaint.

18.     Plaintiff's claims should be dismissed because the Defendants are protected by the application of litigation privilege. Under Michigan law, statements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are relevant, material, or pertinent to the issue being tried. Rockwell Medical, Inc. v. Yocum, 76 F. Supp. 3d 636 (E.D. Mich. 2014).

19.     To support his claims, Plaintiff seeks inquiry into attorney-client privileged communications between Defendants and their client, Andrea Averill, in the case of Rudd v. Averill, Muskegon County Circuit Court, Case No.-07-36874-DM before the Honorable Gregory Pittman, and in the other case between Defendants and their client, Melissa Meyers in the case of Meyers v. Rudd, Muskegon County Circuit Court, Case No. 13-257503-PH, before the Honorable Gregory Pittman.

20.     Many of the Plaintiff's allegations are mere conclusions and are therefore not entitled to be assumed as true. See Bell Atlantic Corp. v. Twombly, 550 US 544 (2008); and Ascroft v Iqbal, 556 US 662 (2009). Defendants are entitled to Summary Judgment pursuant to Fed. R. of Civ. P. 56.

21.     Plaintiff has failed to plead special or other damages as required pursuant to Fed. R. of Civ. P. 9(g).

22.     Plaintiff's claims against the state actors, Norton Shores, Mayor Nelund, Police Chief Shaw, Sgt. Rhyndres, Officer Wassilewski, Mark Meyers, Doug Hughes, and William Hughes PLLC, are barred by the Governmental Tort Liability Act, and so his conspiracy claims as to Defendants must fail.

23.     Plaintiff's claim for malicious prosecution under state and federal law fail as Plaintiff was never charged with any crimes and his liberty was never restrained.

24.     Plaintiff's Complaint is an impropert attempt to collaterally attack and re-litigate claims that have been, or should be, litigated in state court child custody proceedings.

25.     There is no claim for abuse of process under federal law.

26.     Plaintiff's claim for abuse of process fails as a matter of law.

27.     Plaintiff has not alleged any factual basis that will support a claim against any of the Defendants.

28.     Plaintiff has not alleged any factual basis that will support a claim of intentional or negligent infliction of emotional distress.

29.     These Defendants hereby reserve the right to add any additional affirmative defenses as they arise through discovery. Further, these Defendants incorporate by reference and hereby claim the right to use any affirmative defenses raised by or claimed by other Defendants in this action.

Respectfully submitted,

Dated: <u>March 5, 2018</u>          Bolhouse, Baar & Hofstee, P.C.


By: <u>/s/ Richard L. Bolhouse</u>
        Richard L. Bolhouse (P29357)

Grandville State Bank Building
3996 Chicago Drive SW
Grandville MI 49418
Phone: (616) 531-7711

Attorneys for Defendants Melissa Meyers, Michelle McLean, Joel Baar, and Bolhouse, Hofstee, & McLean PC