UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL WILLIAM RUDD,

        Plaintiff,

v.

CITY OF NORTON SHORES, GARY NELUND,
MARK MEYERS, DANIEL SHAW, MATTHEW
RHYNDRESS, MICHAEL WASILEWSKI, JON
GALE, CHRIS MCINTIRE, MELISSA MEYERS,
MICHELLE MCLEAN, JOEL BAAR, DOUGLAS
HUGHES, BOLHOUSE, BAAR, & HOFSTEE PC.,
WILLIAMS HUGHES PLLC.

        Defendants.

Case No.  1:18-cv-124

Honorable Gordon J. Quist
U.S. District Court Judge

---

Daniel William Rudd
Pro Se Plaintiff
201 S. Lake Ave.
Spring Lake, MI 49456
(231) 557.2532, daniel@stock20.com

Sarah R Robbins (P81944)
Rock Wood (P41181)
Attorneys for Defendant Chris McIntire
MI. DEPT. OF ATTORNEY GENERAL
State Operations Division
P.O. Box 30736, Lansing, MI 48909
(517) 373-6434, Woodr5@michigan.gov,
RobbinsS@michigan.gov

Melissa L. Meyers, Defendant
Tanis Schultz 85 Campau Ave NW, Suite
R305
Grand Rapids, MI 49503
mmeyers@tanisshultz.com

(616) 608-7149
Michael S. Bogren (P34835)
PLUNKETT COONEY, P.C.
Attorneys for Defendants: Gary Nelund,
Daniel Shaw, Jon Gale, Matthew Rhyndress,
Michael Wassilewski, Mark Meyers,
City of Norton Shores, Douglas Hughes &
WILLIAMS HUGHES, PLLC
950 Trade Centre Way, Ste. 310
Kalamazoo, MI 49002, (269) 226.8822
mbogren@plunkettcooney.com

Michelle M. McLean (P71393)
BOLHOUSE, HOFSTEE & MCLEAN PC
Attorneys for Defendants: Richard Bolhouse,
Michelle McLean, Joel Baar, & BOLHOUSE,
BAAR & HOFSTEE, PC
Grandville State Bank Bldg.
3996 Chicago Dr. SW,
Grandville, MI 49418
(616)531-7711  michellem@bolhouselaw.com

---

## PLAINTIFF'S BRIEF IN REPSONSE TO
## DEFENDANT MCINTIRE'S MOTION TO DISMISS

Daniel Rudd (Plaintiff, Pro Se)—Filed 5/31/18—Oral Arguments Requested

# Table of Contents

Table of Contents ........................................................................................... ii

INDEX OF AUTHORITIES ........................................................................ iii

Questions Presented: .................................................................................. iv

Summary of the Proceedings ...................................................................... 1

FACTUAL BACKGROUND .......................................................................... 3

ARGUMENT ................................................................................................. 4

I.   Plaintiff has adequately alleged Defendant McIntire's active participation in an effort to hinder and obstruct Plaintiff's efforts to seek relief from his government. .. 4

II.   Plaintiff has also adequately alleged McIntire's willing collusion in the subsequent efforts to suppress Plaintiff's complaints and obstruct Plaintiff's access to declaratory relief. ...................................................................................... 8

A.   Intimidating Correspondence matches timing of order authorizing criminal contempt proceedings against Plaintiff. .................................................... 8

B.   Extortionate Settlement Conference before "arraignment" : ............................ 10

C.   Conspiracy to obstruct meaningful access to the courts. .................................... 10

D.   McIntire's affidavit lacks credibility and probative value. .................................. 11

E.   Plaintiff has adequately identified facts and circumstances which support a plausible inference of conspiracy. .................................................................. 13

III.   McIntire is not entitled to immunity. .............................................................. 15

IV.   McIntire has distorted the nature of Plaintiff's petitioning activity and seriously misrepresented *what has been alleged.* ......................................................... 17

It is alarming that an officer of McIntire's rank and experience (apparently) cannot distinguish a missing/endangered child report from a complaint of parenting time or custody violations. .............................................................................................. 18

V.   McIntire's affidavit precludes a 12(b)(6) dismissal for failure to state a claim.  21

VI.   Plaintiff has adequately stated plausible state law claims. ........................... 22

VII.   Plaintiff's claims are not time-barred. ......................................................... 23

Conclusion and Relief: ................................................................................ 24

# INDEX OF AUTHORITIES

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................................ 4, 22

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555-56, 570 (2007) .................................... 4

*Berryman v. Rieger*, 150 F.3d 561, 567 (6th Cir. 1998) ............................................................... 15

*Bloch v. Ribar*, 156 F.3d 673, 681-82 (6th Cir. 1998) ................................................................. 10

*Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 825 (6th Cir. 2007)... 15

*Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013 ............................................................ 3

*Gavitt v. Born,* 835 F.3d 623 (6th Cir. 2016) at 640 .................................................................... 20

*Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) ................................ 4

*Heck v. Humphrey*, 512 U.S. 477 (1994) ...................................................................................... 21

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 (6th Cir. 2013) .................... 4

*King v. Harwood*, 852 F.3d 568 (6th Cir. 2017 ............................................................................ 21

*Roberts v Auto-Owners*, 374 N.W.2d 905, 908-09 (Mich. 1985) ................................................. 21

*Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993) ........................................................... 20

*Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) ........................................................... 4

Watson v. City of Kansas City, Kansas, 857 F.2d 690, 695-96 (10th Cir. 1988) ........................ 18

*Zilich v. Longo*, 34 F.3d 359, 364 (6th Cir. 1994) ...................................................................... 15

**Questions Presented:**

1) Has Plaintiff adequately stated claims which can survive Rule 12(b)(6) scrutiny?

