UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DANIEL WILLIAM RUDD,

    Plaintiff,

v.                                            Case No. 1:18-CV-124

CITY OF NORTON SHORES,           HON. GORDON J. QUIST
et al.,

    Defendants.
_____/

## OPINION

    Plaintiff, Daniel Rudd, proceeding pro se, has sued a number of Defendants—both governmental and private actors—alleging a wide-ranging conspiracy to violate Rudd's federal constitutional rights during, or in connection with, Rudd's child custody dispute with his ex-wife. In particular, Rudd alleges that the City of Norton Shores and certain City officials, the attorneys who represented Rudd's ex-wife in the custody proceeding and their law firm, the City's counsel and his law firm, and a Michigan State Police Lieutenant, collaborated to threaten, undermine, and thwart Rudd's participation in the custody proceeding. In Counts 1 through 4 of his complaint, Rudd alleges conspiracy claims under 42 U.S. § 1983 against all Defendants for: (1) denial of access to the courts; (2) retaliation in violation of the First Amendment; (3) malicious prosecution; and (4) abuse of process. In Counts 5–7 Rudd alleges state-law claims for abuse of process, malicious prosecution, and infliction of emotional distress which, as to all Defendants other than Melissa Meyers and Michelle McLean, is pled as a negligent infliction claim.

    Defendant Michigan State Police Lieutenant Chris McIntire has filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is fully

briefed and ready for decision. For the reasons that follow, the Court will grant the motion and dismiss Rudd's claims against Defendant McIntire.

## I. BACKGROUND[1]

### A. Rudd's Complaint to NSPD

In or prior to July 2013, Rudd initiated a child custody case against his ex-wife. Defendant Melissa Meyers, an attorney who was then associated with Defendant Bolhouse, Barr & Hofstee, PC, represented Rudd's ex-wife. Melissa Meyers was, and is, married to Defendant Mark Meyers, the City Manager for Defendant City of Norton Shores. The case was assigned to Judge Pittman of the Muskegon County Circuit Court. (ECF No. 1 at PageID.2–3, 7.)

On or about July 21, 2013, Rudd called the Norton Shores Police Department (NSPD) to report that his ex-wife had abducted his children and to request police assistance in retrieving them. (*Id.* at PageID.5; ECF no. 1-1 at PageID.31.) Rudd informed the NSPD that the situation was an abduction and not simply a "custody and parenting time dispute," and indicated that the children's stepfather had a history of assaultive behavior. (*Id.*) Rudd reported that he had received text messages (presumably from his ex-wife) attempting to extort a more favorable custody agreement as a condition of returning the children. (*Id.*) Rudd also reported that he believed that Melissa Meyers had assisted Rudd's ex-wife in the abduction in order to obtain a more favorable custody agreement. (ECF No. 1 at PageID.6.) In spite of Rudd's pleas, NSPD personnel refused to take any action, according to Rudd, because three of the officers involved had a personal relationship with Melissa Meyers and her husband, Mark Meyers, was the City Manager. (*Id.*) The abduction continued until a different police agency facilitated the return of the minor children. Judge Pittman subsequently restricted Rudd's ex-wife's parenting time. (*Id.* at 7.)

---

[1] The facts are taken from Rudd's pro se complaint.

**B.     The PPO**

Shortly after the abduction incident, Melissa Meyers obtained an ex parte personal protection order (PPO) against Rudd. The PPO case was assigned to Judge Pittman. Rudd alleges that NSPD officers inappropriately assisted Melissa Meyers in obtaining a PPO by falsifying reports; covering up the NSPD's failure to comply with statutory requirements regarding domestic violence complaints; disclosing LEIN (Law Enforcement Information Network) information about Rudd to Mark Meyers to assist Melissa Meyers in her efforts to portray Rudd as a dangerous stalker; and destroying, concealing, or improperly withholding phone records that would have shown Melissa Meyers's claims to be false. (*Id.* at PageID.8–9.) It appears that Judge Pittman held a number of hearings regarding the PPO. Prior to the second hearing, in November 2013, Melissa Meyers indicated that another attorney would be representing Rudd's ex-wife, although Meyers filed a motion requesting that Judge Pittman refer the custody matter to an outside agency for decision rather than holding a custody trial. (*Id.* at PageID.9.) Judge Pittman cut short the November 26, 2013, hearing[2] and granted some relief to both Meyers and Rudd: the PPO would remain in place until the court decided the contested motion for a custody evaluation but would terminate prior to the original six-month term.

