UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL W. RUDD,

    Plaintiff,

v.

CITY OF NORTON SHORES,
MAYOR GARY NELUND, MARK MEYERS,
DANIEL SHAW, MATTHEW RHYNDRESS,
MICHAEL WASILEWSKI, JON GALE,
CHRIS MCINTIRE, MELISSA MEYERS,
MICHELLE MCLEAN, JOEL BAAR,
BOLHOUSE, BAAR & HOFSTEE PC.,
WILLIAM HUGHES PLLC, DOUGLAS
HUGHES,

    Defendants.

Case No. 1:18-cv-124

HON. GORDON J. QUIST
MAGISTRATE JUDGE RAY KENT

_____

| | |
|---|---|
| Daniel W. Rudd (Pro Se)<br>201 S. Lake Ave<br>Spring Lake, Michigan  49456<br>(231) 557-2532<br>daniel@stock20.com | Michael S. Bogren (P34835)<br>Robert A. Callahan  (P47600)<br>PLUNKETT COONEY<br>Attorneys for Defendants<br>City of Norton Shores, Mayor Nelund, Jon Gale, Shaw, Rhyndress, Wassilewski, Mark Meyers, Douglas Hughes and William Hughes<br>950 Trade Centre Way, Suite 310<br>Kalamazoo, Michigan   49002<br>(269) 226-8822<br>mbogren@plunkettcooney.com<br>rcallahan@plunkettcooney.com |
| Michelle M. McLean (P71393)<br>Richard L. Bolhouse (P29357)<br>BOLHOUSE, HOFSTEE & McLEAN PC<br>Attorneys for Defendants M. Mclean, J. Baar, & Bolhouse, Hofstee & Mclean PC,<br>3996 Chicago Drive, SW<br>Grandville, Michigan  49418<br>(616) 531-7711<br>rickb@bolhouselaw.com<br>sallyr@bolhouselaw.com | Steven Daniel Schultz (P63177)<br>Attorney for Melissa Meyers<br>TANIS SCHULTZ PLLC<br>85 Campau Ave. NW, Ste 305<br>Grand Rapids, Michigan  49503-2611<br>(616) 608-7149<br>sschultz@tanisschultz.com |

**JOINT STATUS REPORT**

A Rule 16 Scheduling Conference is scheduled for September 13, 2018 at 10:00 AM, before the Honorable Magistrate Judge Ray Kent.  Appearing for the parties as counsel will be:

**Plaintiff:** Plaintiff, Daniel William Rudd, a non-lawyer, will appear on behalf of himself.

**Bolhouse Law Defendants:** Attorney Michelle McLean will appear on behalf of Michelle McLean, attorney Joel Baar, and the law firm of Bolhouse, Hofstee, & McLean PC (formerly, Bolhouse, Baar, & Hofstee PC.

**Norton Shores Defendants:** Attorney Robert A, Callahan, will appear on behalf of the City of Norton Shores; Gary Nelund (Mayor); Daniel Shaw (former Chief of Police); Mark Meyers (City Manager); Jon Gale (current Chief of Police); Douglas Hughes and William Hughes, PLLC (attorneys in private practice who serve as Norton Shores' City Attorney); and Sgt. Matthew Rhyndress and Officer Michael Wassilewski (police officers with Norton Shores Police Department).

**Defendant Melissa Meyers:** Attorney Steven Daniel Schultz or Attorney Dave Egler will appear on behalf of Defendant Melissa Meyers.

**1. Jurisdiction:**  The Court has jurisdiction over Plaintiff's 42 U.S.C. § 1983 First Amendment Retaliation claims because federal questions are involved (see 28 U.S.C. § 1331). The Court may exercise supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a).

The Bolhouse Defendants object to jurisdiction on the grounds that there is no federal question since the First Amendment claims lack merit and should be dismissed, leaving only issues of state law.

2. **Jury or Non−Jury**:  This case is to be tried before a jury.

3. **Judicial Availability**: The parties do not agree to have a United States Magistrate Judge conduct any and all further proceedings in the case.

