UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL W. RUDD,

     Plaintiff,

v.

CITY OF NORTON SHORES,
MAYOR GARY NELUND, MARK MEYERS,
DANIEL SHAW, MATTHEW RHYNDRESS,
MICHAEL WASILEWSKI, JON GALE,
CHRIS MCINTIRE, MELISSA MEYERS,
MICHELLE MCLEAN, JOEL BAAR,
BOLHOUSE, BAAR & HOFSTEE PC.,
WILLIAM HUGHES PLLC, DOUGLAS
HUGHES,

     Defendants.

Case No. 1:18-cv-124

HON.  GORDON J. QUIST/KENT
MAG. JUDGE RAY KENT

**Defendants The City of Norton Shores, Mayor Gary Nelund, Police Chief Daniel Shaw, Sergeant Matthew Ryhndress, Officer Michael Wasilewski, Mark Meyers, Attorney Douglas Hughes, and William Hughes PLLC's Brief in Support of Motion for Judgment on the Pleadings**

_____

Daniel W. Rudd (Pro Se)
201 S. Lake Ave
Spring Lake, Michigan   49456
(231-557-2532)
daniel@stock20.com

Steven Daniel Schultz (P63177
Attorney for Melissa Meyers
TANIS SCHULTZ PLLC
85 Campau Ave. NW, Ste 305
Grand Rapids, Michigan  49503-2611
(616-608-7149)
sschultz@tanisschultz.com

Richard L. Bolhouse (P29357)
Attorney for Defendants
M. Mclean, J. Baar,  and Bolhouse, Hofstee &
Mclean
BOLHOUSE, HOFSTEE & McLEAN PC
3996 Chicago Drive, SW
Grandville, Michigan  49418
(616-531-7711)
rickb@bolhouselaw.com
sallyr@bolhouselaw.com

Michael S. Bogren (P34835)
Robert A. Callahan  (P47600)
Attorneys for Defendants
City of Norton Shores, Mayor Nelund, Jon
Gale, Shaw, Rhyndress, Wasilewski, Mark
Meyers, Douglas Hughes and William Hughes
PLUNKETT COONEY
950 Trade Centre Way, Suite 310
Kalamazoo, Michigan   49002
(269-226-8822)
mbogren@plunkettcooney.com
rcallahan@plunkettcooney.com

Rock Wood (P41181)
Sarah R. Robbins (P81944)
Attorneys for Defendant Chris McIntire
Michigan Dept. of Attorney General
P.O. Box 30736
Lansing, Michigan  48909
(517-373-6434)
Woodr5@michigan.gov
albrol@michigan.gov
schuellerT@michigan.gov

1

**DEFENDANTS THE CITY OF NORTON SHORES,
MAYOR GARY NELUND, POLICE CHIEF DANIEL SHAW,
SERGEANT MATTHEW RHYNDRESS, OFFICER MICHAEL WASILEWSKI,
MARK MEYERS, ATTORNEY DOUGLAS HUGHES, AND
WILLIAM HUGHES, PLLC'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE
PLEADINGS**

**STATEMENT OF FACTS**

The Court has set forth a detailed recitation of the facts alleged in plaintiff's Complaint in ruling on Lt. McIntire's motion to dismiss. *Rudd v. City of Norton Shores*, No. 1:18-CV-124, 2018 WL 3751399, at *1 (W.D. Mich. Aug. 8, 2018).

The following paragraphs in the Complaint address the plaintiff's claims of conspiracy. To the extent there are factual allegations – as opposed to legal conclusions, speculation or conjecture – the factual allegations must be accepted as true for purposes of this motion.

> **This case is about a coordinated effort** by the Norton Shores Police Department and City Government, to retaliate against a vulnerable citizen who alleged misconduct by police officers, criticized department policy, and alleged some of these individuals had broken the law. (¶ 1).

> Attorney Melissa Meyers has represented the opposing party (non-custodial mother) in plaintiff's child custody proceedings for many years. During this time, Melissa Meyers has relentlessly accused plaintiff of criminal activity without any support for these allegations. At all relevant times, Melissa Meyers has been married to the city manager of Norton Shores. Attorney Melissa Meyers is **a private actor who conspired with** the Norton Shores Defendants to injure plaintiff under color of state law. (¶ 4).

