;

# Exhibit B

7/28/2015 Email Message from:
Melissa Meyers to Plaintiff's Attorneys
Attorneys Rachel Terpstra & Brianna Scott

---

**Declaration in Support of Plaintiff's 10/16/18 Repsonsive Brief  (ECF No. 72)**
Opposing Def. Rule 12(c) Motions  (ECF Nos. 53, 58, 60)

**From:** Melissa Meyers [mailto:melissam@bolhouselaw.com]
**Sent:** Tuesday, July 28, 2015 12:54 PM
**To:** Rachel L. Terpstra <rachel@ggtmlaw.com>
**Cc:** Michelle McLean <michellem@bolhouselaw.com>; Brianna T. Scott <Brianna@briannascott.com>
**Subject:**

Rachel,

I just wanted to send you a email to try and immediately resolve disturbing behaviors of Mr. Rudd that have recently come to be, without the necessity of police or court involvement.   The issue involves the current PPO I have against Mr. Rudd.

My daughters play on the same league as the Rudd children.  This is a fact of which Mr. Rudd is well aware.  By way of background on this last Saturday, the league hosted "Sand Storm", a soccer tournament which was played at Pier Marquette and was scheduled for both Saturday and Sunday with multiple games played each day.  This weekend was Mrs. Averill's parenting time, the Rudd children were playing and Andrea planned on bringing the boys to their games.  The game schedule presented in such a way that my girls played first thing in the am and continued until the end of the tournament day.  Their games began before and immediately after the Rudd children's <u>one</u> game.  Unexpectedly, Mr. Rudd appeared and was coaching the Rudd children.  Knowing the coach of the Rudd children's team personally, I asked if he was around for the game if necessary to coach.  He indicated that he was but that another parent was coaching that day for him and he planned on watching, but was available if necessary.

Upon seeing Mr. Rudd, Mr. Rudd was immediately informed of my presence and that of my family.  However, rather than leaving in compliance with the PPO, Mr. Rudd chose to stay.  Additionally, even after being informed of my presence, the Rudd game ending and the boys returning to the care of Andrea, Mr. Rudd lingered unnecessarialy after the game for quite a bit.  Mr. Rudd should have left immediately upon notification of my presence, or at the very least immediately after the game ended.

Mr. Rudd again appeared on Sunday completely disregarding the advanced knowledge that my family and I would be present.  Additionally, it appears the Rudd children and my girls have practices on the same days and times, at least this week and perhaps for the remainder of the soccer season.  My children and the Rudd children had practice yesterday evening at the same day and time and although his presence is not necessary and Mr. Rudd could leave, he failed to do so.  I will be at the girls practice tomorrow and for nearly every other into the future and as such, until this is sorted out request that Mr. Rudd allow Mrs. Averill to transport the children to practices, or if she is unavailable make arrangements to have his parents or girlfriend provide transportation such that he may remain in compliance with the PPO.

I want to be perfectly clear, I want no interaction with Mr. Rudd outside of my responsibilities to my client, nor does my husband who Mr. Rudd now has dragged into his domestic affairs again for no justifiable reason.  I certainly do NOT want my children around Mr. Rudd, nor do I want to put my children or the Rudd boys through the trauma of police interaction because Mr. Rudd is non-complaint with the PPO.  I am concerned with Mr. Rudd's actions for the following reasons:

1.    Mr. Rudd made it perfectly clear what his expectations are with regard to Mr. Averill and contact at soccer games when Mr. Averill's children and the Rudd children have games/practices at the same time.   In light of the fact that NO PPO exists between Mr. Rudd and Mr. Averill or his children, I would appreciate and expectation the same of Mr. Rudd.

2. There is a high and certain likelihood that continued contact and unnecessary appearances by Mr. Rudd will occur in the future.

3. Mr. Rudd has recently brought up issues from the past involving the events surrounding the issuance of my PPO against Mr. Rudd.  He has made false, defamatory comments again about myself and my husband in a clear attempt to get my husband, the former police chief and Norton Shores Police Department into some sort trouble.  In doing so he has renewed my concerns about his behavior and intent with regard to myself, my children and my husband.

4. It has been brought to my attention that the continuance of the PPO was not recorded on Lien due to the fact that the proper form was never submitted to Judge Pittman.

5. This is not the first violation of the PPO by Mr. Rudd.


I am proposing the following:


1. Mr. Rudd make arrangements for someone else to transport the Rudd children to practices;

2. Mr. Rudd make himself as inconspicuous as possible such that he is not within my eyesight at any games or tournaments, during his parenting time when there is even a remote possibility that he will come into contact with me AND leave immediately after the game ends, or simply not attend the same during Mrs. Averill's parenting time.

3. The PPO will be drafted on the proper form and placed on Lien immediately.


Judge Pittman has made it perfectly clear to Mr. Rudd what his expectations are with regard to Mr. Rudd's behavior in compliance with this PPO.  The last thing that I want is Mr. Rudd's drama to spill over into my life as he has forced it to in the past and continues to even two years later and I certainly do not want my family subjected to police involvement, however, if we do not figure out some sort of solution immediately, I am afraid that is exactly what will occur.  Please advise immediately.


Melissa L. Meyers

melissam@bolhouselaw.com

**Bolhouse, Baar & Hofstee, PC**

Grandville State Bank Building

3996 Chicago Drive SW ~ Grandville, MI  49418

Phone:  (616) 531-7711 ~ Fax:  (616) 531-7757

www.bolhouselaw.com

The information contained in this electronic message is attorney-client privileged and confidential and exempt from disclosure under applicable laws. If you are not the intended recipient, be aware that any downloading, copying, disclosure, distribution or use of the contents of this information is strictly prohibited. The recipient should check this email and any attachments for the presence of viruses.  Bolhouse, Baar & Hofstee P.C. accepts no liability for any damage caused by any virus transmitted by this email.
If you have received this communication in error, please FORWARD this message back to the sender at the email address above, DELETE this message from all mailboxes and any other electronic storage medium and DESTROY all copies.