# Exhibit D

11/9/2015 TRANSCRIPT
State Court Hearing RE: Criminal Contempt
& Rudd's Motion For Declaratory/Injunctive Relief

---

**Declaration in Support of Plaintiff's 10/16/18 Repsonsive Brief  (ECF No. 72)**
Opposing Def. Rule 12(c) Motions  (ECF Nos. 53, 58, 60)

```
 1                       STATE OF MICHIGAN

 2        IN THE 14TH CIRCUIT COURT FOR THE COUNTY OF MUSKEGON

 3                     FAMILY COURT DIVISION
 4    _____
 5    MELISSA MEYERS,
 6                      Plaintiff,
 7    v                                           File No. 13-257503-PH
 8
 9    DANIEL RUDD,
10                      Defendant.
11    _____/

12         BEFORE THE HONORABLE GREGORY C. PITTMAN,

13                     FAMILY COURT JUDGE

14         Muskegon, Michigan - Monday, November 9, 2015

15                  MOTION TO TERMINATE PPO &

16                     SHOW CAUSE HEARING
17

18    APPEARANCES:
19    For the Plaintiff:           MICHELLE MCLEAN   P71393
20                                 JOEL W. BAAR      P56796
21                                 Attorney at Law
22                                 3996 Chicago Dr., NW
23                                 Grandville, MI   49418
24
25
26
27    For the Defendant:           Defendant Appeared In Pro Per
28
29
30
31
32
33    RECORDED BY:                 Kathy Larkin (CER 4986)
34                                 Certified Electronic Reporter
35                                 (231) 724-6233
36
```

1

TABLE OF CONTENTS

WITNESSES:

None.

EXHIBITS:

None.

```
 1                    Muskegon, Michigan
 2                    Monday, November 9, 2015
 3                    (At 2:38 p.m., proceedings opened)
 4             THE COURT:  This is the matter of Meyers versus
 5   Rudd, 13-257503-PH.  What are we here for?
 6             MS. MCLEAN:  (Pause) Your Honor, may I address
 7   the Court?
 8             THE COURT:  Certainly, if you can answer my
 9   question.
10             MS. MCLEAN:  Thank you, Your Honor.  Well, we
11   have two competing motions.  I believe that Mr. Rudd has
12   filed a motion to terminate the PPO that this Court issued
13   back in December of 2013.  And Ms. Meyers has filed a
14   motion to show cause Mr. Rudd for his violations of the
15   PPO, Your Honor.
16             THE COURT:  Which came after he filed to
17   terminate.
18             MS. MCLEAN:  Correct, Your Honor.
19             THE COURT:  Imagine that.  And who are you, sir?
20   I'm sorry.
21             MR. BAAR:  Good afternoon, Your Honor.  My name
22   is Joel Baar.  I'm the managing partner of our law firm.
23             THE COURT:  (Pause) I don't really know what to
24   do with you folks at this point.  I mean I have to comment
25   on the idea that the timing is so incredibly curious that
```

