UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL WILLIAM RUDD,

   Plaintiff,

 v.

CITY OF NORTON SHORES, et al.,
.

   Defendants.

Case No.  1:18-cv-124

Honorable Gordon J. Quist
U.S. District Court Judge

**PLAINTIFF'S
MOTION FOR SANCTIONS**

---

Daniel William Rudd
Plaintiff, Pro Se
201 S. Lake Ave.
Spring Lake, MI 49456
(231) 557.2532, daniel@stock20.com

Robert A. Callahan (P47600)
rcallahan@plunkettcooney.com
Michael S. Bogren (P34835)
mbogren@plunkettcooney.com
Lisa A. Hall (P70200)
lhall@plunkettcooney.com
PLUNKETT COONEY, P.C.
950 Trade Centre Way, Ste. 310
Kalamazoo, MI 49002, (269) 226.8822
<u>Attorneys for Defendants:</u>
 City of Norton Shores, Mayor Nelund,
Jon Gale, Daniel Shaw, Matthew Rhyndress,
Michael Wassilewski, Douglas Hughes
Mark Meyers & Williams Hughes PLLC

Michelle M. McLean (P71393)
michellem@bolhouselaw.com
Richard L. Bolhouse (P29357)
rickb@bolhouselaw.com
BOLHOUSE, HOFSTEE & MCLEAN PC
Grandville State Bank Bldg. 3996 Chicago Dr. SW,
Grandville, MI 49418   (616) 531-7711
<u>Attorneys for Defendants:</u>
Michelle McLean, Joel Baar,
& Bolhouse, Hofstee & McLean
(f/k/a Bolhouse Baar & Hofstee)

Steven Daniel Schultz (P63177)
sschultz@tanisschultz.com
TANIS SCHULTZ
85 Campau Ave NW, Suite R305
Grand Rapids, MI 49503 (616) 608-7149
<u>Attorney for Defendant:</u>
Melissa L. Meyers

---

**PLAINTIFF'S MOTION FOR SANCTIONS
AGAINST THE NORTON SHORES DEFENDANTS**

A copy of this motion, including the email correspondence which is attached as Exhibit A, were served on counsel for all defendants on 9/21/18, (See Proof of Service, ECF No. 65.) For the reasons stated in the motion, and in Plaintiff's supporting brief, Plaintiff asks this Court to set this matter for hearing and fashion an appropriate remedy.

### ~~(DRAFT)~~ Plaintiff's Motion For Sanctions Against the Norton Shores Defendants

1) On 9/11/18, the Norton Shores Defendant's ("The City") filed a motion for judgement on the pleadings under Rule 12(c). The supporting brief (ECF No. 61) includes several statements which claim to identify the totality of factual allegations which Plaintiff has plead. However, The City has knowingly omitted relevant factual claims. The City has also misrepresented the substance of important factual allegations in Plaintiff's complaint. Under the circumstances of this case, The City has failed to meet the standard set forth in Rule 11.

2) The City's argument for judgment on the pleadings begins by claiming to list **all** of Plaintiff's factual allegations against the City (*Id.,* at PageID.438, emphasis added)..

> Once the conclusory assertions and subjective speculation are discounted the only actual facts the plaintiff alleges against the Norton Shores defendants are these.

The first few pages of the City's brief make it clear that Mr. Callahan is aware of many other non-conclusory and non-speculative factual allegations which Plaintiff has asserted against the City (see *Id.,* at PageID.429-435). These are omitted, but the Court is assured that the list is comprehensive.

3) Here is one example of a substantial omission which has a material effect on the controversy:

> -In July 2013 plaintiff requested assistance from the Norton Shores Police Department to recover his children from their mother (his ex-wife) but his request was refused." (*Id.* PageID.438).

Mr. Callahan is aware that Plaintiff has stated many other factual allegations which pertain to Plaintiff's requests and the NSPD response.[1] The City omits substantial detail while claiming to present all the facts Plaintiff has alleged against the City.