2) Is Defendant McIntire entitled to immunity?

3) Should this rely upon the factual allegations claims in Def. McIntire's Affidavit?

4) Are Plaintiff's claims time-barred by the applicable limitation periods?

## Summary of the Proceedings

The present lawsuit involves a significant number of defendants and a complex set of interrelated claims.  The constitutional violations and tortious actions took place during distinct periods of time ranging from July of 2013 through February of 2016.  F/Lt. Chris McIntire ("McIntire"), is the Commander of the Michigan State Police Rockford Post, who reports thirty-two years of professional law enforcement experience and training.  (Def. Affidavit, PageID.216).

Plaintiff primarily alleges that: (1) McIntire played a critical role in an ongoing scheme to silence Plaintiff and cover up illicit behaviors and constitutional violations by the other Defendants.  (2) McIntire's participation was deliberate and informed— McIntire knew his actions were illegal, unethical and breach of the public trust; (3) McIntire's deceptive acts and deliberate omissions were corruptly motivated, and contrary to the public's interest. Plaintiff seeks damages, declaratory relief, injunctive relief and costs of the action (PageID.28).

Although McIntire's governmental position and influence were critical for accomplishing the corrupt purposes of the conspiracy, Plaintiff is not suing McIntire for actions or inactions in his official capacity with Michigan State Police. In his representations to Plaintiff, McIntire was essentially *impersonating* a Michigan State Police officer instead of *acting* as one.   McIntire was meticulous in compartmentalizing these actions from his actual duties and obligations.  Although McIntire has only been sued in his individual capacity, the Michigan Attorney General's office has appeared on McIntire's behalf.

1

All Defendants have been served with Plaintiff's 2/5/18 Complaint, and all Defendants have filed answers with the exception of F/Lt. McIntire.  The present motion to dismiss (ECF No. 23) seeks dismissal under 12(b)(6) for failing to state a claim.  McIntire asserts that:

> Plaintiff only provides conclusory allegations regarding conspiracy, retaliation, malicious prosecution, and abuse of process which fail to identify any activity by Defendant Lieutenant McIntire.

(Def. Brief, PageID.197).  However, McIntire has not discussed the narrative portions of Plaintiff's complaint where descriptions of specific activities are set forth (then incorporated by reference under the corresponding "Count").  Plaintiff inquired of the parties regarding the likelihood of concurrence on the filing of a first amended complaint—stating the intention to provide additional detail and designate specific claims against specific Defendants with more clarity.  McIntire and the Bolhouse Defendants indicated they would oppose the filing of a first amended complaint.

McIntire also states, "All the Defendants are left to guess, or try to discover from Plaintiff's intermingled general allegations, what each of them allegedly did wrong." (PageID.197) However, McIntire has not filed a motion for a more definite statement. There have been no conferences or pre-trial orders and no discovery has commenced.

For the reasons stated in this brief, Plaintiff asserts that the present motion to dismiss under Rule 12(b)(6) primarily asserts factual challenges instead of testing the legal sufficiency of the factual allegations and inferences which can be reasonably drawn from Plaintiff's complaint (as a whole).  Plaintiff has adequately placed McIntire on notice regarding the nature of the claims he is called upon to defend. McIntire's jurisdictional challenges should also be rejected.  Plaintiff asks this Court to deny the motion to dismiss in full and allow for some initial discovery to occur before further dispositive motions are litigated.

## FACTUAL BACKGROUND

Plaintiff's complaint begins with a description of interactions with the Norton Shores Police Department in July of 2013. These events are described in the narrative portion of the Plaintiff's Complaint because they provide context for Plaintiff's petitioning activity in 2015 and the retaliatory acts which followed. Additionally, the events which occurred in 2013 and 2014 serve as the basis for Plaintiff's *denial of access to the courts*" civil rights claim. To establish such a claim, a plaintiff must identify an underlying injury which was not fully or properly remedied by the courts—<u>because</u> of interference or obstruction by the named defendants. Claims of this nature typically analyze the underlying legal claim or injury (which is sometimes discussed as a "suit within a suit") as being "backward looking" or "forward looking." See *Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013) for a more thorough discussion. As it pertains to McIntire's liability, the events described in paragraphs 18-40 of Plaintiff's Complaint (PageID.5-10) provide context which is helpful for understanding the motivation behind Plaintiff's petitioning activity and the motivation behind McIntire's sham investigation.

The official complaint which Plaintiff submitted to the City ("7/20/15 Grievance", Ex. A ECF No. 1-1) identified a number of constitutional violations, discriminatory customs, and corruption within the City government. Police Chief Jon Gale ("Gale") discussed these concerns with Plaintiff and then advised that he would arrange for an independent investigation by the Michigan State Police. However, instead of doing this, Gale colluded with McIntire to manipulate, deceive (and ultimately intimidate) Plaintiff. The objective was to obstruct and suppress Plaintiff's petitioning activity.

## ARGUMENT

Under Federal Rule of Civil Procedure 8(a)(2), Defendant McIntire is entitled to a "short and plain statement of the claim showing that the pleader is entitled to relief." At this stage, Plaintiff is only required to set forth a "claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555-56, 570 (2007) at 570). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). On a 12(b)(6) challenge, the court considers these facts in the specific context of the case, construes them in "the light most favorable to the plaintiffs," and draws "all reasonable inferences in their favor." *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 (6th Cir. 2013) (en banc).