In December 2013, Meyers, with assistance from NSPD, filed a motion for criminal contempt, which Judge Pittman apparently rejected. Also, in January 2014, Judge Pittman denied Meyers's motion for costs and sanctions in connection with Rudd's motion to terminate the PPO. (*Id.* at PageID.10.)

Judge Pittman granted Meyers's motion for a custody evaluation by an independent evaluator, which took six months to complete. At the conclusion of the process, the evaluator

---

[2]Rudd erroneously alleges a hearing date of November 26, 2015.

concluded that the evidence supported Rudd's concerns about the children's welfare and the potential for abuse that their stepfather presented. Rudd's ex-wife's new attorney, Defendant Michelle McLean—also of the Bolhouse firm—did not challenge the evaluator's findings and conclusions, and Rudd was awarded sole legal and physical custody of the children. (*Id.* at PageID.11–12.) However, the case continued for more than a year.

**C.      Rudd's Complaint to NSPD**

On July 20, 2015, Rudd submitted a complaint to NSPD's new Police Chief, Jon Gale, concerning NSPD's failure or refusal to respond to Rudd's request for assistance in July 2013 in locating and securing the return of Rudd's children from his ex-wife. Rudd also complained about the assistance the NSPD provided to City Manager Mark Meyers to support Melissa Meyers's PPO litigation against Rudd, including disclosure of LEIN information. (ECF No. 1-1.) Chief Gale met with Rudd and assured Rudd that "he would conduct a fair and thorough investigation of any internal policy violations by NSPD officers who were still employed by the city." (ECF No. 1 at PageID.13.) As for Rudd's complaints of criminal acts, Chief Gale indicated that an investigation would be preformed by someone from an independent agency. However, Rudd alleges that rather than arranging an independent investigation by the Michigan State Police, Chief Gale referred the matter to his "trusted colleague," Michigan State Police Lieutenant McIntire, who simply went "through the motions of 'investigating' the complaint without any documentation or scrutiny." (*Id.* at PageID.14.)

**D.      Melissa Meyers's Attempt to Fabricate a PPO Violation**

Chief Gale provided Rudd's complaint to Mark and Melissa Meyers, allegedly in violation of NSPD policy. Soon thereafter, Melissa Meyers threatened to have Rudd held in criminal contempt for violating the PPO, which had long expired, for attending a soccer tournament at which

Meyers and her family were present. Although Melissa Meyers acknowledged that the PPO expired many months prior, she demanded that Rudd stipulate to an order authorizing NSPD to enter a non-expiring PPO against Rudd into the LEIN database, which Rudd refused to do. Subsequently, Meyers had McLean file a motion with Judge Pittman stating that a clerical error had occurred (apparently in discharging the PPO) and requesting Judge Pittman to correct it. McLean subsequently filed another motion requesting Judge Pittman to authorize a stalking PPO against Rudd on the LEIN system, which included excerpts of Rudd's complaint to Chief Gale. (*Id.* at PageID.17.) Shortly thereafter, the NSPD entered a stalking/PPO notation against Rudd on the LEIN system, without a valid court order. Meyers thereafter contacted Rudd's attorney and requested that the hearing regarding the PPO be cancelled because Meyers was withdrawing her request. Rudd apparently agreed to do so, but subsequently learned about the entry on the LEIN system when he received a letter from the Michigan State Police. Rudd notified the NSPD that no court order had entered, but the NSPD failed to correct the problem, allowing attorneys Meyers and McLean to use the fraudulent PPO as leverage in the custody proceedings.