**4. Statement of the Case:**

**Plaintiff:** In July of 2013, Plaintiff sought emergency assistance from the Norton Shores Police, offering evidence that his children were missing and endangered.  Plaintiff also alleged that Attorney Melissa Meyers was involved in an a reckless and illegal effort to prolong the  ordeal.  The Officer who received Plaintiff's complaint (and his supervisor officer) were both longtime friends of Melissa Meyers and with her husband (Mark Meyers) who was the City administrator.  Mark Meyers conspired with the police chief and officers to intimidate Plaintiff and prevent him from seeking further assistance or investigation.  In subsequent months, substantial government resources were used to continue a corresponding campaign of retaliation against Plaintiff through a petition for a stalking PPO against Plaintiff.

In 2015, a new police chief was appointed (Aubrey Jon Gale). Plaintiff submitted a formal written complaint to the Chief Gale describing what had occurred under the previous Chief's supervision. The complaint identified substantial evidence of corruption and civil right violations.

Chief Gale immediately began conspiring with Mark Meyers, the former police chief, the mayor, the city attorney and others who were named in the citizen complaint. To silence Plaintiff, City officials worked in concert with Melissa Meyers and the Bolhouse Defendants to place Plaintiff in fear of retaliatory arrest by local law enforcement and prosecute false claims of aggravated stalking and criminal contempt against Plaintiff. Chief Gale allowed his department to illegally place a "Stalking PPO" entry in the LEIN database against Plaintiff, knowing that the presiding judge had declined two requests to enter an order authorizing such an entry.

The Bolhouse attorneys arranged a meeting just prior to the hearing on criminal contempt charges. They informed Plaintiff that a number of influential government officials were standing in the hall to support their efforts to have Plaintiff jailed for 30 days, and suggested that Plaintiff could avoid incarceration if he entered an agreement whereby he would drop all claims against Melissa Meyers, Mark Meyers and other Norton Shores Defendants. The concerted effort to silence Plaintiff continued on for several months after this hearing until Plaintiff finally obtained an order directing Norton Shores to remove the Stalking PPO entry from the LEIN database.

**Norton Shores Defendants:** The Norton Shores Defendants are composed of the City of Norton Shores; Gary Nelund (Mayor); Daniel Shaw (Chief of Police); Mark Meyers (City Manager); Douglas Hughes and William Hughes, PLLC (attorneys in private practice who serve as Norton Shores' City Attorney); and Sgt. Matthew Rhyndress and Officer Michael Wassilewski (police officers with Norton Shores Police Department). All of the Norton Shores' Defendants deny they conspired, had any agreement with anyone or engaged in any common plan or scheme to retaliate against Plaintiff in any manner for Plaintiff's exercise of Plaintiff's constitutional rights. They further deny they had any type of agreement or conspiracy to commit the state law torts Plaintiff alleges, or they engaged in any actions to commit any state tort which Plaintiff alleges. They have raised as affirmative defenses that they are entitled to dismissal of federal claims on the basis of qualified immunity, that Plaintiff's state law claims are barred by Michigan's Government Immunity Act, and some of Plaintiff's claim may be barred by expiration of statute of limitations.

**Defendant Melissa Meyers:** Defendant Melissa Meyers ("Meyers") denies all of the Plaintiff's claims as untrue; there was no conspiracy and their conduct was not in any way tortious or unlawful. The background of the case started because Meyers was representing the ex-wife of the Plaintiff Daniel Rudd ("Rudd") in a custody matter which was proceeding in the Muskegon County Circuit Court ("the Custody Matter"). Rudd inappropriately showed up a Meyers' home during the Custody Matter searching for his children, and accused Meyers of abetting his ex-wife in keeping his children from him. Meyers, alarmed and upset that Rudd came to her home, and