> Mark Meyers has been employed as the Norton Shores city manager for many years. He is one of the highest city executives with substantial authority over employment determinations which impact Norton Shores Police officers. **Mark Meyers is the husband of Melissa Meyers**. (¶ 5).

> At all relevant times, Officer Michael Wassilewski was an officer of the Norton Shores Police Department and **maintained a personal relationship with Melissa Meyers** and Mark Meyers. (¶ 6).

At all relevant times, Sergeant Matthew Rhyndress was a supervisory police officer for the City of Norton Shores and **maintained a personal relationship with Melissa Meyers and Mark Meyers**. When Sergeant Rhyndress testified against plaintiff in October 2013, he failed to disclose that Melissa Meyers was representing him in his own contentious divorce proceedings (which included a similar PPO requests against the opposing party in that case). (¶ 7).

At all relevant times, Gary Nelund was the Mayor of Norton Shores. Mr. Nelund **participated in the conspiracy** of various points and did not take remedial action upon becoming aware of constitutional violations. (¶ 10).

The City of Norton Shores is a Michigan municipality responsible for the proper training and discipline of the Norton Shores Police officers. The misconduct alleged herein reflects customs and policies adopted or tacitly approved by the city government. Plaintiff also alleges that the highest ranking **Norton Shores officials conspired together with private actors to retaliate against plaintiff**. Government resources, authority, and influence were used to further a conspiracy to retaliate and silence plaintiff. Accordingly, the City of Norton Shores is liable for damages. (¶ 12).

Attorney Michelle McLean substituted into plaintiff's custody proceedings in 2014. She was fully aware of an extensive body of evidence which contracted [sic] the false allegations against plaintiff. In spite of this knowledge, **Attorney McLean conspired with the other defendants** to retaliate against plaintiff, abuse legal process and institute a baseless prosecution of criminal contempt proceedings against plaintiff. Attorney McLean was a partner with the firm "Bolhouse, Baar & Hofstee, P.C." out of Grandville, MI. Attorney Melissa Meyers was hired into this firm at some point in 2014. (¶ 14).

At all relevant times, Attorney Joel Baar was a senior and managing partner of Bolhouse, Baar & Hofstee, PC. Attorney Baar became involved in the prosecution of criminal contempt against plaintiff and **participated in the conspiracy** even after it became clear that the legal action was unwarranted and unjust. (¶ 15).

In July of 2013, plaintiff, Daniel W. Rudd requested assistance from the Norton Shores Police Department. (¶ 18).

The NSPD refused to take reasonable steps which could have quickly diffused a dangerous and traumatic situation. They refused to conduct the investigation and complete a report which is required by MCL 764.15c. (¶ 23).

It also became apparent that the mother's attorney [Melissa Meyers] was helping the mother draft extortionate messages (demanding specific legal

concessions before the children would be returned or even allowed to speak on the phone). (¶ 24).

Plaintiff had accused a prominent attorney, Melissa Meyers, of intentionally placing innocent children in a dangerous situation for the purpose of illegal extorting a more favorable custody agreement. **3 of the officers involved had a personal relationship with the attorney**. **She was also the wife of the city manager** (highest ranking Norton Shores executive). (¶ 26b).

Upon information and belief, Mark Meyers (city manager), Chief Daniel Shaw, and supervising officer Matthew Rhyndress **conspired together** to chill plaintiff's petitioning activity. (¶ 27).
From July-November of 2013, substantial NSPD **resources were deployed to support the efforts of Melissa Meyers** in alleging that plaintiff had been stalking and harassing her. (¶ 32).

Officer Wassileski and officer Rhyndress falsified their reports by excluding all mention of the risk factors which had been credibly presented to the department. This was a deliberate effort to cover up the department's failure to comply with statutory requirements regarding complaints involving domestic violence. This also **served to cover up the participation of their friend, Melissa Meyers, in a custodial abduction** for the purpose of extorting a more favorable custody agreement. (¶ 33).