1  when he motions to terminate this protection order that's
2  been in effect for now upwards of a year and a half, or
3  thereabouts, that then precipitates this voluminous motion
4  and order to show cause with issues that--I'm trying to
5  make heads or tails--go back months, which weren't issues
6  months ago. But they became issues at the point that he
7  says, let's just get rid of this PPO and move on.
8          Yes, Counsel?
9          MS. MCLEAN: Your Honor, we, in an effort to try
10 and de-escalate things, did not pursue show causes on
11 those because, you know, we felt that it wouldn't make
12 good sense. We let a lot of those things go.
13         THE COURT: When did it then turn into making
14 good sense?
15         MS. MCLEAN: Well, it's been escalating and
16 escalating, to a point now--
17         THE COURT: Well, hold it. You just said that
18 in the effort to de-escalate, these things have occurred
19 and it really wasn't worth the effort to pursue them as a
20 motion and order to show cause. He files to have the
21 motion--or the order terminated, and then those things
22 that had not escalated or that you were attempting to de-
23 escalate now become issues that now must be litigated.
24 Because why?
25         MS. MCLEAN: Well, Your Honor, Mr. Rudd hasn't

```
 1    been respecting the order that's in place right now. And--
 2              THE COURT:  And what's the remedy if you believe
 3    that he has failed to adhere to the order of the Court?
 4              MS. MCLEAN:  Motion to show cause.
 5              THE COURT:  And just off--for propriety sake,
 6    then that would probably indicate that at the point that
 7    you feel he has violated the motion--or the order, that it
 8    would be relatively contemporaneous to that alleged
 9    violation.  Did you do that?
10              MS. MCLEAN:  Not necessarily.  We contemplated
11    it, Your Honor.
12              THE COURT:  Why not?
13              MS. MCLEAN:  Well, it's kind of like death by a
14    thousand cuts.  He would do one thing and one thing on its
15    own might not have been enough to trigger concern; but
16    when you look at this aggregate pattern, it really is
17    concerning.
18              THE COURT:  Well, what did trigger concern?
19              MS. MCLEAN:  Well, Your Honor, he just recently
20    sent letters to our firm.  He has continued--I mean, it's
21    been two years since he--
22              THE COURT:  Well, is he prohibited from sending
23    letters to your firm?
24              MS. MCLEAN:  We do believe that that would
25    violate the personal protection order, Your Honor, because
```

```
 1        it's an indirect contact to Ms. Meyers.  And what he's
 2        alleged in those letters would be evidence that we would
 3        be presenting at the show cause hearing.
 4                 THE COURT:  Well, the purpose of a personal
 5        protection order is to protect a person from being harmed,
 6        physically, more than anything.  There is the component
 7        that allows for if there is the belief that there is
 8        stalking which would eventually lead to some physical
 9        harm.  How does sending a letter to a law firm that he's
10        involved in ongoing litigation with present a risk of
11        physical harm to Ms. Meyers or anybody else at the firm?
12                 MS. MCLEAN:  Your Honor, that was just one
13        example to show how these things--
14                 THE COURT:  That wasn't a good one.
15                 MS. MCLEAN:  --are--I'm sorry.  There are--he
16        has been engaging in a course of conduct that would
17        include contacting Ms. Meyers' ex-husband who has no
18        custody rights with her children, to dig up information on
19        her.  He has gone to the city council--
20                 THE COURT:  Is he prohibited from contacting Mr.
21        Meyers?
22                 MS. MCLEAN:  He's making indirect third-party
23        contact.
24                 THE COURT:  Is he prohibited from contacting Mr.
25        Meyers?
```

1       MS. MCLEAN:  I don't believe so, directly, Your
2  Honor.
3       THE COURT:  All right.
4       MS. MCLEAN:  But it's a pattern of harassment
5  that's starting to create some serious concerns with Ms.
6  Meyers.  And I think that the PPO that you issued that
7  says this is because of a pattern of harassment.  Now it
8  continues and continues.  So, you know, I can see in your
9  wisdom, you're saying, is that thing alone enough to
10 trigger a violation?  I don't know.  I mean that's where
11 I, as an attorney, said, well, you know, he can contact
12 your ex-husband as long as he doesn't do anything.  I'm
13 not going to do anything about it.  He can send letters to
14 your firm.  He can do--you know, he can continue to make
15 these allegations.  He can continue to engage in slander
16 and defamation and you know, all these things he continues
17 to do.  Now--
18      THE COURT:  Which are outside of this Court's
19 jurisdiction, as I'm certain you appreciate.
20      MS. MCLEAN:  I do.
21      THE COURT:  The argument of slander and
22 defamation and all those things, which may very well have
23 merit, that's just meritless as it relates to this issue.
24 That's not a part of these proceedings.  And personal
25 protection orders do not protect against slander or