---

[1] Plaintiff reported the missing children were at risk due to well documented history of domestic violence, child abuse, child neglect; and a volatile breakup between the Noncustodial Mother and

4) The City's bullet point paraphrasing of allegations also incorrectly state the substance of Plaintiff's factual allegations as plead (*Id.* PageID.439):

> -Two years later, in July 2015, Chief Gale met with plaintiff to discuss plaintiff's concerns about the NSPD's response to the July 2013 incident.
>
> -Following the meeting Chief Gale provided a copy of plaintiff's written complaint to Mark Meyers, Melissa Meyers and Dan Shaw.
>
> -Attorney Michelle McLean obtained a PPO against plaintiff on behalf of Melissa Meyers.
>
> -The Norton Shores Police Department entered the PPO into the LEIN.

This is not what occurred and not Plaintiff alleged:

a) Plaintiff actually alleged that Chief Gale circulated Plaintiff's 7/20/13 Citizen Complaint *immediately after receiving* it and *before he had investigated anything or communicated with Plaintiff at all*. Plaintiff also alleges that this was in direct violation of department policy (ECF No. 1, PageID.14).

b) The City falsely asserts that Attorney McLean was successful in obtaining a PPO against Plaintiff **and** suggests that the Norton Shores Police Department simply entered that PPO into the LEIN database (like any other PPO would be entered):

> - Attorney Michelle McLean obtained a PPO against plaintiff on behalf of Melissa Meyers.
> - The Norton Shores Police Department entered the PPO into the LEIN.

This is a jarring misrepresentation of what Plaintiff has alleged (*Id.* PageID.17-18). Plaintiff claims that AFTER Attorney McLean's efforts to obtain a PPO failed, the City entered a Stalking/PPO against Plaintiff *without a valid court order*. This misrepresentation is material to many of Plaintiff's claims against the City.

---

her third husband. NSPD refused to investigate, assist or enter missing person reports—ultimately threatening Plaintiff with an unwarranted arrest. (ECF 1, PageID.5-6; ECF no. 1-1 at PageID.31).

5) The City's brief acknowledges that City officials participated in the *nondomestic* PPO litigation and the corresponding criminal contempt proceedings against Plaintiff. The City acknowledges sending correspondence to Plaintiff on or about the same day as the criminal contempt proceedings were initiated and served. As noted by the City's brief (ECF No. 61, PageID.434), the correspondence was sent to Plaintiff on behalf of Mayor Gary Nelund.  The letter advises Plaintiff that he is being "monitored" by the City and plainly states the City's concern with Plaintiff's petitioning activity:

> We have information that leads us to believe that you have made serious defamatory and disparaging remarks about Mr. Meyers, as well as other members of the Norton Shores Police Department. **Please treat this letter as a notice to you that we will take whatever action is legally necessary to protect the professional and privacy rights of Mr. Meyers.**

Mr. Callahan's brief also includes verbatim citations to the following factual allegations which are stated in Plaintiff's complaint:

> Attorneys Baar and McLean repeatedly indicated that plaintiff could avoid incarceration by agreeing that he would no longer engage in "conduct" which was "concerning" to Melissa Meyers and Mark Meyers – specifically referring to plaintiff's 7/20/15 complaint and corresponding FOIA requests. (¶ 94).
>
> Mr. Baar specifically stated that they were looking for an agreement that plaintiff would not take "any action" against Mark Meyers or Melissa Meyers. Attorney Mclean specifically asked plaintiff if he was willing to "stop going to the city." (¶ 95).
>
> Attorneys Mclean and Baar disagreed and advised that Police Chief Jon Gale, First Lieutenant Chris McIntire (Michigan State Police), Attorney Doug Hughes and city manager Mark Meyers were outside in the hall and prepared to testify that plaintiff had been engaging in very concerning behavior. … (¶ 97).
>
> Throughout the meeting, attorneys Baar and Mclean repeatedly attempted to coerce plaintiff into dropping any complaints against the City of Norton Shores. (¶ 100).