Plaintiff is a non-lawyer with no formal legal training and asks this Court to also afford further consideration to the liberal construction of Plaintiff's filings as appropriate for Pro se litigants under *Spots v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) and *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

## I.   Plaintiff has adequately alleged Defendant McIntire's active participation in an effort to hinder and obstruct Plaintiff's efforts to seek relief from his government.

On 7/20/15, Plaintiff submitted a written complaint ("7/20/15 Grievance") to Chief Gale of the Norton Shores Police Department (Ex. A, ECF No. 1-1). The 7/20/15 Grievance identified a number of constitutional violations, illegal conduct and corruption within the City government. The narrative portion of Plaintiff's Complaint includes the following excerpts (with emphasis and minor omissions for

clarity. These allegations form the factual basis for the claims regarding McIntire's *initial* participation in the conspiracy.

> ¶52) **Plaintiff submitted an official complaint to Chief Gale** …[detailing] plaintiff's concerns **regarding the department's violations of plaintiff's constitutional rights**, failure to enforce the law, and retaliatory actions in 2013. ["7/20/15 Grievance"]
>
> ¶53) Chief Gale met with plaintiff in his office for approximately an hour and fifteen minutes on 7/23/15 to discuss the complaint.  [i.e. ECF No.1-1]
>
> > …
> > (e) **Regarding the portions of plaintiff's complaint which alleged criminal acts** (i.e. destruction/concealment of evidence, unauthorized disclosure of LEIN information for the PPO litigation, cover-ups, extortion, etc.) **Chief Gale advised that these matters would need to be independently investigated by someone from the Michigan State Police who did not "know anybody" from the Norton Shores Police Department.**  Chief Gale offered to make these arrangements to ensure that it would be performed objectively.
> > …
>
> ¶56) Also contrary to his representations, Chief Gale did not ever seek a referral for an independent investigation by the Michigan State Police. **Instead, he arranged for a trusted colleague (F/Lt. Chris McIntire) to contact plaintiff and go through the motions of "investigating" the complaint without any documentation or scrutiny.**

(PageID.12-14). This court can plausibly infer that Defendant McIntire was an essential element for orchestrating the *sham investigation* which was to occur instead of the independent investigation which City policy called for.  Chief Gale "*arranged*" (i.e. conspired) for McIntire, "a trusted colleague," to give the appearance that he was handling the investigation *as a Michigan State Police Officer*. Chief Gale needed someone to *convincingly* "go through the motions" of an investigation (i.e. an *actual MSP Officer*)—however this needed to be a "trusted colleague" so that there would be no "documentation or scrutiny." Standard documentation and *actual* scrutiny would compromise the City's efforts to conceal misconduct and corruption.

   The arrangement described in paragraph 56 inherently alleges specific affirmative acts by McIntire.  Chief Gale needed an officer who could persuasively

manipulate Plaintiff and gain his trust.  It was essential that McIntire succeed in convincing Plaintiff that a thorough and impartial investigation was already in progress. McIntire extended substantial effort to accomplish this very purpose. Contrary to McIntire's recent claims that he had only "minor contact" with Plaintiff, McIntire conducted at least two lengthy phone calls with Plaintiff where McIntire described the specific investigatory steps which he was taking and would be taking. Discovery will establish that McIntire really did "*go through the motions of 'investigating'* the complaint" as plaintiff has alleged in ¶56. The fact that McIntire did this "without any documentation or scrutiny" appears to be uncontested.

Paragraph 55 alleges that Chief Gale immediately circulated Plaintiff's written complaint among the officers and civilians who had been accused of corruption and misconduct, thereby precluding "any opportunity for a meaningful investigation to occur." (PageID.14) Chief Gale knew these actions would be uncovered—giving the appearance of corruption—if an unbiased and independent officer conducted the outside investigation which was required.  A similar problem related to Plaintiff's concerns regarding misuse of City's access to the LEIN and a culture which tolerated disclosure of that LEIN information for corrupt purposes. A Michigan State Police Officer would be obligated to report the existence of these concerns to LEIN Field services (who would likely conduct their own investigation).

McIntire's position of authority allowed him to eliminate the paper trial. In doing so, McIntire also eliminated the possibility that another officer would review his handling of the matter by "signing off" on investigatory reports or findings. Chief Gale directed the "investigation" to McIntire in order to neutralize policies and practices which exist to ensure transparency, impartiality, accountability and consistency in the investigatory process.

These are *some* of the inferences which arise regarding one phase of the conspiracy which involves Defendant McIntire.  Subsequent portions of Plaintiff's complaint describe additional acts and omissions in furtherance of conspiracy objectives.

The short, plain statements in Plaintiff's Complaint do not offer <u>all</u> the details *how* McIntire went "through the motions."  That level of specificity is not required at the pleading stage. Plaintiff has offered "enough facts to state a claim to relief that is plausible on its face." *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949.   In section III of this brief, Plaintiff will discuss the portions of Plaintiff's complaint which allege that McIntire knowingly and deliberately participated in the concerted effort to deceive Plaintiff, obstruct plaintiff's access to legal remedies, and (later) to retaliate against Plaintiff.

Accepting Plaintiff's allegations as true, McIntire has been sufficiently placed on notice regarding the accusations against him.  Discovery is likely to reveal evidence establishing a greater level of detail. The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

## II.   Plaintiff has also adequately alleged McIntire's willing collusion in the subsequent efforts to suppress Plaintiff's complaints and obstruct Plaintiff's access to declaratory relief.