On October 20, 2015, Rudd filed a motion seeking a declaration that the NSPD's LEIN entry was invalid. Defendant McLean responded with filings on behalf of Meyers, including a motion to hold Rudd in criminal contempt. (*Id.* at PageID.19.) On November 9, 2015, immediately prior to the criminal contempt hearing, Rudd met with McLean and Defendant Joel Baar, managing Partner of the Bolhouse firm, to discuss a "global resolution on all issues in the case." During the meeting, Baar and McLean repeatedly told Rudd that he could avoid incarceration by discontinuing conduct that was "concerning" to Melissa and Mark Meyers, such as complaining to Chief Gale. Baar and McLean also advised Rudd that Chief Gale, Lieutenant McIntire, Defendant Doug Hughes (the City's attorney), and Mark Meyers were outside in the hall prepared to testify that Rudd "had been

engaging in very concerning behavior." (*Id.* at PageID.21–22.) The parties were unable to resolve their disputes, and the hearing proceeded. Judge Pittman immediately found McLean's motion for contempt meritless, but did not deny the motion that day. Eventually, however, Judge Pittman dismissed the contempt motion with prejudice and entered a separate order directing the NSPD to remove the stalking/PPO record from the LEIN database. (*Id.* at PageID.23.)

## II. MOTION STANDARD

A complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 103 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.* at 555; *Ashcroft v. Iqbal*, 556 U. S. 662, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 678, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

Because Rudd is proceeding pro se, the Court is obligated to construe his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972) (per curiam). However, courts are not required to conjure allegations on behalf of pro se litigants, *see Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001), or to make their cases for them. *See Djahspora v. City of Jackson*, No. 15-1269-JDT-egb, 2016 WL 5138151, at *3 (W.D. Tenn. Sept. 21, 2016).

### III. DISCUSSION

Defendant McIntire moves for dismissal on several grounds. First, McIntire argues that Rudd fails to state claim against him. Second, McIntire argues that the Court lacks jurisdiction because Rudd's claims are barred by the applicable statutes of limitation.[3] Finally, McIntire argues that he is entitled to qualified immunity on the federal claims and to immunity under Michigan's Government Tort Immunity Act on the state-law claims.

Initially, the Court notes that McIntire supports his motion with an affidavit. In general, when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may not consider matters outside the pleadings. Fed. R. Civ. P. 12(b)(6). This means that "affidavits attached to briefs may not properly be considered at the motion to dismiss stage." *Cole v. Mauldin*, No. 14-11325, 2015 WL 806908, at *6 (E.D. Mich. Feb. 26, 2015) (citing *Jocham v. Tuscola Cnty.*, 239 F. Supp. 2d 714, 731 (E.D. Mich. 2003)). While a court may take into account documents referenced in the complaint and matters of public record, *see Winget v. JP Morgan Chase Bank,*

---

[3]McIntire's statute of limitations argument lacks merit. First, McIntire incorrectly asserts that the statute of limitations on Rudd's § 1983 claims is jurisdictional. The statute of limitations is an affirmative defense subject to waiver. *See Burrell v. MGM Grand Casino Detroit*, No. 16-10568, 2017 WL 24813, at *2 (E.D. Mich. Jan. 3, 2017). Second, except for Counts 1 and 3, McIntire fails to sufficiently develop his statute of limitations argument. Last, as to Counts 1 and 3, McIntire gets it wrong—Count 1 is not a naked conspiracy claim, but a claim of conspiracy to deny access to the courts subject to a three-year statute of limitations, and the statute of limitations for the malicious prosecution claim under § 1983 alleged in Count 3 is three years, not two. *See Rapp v. Putman*, 644 F. App'x 621, 626 (6th Cir. 2016) (noting that Michigan's three-year limitations period applied because "plaintiff's malicious-prosecution claim is based on the Fourth Amendment and § 1983, not state law").

7

*N.A.*, 537 F.3d 565, 576 (6th Cir. 2008), Rudd's complaint did not refer to McIntire's affidavit and the affidavit is not a public record. McIntire fails to cite any authority for his assertion that "[t]he clarifying facts presented in the affidavit should not convert the Fed. R. Civ. P. 12(b)(6), failure to state a claim argument . . . into a motion for summary judgement." (ECF No. 24 at PageID.194 n.2.) McIntire's suggestion that a court may consider an affidavit that merely "clarifies" facts alleged in a complaint on a Rule 12(b)(6) motion would obliterate the distinction between a Rule 12(b)(6) motion to dismiss and a Rule 56 motion for summary judgment. Thus, the Court will not consider McIntire's affidavit.