3

fearful of further inappropriate contact by Rudd, requested a PPO, which was granted by Hon. Gregory Pittman ("the PPO Matter"). Sometime after the PPO was granted, and Meyers joined the Bolhouse, Hofstee, & McLean (f.k.a Bolhouse, Baar, & Hofstee PC) ("the Firm"). Attorney Michelle McLean ("McLean") and the Firm then appeared in the PPO representing Meyers, and McLean appeared and began representing Rudd's ex-wife in the Custody Matter as well.  While the PPO was in place, Rudd showed up Meyers' children's soccer game and appeared within Meyers' sight, causing her to fear for both her and her children's safety. Meyers then requested that McLean seek enforcement of the PPO against Rudd. Prior to the hearing on the issue of enforcement of the PPO seeking contempt, Baar and McLean met with Rudd and engaged in settlement discussions, with the goal of getting the Custody and PPO matters resolved. Eventually, the PPO matter was resolved, and Meyers and McLean got out of the Custody Matter. Two years later, Rudd filed this case. All issues in this case are disputed. Rudd's Complaint fails to plead and/or establish many critical elements of each of Rudd's claims, and Rudd uses conclusions to support other elements; thus, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), and 12(c). It should also be dismissed pursuant to Rule 56 re: expiration of statute of limitations. Meyers has raised several affirmative defenses including but not limited to: litigation privilege, failure to state a claim, statute of limitations, res judicata, issue preclusion/claim preclusion, Meyers is not a state actor/claims do not apply to Meyers, failure to mitigate, doctrine of unclean hands, and collateral estoppel.

**Bolhouse Defendants (McLean, Baar, and firm Bolhouse, Hofstee & McLean PC (f.k.a Bolhouse, Baar, & Hofstee PC):** The Bolhouse Law Defendants are attorney Michelle McLean ("McLean"), attorney Joel Baar ("Baar"), and the law firm of Bolhouse, Hofstee, & McLean PC (formerly, Bolhouse, Baar, & Hofstee PC ("the Firm") hereafter, collectively "the Bolhouse Defendants"). The Bolhouse Defendants deny all of the Plaintiff's claims as untrue; there was no conspiracy and their conduct was not in any way tortious or unlawful. The background of the case started because attorney Melissa Meyers ("Meyers") was representing the ex-wife of the Plaintiff Daniel Rudd ("Rudd") in a custody matter which was proceeding in the Muskegon County Circuit Court ("the Custody Matter"). Rudd inappropriately showed up a Meyers' home during the Custody Matter searching for his children, and accused Meyers of abetting his ex-wife in keeping his children from him. Meyers, alarmed and upset that Rudd came to her home, and fearful of further inappropriate contact by Rudd, requested a PPO, which was granted by Hon. Gregory Pittman ("the PPO Matter"). Sometime after the PPO was granted, and Meyers joined the Firm. McLean and the Firm then appeared in the PPO representing Meyers, and McLean appeared and began representing Rudd's ex-wife in the Custody Matter as well.  While the PPO was in place, Rudd showed up Meyers' children's soccer game and appeared within Meyers' sight, causing her to fear for both her and her children's safety. Meyers then requested that McLean seek enforcement of the PPO against Rudd. Prior to the hearing on the issue of enforcement of the PPO seeking contempt, Baar and McLean met with Rudd and engaged in settlement discussions, with the goal of getting the Custody and PPO matters resolved.

4

Eventually, the PPO matter was resolved, and Meyers and McLean got out of the Custody Matter. Two years later, Rudd filed this case. All issues in this case are disputed. Rudd's Complaint fails to plead and/or establish many critical elements of each of Rudd's claims, and Rudd uses conclusions to support other elements; thus, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), and 12(c). It should also be dismissed pursuant to Rule 56 re: expiration of statute of limitations. The Bolhouse Defendants have raised several affirmative defenses including but not limited to: litigation privilege, failure to state a claim, statute of limitations, res judicata, issue preclusion/claim preclusion, the Bolhouse Defendants are not state actors/claims do not apply to Bolhouse Defendants, failure to mitigate, doctrine of unclean hands, and collateral estoppel.

**5. Prospects of Settlement:** There have not yet been any settlement negotiations.

> **Plaintiff:** Plaintiff Rudd seeks damages which include: compensatory damages (economic and non-economic), exemplary damages, and punitive damages. Plaintiff also seeks an award of interest, costs and attorney fees.  Economic losses are estimated to range from $240,000 to $510,000.  Plaintiff is unable provide a useful estimate regarding non-economic, exemplary and punitive damages.  Plaintiff believes that prospects of settlement are hindered by the nature of the misconduct which is alleged against government officials.  Some individual defendant may have varying levels of liability, but individual settlements may be discouraged by pressure to maintain a unified defense. Plaintiff is concerned that there may be some areas of conflicted interest in group representation.  For instance, Attorney McLean represents her own interests as a party/witness while simultaneously acting as counsel for her law firm, and for Joel Baar who is no longer with the firm.
>
> **All Defendants:** All Defendants are in agreement and do not believe that there is a possibility of settlement.