Officer Rhyndress created a "supplemental report" which fabricates critical details to **support of the false narrative created by Melissa Meyers**. For example, Sergeant Rhyndress claimed that plaintiff had announced his intention to use his vehicle to "block" people from leaving the Meyers home. This was completely false and contrary to any logical interpretation of the facts. The intent was to portray plaintiff as a dangerous vigilante. However, the documented actions of the NSPD officers demonstrates that they had ZERO concern that plaintiff actually posed any risk to anyone. (¶ 34).

In October of 2013, Chief Daniel Shaw sent an e-mail to a subordinate officer authorizing the disclosure of LEIN information to Mark Meyers **for the sole purpose of assisting Melissa Meyers** in her efforts to portray plaintiff as a dangerous stalker. (¶ 36).

In spite of the **substantial help which she received from the Norton Shores Police Department**, Melissa Meyers did not establish by evidence that ANY of her false claims of stalking/harassment were true. (¶ 40).

In December of 2013, the **Norton Shores Police Department assisted Melissa Meyers** in her efforts to initiate frivolous criminal contempt proceedings against plaintiff in December of 2013. This was simply intended to harass plaintiff and create leverage in the custody proceedings. (¶ 41).

Chief Gale met with plaintiff in his office for approximately an hour and fifteen minutes on 7/23/15 to discuss the complaint. (¶53).

At the time of this meeting 7/23/15, **Chief Gale had already begun collaborating with Mark Meyers, Melissa Meyers, Mayor Gary Nelund**, and the other Norton Shores defendants to prevent plaintiff from seeking or obtaining relief in state or federal court. (¶ 54).

Although Chief Gale's sworn affidavit (Exhibit B) describes a long-standing policy of keeping citizen complaints strictly confidential (to prevent a chilling effect upon complainants) Chief Gale <u>immediately</u> circulated copies of plaintiff's 7/20/15 complaint among the civilians **which plaintiff had named as the primary conspirators** (Mark Meyers, Melissa Meyers & Daniel Shaw).   Chief Gale did before taking <u>any</u> steps to objectively investigate the claims afforded by plaintiff.  This precluded any opportunity for a meaningful investigation to occur. (¶ 55).

Immediately after receiving it, Chief Gale provided Mark and Melissa Meyers with plaintiff's complaint, **Melissa Meyers began conspiring with her client** (non-custodial mother) to engineer a "PPO violation" by plaintiff.  An ambush was planned for a soccer tournament where plaintiff would be coaching his children's teams. (¶ 57).

On July 28, 2015 Melissa Meyers contacted plaintiff's attorney and alleged a criminal violation of the PPO due to plaintiff's actions at a youth soccer tournament. (¶ 59).

The message repeatedly conveys that **Melissa Meyers is primarily motivated** by the fact that plaintiff had complained to the Norton Shores Police Department on 7/20/15:

"Mr. Rudd has recently brought up issues from the past involving the events surrounding the issuance of my PPO against Mr. Rudd.  He has made false, defamatory comments again about myself and my husband in a clear attempt to get my husband, the former police chief and Norton Shores Police department into some sort trouble.  In doing so he has renewed my concerns about his behavior and intent with regard to myself, my children and my husband." (¶ 66).

**Melissa Meyers then began conspiring with attorney Michelle McLean** to fraudulently obtain a court order authorizing the Norton Shores Police Department to enter a Stalking/PPO record into the LEIN database. (¶ 70).
Chief Gale, Attorney McLean, Attorney Meyers, and the NSPD LEIN operator where all fully aware of the statutory requirements for entering a stalking/ppo record into the LEIN database.  That is why defendants Mclean

and Meyers submitted a petition to Judge Pittman asking for such an order to be entered. (¶ 76).

Both of Michelle McLean's motions provided a proposed order which included the required components.  They requested that Judge Pittman would immediately enter the order because this was the <u>only way</u> that such an entry could be permitted. (¶ 77).

A few days later (8/28/15), the Norton Shores Police Department decided to enter the stalking/PPO record into the LEIN database without a **valid** court order. (¶ 79).