7

```
 1      defamation.
 2              MS. MCLEAN:  Your Honor, I--I guess I thought
 3      you wanted the PPO to be protecting Ms. Meyers from his
 4      pattern of harassment.
 5              THE COURT:  What I'd like is for you folks not
 6      to be in my courtroom.
 7              MS. MCLEAN:  I--
 8              THE COURT:  If you're asking what I'd like to
 9      see happen here, I'd like for you folks to go on with your
10      lives and get to a point where this man and your client
11      are able to parent their children and continue to move on.
12      That's what I'd like.  I don't know if that's what these
13      folks want.  Apparently not, because that's far from what
14      we're here about.
15              But there is a legitimate protection order in
16      place, and it has provisions that are to be adhered to.
17      And you certainly have your right to your day in court
18      regardless of how--how we get here and more importantly,
19      the motivation for getting here.
20              Mr. Rudd?
21              MR. RUDD:  Yes, Your Honor.
22              THE COURT:  You're representing yourself?
23              MR. RUDD:  Yes, Your Honor.
24              THE COURT:  You understand you have the right to
25      be represented by counsel?
```

```
 1              MR. RUDD:  Yes, Your Honor.
 2              THE COURT:  And is it your intention to proceed
 3     without counsel, knowing that you have that right?
 4              MR. RUDD:  Yes, Your Honor.
 5              THE COURT:  Okay.  All right.  And I see a
 6     number of really fine people here today who are away from
 7     their jobs and their responsibilities who were called here
 8     probably ostensibly for the purpose of testifying.  Well,
 9     it's too bad.  They're not going to get to testify today.
10              This matter was set for 15 minutes.  This matter
11     was set for 15 minutes because it was a pretty straight-
12     forward motion that was filed by Mr. Rudd for the
13     termination of a personal protection order.  Procedurally
14     then, you file your motion and order to show cause and
15     produce this document (indicating) for the Court.  And
16     then all of these wonderful people to testify in support
17     of that, which was not contemplated at all when he filed
18     his very simple motion for termination.
19              So, I apologize to everybody who showed up here
20     and wasted their 15 minutes or so of time.  But Counsel,
21     you should be more circumspect about the idea that you,
22     better than anybody, know what your case is going to look
23     like.  And if you call for or subpoena six, seven, eight
24     people--however many people--to testify, it will take us
25     15 minutes to get everybody sworn in.
```