6) Although Mr. Callahan acknowledge that these factual allegations have been plead, he proceeds to suggest that (emphasis added):

> Simply put, while the plaintiff's Complaint is littered with a plethora of speculation, innuendo and subjective musings, **nowhere is there a single factual allegation** showing the defendants agreed to "a single plan" to retaliate against plaintiff or that the defendants "shared the same general conspiratorial objective."

(ECF No. 61, PageID.440)  This claim does not demonstrate a sufficient inquiry or review of the pleadings.  Instead of addressing the facial sufficiency of the factual allegations stated on the previous page, The City's brief suggests (without support or explanation) an alternate "basis" for the the Norton Shores involvement in the <u>nondomestic</u> PPO and criminal contempt litigation:

> **In spite of the fact that this entire litigation arises from a state court child custody dispute,** plaintiff completely disregards that as the basis for his interactions with Attorneys Meyers, McLain and Baar. Instead, plaintiff attributes "a single plan" to these attorneys and the Norton Shores defendants to retaliate against him for exercising his First Amendment rights. **The hubris this exhibits is stunning.** (*Id.*, PageID.440, emphasis added)

This is undeveloped theory is improperly raised on a Rule 12(c) challenge. Even if that were not the case, Mr. Callahan offers no explanation why the "basis" he offers is more plausible than a common desire to silence Plaintiff's complaints against Mark Meyers, Melissa Meyers, Chief Shaw, Chief Gale and the other Norton Shores Defendants.

Instead of providing such an explanation, Mr. Callahan simply resorts to disparaging remarks about Plaintiff as a person: "The hubris this exhibits is stunning."

7) The Brief continues with another misrepresentation regarding the scope of what has been plead.

> The only thread that connects the defendants is the fact that Mark Meyers, the City Manager, is married to Melissa Meyers. That gossamer string will not bear the weight of plaintiff's conspiracy theory. "While they need not produce direct evidence of a meeting of the minds, Appellants must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012).

It is misleading to suggest that Plaintiff relies only on the fact that Mark Meyers and Melissa Meyers are married to support his claim of concerted action.  The first several pages of Mr. Callahan's brief clearly demonstrated his awareness of many other factual allegations.

Additionally, this portion of the brief relies on inapplicable case law to suggest that the Court should employ the legal standards for a ruling on summary disposition. It is incorrect to suggest that the ruling in *Pahssen* requires Plaintiff to "come forward with specific circumstantial evidence…" That is not the standard for a Rule 12(c) motion.

8) The following page of the brief (*Id.,* PageID.441) also distorts the substance of the pleadings with a familiar narrative:

> Here, plaintiff offers nothing more than conclusions and opinions to claim there was a meeting of the minds among the alleged conspirators. All plaintiff has alleged is that a contentious custody dispute existed in which both parties went to the local law enforcement agency with complaints of criminal conduct. (City's Brief, ECF No. 61, PageID.441).

Again the City claims to be presenting "All plaintiff has alleged" while knowingly omitting significant factual allegations, of which Mr. Callahan is clearly aware. However, this section also misstates the substance of what was alleged:

a) Plaintiff has not alleged that the NSPD was asked *to resolve a contentious custody dispute*. Plaintiff <u>has</u> alleged that there was no dispute regarding the custody orders or the fact that the mother had absconded with the children in violation of those orders.

b) Plaintiff has not alleged that both parents sought police assistance. The City has fabricated this detail to convey a classic *he-said/she-said* dilemma. This was not the case and is certainly not the circumstances which Plaintiff has alleged.

c) Plaintiff has not alleged (and is not aware of) any *official* complaints submitted against Plaintiff by the Noncustodial Mother or by anyone else. There is no record that the Noncustodial mother even spoke to the police.

Collectively, these distortions have a substantial bearing on what was required of Norton Shore Police Department under state and federal law.

9) The City's Brief, when taken as a whole, does not conform to the requirements and legal standards of Rule 11 as it relates to a Rule 13(c) motion.

10) Plaintiff asserts that the misrepresentations and inaccuracies described above should be treated more seriously for the following reasons:

   a) The exact nature of what Plaintiff has stated in his pleadings is the central question on Motion for Judgement On The Pleadings under Rule 12(c).

   b) Mr. Callahan is an experienced litigator, working alongside a team of experienced litigators.

   c) Mr. Callahan opens his brief by acknowledging the succinct summary of factual allegations which this Court provided in the 8/18/18 OPINION.