As described in ¶84 (PageID.19), Plaintiff filed for declaratory relief in the state court—requesting, among other things, an order directing the City to remove the improperly modified LEIN entry which authorized Norton Shore Police Officers to arrest Plaintiff without warrant.   The Bolhouse Defendants and Def. Melissa Meyers responded with a flurry of frivolous claims against Plaintiff.   These filings overwhelming demonstrate the shared objective to suppress Plaintiff's complaints against the City, Mark Meyers, and Melissa Meyers.

Def. McLean asked the court to initiate criminal contempt proceedings against Plaintiff, seeking 30 days of incarceration and around $5000 in fines and costs. (¶86, PageID.19)  She also scheduled a hearing on the matter during the same fifteen minute block which Plaintiff had scheduled for his hearing on declaratory relief (¶87). In paragraphs 88-102, Plaintiff's Complaint incorporates substantial documentary evidence (correspondence) in setting forth the some of the details of a collective effort to intimidate Plaintiff and extort his silence (PageID.20-24).

### A. Intimidating Correspondence matches timing of order authorizing criminal contempt proceedings against Plaintiff.

Although Plaintiff has had no opportunity for discovery, the Complaint sets forth compelling circumstantial evidence of a conspiracy. The court can infer much from the sequence, timing and phrasing of the correspondence sent to Plaintiff by Defendant Doug Hughes.[1] (PageID.20):

---

[1] The City does not contest the accuracy of Plaintiff's claims regarding the correspondence described in ¶¶88-92. However, the City asserts that an ordinary person would not find this correspondence to be threatening. (Def. Answer, PageID.88-89)

¶88) Plaintiff received Judge Pittman's order [authorizing] criminal contempt proceedings on 11/5/15.  On the same day, Attorney Douglas Hughes and his staff began sending plaintiff numerous copies of a threatening letter (emphasis added):

RE: Mark Meyers
Dear Mr. Rudd
  This office represents the City of Norton Shores. **Their Mayor has asked us to monitor your conduct and behavior as it relates to the employment of Mark Meyers** as the City Administrator for the City of Norton Shores.
   We have information that leads us to believe that you have made serious defamatory and disparaging remarks about Mr. Meyers, as well as other members of the Norton Shores Police Department.
   **Please treat this letter as notice to you that we will take whatever action is legally necessary to protect the professional and privacy rights of Mr. Meyers.**
You are to cease and desist from any further contact or conversation with him.
   **Also be mindful that the statements you make to others about Mr. Meyers.** [sic]
If you have had hired legal counsel, please make a copy of this letter and give it to that individual and instruct him to contact me.
Sincerely, Douglas M. Hughes, City Attorney for the City of Norton Shores

The specific reference to "*information that leads us to believe* you have made serious defamatory and disparaging remarks…" indicates that the City is describing an external source of information.  Other than complaints made directly to Chief Gale and confidential conversations with Plaintiff's lawyer, F/Lt. McIntire is the only person whom Plaintiff had made a report to.  After seeing F/Lt. McIntire appear at the contempt proceedings a few days after receiving this letter, it would be reasonable for Plaintiff to assume that McIntire had promptly reported back to Norton Shores after each of his communications with Plaintiff.  Hughes had emphasized that the City will "take whatever action is legally necessary to protect the professional and privacy rights of Mr. Meyers" and directs Plaintiff to be "mindful" of "statements you make to others about Mr. Meyers."

This foreshadowing was conveyed to plaintiff in perfect coordination with initiation of the criminal contempt proceedings (and the corresponding efforts to extort an agreement whereby Plaintiff would abandon all claims against Mark Meyers and the City).

9

**B. Extortionate Settlement Conference before "arraignment" :**

Paragraphs 93-100 of Plaintiff's Complaint (PageID.21-22) describe the threats made by Defendant Joel Baar ("Baar") and Defendant Michelle McLean ("McLean") in a meeting just prior to the 11/9/15 criminal contempt hearing.   Baar & Mclean repeatedly pressed Plaintiff for an agreement wherein Plaintiff would drop all claims against Norton Shores, Mark Meyers, and Melissa Meyers.   Baar and McLean advised Plaintiff that he was about to experience the equivalent of a criminal arraignment before a very unpredictable probate judge. They suggested a substantial possibility of Plaintiff going straight to jail (¶98, ¶99).  They clearly conveyed that Chief Gale and F/Lt. McIntire were coming to testify that Plaintiff had repeatedly submitted false reports of criminal activity against Mark & Melissa Meyers.

**C. Conspiracy to obstruct meaningful access to the courts.**

As described in paragraphs 93-102 of Plaintiff's complaint (PageID.21-23), this phase of the conspiracy *only* required McIntire's *presence* in order to: (1) make Plaintiff believe that he might be incarcerated based upon false testimony from a source the probate court would certainly find credible; (2) sit together in court so the Judge would be likely to infer that these high ranking law enforcement officials (prominent in the local community) had taken time from their busy schedules to testify in support of the allegations raised by Defendant Michelle Mclean—calling for Plaintiff's incarceration and substantial restraints on his liberty.

Plaintiff is not alleging that McIntire is liable because he directly "initiated legal action" against Plaintiff. McIntire leveraged his unique abilities (afforded by state law) to forward the common objectives of conspiracy.  By this point McIntire had his own reasons to send Plaintiff a strong message.  He only needed to *influence* the judge's belief that McIntire had important testimony to offer.  This would prolong the

duration of the criminal contempt proceeding and enhance the chilling effect on Plaintiff's resolve. (¶102, PageID.22-23.) If McIntire *had* actually testified (even falsely), the testimony itself would not be actionable in a lawsuit.  However, Plaintiff would have had the opportunity to refute the false testimony with his own evidence.