A.   **Failure to State a Claim**

1.   **§ 1983 Claims**

In order to state a claim for a § 1983 violation, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254–55 (1988). There is no dispute that Rudd meets the second requirement—McIntire, a Michigan State Police Lieutenant, was acting under color of state law.[4]

---

[4]Both parties miscomprehend the distinction between individual capacity claims and official capacity claims for purposes of § 1983. Rudd's statement that he sued McIntire in his individual capacity because "McIntire was essentially *impersonating* a Michigan State Police officer instead of *acting* as one," (ECF No. 42 at PageID.266), suggests that Rudd erroneously believes a state actor's conduct can occur in different capacities—one as a government official and the other individually, depending on whether the state actor acts outside the scope of his official duties. McIntire's statement that "in the Sixth Circuit, suits that 'challenge an action taken by an individual in his capacity as a state official constitute "official capacity" suits,'" (ECF No. 44 at PageID.297), is even more concerning because it misrepresents the current state of the law not only in the Sixth Circuit but in all federal and state courts as it pertains to § 1983 claims. Almost two decades ago, the United States Supreme Court put to rest the notion that a state actor's conduct within the scope of his authority as a state official gives rise only to an official capacity suit. *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358 (1991). The *Hafer* court expressly rejected the notion McIntire urges here: "that § 1983 liability turns not on the capacity in which state officials are sued, but on the capacity in which they acted when injuring the plaintiff." *Id.* at 27, 112 S. Ct. at 363. The Court found the argument "both unpersuasive as an interpretation of § 1983 and foreclosed by [its] prior decisions." *Id.* The Court further noted that such a theory "would absolutely immunize state officials from personal liability for acts within their authority and necessary to fulfilling governmental responsibilities"—an immunity extended only to a narrow class of officials that does not include police officers. *Id.* at 28–29, 112 S. Ct. at 363.

Rudd couches all of his § 1983 claims—denial of access to the courts, First Amendment retaliation, malicious prosecution, and abuse of process—as conspiracy claims. "'A civil conspiracy under § 1983 is 'an agreement between two or more persons to injure another by unlawful action.'" *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). To establish a conspiracy claim, Rudd must show "that there was a single plan, that the alleged coconspirator[s] shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore*, 330 F.3d at 854).

Rudd's conspiracy claims—at least as to McIntire—fail because they are based on nothing more than conclusory allegations that McIntire and the other Defendants conspired to violate Rudd's constitutional rights. In other words, Rudd fails to allege facts showing a single plan or that McIntire and the other Defendants shared the same general conspiratorial objective. As to McIntire, Rudd makes two substantive factual allegations: (1) Chief Gale arranged for McIntire to investigate Rudd's allegations of criminal acts by the NSPD and McIntire did nothing more than "go through the motions of 'investigating,'"; and (2) McIntire appeared at the November 9, 2015, contempt hearing to testify. (ECF No. 1 at PageID.14, 21–22.) Apart from those allegations, Rudd alleges no facts suggesting that McIntire was aware of any particular conspiratorial agreement to violate Rudd's constitutional rights. Rather, his assertion of a conspiracy is based on nothing more than his unsupported legal conclusions in his claims that Defendants' acts amounted to a conspiracy. In

short, Rudd alleges, at most, parallel conduct that *could* be consistent with an agreement but is insufficient to state a claim because it "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950.

Rudd's claims against McIntire suffer from an even more basic deficiency. "To establish a 'conspiracy' under a Section 1983 claim, a plaintiff must first demonstrate a constitutional deprivation." *Bauss v. Plymouth Twp.*, 233 F. App'x 490, 496 (6th Cir. 2007) (citing *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)).

### a. Counts 1, 3 and 4

Counts 1, 3, and 4 fail to sufficiently allege a constitutional deprivation by McIntire or any other Defendant.

As to the abuse of process claim in Count 4, the Sixth Circuit has specifically declined to "recognize[] the existence of a § 1983 abuse of process claim." *Rapp v. Dutcher*, 557 F. App'x 444, 448 (6th Cir. 2014). Thus, Count 4 does not state a valid claim and, therefore, must be dismissed in its entirety.