**6. Pendent State Claims:**

> At this time, the following pendent state claims have not been dismissed: Malicious Prosecution, Abuse of Process, and Intentional Infliction of Emotional Distress.  The claims arise from the same set of facts as the constitutional claims. Plaintiff acknowledges that some of these claims will be dismissed as it pertains to some of the defendants (including the City and individuals sued in their official capacity).  Plaintiff intends to clarify further when moving for leave to file his first amended complaint.
>
> **Objections By the Bolhouse Law Defendants:**  Plaintiff's Complaint fails to plead and/or establish many critical elements of each of his claims, and he uses conclusions to support other elements; thus, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), and 12(c). It should also be dismissed pursuant to Rule 56 re: expiration of statute of limitations. The Bolhouse Defendants have raised several affirmative defenses

including but not limited to: litigation privilege, failure to state a claim, statute of limitations, res judicata, issue preclusion/claim preclusion, the Bolhouse Defendants are not state actors/claims do not apply to Bolhouse Defendants, failure to mitigate, doctrine of unclean hands, and collateral estoppel.

**Objections By Defendant Melissa Meyers:  Defendant Melissa Meyers concurs with the Bolhouse Law Defendants' statement in this section.**

### 7. Joinder of Parties and Amendment of Pleadings:

**Plaintiff:** believes that the deadline for amendment and joinder should be December 14, 2018. This suit involves complex claims with conspiracy elements.  For example, Plaintiff's original complaint alleged that F/Lt. Chris McIntire of the Michigan State Police played an important role in this conspiracy. On 8/8/18, McIntire was dismissed from the suit because Plaintiff had not adequately plead McIntire's retaliatory acts or participation in the conspiracy. Plaintiff is preparing an amended complaint presents a more thorough factual basis for the claims against McIntire and the other Defendants.  Some of these facts are supported by public documents which have only recently been released. Per the obligations set forth under Rule 11(b) Plaintiff, a non-lawyer who cannot afford to hire an attorney, is striving to ensure that every claim is asserted in good-faith after diligent inquiry.

As there has been not yet been any opportunity for discovery, and no deadline for amendment has been set, Plaintiff believes that further opportunity for amendment, by leave of the court is reasonable.  Defendants will have opportunity to challenge the viability of claims asserted, and identify any possible prejudice, prior to the Court's determination on granting leave to amend.  At this early stage of the proceedings, there would be ample time for Defendants to engage in further discovery and/or to file dispositive motions regarding any added claims added by leave of the Court.

**All Defendants:** The Defendants are in agreement and oppose any further amendment or joinder.

### 8. Disclosures and Exchanges:

(**a) The parties propose the following schedule for Rule 26(a)(1) disclosures:**

Plaintiff's initial disclosures to Defendants by October 13, 2018.
Defendant's initial disclosures to Plaintiff by November 13, 2018.

**(b) & (c) Expert Witness Disclosures and Reports:**

**Plaintiff:**  if expert testimony is required, expert disclosures should occur and written reports (if deemed necessary) at least 90 days before trial.  As the facts of the case develop, the parties may need to seek further agreements or judicial rulings on this matter.

**Norton Shores Defendants:** The Norton Shores defendants do not see the need for expert witnesses in this lawsuit.

**Bolhouse Law Defendants:** Plaintiff has placed his mental health into controversy with his claim that McLean intentionally inflicted emotional distress. Thus, a mental health expert may be needed to dispute that any damages support Plaintiff's claim after a review of Plaintiff's medical and mental health records and after psychological testing of Plaintiff. As the case develops, the Bolhouse Defendants believe that an exchange of expert reports pursuant to Rule 26(a)(2) would be appropriate.

**Defendant Melissa Meyers**: Defendant Melissa Meyers concurs with the Bolhouse Law Defendants' statement in this section.

## (d) The parties have agreed to make available the following documents without the need of a formal request for production:

The parties are unable to agree on voluntary production of documents at this time. The Bolhouse Defendants state that practically all of the documents that Plaintiff would seek would be protected by attorney-client privilege or by doctrine of attorney-work product, and so the Court will need to weigh in on the extent of further discovery.