**Attorney Melissa Meyers and Attorney Michelle Mclean continued to use** the fraudulent Stalking/PPO as leverage in plaintiff's custody proceedings AND as a vehicle to intimidate plaintiff from bringing an action against the City of Norton Shores in federal court. (¶ 83).

Plaintiff received Judge Pittman's order authorized criminal contempt proceedings on 11/5/15.  On the same day, Attorney Douglas Hughes and his staff began sending plaintiff numerous copies of a threatening letter (emphasis added):

RE:  Mark Meyers

Dear Mr. Rudd

This office represents the City of Norton Shores.  **Their Mayor has asked us to monitor your conduct and behavior as it relates to the employment of Mark Meyers** as the City Administrator for the City of Norton Shores.

We have information that leads us to believe that you have made serious defamatory and disparaging remarks about Mr. Meyers, as well as other members of the Norton Shores Police Department.  **Please treat this letter as a notice to you that we will take whatever action is legally necessary to protect the professional and privacy rights of Mr. Meyers.**

**You are to cease and desist from any further contact or conversation with him.  Also be mindful that the statements you make to others about Mr. Meyers,** [sic] If you have had hired legal counsel, please make a copy of this letter and give it to that individual and instruct him to contact me.
Sincerely, Douglas M. Hughes, City Attorney for the City of Norton Shores  (¶ 87).

After receiving a third copy of the letter on 11/7/15, plaintiff responded to Mr. Hughes, advising that he (plaintiff) had not <u>ever</u> had contact with or conversation with Mark Meyers.  That that being the case, plaintiff advised

that the misinformed and vague statements in the letter were coming across intimidating. (¶ 89).

Mr. Hughes responded by promptly sending another vague and ominous message:

**Doug Hughes**                                      **Sat. Nov 7, 2015 @ 9:20 PM**

**To:  Daniel Rudd**

**Good.  Stay away from the Meyer's and we will get along just fine.  Take Care (¶ 91).**

Doug Hughes sent the above response to plaintiff at 9:30pm on a Saturday night (11/7/15).  Doug Hughes proceeded <u>immediately</u> forward Chief Gale a copy of the message indicating plaintiff (Daniel Rudd) felt intimidated. Commenting on plaintiff's message Doug Hughes wrote to Chief Gale(9:23pm 11/7/15):

"Check this out.  I will share w mark tomorrow.  I told Daniel, good, stay away from The Meyer's and he and will get along just fine."  (sic) (¶ 92).

Attorneys Baar and McLean repeatedly indicated that plaintiff could avoid incarceration by agreeing that he would no longer engage in "conduct" which was "concerning" to Melissa Meyers and Mark Meyers – specifically referring to plaintiff's 7/20/15 complaint and corresponding FOIA requests. (¶ 94).

Mr. Baar specifically stated that they were looking for an agreement that plaintiff would not take "any action" against Mark Meyers or Melissa Meyers. Attorney Mclean specifically asked plaintiff if he was willing to "stop going to the city." (¶ 95).

Attorneys Mclean and Baar disagreed and advised that Police Chief Jon Gale, First Lieutenant Chris McIntire (Michigan State Police), Attorney Doug Hughes and city manager Mark Meyers were outside in the hall and prepared to testify that plaintiff had been engaging in very concerning behavior.  These attorneys knew that there false allegations could damage plaintiff's credibility before Judge Pittman, who also presided over plaintiff's custody case. (¶ 97).

Throughout the meeting, attorneys Baar and Mclean repeatedly attempted to coerce plaintiff into dropping any complaints against the City of Norton Shores. (¶ 100).

Attorney Doug Hughes, Chief Gale, City Manager Mark Meyers, and Lt. Christ (sic.) McIntire all appeared at the hearing.  Their presence alone sent a strong

message to plaintiff, confirming their unified commitment to damage, intimidate, and silence plaintiff: (¶ 101).

If Plaintiff's complaints of criminal activity, or plaintiff's requests for police intervention were not brought in good faith, the department should have sought charges with the prosecutor for submitting false reports.  Instead the **Norton Shores defendants conspired with the private actors** to launch a subversive collateral assault on plaintiff's ability to protect his children in family court and protect his constitutional rights in federal proceedings. (¶ 108).