9

```
 1              Therefore, you should probably be contacting
 2    court staff and letting them know this is going to be
 3    bigger than a 15-minute hearing, so we need to move it to
 4    a point where it accommodates everybody's time, including
 5    the Court's.  I got about six or seven other cases lined
 6    up out there who did do that, unlike what you guys didn't
 7    do.
 8              So I have to, at this point, simply adjourn this
 9    matter.  During the course of the adjournment, however,
10    the order of the Court is going to be that you, Mr. Rudd,
11    and you, Ms. Meyers, would submit to mediation services.
12    That you would meet at the Mediation Center and that you
13    would attempt to find some resolution to the issues that
14    caused you to be here today.  And maybe if you reach some
15    agreement amongst yourselves and spend that three, four
16    hours that you want me to spend on this thing, you might
17    be able to find a means by which to put all of this to
18    rest.  And this case can be done and you folks can proceed
19    on with the rest of your life.  You can prepare that as an
20    order, Counsel.  I'll sign that.
21              That carries a cost to you and to you.  It's a
22    minimal cost, but it carries a cost to you to engage the
23    services of the Mediation and Restorative Justice Center.
24              Are we clear?  Any question, Counsel?
25              MS. MCLEAN:  May I ask one question of my client
```

```
 1      really quick--
 2              THE COURT:  Sure, certainly--
 3              MS. MCLEAN:  --and then--
 4              THE COURT:  --go right ahead.
 5              Any question, Mr. Rudd?
 6              MR. RUDD:  Is there any--is this just the place
 7      here in Muskegon that--
 8              THE COURT:  Uhm-hm.  It's right here in
 9      Muskegon.  They will set up the appointment with you.
10      You'll call them, tell them you have this Court's order.
11      They'll set up a time that's convenient for both of you.
12              MR. RUDD:  May I ask any other questions?
13              THE COURT:  Sure.
14              MR. RUDD:  Are you aware of how serious the
15      allegations they're raising about me are?
16              THE COURT:  Your point being?
17              MR. RUDD:  Well, there's an overwhelming show of
18      force from Norton Shores and this order is still in
19      effect.
20              THE COURT:  Yeah, the--everything else is status
21      quo.  The order remains in effect.  Is there--what's your
22      question, if there's a question?
23              MR. RUDD:  When you originally ruled on the PPO,
24      you stated that your intention was to keep it active for a
25      very brief period of time.  And in that hearing, you even
```

```
 1      noted a specific hearing, two weeks down the road, at
 2      which you would end that order.  And my warrantless arrest
 3      would no longer be authorized in the LEIN database.
 4              THE COURT:  Did I say that?
 5              MR. RUDD:  Yes, Your Honor.
 6              THE COURT:  No, I didn't.
 7              MR. RUDD:  Well, you didn't say the--
 8              THE COURT:  No, I know I didn't--
 9              MR. RUDD:  --warrantless arrest part.  I meant--
10              THE COURT:  I know I didn't say that, so don't
11      put words in my mouth.
12              MR. RUDD:  I meant you said--I apologize, Your
13      Honor.
14              THE COURT:  Good.
15              MR. RUDD:  I meant you said the part about that
16      it would be at this--
17              THE COURT:  What's your point, sir?
18              MR. RUDD:  --hearing coming up.
19              THE COURT:  Because so far, you're soap-boxing
20      me.  What's your point?
21              MR. RUDD:  I don't--I don't feel that it's
22      justified to keep that active--
23              THE COURT:  To keep what active?
24              MR. RUDD:  To keep the PPO active in the LEIN
25      database.
```

```
 1              THE COURT:  That's why we're here for your
 2    motion, right?
 3              MR. RUDD:  Yes, Your Honor.
 4              THE COURT:  You want it terminated.
 5              MR. RUDD:  Yes, Your Honor.
 6              THE COURT:  I have to hold a hearing.
 7              MR. RUDD:  Oh, I apologize--
 8              THE COURT:  Until that hearing is held, the
 9    order will remain in effect.
10              MR. RUDD:  I do apologize, Your Honor.  I
11    thought you were issuing an order and I consolidated the
12    matters.
13              THE COURT:  Okay.  Well, let me make it clear
14    for you.
15              MR. RUDD:  Okay.
16              THE COURT:  Nothing's changing until these folks
17    have their opportunity to be heard on your motion to
18    terminate, and until you have the opportunity to be heard
19    on the motion to show cause.  Unless the heavens open up
20    and you guys go to Restorative Justice and see some
21    epiphany that being in here with me is probably the worst
22    way you could spend your time.  And you could spend it a
23    lot better figuring out how to simply, peacefully, co-
24    exist on this great big ole earth and not have to deal
25    with one another and not have to deal with me.  That is
```

```
 1        always an option and I'm putting you in a position to
 2        actually realize that option.
 3                 Are we clear on that?
 4                 MR. RUDD:  I understand.
 5                 THE COURT:  Anything else?
 6                 MR. RUDD:  No.
 7                 THE COURT:  Thank you.
 8                 MR. RUDD:  No thank you, Your Honor.
 9                 THE COURT:  Ms. Mclean, anything else?
10                 MS. MCLEAN:  I just want to let you know, we did
11        try for one hour, prior to this hearing--Mr. Barr and
12        myself sat down with Mr. Rudd and did try to come up with
13        some type of resolution.  We were not successful in doing
14        that.  But maybe more time would allow us to reach some
15        type of mutually beneficial and mutually agreeable
16        resolution.
17                 Thank you, Your Honor.
18                 THE COURT:  Well, thank you for that
19        information.  You'll be working with professional
20        mediators--not to say that you all aren't capable--but
21        professional mediators who are not tied to, in an
22        appreciable way, these negotiations.  That may be a bit of
23        a stumbling block.  That will be removed because you'll be
24        working with someone who's impartial and not connected to
25        this.
```

```
 1              I would strongly urge you to see a bigger
 2     picture and get to a point where this doesn't have to be.
 3              MR. RUDD:  Your Honor, I'm not sure what I could
 4     do possibly--
 5              THE COURT:  I don't know either.  And I didn't
 6     ask you.  That was just merely some advice to you.
 7              Same for you, Ms. Meyers.  I would ask you to
 8     see the bigger picture and get to a point where this is
 9     not continuing as part of the landscape.
10              Anything else?  Sir?
11              MR. RUDD:  Not at this time, Your Honor.
12              THE COURT:  Thank you.  Ms. Mclean, anything
13     else?
14              MS. MCLEAN:  All set, Your Honor.  Thank you for
15     your time today, Your Honor.
16              THE COURT:  Thank you.  We're adjourned.
17              (At 2:53 p.m., proceedings adjourned)
18                         * * * *
19
```

```
 1  STATE OF MICHIGAN   )
                        )
 3  COUNTY OF MUSKEGON  )
```

         I certify that this transcript, consisting of 16 pages, is a complete, true, and correct record of the proceedings and testimony taken in this case on Monday, November 9, 2015.

December 13, 2015

_Kathy Larkin_
Kathy Larkin (CER 4986)
Certified Electronic Reporter
14th Judicial Court
Family Court Division
990 Terrace St.
Muskegon, MI  49440
(231) 724-6233