   > The Court has set forth a detailed recitation of the facts alleged in plaintiff's Complaint in ruling on Lt. McIntire's motion to dismiss. *Rudd v. City of Norton Shores*, No. 1:18-CV-124, 2018 WL 3751399, at *1 (W.D. Mich. Aug. 8, 2018).

   d) The filing does not offer anything which could not have been argued as a Rule 12(b) motion to dismiss. This indicates the possibility of an improper purpose such as delaying discovery and/or making it more difficult for Plaintiff to complete an amended complaint in a complex litigation.

   e) Mr. Callahan needlessly includes disparaging remarks about the Plaintiff ("The hubris this exhibits is stunning.") This violates Mr. Callahan's obligation to "treat with courtesy and respect all persons involved in the legal process." MRPC 6.5.

   f) This not the first time that Mr. Callahan his interjected discourteous and unprofessional remarks which tend to undermine court process.

11) While Plaintiff was attempting to schedule the required joint meeting, Mr. Callahan levied a completely baseless allegation against Plaintiff in unnecessary remarks which were sent to the other attorneys on the case.

    a) Without offering any specifics of support, Mr. Callahan claimed that Plaintiff had mistreated one of his colleagues so severely that Plaintiff would not be welcome at the offices of Plunkett Cooney (See Exhibit A, page 7).

> "Mr. Rudd: There will be no meeting at the Grand Rapids office. I have had a chance to review the FOIA lawsuit, and am rather appalled at the treatment afforded to Mrs. Hall in that case."

    b) Mr. Callahan was aware that his inflammatory remarks mirror the narrative which the Bolhouse Defendants and Melissa Meyers have been trying to establish for years.

    c) Mr. Callahan was aware that Plaintiff, a non-lawyer, was required to schedule a joint meeting. This Court's 8/20/18 ORDER (ECF No. 52) indicates that "Plaintiff shall be responsible for scheduling the meeting which shall be conducted in person or by telephone."

    d) Mr. Callahan was also aware that there was no shortage of hostility coming from the other attorneys; AND that the other attorneys were not cooperating in scheduling the joint meeting. (See Exhibit A, pp. 1-6). Mr. Callahan knew that Attorney Steven Schultz (who had recently substituted into the litigation) would be likely to accept Mr. Callahan's disparaging representation at face value.

    e) Although Plaintiff has requested that he do so, Mr. Callahan has failed to identify any basis for his claim that Plaintiff had mistreated or been disrespectful to Attorney Lisa Hall at any time. Plaintiff asserts that Mr. Callahan interposed these allegations for the sole purpose of impeding Plaintiff's efforts to schedule a joint meeting.

12)   In addition to the obligations set forth in MRPC 6.5, and the obligation to verify the truth of statements which purport to be on the attorneys own knowledge, the Michigan Rules of Professional Conduct also require attorneys to be *more* circumspect when dealing with an unrepresented litigant in circumstances where a disparity of power can arise.

13)   Mr. Callahan's duties as an officer of the court take precedence over his efforts to accomplish the objectives of his clients. When an attorney engages in the type of tactics described above, that conduct diminishes public confidence in the legal system.

---

  This i~~s a draft of Plaintiff's Motion for Sanctions against the Norton Shores Defendants.  This draf~~t is intended to give notice and opportunity for Attorney Callahan to respond regarding the alleged violations of Rule 11(b).  The allegations of misconduct described in paragraph 11 (including sub paragraphs) give notice of conduct which may warrant sanctions under a different court rule.

---

9/21/18          /s/ Daniel William Rudd
                 Daniel William Rudd, Plaintiff (Pro Se)
                 201 S LAKE AVE, SPRING LAKE, MI 49456
                 daniel@stock20.com   (231) 557-2532

10/22/18         /s/  Daniel William Rudd
                 Daniel William Rudd, Plaintiff (Pro Se)