For similar reasons, McIntire's appearance subject to subpoena does not settle the question of McIntire's willing partition in a conspiracy.  While McIntire claims that his participation was "not of his own volition", these claims may not be considered on a Rule 12 challenge.  Plaintiff claims McIntire's acts were retaliatory in nature.  Where such motivations exist, even actions which would ordinarily be lawful, are capable of violating constitutional rights. "[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under §1983 even if the act, when taken for a different reason, would have been proper." *Bloch v. Ribar*, 156 F.3d 673, 681-82 (6th Cir. 1998) (internal citation omitted).

### D. McIntire's affidavit lacks credibility and probative value.

Instead of *specifically* addressing the legal sufficiency of the Plaintiff's claims, McIntire offers alternative explanations for his participation in the criminal contempt proceedings.  Although not specifically stated in his sworn affidavit, McIntire's brief claims that McIntire was "not there of his own volition."  This claim would be more credible if McIntire had attempted to convey this to Plaintiff while the criminal contempt proceedings were pending.  McIntire knew from his lengthy conversations with Plaintiff that the various schemes to have Plaintiff incarcerated created powerful anxiety and fear. McIntire knew that this was unjust and had the power to alleviate this burden. However, McIntire never offered these type of

assurances during the time when Plaintiff was most likely to feel intimidated. Calculated omissions in McIntire's affidavit emphasize this contradiction:

> The next communication I had with the Plaintiff occurred on November 17, 2015, when Plaintiff e-mailed me to see if I had **been present** at the Muskegon County Courthouse on Monday, November 9, 2015.
>
> I replied to Plaintiff's e-mailed inquiry and informed Plaintiff that I had been present subject to a subpoena from Ms. Meyers' attorneys. (PageID.216, ¶8, emphasis added)

McIntire conveys that he received a singular question ("where you present?") and then went out of his way to assure Plaintiff that is presence was involuntary. Plaintiff had actually sent a more specific inquiry regarding the criminal contempt hearing:

> **Rudd:** Where you *sitting by Mark Meyers and Chief Gale* at the hearing before Judge Pittman at the Muskegon County Courthouse last Monday (11/9)?"
> **McIntire:** Yes. [this is the full message]

McIntire has misrepresented the question and the answer. The reply (singular) which McIntire sent, did <u>not</u> inform Plaintiff that he "had been present subject to a subpoena." He *could have offered* that information but he did not. There is no reason to believe that McIntire would have mentioned the subpoena at all if Plaintiff had not sent *a second message* which specifically and directly raised that question:

> **Rudd:** I didn't get a copy of a subpoena for your testimony from Attorney McLean or Attorney Baar. <u>Did someone subpoena you?</u>
> **McIntire:** I was subpoenaed by the attorneys representing Ms. Meyers.

McIntire's has meticulously crafted an affidavit which avoids the use of definite language when discussing the central issues. For example, McIntire's affidavit does not actually state that he *was* subject to (or served with) a valid subpoena. The sworn statement *only* establishes that McIntire conveyed these things to Plaintiff—not that he was telling the truth.

McIntire has offered no evidence that he actually was subject to a subpoena, properly served with a subpoena, or that the alleged subpoena ever existed.  The brief itself makes stronger claims, but there is no *valid* evidence to support them:

> At no time was Defendant Lieutenant McIntire involved in any legal process against the Plaintiff. (Def. Brief, PageID.201).
> …
> [Corresponding footnote] Defendant Lieutenant McIntire was present in November 2015 at a court hearing involving the Plaintiff. However, the appearance of Defendant Lieutenant McIntire was **because he was subpoenaed to appear**. Therefore, Defendant Lieutenant McIntire was **not there on his own volition** but rather in accordance with a legal demand to be present.

McIntire's brief includes no less than five references to the subpoena.  However, no valid support has been offered to establish that this subpoena ever actually existed and there are numerous reasons to assume otherwise. However, this is factual dispute and the Court is now considering a Rule 12(b)(6) motion to dismiss. Plaintiff has plausibly alleged that McIntire *willingly* played a critical role prior to and during the criminal contempt proceedings. There is adequate basis for this Court to infer that McIntire's actions were motivated, at least in part, by a desire to chill Plaintiff's protected activities.

## E. Plaintiff has adequately identified facts and circumstances which support a plausible inference of conspiracy.

In *Smith v. Thornburg*, 136 F.3d 1070 (6th Cir. 1998) this court held that "Rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, and circumstantial evidence may provide adequate proof of conspiracy." *Id.* at 1090-1091.  *Adickes v. SH Kress & Co.*, 398 U.S. 144, 150, 152 (1970) is also instructive. Unlike the present case, the parties had conducted discovery and developed a factual record before dismissal of the conspiracy count

prior to dismissal in the district court.  On appeal, the United States Supreme Court

reversed this ruling and allowed the controversy to proceed to the jury.

> We now proceed to consider whether the District Court erred in granting summary judgment on the conspiracy count. In granting respondent's motion, the District Court simply stated that there was "no evidence in the complaint or in the affidavits and other papers from which a `reasonably-minded person' might draw an inference of conspiracy,"

*Id.* at 157.  The *Adickes* plaintiff prevailed on appeal by arguing that:

> …although she had no knowledge of an agreement between Kress and the police, *the sequence of events* created a *substantial enough possibility* of a conspiracy to allow her to proceed to trial, especially given the fact that the non-circumstantial evidence of the conspiracy could only come from adverse witnesses.