In Count 1, Rudd alleges what is known as a "backward-looking" access to the courts claim. The essence of such a claim is that the plaintiff once had a claim that "cannot now be tried (or tried with all material evidence) [because] . . . official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case." *Christopher v. Harbury*, 536 U.S. 403, 414–15, 122 S. Ct. 2179, 2186 (2002). In contrast, in a forward-looking access to the courts claim, the plaintiff alleges that official action is presently precluding the plaintiff from litigating a still-available claim. *Id.* at 413, 122 S. Ct. at 2186. Regardless of the type of claim asserted , a plaintiff must allege the existence of a "'nonfrivolous,' 'arguable' underlying claim'" *id.* at 415, 122 S. Ct. at 2187 (quoting *Lewis v. Casey*, 518 U.S. 343, 353 & n.3, 116 S. Ct. 2174,

10

2181 & n.3 (1996)), and "a remedy that may be awarded as recompense but not otherwise in some suit that may yet be brought." *Id.* As summarized by the Sixth Circuit, the elements of a backward-looking denial of access claim are: "(1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) substantial prejudice to the underlying claim that cannot be remedied by the state court; and (4) a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (internal quotation marks, citations, and brackets omitted). Rudd alleges that Defendants' conduct precluded: (1) "Relief under the parental kidnapping (sic) statute [M.C.L. 750.350a], which included protective orders and indemnification of losses resulting from the custodial abduction"; (2) "[a] prompt resolution of the pending custody suit, wherein the Guardian Ad Litem had already recommended that plaintiff receive sole custody of the children"; and (3) "Sanctions and contempt proceedings against Melissa (sic) Meyers for encouraging her client to violate court orders and subject the children to risk of harm." (ECF No. 1 at PageID.25.) Rudd further alleges that the conspiracy prevented a proper and timely adjudication of the child custody matter and prevented any civil litigation or criminal investigations into the conduct of Melissa Meyers. Assuming that relief under the parental kidnaping statute could constitute a non-frivolous underlying claim, Rudd fails to allege how any Defendant interfered with Rudd's access to the courts. That is, Rudd does not allege that any Defendant, including McIntire, actively concealed the existence of a claim or evidence supporting a claim that Rudd might have had. *See Swekel v. City of River Rouge*, 119 F.3d 1259, 1264 (6th Cir. 1997) (noting that allegations that police covered-up against one of their own, destroyed critical evidence, or delayed the plaintiff's investigation could have rendered any lawsuit ineffective). In fact, Rudd's own allegations show that he possessed whatever information he needed to file a lawsuit or proceeding in state court. Moreover, Rudd's allegation of delay,

inconvenience, and increased expense will not support a denial of access to the courts claim. *See Henderson v. Lindamood*, No. 1:97-0055, 2008 WL 4190016, at *13 (M.D. Tenn. Sept. 5, 2008) (stating that "the mere fact that a prisoner may have suffered some type of hindrance or inconvenience in his attempts to litigate is insufficient to support a claim that he was denied access to the courts"). Finally, although Rudd intimates that Defendants pressured him to forego any state-court claims or remedies through intimidation, his allegations show otherwise. That is, Rudd, particularly through his counsel, vigorously litigated the child custody matter and successfully defended Myers's motion to hold him in criminal contempt. Moreover, Rudd admits that when McLean filed a frivolous motion on behalf of Myers, Rudd's counsel requested sanctions and scheduled a hearing. (ECF No. 1 at PageID.17.)

Finally, Rudd's claim for malicious prosecution in Count 3 fails as to all Defendants because Rudd cannot establish a critical element of his claim. To establish a claim for malicious prosecution under § 1983, a plaintiff must prove that "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010)). Regardless of whether Rudd can establish the other elements, he has not alleged a deprivation of liberty, such as an arrest or incarceration. *See Noonan v. Cnty. of Oakland*, 683 F. App'x 455, 463 (6th Cir. 2017) (concluding that the plaintiff failed to show a deprivation of liberty because he "was never arrested or incarcerated, required to post bond, or subjected to any travel restrictions"). In fact, there is no indication that Rudd was deprived of his liberty in any manner as a result the motion for criminal contempt.