## 9. Discovery: The parties believe that all discovery proceedings can be completed by March 15, 2019. The parties recommend the following discovery plan:

The parties generally recommend the following discovery plan: The parties will engage in fact discovery where they will explore claims and defenses. Unless otherwise ordered by the Court for good cause the parties will adhere to the presumptive discovery limitations as set forth in FED. R. CIV. P. 30(d):   Interrogatories will be limited to 25 per party, including subparts; discovery depositions will be limited to no more than 10 per side; the length of depositions should be limited to 1 day of seven hours.

If a party wishes to expand the number of interrogatories allowable under Fed. R. Civ. P 33(a)(1), the number of depositions allowable under Fed. R. Civ. P. 30(a)(2)(A)(i), or the duration of a deposition under Fed. R. Civ. P. 30(d)(1), the parties will first endeavor to resolve the matter in good faith prior to seeking leave of the Court.

It may be desirable to schedule another conference and/or revisit the discovery plan in the following circumstances:
(a) a claim or claims are added or dismissed from the suit.
(b) a party or parties are joined or dismissed from the suit.
(c) when Plaintiff retains counsel.
(d) after determinations on dispositive motions are resolved.

The Parties specifically identify the following areas of discovery which are anticipated at this time while reserve the right to discover material and/or testimony relating to the other relevant subject areas that may arise during the discovery period.

7

**Plaintiff:** seeks to identify information and facts which establish or lead to admissible evidence regarding: The claims and defenses set forth by each defendant (including questions related to various forms of state and federal immunity); shared conspiratorial objectives, concerted action, malice, lack of mistake, common plan or scheme, conduct which forms a discernable pattern (as opposed to parallel conduct or coincidence); Defendants' treatment of similar circumstances and/or similarly situated individuals; training, policies, and customs of the NSPD; the identification of witnesses or evidence pertaining to the controversy; representations and statements offered to others in regard to Plaintiff or the circumstances of this suit.

**Bolhouse Law Defendants:** The Bolhouse Defendant seek evidence in support of their defenses in this case, evidence that shows that Plaintiff has not been damaged in any way; evidence to impeach Plaintiff or any of his witnesses, and evidence which contradicts Plaintiff's claims. Also, the "evidence" that Plaintiff seeks does not exist, because the claims are not supported factually or legally. The Bolhouse Defendants state that practically all of the documents that Plaintiff would seek would be protected by attorney-client privilege or by doctrine of attorney-work product, and so the Court will need to weigh in on the extent of further discovery.

**Defendant Melissa Meyers:** Melissa Meyers seeks evidence in support of her defenses in this case, evidence that shows that Plaintiff has not been damaged in any way; evidence to impeach Plaintiff or any of his witnesses, and evidence which contradicts Plaintiff's claims. Also, the "evidence" that Plaintiff seeks does not exist, because the claims are not supported factually or legally. Meyers also states that practically all of the documents that Plaintiff would seek would be protected by attorney-client privilege or by doctrine of attorney-work product, and so the Court will need to weigh in on the extent of further discovery.

**Norton Shores Defendants: It is the understanding of Norton Shores Defendants that all Defendants are going to be filing separate Rule 12 Motions to Dismiss soon. It is recommended that discovery be stayed until such time that those motions are decided by the Court.  Otherwise, Norton Shores Defendants agree with the scope of discovery needed as set forth by the Bolhouse Law Defendants.**

**10. Disclosure or Discovery of Electronically Stored Information:** The parties have discussed the production of electronically stored information and believe that an Order Relating to the Discovery of Electronically Stored Information is likely to be necessary.  The Bolhouse Defendants will need a protective order as much if not all of the information that Plaintiff seeks will be subject to privilege or the doctrine of attorney work product.

**The parties agree that:**

(a) ESI to be preserved is likely to include certain emails, other forms of electronic communication, and other types of digital records which relate to the subject matter of the suit.
(b) the parties may utilize experts in the field of search and production of ESI for developing the terms and proposed ESI production protocols.
(c) The parties will confer in good faith regarding ESI protocols and the format in which ESI will be produced.
(d) If the parties are unable to reach an agreement the matter will be submitted to the court as allowed by the court rules.