Further facts, if necessary, will be added in the Argument portion of the Brief.

## STANDARD OF REVIEW

A complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 103 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.* at 555; *Ashcroft v. Iqbal*, 556 U. S. 662, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 678, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'—'that the

pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2) ). *Rudd v. City of Norton Shores*, No. 1:18-CV-124, 2018 WL 3751399, at *3 (W.D. Mich. Aug. 8, 2018).

## ARGUMENT

**I. THE PLAINTIFF'S COMPLAINT FAILS TO SET FORTH SUFFICIENT FACTS TO MAKE OUT A CONSPIRACY TO RETALIATE AGAINST PLAINTIFF FOR EXERCISING HIS FIRST AMENDMENT RIGHTS AS A MATTER OF LAW.**

In order to state a claim for a § 1983 violation, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254–55 (1988). For purposes of this motion the defendants will concede they were acting under color of law in their dealings with plaintiff..

As this Court observed, Rudd has pled all of his § 1983 claims—denial of access to the courts, First Amendment retaliation, malicious prosecution, and abuse of process—as conspiracy claims. "'A civil conspiracy under § 1983 is 'an agreement between two or more persons to injure another by unlawful action.'" *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007) ). "It is well-settled that conspiracy claims must be pled with some degree of specificity and **that vague and conclusory allegations unsupported by material facts will not be sufficient** to state such a claim under § 1983." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (emphasis added)(quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). "To establish a conspiracy claim, Rudd must show 'that there was a single plan, that the alleged coconspirator[s] shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy.' *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d

9

556, 563 (6th Cir. 2011) (quoting *Spadafore*, 330 F.3d at 854)." *Rudd v. City of Norton Shores*, No. 1:18-CV-124, 2018 WL 3751399, at *4 (W.D. Mich. Aug. 8, 2018).

Addressing the claims against Lt. McIntire, the Court ruled they failed "because they are based on nothing more than conclusory allegations that McIntire and the other Defendants conspired to violate Rudd's constitutional rights. In other words, Rudd fails to allege facts showing a single plan or that McIntire and the other Defendants shared the same general conspiratorial objective." *Id.* at *5. The same fatal flaw is present in the plaintiff's conspiracy claims against these defendants: there are no facts "showing a single plan" or demonstrating that these defendants and the other remaining defendants – Melissa Meyers, Michelle McLean and Joel Baar (the attorneys who represented plaintiff's ex-wife in the custody dispute) – "shared the same general conspiratorial objective" of depriving Rudd of his constitutional rights.

Since the Court has dismissed the conspiracy claims for denial of access to the courts, malicious prosecution and abuse of process, the only federal claim remaining is that the defendants conspired with Melissa Meyers, Michelle McLean and Joel Baar (the attorneys who represented plaintiff's ex-wife in the custody dispute) to retaliate against Rudd for exercising his First Amendment rights. The Complaint simply does not plead sufficient facts to allow this claim to go forward.

Plaintiff alleges "the highest-ranking Norton Shores officials conspired together with private actors to retaliate against plaintiff. Government resources, authority, and influence were used to further a conspiracy to retaliate and silence plaintiff." (Complaint, ¶ 12). This allegation contains no actual facts and fails to meet the pleading standard that a § 1983 civil conspiracy requires. The Sixth Circuit rejected similar conclusory allegations in

*Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563–564 (6th Cir. 2011): "The only paragraph in which Heyne discusses conspiracy is vague and consists primarily of legal conclusions: 'Defendants have conspired among themselves and with others unnamed in the [MNPS] system to knowingly and intentionally deny [Heyne]'s constitutional rights. They have also conspired with D.A.'s parents to support D.A.'s claim against the Heynes' insurance carrier for compensation.' We need not accept these legal conclusions as true, and we decline to do so."

Once the conclusory assertions and subjective speculation are discounted the only actual facts the plaintiff alleges against the Norton Shores defendants are these:

- The Norton Shores City Manager, Mark Meyers, is married to Melissa Meyers, the attorney who represented the plaintiff's ex-wife in the custody dispute.