*Id.* at 157 (emphasis added).  The Supreme Court agreed and ruled that the petitioner

should be allowed to proceed to trial. The court specifically noted the existence of

"*unexplained gaps* in the materials submitted by respondent" and found that:

> …we think it would be open to a jury, in light of the sequence that followed, to infer from the circumstances that the policeman and a Kress employee had a "meeting of the minds" and thus reached an understanding that petitioner should be refused service.

*Id.* at 157.  No discovery has occurred in the present case. Nonetheless, Plaintiff has

still offered substantial circumstantial evidence to support the inference of *meeting*

*of the minds*.  Also, Plaintiff had already identified more than a few "unexplained

gaps" in the "materials" which McIntire has offered (and also the materials which

McIntire has conspicuously *not* offered.  Here also, Plaintiff has shown that a

"sequence of events created a substantial enough possibility of a conspiracy" to

survive dismissal as a matter of law.

### III.   McIntire is not entitled to immunity.

Plaintiff is suing McIntire in his personal capacity only.   Plaintiff is not suggesting liability on the basis of any official action (or discretionary authority which flows from official capacity).   Plaintiff has instead alleged that McIntire's "arrangements" with Chief Gale lead to a course of conduct that was intentionally sequestered from McIntire's role as the commander of the MSP Rockford post. McIntire invites some question along these lines by conspicuously qualifying his statement regarding "minor contact with the Plaintiff."

> *In my capacity as the Rockford Post Commander*, I had minor contact with the Plaintiff, Daniel Rudd, in 2015.

(McIntire Affidavit, ¶4, emphasis added, PageID.216). While Plaintiff intends to demonstrate that McIntire had substantial contact with Daniel Rudd in 2015 (just not in his official capacity), it is not yet time to settle that dispute.   On a 12(b)(1) motion, McIntire cannot establish that he was exercising "discretionary authority" by offering an affidavit to challenge Plaintiff's facts:

> "Based on my training and professional law enforcement experience of thirty-two years, I did not believe the facts concerning Plaintiff's complaint to the Norton Shores Police Department that were known to me in or around September 2015 warranted a full investigation or further investigation."

(*Id.* ¶7) The foregoing statement is so indefinite that it has little probative value (even if it is accepted as true).   However, it is Plaintiff's version of the facts which are favored on the present motion.   Plaintiff has claimed that McIntire never intended to investigate in the first place, because Chief Gale *arranged for him to go through the motions*.   McIntire was <u>not</u> investigating or *actually* exercising any discretion at all.

15

Further, Plaintiff's complaint asserts that *McIntire's misdeeds were intentional*: **(1)** McIntire understood that Plaintiff's clearly established constitutional rights had been and were being violated. (¶106-107); **(2)** McIntire knew that Plaintiff had only offered truthful claims in good faith, but set out to injure Plaintiff in order to suppress his petition activity. (¶108); **(3)** McIntire's actions demonstrated a deliberate and continuing course of retaliatory conduct. (¶110); **(4)** McIntire colluded with the other defendants in a concerted effort to overwhelm the court and prevent timely disposition on the relief which Plaintiff sought from the courts. Plaintiff was deprived of the opportunity to be heard on his declaratory relief, including an order directing Norton Shores to remove the LEIN entry which improperly authorized Plaintiff's warrantless arrest. Because of these actions, the state court did not enter an order to remove the improper entry from the LEIN database until February 5, 2016.

"It has long been recognized that the lawful resort to the courts is part of the First Amendment right to petition the Government for a redress of grievances." *Berryman v. Rieger*, 150 F.3d 561, 567 (6th Cir. 1998). For now, Plaintiff has offered a plausible basis for the inference that McIntire knew his conduct would obstruct Plaintiff's access to relief in the courts *and* chill his protected activity. If this can be established further through discovery, qualified immunity will not be available to McIntire. See *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 825 (6th Cir. 2007). Our courts have consistently held that retaliation "by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." *Zilich v. Longo*, 34 F.3d 359, 364 (6th Cir. 1994). Also, under the standards established in *Adickes,* Plaintiff has adequately identified facts to support the inference of conspiratorial intent. This also precludes a dismissal on the pleadings on the basis of qualified immunity.

## IV.   McIntire has distorted the nature of Plaintiff's petitioning activity and seriously misrepresented *what has been alleged.*

McIntire's filings are underscored by re-occurring statements which have no basis in fact and no relevance to the legal questions before this Court.   Although there has been no direct claim that this suit may be barred by the *Rooker Feldman Doctrine*, McIntire has repeatedly asserted innuendo suggesting that this *may be one of those cases.* (i.e. jaded pro-se dad is suing in federal court because he didn't get equal parenting time from the state courts).[2] McIntire introduces his motion to dismiss with the following statement:

> (¶1) Plaintiff's claims of federal and state law violations **allegedly stem from a protracted child custody battle**, **which apparently had proceeded over the course of some years.** Plaintiff has sued a variety of defendants. Defendant Lieutenant McIntire is a Michigan State Police First Lieutenant, **who had no role relative to the custody battle.** (PageID.184, emphasis added)

This is false.  No one has alleged that McIntire had some "role relative to the custody battle." The civil rights violations alleged by Plaintiff *stemmed from* the customs, practices and behaviors of the named defendants—not from any child custody litigation. McIntire also introduces his brief with a *general* misrepresentation of *what Plaintiff has alleged* to this Court (emphasis added):

> Plaintiff generally alleges that all Defendants violated Plaintiff's rights over several years during <u>various encounters with members of the Norton Shores Police Department and city officials regarding the Plaintiff's protracted contested child custody dispute with his ex-wife.</u>

(PageID.193) This appears to suggest that Plaintiff is *one of those people* who try to get a leg-up in family court by *dragging the police into petty disagreements* about parenting time.   McIntire knows that this is not the case.   None of plaintiff's

---

[2] Plaintiff was awarded sole legal and sole physical custody in 2014 and has maintained the same through at least five motions to change custody. Plaintiff has prevailed on every substantial custody ruling. There record of evidentiary findings and professional recommendations unequivocally demonstrates Plaintiff's good-faith in advocating for his children.