### b. Count 2

To establish a claim for retaliation in violation of the First Amendment, a plaintiff must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated, at least in part, by the plaintiff's protected conduct. *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). Although Rudd fails to specifically identify his protected conduct in his complaint, Rudd's complaint to Chief Gale about NSPD's failure to adequately respond to or assist him in securing the return of his children constitutes protected conduct. Rudd's claim against McIntire fails because Rudd does not allege that McIntire took an adverse action against Rudd. The only conceivable adverse actions are failing to investigate Rudd's complaint of criminal activity and appearing at a hearing to testify against Rudd. As for the failure to investigate, a citizen has no constitutional right to have the police investigate or prosecute criminal activity. *Flagg v. City of Detroit*, 447 F. Supp. 2d 824, 829 (E.D. Mich. 2006) (noting that "a federal constitutional claim cannot be predicated upon the failure of the police or other government officials to prosecute a crime" even when "the police are lax in their investigatory duties" (internal quotation marks omitted)); *Althouse v. Hill*, No. CIV A. 3:02-CV-1263-D, 2002 WL 1750794, at *2 (N.D. Tex. July 25, 2002) ("There is no constitutional right to have someone criminally prosecuted or to compel the district attorney to investigate alleged criminal wrongdoing."). Thus, "[a] citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). It follows, therefore, that a government official's failure to investigate cannot constitute an adverse action that supports a retaliation claim. *See Doe v. Cnty. of San Mateo*, Nos. C 07-05596 SI, C 08-

02541 SI, 2009 WL 735149, at *6 (N.D. Cal. Mar. 19, 2009) (holding that "plaintiff cannot demonstrate that the officers' failure to investigate and falsification of their reports constitutes an adverse action because she has no right to an investigation or to accurate police reports"). The Court reaches the same conclusion with regard to McIntire's appearance at the contempt hearing to testify as a witness. Such conduct—merely showing up to a hearing to testify—would not, in this Court's judgment, "deter a person of ordinary firmness from exercising protected conduct." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010). This is particularly true in this case, as Rudd admits that he had scheduled the hearing (ECF No. 1 at PageID.23), and should have anticipated that Meyers would have called witnesses to oppose the motion.

### 2. State Law Claims

In Counts 5 and 6, Rudd alleges claims for conspiracy to commit the torts of abuse of process and malicious prosecution. Count 7 is a state-law claim for intentional infliction of emotional distress against Defendants Melissa Meyers and McLean, which is not pled as a conspiracy. Rudd alleges negligent infliction of emotional distress against all other Defendants, including McIntire.

#### a. Counts 5 and 6

Under Michigan law, "[a] conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means." *Fenestra Inc. v. Gulf Am. Land Corp.*, 377 Mich. 565, 593, 141 N.W.2d 36, 48 (1966) (citing *Veriden v. McLeod*, 180 Mich. 182, 146 N.W. 619 (1914)). A plaintiff must prove an agreement, or preconceived plan, to do the unlawful act. *Temborius v. Slatkin*, 157 Mich. App. 587, 600, 403 N.W.2d 821, 828 (1986). "[A]ll defendants [must have] acted tortiously pursuant to a common design that caused harm to the plaintiff." *Ubain v. Beierling*, 301 Mich. App. 114, 132, 835 N.W.2d 455, 463–64 (2013) (internal quotation marks omitted). "The

gravamen of a conspiracy charge is not the combination between actors, but the wrongful acts causing damage." *LaMie v. Wright*, No. 1:12-cv-1299, 2014 WL 1686145, at *16 (W.D. Mich. Apr. 29, 2014) (citing *Coronet Dev. Co. v. FSW, Inc.*, 379 Mich. 302, 150 N.W.2d 809, 812 (1967)). Moreover, as with conspiracy claims under § 1983, a plaintiff must plead a state-law conspiracy claim "with some degree of specificity." *Id.* (citing *Gutierrez v. Lynch*, 826 f.2d 1534, 1538–39 (6th Cir. 1987)); *accord Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1341 (E.D. Mich. 2011).

For the same reasons discussed above, Rudd's allegations as to McIntire fall far short of plausibly alleging that he was part of any sort of an agreement or plan subject Rudd to abuse of process or malicious prosecution. McIntire's only alleged conduct was failing to conduct an adequate investigation and appearing to testify at a hearing. McLean and Myers were the only Defendants who had anything to do with the child custody proceedings. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, these claims will be dismissed.