**11. Assertion of Claims of Privilege or Work−Product Immunity After Production:**

**The Parties Generally Agree to the Following:**
In the event any party asserts that any item subject to claims of privilege or work product immunity was inadvertently produced during discovery, the party making such claim shall promptly notify counsel for all other parties.  The party then asserting such inadvertent disclosure shall then , absent an agreement with the other parties, file an appropriate motion with the court within 30 days of discovery.  Until the passing of said 30 days, and an Order entered by the court if a motion has timely been filed, all other parties shall sequester and shall not further propagate, release or otherwise disclose the item(s) claimed to have been inadvertently disclosed.

The Bolhouse Defendants and Attorney Meyers state that practically all of the documents that Plaintiff would seek would be protected by attorney-client privilege or by doctrine of attorney-work product, and so the Court will need to weigh in on the extent of further discovery.

**12. Motions:** The parties acknowledge that W.D. Mich. LCivR 7.1(d) requires the moving party to ascertain whether the motion will be opposed, and in the case of all nondispositive motions, counsel or pro se parties involved in the dispute shall confer in a good−faith effort to resolve the dispute. In addition, all non-dispositive motions shall be accompanied by a separately filed certificate.

All parties anticipate filing dispositive motions.  The parties anticipate that all rule 56 motions will be filed by30 days after the close of discovery.

**13. Alternative Dispute Resolution:** In the interest of conserving judicial resources, the parties acknowledge that the Court will require the parties to participate in some form of Alternative Dispute Resolution.

**Norton Shores Defendants:**  The Norton Shores defendants believe this is the unusual case in which ADR should not be ordered

>**Plaintiff:** This case has unique circumstances which make all forms of ADR undesirable. Plaintiff does not believe ADR would be productive, especially at this point in the litigation. It is possible that some form of ADR should be considered at a future point in the litigation when claims have been narrowed and/or developed further AND after Plaintiff has obtained representation.
>
>**Defendant Melissa Meyers:** Mrs. Meyers believes this is the unusual case in which ADR should not be ordered.
>
>**Bolhouse Law Defendants:** The Bolhouse Defendant will participate in ADR in the form voluntary facilitative mediation if the Court deems it appropriate and so orders it, but they do not believe that it will be beneficial in this case.

**14. Length of Trial:** Counsel estimates the trial will last approximately 8 days total, allocated as follows: 4 days for Plaintiff's case, and 4 days for Defendant's case.

**15. Electronic Document Filing System:** The parties acknowledge that Local Civil Rule 5.7(a) requires attorneys to file and serve all documents electronically, by means of the Court's CM/ECF system, unless the attorney has been specifically exempted by the Court for cause or a particular document is not eligible for electronic filing under the rule. The Court expects all counsel to abide by the requirements of this rule. Plaintiff has been granted e-filing privileges and paper service to Plaintiff is not required per this Court's order (ECF No. 22).

**16. Other:** Set forth any special characteristics that may warrant extended discovery, accelerated disposition by motion, or other factors relevant to the case.

The undersigned have conferred in good faith and approved the foregoing report.

Dated: September 10, 2018                   /s/ Daniel W. Rudd
                                            Plaintiff (Pro Se)
                                            daniel@stock20.com

Dated: September 10, 2018                   /s/ Michelle M. McLean
                                            Michelle M. McLean  (P71393)
                                            Attorney for Defendants M. McLean
                                            J. Baar & Bolhouse, Hofstee & McLean PC
                                            michellem@bolhouselaw.com

Dated: September 10, 2018                   /s/ Robert A. Callahan
                                            Robert A. Callahan  (P47600)
                                            Attorney for Defendants City of Norton
                                            Shores, Mayor Nelund, Jon Gale, Shaw
                                            Rhyndress, Wassilewski, Mark Meyers,
                                            Douglas Hughes and William Hughes
                                            rcallahan@plunkettcooney.com

Dated: September 10, 2018                   /s/ Steven Daniel Schultz
                                            Steven Daniel Schultz (P63177)
                                            Attorney for Defendants Melissa Meyers
                                            sschultz@tanisschultz.com