- Norton Shores Police Officer Michael Wasilewski had a personal relationship with Melissa Meyers.

- Norton Shores Police Sergeant Matthew Rhyndress had a personal relationship with Melissa Meyers and Mark Meyers and was represented by Melissa Meyers in his own divorce proceedings.

- In July 2013 plaintiff requested assistance from the Norton Shores Police Department to recover his children from their mother (his ex-wife) but his request was refused.

- Wasileski and Rhyndress prepared police reports that contained false or inaccurate descriptions of plaintiff's conduct.

- In October 2013, Chief Daniel Shaw sent an e-mail to a subordinate officer authorizing the disclosure of LEIN information to Mark Meyers. [Notably absent is any allegation of what the substance of that LEIN information was or whether it was actually disclosed.]

- Two years later, in July 2015, Chief Gale met with plaintiff to discuss plaintiff's concerns about the NSPD's response to the July 2013 incident.

- Following the meeting Chief Gale provided a copy of plaintiff's written complaint to Mark Meyers, Melissa Meyers and Dan Shaw.

- Attorney Michelle McLean obtained a PPO against plaintiff on behalf of Melissa Meyers.

- The Norton Shores Police Department entered the PPO into the LEIN.

- On November 5, 2015 the City Attorney sent plaintiff an e-mail expressing concern about plaintiff's behavior toward Mark Meyers and stating "we will take whatever action is legally necessary to protect the professional and privacy rights of Mr. Meyers." The message further stated plaintiff should send a copy of the e-mail to his attorney if he was represented.

- When plaintiff responded he had no previous contact with Mr. Meyers, Mr. Hughes responded: "Good.  Stay away from the Meyer's and we will get along just fine.  Take Care"

- Defendant Baar allegedly told plaintiff that they were looking for an agreement that plaintiff would not take "any action" against Mark Meyers or Melissa Meyers.  Attorney Mclean allegedly asked plaintiff if he was willing to "stop going to the city."

- Attorney Doug Hughes, Chief Gale, City Manager Mark Meyers, and Lt. McIntire were all present at the courthouse on the day of the criminal contempt hearing (which resulted in a ruling in plaintiff's favor).

Simply put, while the plaintiff's Complaint is littered with a plethora of speculation, innuendo and subjective musings, nowhere is there a single factual allegation showing the defendants agreed to "a single plan" to retaliate against plaintiff or that the defendants "shared the same general conspiratorial objective." In spite of the fact that this entire litigation arises from a state court child custody dispute, plaintiff completely disregards that as the basis for his interactions with Attorneys Meyers, McLain and Baar. Instead, plaintiff attributes "a single plan" to these attorneys and the Norton Shores defendants to retaliate against him for exercising his First Amendment rights. The hubris this exhibits is stunning. As this Court stated in dismissing the claims against Lt. McIntire: "In short, Rudd alleges, at most, parallel conduct that *could* be consistent with an agreement but is insufficient to state a claim because it 'was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed ... behavior.' *Iqbal*, 556 U.S. at 680." *Rudd v. City of Norton Shores*, No. 1:18-CV-124, 2018 WL 3751399, at *5 (W.D. Mich. Aug. 8, 2018)

The only thread that connects the defendants is the fact that Mark Meyers, the City Manager, is married to Melissa Meyers. That gossamer string will not bear the weight of plaintiff's conspiracy theory. "While they need not produce direct evidence of a meeting of the minds, Appellants must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012). "A plaintiff fails to state an adequate claim if his allegations are premised upon mere conclusions and opinions.

*Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). A plaintiff must make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish the requisite 'meeting of the minds' essential to the existence of the conspiracy." *Coker v. Summit County Sheriff's Dep't*, 90 F. App'x 782, 789 (6th Cir. 2003).

Here, plaintiff offers nothing more than conclusions and opinions to claim there was a meeting of the minds among the alleged conspirators. All plaintiff has alleged is that a contentious custody dispute existed in which both parties went to the local law enforcement agency with complaints of criminal conduct. The coincidental fact is that the attorney for one of the parties was the spouse of the City Manager. Far more is needed to demonstrate a conspiracy even at the Rule 12 stage. The plaintiff's conspiracy claim fails as a matter of law.