"encounters" with the City were *in regard* to a "protracted contested child custody dispute with his ex-wife."

Plaintiff's 7/20/15 Grievance was clearly focused on unconstitutional policies and practices by the department—McIntire knew this because he reviewed the document before having the first of two lengthy phone conversations with Plaintiff. None of this information suggests that Plaintiff was ever seeking redress of "family court wrongs."   Next, McIntire targets the emergency assistance which Plaintiff legitimately sought in 2013.

> As alleged in Plaintiff's complaint, beginning in 2013, <u>Plaintiff began having contact with the Norton Shores Police Department regarding Plaintiff's on-going child custody battle.</u> (¶2, PageID.193, emphasis added))

Plaintiff has never sought "contact" with the Norton Shores Police Department *regarding* an "on-going child custody battle."   In July of 2013, Plaintiff advised dispatch that his young children had been missing and endangered for more than 48 hours. Plaintiff offered objective and verifiable evidence which clearly indicated high risk factors. All of the non-custodial mother's immediate family members were equally concerned (¶¶18-21, PageID.5) One of the mother's family members accompanied Plaintiff and shared these concerns with a Norton Shores Officer.  There has never been any basis to suggest that Plaintiff was motivated by anything other than appropriate concern for vulnerable children.

**It is alarming that an officer of McIntire's rank and experience (apparently) cannot distinguish a missing/endangered child report from a complaint of parenting time or custody violations.**

It seems more plausible that McIntire subscribes to the same mentality which Plaintiff challenged in the grievance submitted to Chief Gale in July of 2015. Contrary to state and federal statutes, some law enforcement agencies routinely

minimize claims of child abuse, assault, child endangerment, or missing children *after learning that the caller is a divorced or single parent.*  In these departments, serious criminal activity and dangerous situations will be treated as inconsequential because someone has deemed the circumstances to be "domestic" in nature.  Official or unofficial policies of this nature are profoundly unconstitutional[3] and reckless.[4] This contradicts public policy considerations and a substantial body of professional literature **and** constitutes a reckless violation of the fundamental right to equal protection under the law. Remarkably, McIntire interposes this distorted viewpoint once more in the conclusion of his brief (PageID.212):

> <u>Plaintiff's claims stem from a protracted contested child custody battle.</u> **None of the violations of Plaintiff's rights involved [Defendant McIntire].** Based on the numerous legal bases set forth above, this Court should dismiss all claims against Defendant Lieutenant McIntire with prejudice and grant such other relief as this Honorable Court deems appropriate.

In his brief, McIntire does not discuss or acknowledge the relatively straightforward allegations which center around ¶56 of Plaintiff's Complaint (i.e. Gale arranged for McIntire to go through the motions…). In fact, McIntire's brief begins to ignore the narrative portion of Plaintiff's complaint at exactly the point where it becomes relevant to McIntire.  After a citation to ¶53 (Plaintiff meets with Chief Gale to discuss the 7/20/15 Grievance), McIntire primarily cites to his affidavit for narrative "facts."   This very conveniently avoids any treatment of ¶53(d) where Chief Gale offers to *arrange* for an "independent" investigation by the Michigan State Police Department.   We know that McIntire is aware of ¶56 because a footnote

---

[3] This brief will not address equal protection and procedural due process issues, but notes the following decision as insightful regarding policies and customs which afford less protection to domestic violence victims: *Watson v. Kansas City,* 857 F.2d 690, 695-96 (10th Cir. 1988)
[4] FBI specialist asserts heightened risk of harm during abductions by non-custodial parent: https://leb.fbi.gov/articles/featured-articles/domestic-custodial-motivated-child-abductions

advises the Court that: "Plaintiff specifically mentions Defendant Lieutenant McIntire only in paragraphs 13, 56, 97, and 101." (PageID.22).

Likewise, McIntire cites the ECF No. for Plaintiff's 7/20/15 grievance (Ex. A, ECF No. 1-1) and acknowledges that this was submitted to Chief Gale, but does not discuss the contents. McIntire then laments the difficulty felt by "all defendants" as they allegedly struggle to infer meaning from Plaintiff's claims:

> "All the Defendants are left to guess, or try to discover from Plaintiff's intermingled general allegations, what each of them allegedly did wrong.".

(¶1, PageID.197) Plaintiff is frustrated that McIntire has essentially ignored the critical portions of Plaintiff's complaint but fixated his attention on a few scattered indications that child custody proceedings were pending. In elevating this ancillary fact to primary importance, McIntire finds it very easy to suggest inferences.

But these inferences are not just suggested as arguments or an expression of McIntire's beliefs about Plaintiff's motivation. McIntire asserts that these claims are drawn from *what Plaintiff has alleged* (e.g. "As alleged in Plaintiff's complaint…" & "Plaintiff generally alleges that…" PageID.193) When considering a 12(b)(6) motion to dismiss, it is critical for the Court to have an accurate understanding of *what has been alleged*. Accordingly, these false representations are more egregious.