### b. Count 7

In Count 7, Rudd alleges that all Defendants other than Myers and McLean are liable for negligent infliction of emotional distress. The tort of negligent infliction of emotional distress is highly circumscribed under Michigan law. First, such claims are generally "limited to 'situations involving the plaintiff's witnessing negligent injury to an immediate family member and suffering severe mental distress causing actual physical harm.'" *Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 634 (W.D. Mich. 2015) (quoting *Akbar v. City of Detroit*, No. 294610, 2011 WL 1485334, at *4 (Mich. Ct. App. Apr. 19, 2011)); *see also Idemudia v. Consol. Rail Corp.*, 895 F. Supp. 162,

164–65 (E.D. Mich. 1995) (concluding that Michigan limits bystander recovery in negligent infliction cases to immediate family members). Second, the defendant's negligent conduct must cause emotional distress that produces a "definite and objective physical injury." *Maldonado v. Nat'l Acme Co.*, 73 F.3d 642, 645 (6th Cir. 1996) (citing *Daley v. LaCroix*, 384 Mich. 4, 12, 179 N.W.2d 390, 395 (1970)).

Rudd fails to allege facts supporting either requirement, and his allegations make clear that his claims did not involve him witnessing negligent injury to an immediate family member or experiencing emotional distress that produced a "definite and objective physical injury." Accordingly, this claim is properly dismissed.

**B.    Governmental Immunity**[5]

McIntire also argues that he is entitled to dismissal of Rudd's state-law claims under Michigan's governmental immunity statute. M.C.L. § 691.1407(2)(c) grants immunity for officers and employees unless their conduct amounts to gross negligence that is "the one most immediate, efficient, and direct cause preceding an injury," *Robinson v. City of Detroit*, 462 Mich. 439, 458–59, 613 N.W.2d 307, 317 (2000), or if they commit an intentional tort without good faith or with malice. M.C.L. § 691.1407; *Odom v. Wayne Cnty.*, 482 Mich. 459, 479–80, 760 N.W.2d 217, 228 (2008). Under *Odom*, a governmental employee is immune if: (1) the acts were undertaken during the course of employment and the employee was acting, or reasonably believed he was acting, within the scope of his authority; (2) the employee acted in good faith, or without malice; and (3) the acts were discretionary, as opposed to ministerial. *Id.* at 480, 760 N.W.2d at 228. "Good faith" is a subjective test, under which a defendant is subject to liability only if he acted with "malicious intent." *Id.* at 482, 760 N.W. at 229.

---

[5]Although McIntire requested dismissal of the federal claims on the basis of qualified immunity, the Court need not address the argument in light of the other identified grounds for dismissal.

Rudd's allegations easily establish the first and third elements—McIntire was acting within the scope of his authority and his acts were discretionary, not ministerial. As for good faith, Rudd fails to allege a single fact from which it could be inferred that McIntire acted with a "malicious intent" to injure Rudd. *See Kreipke v. Wayne State Univ.*, 807 F.3d 768, 784 (6th Cir. 2015) (affirming the district court's denial of the plaintiff's motion to amend because "there are no facts alleged in the proposed amended complaint from which it could be inferred that WSU's President acted with a malicious intent to harm Kreipke").

Accordingly Counts 5 and 6 are subject to dismissal for the additional reason that McIntire is entitled to immunity.[6]

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant McIntire's motion to dismiss. In addition, Counts 1, 3 and 4 will be dismissed as to all Defendants. In addition, as the Court deems further briefing unnecessary, the Court will deny Rudd's motion for leave to file a sur-reply.

A separate order will enter.

Dated: August 8, 2018             /s/ Gordon J. Quist
                                   GORDON J. QUIST
                                   UNITED STATES DISTRICT JUDGE

---

[6]Although Rudd refers to a first amended complaint in his response, Rudd has neither filed a motion for leave to amend nor provided a proposed first amended complaint. *See Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 906 (6th Cir. 2002) (stating that implicit in Rule 15(a)'s liberal amendment policy "is that the district court must be able to determine whether 'justice so requires,' and in order to do this, the court must have before it the substance of the proposed amendment"). Therefore, neither the Court nor Defendant McIntire has any basis to ascertain whether amendment would be futile or warranted.