## II.    PLAINTIFF'S CLAIMS OF ABUSE OF PROCESS, MALICIOUS PROSECUTION AND INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER STATE LAW FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff has asserted state law claims of abuse of process, malicious prosecution and intentional and negligent infliction of emotional distress. The plaintiff also makes, in the most conclusory terms possible, claims for conspiracy related to abuse of process and malicious prosecution. The plaintiff just broadly makes these claims without specifying particular allegations or even specific defendants:

"In exactly the same terms and against the same defendants in Count 4, Plaintiff also alleges a state law claim for abuse of process and conspiracy to abuse process." (¶ 134).

"In exactly the same terms and against the same defendants in Count 3, Plaintiff also alleges a state law claim for malicious prosecution and conspiracy to maliciously prosecute plaintiff." (¶ 135).

The claims for intentional infliction of emotional distress and negligent infliction of emotional distress are difficult to comprehend. It does not appear plaintiff is making a claim of intentional infliction of emotional distress against these defendants.

"Plaintiff alleges that Melissa Meyers and Michelle McLean intentionally inflicted emotional distress on plaintiff and others." (¶ 137).

The next paragraph of the Complaint contains what is presumably the basis for the claim of negligent infliction of emotional distress:

"Plaintiff alleges that the remaining defendants demonstrated gross negligence in violation of their statutory or official duties, resulting in severe emotional distress to plaintiff and others." (¶ 138).

Counts 5, 6 and 7 all fail to state a claim upon which relief can be granted against these defendants.

## A.  Abuse of Process

The elements of abuse of process are (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding. *Vallance v. Brewbaker,* 161 Mich. App. 642, 645, 411 N.W.2d 808 (1987). "A meritorious claim of abuse of process contemplates a situation where the defendant has availed himself of a proper legal procedure for a purpose collateral to the intended use of that procedure . . ." *Id.* In *Three Lakes Ass'n v. Whiting,* 75 Mich. App. 564, 569-575, 255 N.W.2d 686 (1977), the Court of Appeals held that abuse of process was properly pled by an allegation that the defendant offered to dismiss an action for damages if the plaintiff agreed to cease opposition to a condominium development project. "The ulterior purpose of stifling opposition was

collateral to the defendant's maintenance of a lawsuit for the recovery of damages as compensation." *Vallance v. Brewbaker*, 161 Mich. App. at 646.

Here the claim of abuse of process against these defendants fails as a matter of law because there is not even a whiff of an allegation any of these defendants utilized any legal process. The only legal process that is alleged in the Complaint arises out of the contested custody case. The attorneys and parties to that action utilized legal process – but none of these defendants did. That is fatal to plaintiff's claim and it must be dismissed.

### B.  Malicious Prosecution

"In maintaining a claim of malicious prosecution, a plaintiff bears the burden of proving that (1) the defendant has initiated a criminal prosecution against him, (2) the criminal proceedings terminated in his favor, (3) the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." Walsh v. Taylor, 263 Mich. App. 618, 632–633, 689 N.W.2d 506, (2004). The plaintiff's claim for malicious prosecution fails on the first element: none of these defendants caused a criminal prosecution to be initiated against plaintiff. In point of fact, the allegations in the Complaint reveal **there was no criminal prosecution of the plaintiff by anyone**. The lack of a criminal prosecution defeats plaintiff's claim as a matter of law.

### C.  State Law Conspiracy

As this Court stated:

Under Michigan law, "[a] conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means." *Fenestra Inc. v. Gulf Am. Land Corp.*, 377 Mich. 565, 593, 141 N.W.2d

36, 48 (1966) (citing *Veriden v. McLeod*, 180 Mich. 182, 146 N.W. 619 (1914)). A plaintiff must prove an agreement, or preconceived plan, to do the unlawful act. *Temborius v. Slatkin*, 157 Mich. App. 587, 600, 403 N.W.2d 821, 828 (1986). "[A]ll defendants [must have] acted tortiously pursuant to a common design that caused harm to the plaintiff." *Ubain v. Beierling*, 301 Mich. App. 114, 132, 835 N.W.2d 455, 463–64 (2013) (internal quotation marks omitted). "The gravamen of a conspiracy charge is not the combination between actors, **but the wrongful acts** causing damage." *LaMie v. Wright*, No. 1:12-cv-1299, 2014 WL 1686145, at *16 (W.D. Mich. Apr. 29, 2014) (citing *Coronet Dev. Co. v. FSW, Inc.*, 379 Mich. 302, 150 N.W.2d 809, 812 (1967) ).