## V.   McIntire's affidavit precludes a 12(b)(6) dismissal for failure to state a claim.

McIntire has attached freshly minted "evidence" in the form of an affidavit (ECF No. 24-1), relied *heavily upon it*, yet seeks to avoid the Rule 56 framework:

> "Defendant's affidavit of facts is provided consistent with LCR 7.1(b) as the Plaintiff's statement of facts in the Complaint was not complete and only alluded to the involvement of Defendant Lieutenant McIntire. The clarifying facts presented in the affidavit should not convert the Fed. R. Civ. P. 12(b)(6), failure to state a claim argument, portion of the motion into a motion for summary judgement, as this case can be dismissed wholly based on the pleadings, and the affidavit supports the other bases for dismissal. (Def. Brief, Fn. PageID.194).

However, the claims and inferences averred by McIntire do not serve to clarify or complete what Plaintiff has alleged and do not offer a greater level of detail. In describing his communications with Plaintiff, McIntire *omits* substantial details in order to portray a version of the story where he had only "minor contact" with Plaintiff. Details regarding McIntire's communications with the other defendants are excluded entirely. The net result is a loss of details. This does not fit the requirements for exhibits in a Rule 12(b)(6) motion to dismiss:

> …a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, <u>so long as they are referred to in the complaint and are central to the claims contained therein</u>, without converting the motion to one for summary judgment. *Gavitt v. Born,* 835 F.3d 623 (6th Cir. 2016) at 640 (internal cites omitted, emphasis added).

McIntire's affidavit falls outside the guidelines in every respect. It wasn't a matter of record *at all* until it was conjured forth as an inferior substitute for law enforcement records which might be probative if McIntire had not destroyed them or taken steps to ensure they were never created. Relying only upon itself for authentication, this affidavit is not a suitable substitute for what is contemplated by the authority cited above. Even if it were attached to a Rule 56 motion, the probative

value would be diminished by the inclusion of inadmissible hearsay and the intentional omission of material facts.

As it pertains to the 12(b)(6) motion to dismiss, McIntire has ventured well outside of pleadings in order to assert factual challenges. Rule 12(b) supporting exhibits should serve to "verify the complaint" and should "not rebut, challenge, or contradict anything in the plaintiffs' complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993). This alone is reason enough to deny McIntire's motion to dismiss for failure to state a claim.

## VI.   Plaintiff has adequately stated plausible state law claims.

Plaintiff incorporates the previous arguments regarding the federal claims and asserts that the state law claims have been adequately established by the same narrative portions of Plaintiff's complaint. Plaintiff also asserts that pleading deficiencies identified by this Court can be promptly resolved in a first amended complaint. Many of the challenges asserted by McIntire turn upon McIntire's awareness and motivations. Accepting Plaintiff's allegations as true, McIntire corruptly and deliberately abused his position of authority, engaged in a calculated scheme to deceive an honest citizen (extreme and outrageous), and then destroyed public records to conceal illegal and unconscionable actions by others who are also in a position of public trust.[5] These claims involve a number of lawyers and law enforcement officers who deliberately abused the legal system by asserting wildly frivolous claims in order to accomplish collateral and corrupt objectives (abuse of process). In addition to Plaintiff's injuries, abuses of this nature tend to prejudice the most vulnerable litigants who face unwarranted skepticism when they truly need

---

[5] Plaintiff's first amended complaint will strictly assert intentional acts in place of gross negligence.

protection from the courts (recklessness). Collectively, these claims do provide a plausible basis for the state law claims. If proven, a jury could reasonably find the alleged conduct to be "so outrageous in character, and so extreme in degree, to go beyond all bounds of decency, and be regarded as atrocious and utterly intolerable in a civilized community." *Roberts v Auto-Owners*, 374 N.W.2d 905, 908-09 (Mich. 1985).

## VII.   Plaintiff's claims are not time-barred.

Plaintiff agrees with Defendant McIntire that the conspiracy claims take on the limitations period for the underlying wrong which was the object of the conspiracy. Plaintiff also agrees that the applicable statute of limitations is two years for malicious prosecution and three years for the other federal claims.   However, Defendant incorrectly concludes that, "Any alleged conspiracy to commit malicious prosecution that occurred before February 4, 2016 is barred by Michigan's statute of limitations." Under the rule established in *Heck v. Humphrey*, 512 U.S. 477 (1994), a claim for malicious prosecution is not cognizable until a favorable termination of those proceedings occurs.  This issue is succinctly explained in *King v. Harwood*, 852 F.3d 568 (6th Cir. 2017), "In short, under *Heck*, a malicious prosecution claim is not available before the favorable termination of criminal proceedings, nor does the limitations period for such a claim begin until the favorable termination of criminal proceedings." *Id.* at 579.  Therefore, the two-year period began to accrue when the criminal contempt proceedings were terminated in Plaintiff's favor on 2/4/16.  These claims are not time-barred.  It is undisputed that all remaining claims are based on circumstances which occurred after February 5, 2015, so the three-year limitations period has no effect on the viability of any claim against McIntire.

**Conclusion and Relief:**

Plaintiff has adequately met the requirements Rule 8(a)(2) which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff has asserted sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft*. It is reasonable to believe that discovery will produce probative evidence and move this case toward a just resolution. If the present motion is converted to the Rule 56 standard, Plaintiff should be given opportunity to conduct discovery. Plaintiff has identified a number of factual disputes which currently preclude dismissal under either standard. *Poe v. Haydon*, 853 F.2d 418, 425–26 (6th Cir. 1988). Plaintiff asks this Court to deny McIntire's motion to dismiss.

Respectfully submitted on 5/31/18

 /s/ Daniel William Rudd

Daniel William Rudd, Plaintiff (Pro Se)
201 S   Lake Ave.  Spring Lake, MI 49456
(231) 557-2532  daniel@stock20.com