*Rudd v. City of Norton Shores*, No. 1:18-CV-124, 2018 WL 3751399, at *7 (W.D. Mich. Aug. 8, 2018)(Emphasis added). Since the "gravamen of a conspiracy charge is not the combination between actors, **but the wrongful acts** causing damage," the underlying torts of abuse of process and malicious prosecution must be extant. As was just discussed, the plaintiff's claims against these defendants fail as a matter of law because: (1) none of these defendants employed or utilized any legal process, and (2) a criminal prosecution was never brought against plaintiff. Because the plaintiff has failed to allege facts establishing key elements of the underlying torts, the plaintiff's conspiracy claims also fail as a matter of law.

### D.  Negligent Infliction of Emotional Distress.

Plaintiff has asserted the intentional infliction of emotional distress claim only against Melissa Meyers and Michelle McLean. (¶ 137). ¶ 138 states: ""Plaintiff alleges that the remaining defendants demonstrated gross negligence in violation of their statutory or official duties, resulting in severe emotional distress to plaintiff and others." Plaintiff has attempted (apparently) to label this as a claim for negligent infliction of emotional distress. Once again, this Court has addressed this claim in ruling on Lt. McIntire's Rule 12 motion:

> The tort of negligent infliction of emotional distress is highly circumscribed under Michigan law. First, such claims are generally

17

"limited to 'situations involving the plaintiff's witnessing negligent injury to an immediate family member and suffering severe mental distress causing actual physical harm.' " *Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 634 (W.D. Mich. 2015) (quoting *Akbar v. City of Detroit*, No. 294610, 2011 WL 1485334, at *4 (Mich. Ct. App. Apr. 19, 2011) ); *see also Idemudia v. Consol. Rail Corp.*, 895 F. Supp. 162, 164–65 (E.D. Mich. 1995) (concluding that Michigan limits bystander recovery in negligent infliction cases to immediate family members). Second, the defendant's negligent conduct must cause emotional distress that produces a "definite and objective physical injury." *Maldonado v. Nat'l Acme Co.*, 73 F.3d 642, 645 (6th Cir. 1996) (citing *Daley v. LaCroix*, 384 Mich. 4, 12, 179 N.W.2d 390, 395 (1970)).

Rudd fails to allege facts supporting either requirement, and his allegations make clear that his claims did not involve him witnessing negligent injury to an immediate family member or experiencing emotional distress that produced a "definite and objective physical injury." Accordingly, this claim is properly dismissed.

*Rudd v. City of Norton Shores*, No. 1:18-CV-124, 2018 WL 3751399, at *7–8 (W.D. Mich. Aug. 8, 2018).

For the same reasons, the claim against these defendants fails as a matter of law.

## RELIEF REQUESTED

The defendants respectfully request the Court grant their motion for judgment on the pleadings pursuant to Rule 12(c) and enter an order dismissing with prejudice all of plaintiff's claims against these defendants.

18

Dated:  September 11, 2018                    Respectfully submitted,

                                             PLUNKETT COONEY


                                             By:   /s/ Robert A. Callahan
                                                    Michael S. Bogren  (P34835)
                                                    Robert A. Callahan (P47600)
                                                    Attorneys for Defendants City of Norton
                                                    Shores, Mayor Nelund, Jon Gale, Shaw,
                                                    Rhyndress, Wasilewski, Mark Meyers,
                                                    Douglas Hughes and William Hughes
                                                    950 Trade Centre Way, Suite 310
                                                    Kalamazoo, MI  49002
                                                    **Direct Dial:  269/226-8856**


**Open.00560.80616.20859214-1**