# Exhibit 3

6/28/1018 – Plaintiff's reply to the City's response.

<u>Rudd v. Norton Shores  Michigan FOIA Litigation</u>
17-004334-CZ  14th Circuit Court,  Hon. Timothy G. Hicks

IN THE STATE OF MICHIGAN
IN THE 14TH CIRCUIT COURT FOR THE COUNTY OF MUSKEGON

DANIEL W. RUDD,

        Plaintiff,

        v.

CITY OF NORTON SHORES,

        Defendant.

File No. 2017-004334-CZ
Honorable Timothy G. Hicks

| | |
|---|---|
| Daniel W. Rudd | Michael Bogren, Lisa A. Hall, Mary Massaron |
| Plaintiff, Pro Se | PLUNKETT COONEY, P.C. for Defendant |
| 201 S Lake Ave | 950 Trade Centre Way, Suite 310 |
| Spring Lake, MI  49456 | Kalamazoo, Michigan 49002 |
| (231) 557-2532 | (269) 226-8822  &  (616)752-4615 |
| daniel@stock20.com | mbogren@plunkettcooney.com lhall@plunkettcooney.com |

### PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE REGARDING CONTEMPT PROCEEDINGS AGAINST THE CITY

The city was ordered to appear and show cause for alleged violations of the 5/3/18 disclosure order.  The City filed a RESPONSE which was signed on 6/21/18. Although a copy could have been immediately sent by e-mail, it was mailed to Plaintiff and received on 6/25/18.  Plaintiff submits this reply in case the Court wishes to review it prior to the contempt hearing at 1:30 on 6/29/18.

Immediately after completing this reply, Plaintiff sent a copy of the same to counsel for the City by e-mail at **11:25 AM** on 6/28/18.

Daniel W. Rudd, Plaintiff (Pro Se)

I.   **The City does not own the citizen complaints and was divested of any discretionary authority to designate any portion of these records exempt.**

Under the FOIA redaction is a denial of access to a record (or portion of a record). Public bodies are vested with the authority to make discretionary initial determinations on the disclosure of records.   Once the public body has made a final determination, The FOIA framework defines a process for independent judicial review.     MCL 15.240(4) states in pertinent part:

> In an action commenced under subsection (1)(b), a court that determines a public record is not exempt from disclosure shall order the public body to cease withholding or to produce all or a portion of a public record wrongfully withheld, regardless of the location of the public record.

> …The court shall determine the matter de novo and the burden is on the public body to sustain its denial. The court, on its own motion, may view the public record in controversy in private before reaching a decision. Failure to comply with an order of the court may be punished as contempt of court.

The burden was "on the public body to sustain its denial," but the City provided no specific information about the records withheld.   This posture required in camera review, which is specifically authorized by the statute itself. The City was also given the opportunity to *choose* and present the full investigatory files related to six of these complaints. This process afforded the City substantial opportunity to demonstrate the validity of their concerns that disclosure of the citizen complaints would adversely affect the citizens.   This Court afforded the maximum level of judicial review and found that these complaints themselves did not fit within *any statutory exemption* (p.4, ¶2).  Accordingly, the statute *required* a disclosure order ("…a court that determines a public record is not exempt from disclosure shall order the public body to cease withholding…" *Id.*)

Without raising any specific challenges to these findings, the City filed a flurry of emergency motions in this Court, in the Court of Appeals and then finally in the Michigan Supreme Court. The City never asserted a non-frivolous basis for non-disclosure of the citizen complaints. Instead, the City continued its practices of brazenly mischaracterizing prior rulings of this Court and the appellate courts.  Plaintiff's contempt filing cited only one of these misrepresentations. There were many others.

Nonetheless, the City's arguments were unpersuasive at every level. This Court's determination was upheld.  The City's emergency motion for a stay of the disclosure order (filed COA Nos. 343942 & 343459) clearly demonstrates the City's awareness that the initiating complaints do not fall under any exemption (at ¶18, emphasis added):

> Although the trial court acknowledged that internal investigation records constitute personnel records that are exempt from FOIA, *it fixated on the fact that the FOIA does not specifically exempt citizen complaints that initiate such internal investigation records.* The controlling case law, however, addresses requests that seek "all records" related to an internal investigation.

The reviewing courts did not agree that this Court "fixated" on the non-exempt status of the complaints, or the claim that this was error under "controlling case law." The non-exempt status of the records was determinative.  The full process of judicial review has run its course as it pertains to the citizen complaints.  Once these records were deemed "non-exempt" the City did not have any authority to designate any portion of those records exempt.

II. **The 5/3/18 Order designates what material may be redacted. Any further redactions of the records deemed non-exempt are inherently precluded.**

Throughout this litigation, the City was repeatedly urged (by Plaintiff and even the trial Court) to present particularized justifications for non-disclosure of particular records. The City was given a full and fair opportunity to raise any and all possible exemptions for every portion of every record. The City brought at least two motions for summary disposition and repeatedly advised the Court that the matter was ripe for a ruling. The City *could have* asserted additional exemptions regarding individual portions of specific records at any point. Instead, the City ardently and repeatedly insisted that the generalized and conclusory affidavits by Chief Gale should end the inquiry altogether.

This absurd position was carried all the way up to the Michigan Supreme Court. On pages 18-20 of the City's application for review, Chief Gale's generalized and conclusory statements regarding speculative harms which *could* be associated with disclosure were rehashed and restated. Remarkably, the City argued that the speculative claims in Chief Gale's affidavits were the "record evidence" which was most probative to mixed questions of fact and law before the trial court.

More specifically, the City claimed (p.20) that the "trial court gave insufficient weight to the record evidence regarding the public interest in nondisclosure, instead, placing too much weight on its own personal review of the documents." This section of the City's application concludes by stating (p.21):

> Given Rudd's abject failure to provide support for any public interest in disclosure in the particular instance, the trial court reversibly erred in reviewing the documents and ordering citizen complaints to be disclosed.

The City has litigated extensively and vigorously. In two lengthy hearings the City repeatedly urged this Court to simply accept the "balancing test" conducted in some back room by city officials. The City insisted that no detailed affidavits and no in camera review was necessary. Plaintiff prevailed in arguing that this position eliminates judicial review and external accountability altogether. On appeal, the City claimed that it was reversible error for this Court

to consider the <u>most direct form of evidence</u> (a review of the records themselves). **These arguments were (of course) rejected at every level.**

Now, the opportunity for the City to assert additional exemptions for non-disclosure of the same records has passed.  Disclosure of the complaints themselves *was* fully litigated, fully decided, and fully affirmed on appeal.  To circumvent this absolute bar to the City's position, Mr. Bogren plainly misrepresents the nature and scope of this Court's ruling in order to suggest that the City may withhold portions of the non-exempt citizen complaints by asserting a different *blanket exemption* (emphasis added):

> The Court ultimately held that a specific category of documents [i.e., the citizens' complaints] located in the internal affairs files were not exempt under MCL 15.243(l)(s)(ix) and granted partial summary disposition in favor of Plaintiff as to those documents only. But whether the citizens' complaints themselves contained any information that was subject to a separate exemption was never litigated not decided by this Court, as the issue before the Court was whether the citizen complaints fell within the personnel records of a law enforcement agency exemption.

This is brazenly untrue. After a full in camera review, the trial court found that these records do not fall within the personnel records exemption claimed by the City. Accordingly, no further analysis was required.  However, this Court extended additional diligence issuing specific findings on the balancing test anyway.  These findings do address concerns which could be raised under other exemptions.

Importantly, the City <u>chose</u> not to assert other exemptions[1] and moved for summary disposition twice—repeatedly advising the trial court that the matter was ripe for a ruling.

Ordinarily a litigant is not permitted to remain silent in the trial court so that an issue may be raised as an appellate parachute.[2] Under the FOIA, new exemptions *may sometimes* be

---

[1] Notably, the City has failed to articulate a particularized basis for applying any other statutory exemption and did not provide "An explanation of the basis under this act or other statute for the determination that the public record, or portion of that public record, is exempt from disclosure,"

[2] See discussion of the "Raise or Waive" rule in *Walters v. Nadell*, 751 N.W.2d 431, 481 Mich. 377 (2008): "This practice also avoids the untenable result of permitting an unsuccessful litigant

considered during the appeal process. However, the City chose not do this. Allowing the City to deploy a different exemption as a *post-appellate* parachute would create a number of absurd results. Imagine the strain on the courts if recalcitrant government bodies were permitted to litigate a blanket exception all the way to the Supreme Court, THEN repeat that process again (with another smaller blanket exemption). Plaintiff wonders how many layers of obstruction the City intends to deploy.

The FOIA sets forth a *linear* statutory scheme for resolution of these matters.  It does not run in a loop or work like a set of Russian nesting dolls.  A requestor should not have to peel back layers of obstruction, file suit, defend appeals, only to be faced with another layer.  The City has exhausted the full process of judicial review and has no further basis to assert any discretionary authority over the records deemed non-exempt.

### III.  The City's blatant and pervasive misrepresentations also demonstrate contempt for this Court's authority and the dignity for the legal profession.

It is offensive that the City did not address (or apologize to this Court) for the blatant mischaracterizations of the 5/3/18 ruling which were already identified.[3] Instead, the City has proceeded with further misrepresentations:

> "The Order in this matter simply deemed a category of documents [i.e. the citizens' complaints] located in the internal affairs files not exempt pursuant to MCL 15.243(l)(s)(ix) and required them to be produced. The Order was silent as to whether the citizens' complaints, individually, contain information that is exempt."

This also is completely false. The Court reviewed the specific complaints in camera and gave the City extensive opportunities to validate their specific concerns regarding disclosure.  The ruling was not generalized and not silent about the specific records (and portions of records).

---

to prevail by avoiding its tactical decisions that proved unsuccessful. Generally, a party may not remain silent in the trial court, only to prevail on an issue that was not called to the trial court's attention. Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute."

[3] This City misrepresented the actual wording of the Court's finding that disclosure of the names of complainants *might* result in *some* chilling effect—but not enough to outweigh the public's interest in disclosure.  The City conveyed that this Court found there *would* be a chilling effect and then relied on this distortion to deem this Court's ruling "nonsensical."  See Exhibit A.

> One complaint involves an officer's allegedly insensitive treatment of a mother's remains. Several involve motor vehicle accidents involving department personnel. One involves officers' failure to appear in court. Most of these do not implicate the concerns listed in the Gale and Chandler affidavits. (p.5, ¶1)

Neither was the order silent regarding the permitted separations of exempt from non-exempt. The ruling demonstrates that the Court was far more cognizant of narrowly applied separations of material than the City has ever been. For example (emphasis added):

> There is no specific statutory exemption for the complaints themselves. The second Evening News principle requires <u>any exemption</u> to be narrowly construed. The third requires the public body to <u>separate the exempt and non-exempt materials</u>. Norton Shores's position is adverse to both of these concepts. (p.4, ¶2)

> Many of the complaints disclosed stand on their own and can be severed from the exemptible information. One complaint involves an officer's allegedly insensitive treatment of a mother's remains. Several involve motor vehicle accidents involving department personnel. One involves officers' failure to appear in court. Most of these do not implicate the concerns listed in the Gale and Chandler affidavits. (p.5, ¶1)

The Court was more thorough in conducting a review than typically occurs in a FOIA dispute of this nature. The court made very specific and particularized findings regarding the actual records themselves (far more specific than the City ever offered). The 5/3/18 Opinion and order was also specific in defining what could be carved out. The singular language and the specific parameters preclude the inference that any further carving will be permitted .

> The court will "carve out" one class of complaints which need not be disclosed. Focusing on "the big picture," a complaint made by one Norton Shores officer against another officer can be considered a personnel matter that need not be disclosed. The court will consider the West Michigan Enforcement Team ("WEMET") as part of the NSPD for this purpose, since (1) officers are "loaned" to WEMET and (2) there is some concern that it might reveal some confidential police work. However, this exception would not apply when the complainant is an officer in another jurisdiction like the Muskegon County Sheriff or the City of Muskegon. There are some additional

procedural details outlined below. (p.6, ¶¶2-3)

Furthermore, the  ruling specifically rejected the City's position regarding the potential for harms to citizen complainants if their names are disclosed (emphasis in the original):

> Yes, the information in the complaints might be embarrassing to the police force to some extent. Yes, there might be *some* chilling effect on the citizenry at large if the names of the complainants are disclosed. The public's interest in disclosure outweighs the reasons not to disclose. (p.5, ¶2)

> There is a public interest in knowing if an officer or department is involved in some untoward behavior, or worse, a pattern of inappropriate conduct (p.5, ¶3)

> Public confidence in the force could improve with knowledge that the City was, and did, monitor its own officers' behavior. Suppressing this information generates its own issues. (p.5, ¶4)

There is nothing non-specific or ambiguous about the Court's order to disclose the names of the Police officer (and the names of the citizens).  The City clearly understood this while advising the Court of Appeals[4] that a stay of the 5/3/18 disclosure order was

> "necessary so as to preserve the City's right to appeal *or risk a finding of contempt*."

The City's 6/1/18 emergency filing[5] in the Michigan Supreme Court asserted that:

> "A stay is critical because **the confidentiality of the complaining citizen**, once disclosed, cannot be regained."

It is undeniable that the City fully understood the scope and effect of this Court's 5/3/18 disclosure order.

---

[4] P.7, ¶19 of the City's emergency motions for stay (COA Nos. 343942, and 343759)
[5] p.2 of the City's: "MOTION FOR IMMEDIATE CONSIDERATION OF ITS EMERGENCY APPLICATION FOR LEAVE TO APPEAL THE COURT OF APPEALS MAY 31, 2018 ORDER DENYING ITS EMERGENCY MOTION TO STAY EXECUTION OF JUDGMENT PENDING APPEAL" filed 6/1/18, MSC No. 157879

**IV. The City may not qualify its compliance with a court order based upon subjective inferences about Plaintiff's motivations in seeking the records.**

The City's unauthorized redactions certainly do obstruct any effort to ascertain whether or not certain officers are engaging in a pattern of misconduct and/or receiving preferential treatment. Citing a decontextualized fragment of Plaintiff's prior arguments, the City claims (Response, p.2) that:

> "Plaintiff previously represented to the Court that all he was seeking, as it related to the citizen complaints, was the basic nature of the complaint, 'even if the names are redacted,' it is evident that it is the Plaintiff who is acting in bad faith with the filing of this motion, not the Defendant."

Although carefully worded, this is an attempt to mislead this Court regarding Plaintiff's representations. This was not "all" Plaintiff was seeking. Further, Plaintiff's prior arguments and the City's beliefs about what Plaintiff has been able to extrapolate are absolutely irrelevant to the City's obligation to comply with the 5/3/18 disclosure order. It is absurd to suggest that the scope of compliance may hinge upon these kind of unilateral and subjective *determinations.* The City wrongly (and presumptuously) asserts that that a pattern may be revealed without the names of the officers who are the subject of the complaints.

> Plaintiffs claim that the redaction has made it impossible for the public to appreciate "a pattern of inappropriate conduct" also fails as the basic nature of the underlying complaint is revealed despite the redactions. To the extent a pattern of conduct existed, it would be revealed with the information provided to Plaintiff. Indeed, Plaintiff acknowledged he was able to determine the nature of the complaint, despite having only received redacted copies of the citizen complaints, as he stated in an email to counsel for Defendant that he believes they "relate to the very practices which I've challenged in my federal lawsuit." [Ex. C, June 11, 2018 Email from Rudd]. Thus, there is no question Plaintiff was able to ascertain the basic nature of the complaint. It is also evident, based on his pending federal lawsuit and his statements made to Defendant's counsel on June 11, 2018, Plaintiff's motivation in this lawsuit is entirely personal.

If this were the actual benchmark for adherence to court orders, no judgement would ever be enforceable. The City has once again demonstrated their own improper motivation for obstructing access to non-exempt records.  The City's beliefs about Plaintiff's motivations and what Plaintiff can infer from the redacted complaints are absolutely irrelevant. However, as Plaintiff has already argued, if the City's claims of exemption were actually motivated by a desire to cover up activities which could subject city officials to civil or criminal liability, that is another story.

In either case, it does not matter if the City believes the redacted records were adequate for Plaintiff's purposes.  Although unpublished, the reasoning set forth in *Marchese v. Marchese*, No. 330925 (Mich. Ct. App. June 22, 2017) is persuasive regarding the City's claim of "no harm no foul."

> Plaintiff's argument regarding the absence of damage, harm, or loss is premised on her view that the purchase agreement was executed prior to the filing of the motion to show cause and that the sale of the cottage ultimately did occur — no harm, no foul. This argument borders on the nonsensical. Contempt of court is not washed away when the party who committed the contempt is unsuccessful in reaching his or her goal that served as the motivation for the contempt; unsuccessful contemptuous conduct is still contemptuous conduct.

In the present case, the City's obstructive tactics have effectuated a substantial and continuing harm.  Both the City officials and the sworn officers of the court who represent them have demonstrated a profound disregard for the public trust. The City's pervasive misrepresentations serve to undermine public confidence in the legal profession and hinder the proper administration of justice.

Although the issue was raised in a different context (misleading statements to investigating police officers) the published Court of Appeals opinion in *People v. Williams*, No. 330853 (Mich. Ct. App. Dec. 6, 2016) set forth a useful definition of misleading statements:

… in general parlance "statements" include verbal and written expressions of something. An answer to a question necessarily represents an expression. It may mislead the listener by omitting relevant information.

Suppose an attorney unlicensed to practice law in Michigan attempts to argue a motion in a circuit court. When asked by the judge whether she is qualified to practice in Michigan, the attorney replies, "Judge I've been practicing law for 25 years." The attorney has said something that excluded a material fact: she lacks a Michigan license. By making the statement, the attorney attempted to mislead the judge.

And what about the teenager who when asked how his algebra class went responds "just fine," despite that he failed to attend it? Williams's answers to Wypa's questions are akin to these examples: statements omitting information that lead the interrogator in a wrong direction. *Id*.

The City has attempted to mislead this Court and the appellate courts with numerous omissions and misstatements which are more severe than the examples noted above.  In this case, these misrepresentations come from trusted government officials and experienced attorneys (officers of the court).  In a FOIA suit, the government body and the attorneys are uniquely situated with actual knowledge of the records in dispute.  These circumstances correlate to ex parte proceedings where an attorney is also subject to heightened duty of candor and an obligation to disclose any pertinent information even when it is adverse. These are not momentary lapses in judgement. Evidence will show that the City has demonstrated a sustained and calculated effort to obstruct the proper administration of justice and prevent disclosure of records which will reflect poorly on those City officials themselves. MCL 600.1701 authorizes contempt proceedings to address "any deceit or abuse of the process or proceedings of the court."

### V.   The order to show cause for contempt is not defective.

Defendant has been fully advised of the nature of the allegations raised against the City.  The 6/15/18 order directs the City to show cause why they should not be held in contempt for violations of the 5/3/18 disclosure order.   While the order does not specify *between* civil and criminal contempt the City is adequately placed on notice and afforded a full opportunity to present a defense against either possibility.   A single contemptuous act can at simultaneously warrant a finding of civil and criminal contempt. Presumably, the Court will make determinations regarding the nature of the contempt upon considering arguments and evidence regarding what (if any) violations have occurred, and the possibility for those violations to be cured through future compliance.   The *distinction* between civil and criminal contempt rulings is significant for the purpose of ensuring that any required due process considerations have been met.

> Although it may be difficult to distinguish between criminal and civil contempts, this distinction is often critical since a criminal contempt proceeding requires some, but not all, of the due process safeguards of an ordinary criminal trial and because the purpose sought to be achieved by imprisoning a civil contemnor (coercion) varies significantly from the purpose of imprisoning a criminal contemnor (punishment).

*In re Contempt of Dougherty*, 429 Mich 81, 99; 413 NW2d 392 (1987).  The distinction of criminal vs. civil contempt is a critical element as it relates to adjudication of the matter, the nature of penalties and how these determinations are reached. However, nothing in this opinion supports the proposition that an order to show cause should be dismissed if it does not specifically designate the proceedings to be criminal or civil contempt.   MCR 3.606(A)(1) describes the initiation of indirect contempt proceedings by an order which compels the accused to "show cause, at a reasonable time specified in the order, why that person should not be punished for the alleged misconduct."

The City is represented by counsel and fully apprised of the nature of the claims which must be defended.   All due process requirements have been met for civil or criminal contempt proceedings.

The City is represented by counsel and fully apprised of the nature of the claims which must be defended.  All due process requirements have been met for civil or criminal contempt proceedings.

## VI.  The Court should exercise its broad authority and issue prompt relief.

The language of the FOIA, along with a well-established body of case law, favors expeditious resolution and disclosure of documents which have been improperly shielded from public access.  The City has now withheld non-exempt records for 18 months. This Court has inherent and statutory authority to fashion "any order proper to fully effectuate the circuit courts' jurisdiction and judgments." See MCL 600.611.

Plaintiff requests an order directing court staff, to duplicate the un-redacted versions of the records deemed non-exempt and effectuate the 5/3/18 ruling which has now been affirmed by the Court of Appeals and the Supreme Court.

Respectfully Submitted on June 28, 2018 by,

Daniel W. Rudd, Plaintiff (Pro Se)
201 S Lake Ave. Spring Lake, MI 49456
231-557-2532  daniel@stock20.com

# EXHIBIT A

Excerpts from Plaintiff's Brief to the Supreme Court in MSC Case No. 147879 offering two examples of the City's persistent misrepresentations regarding this Court's order and the opinion in *Newark Morning Ledger*.

RECEIVED by MSC 6/5/2018 4:07:01 PM

III. **The City lost credibility with the Court of Appeals because they mislead the court regarding critical portions of the trial Court's rulings.**

Instead of directly challenging the trial court's findings on appeal, the City mischaracterized the trial Court's ruling at several substantial points. For example, the City altered the wording of the trial court's findings regarding a chilling effect upon future complainants. Rudd identified these misrepresentations in the City's emergency filing in the Court of Appeals (Emg.Mtn.to stay, ¶19) emphasis added:

> "Additionally, the trial court here determined that the public interest in disclosure of citizen complaints outweighed the interest in nondisclosure - <u>even though the trial court recognized that there **would be** "some chilling effect</u> on the Citizenry at large if the names of the complainants are disclosed." (emphasis added)

As it pertains to the required balancing test "would be" vs "might be" is not a trivial change. The City's mischaracterization was more egregious in light of (1) the trial court's full statement (see below) and (2) the City's derivative conclusion that the trial court's position was "nonsensical" in paragraph 19 (emphasis added):

> …"*The trial court's position is nonsensical*, given that the interest of the complaining citizens is directly at issue, and that, if such information is disclosed, the citizenry at large will be affected by a diminished willingness to come forward with complaints."

The trial court certainly did not recognize that **there *would* be** some chilling effect if the names of the complainants are disclosed. Here's what the opinion actually states (p. 5, <u>underline added</u>, but "*some*" is italicized in the original order):

> Yes, the information in the complaints might be embarrassing to the police force to some extent. Yes, there <u>might</u> be *some* chilling effect on the citizenry at large if the names of the complainants are disclosed.
>
> The public's interest in disclosure outweighs the reasons not to disclose. Revelation of most of the complaints discloses very little to no confidential police work. There is a public interest in knowing if an officer or department is involved in some untoward behavior, or worse, a pattern of inappropriate conduct, such as a series of motor vehicle accidents. <u>Moreover, disclosure of the complainant could encourage others to "go public" with their complaints.</u>
>
> <u>Expansive use of the exemptions can also diminish the public's confidence</u>

RECEIVED by MSC 6/5/2018 4:07:01 PM

*Newark* also specifically rejects the idea that a blanket request should be disfavored (internal citations omitted, emphasis added).

> The trial court's opinion also suggests that the public interest in disclosure of multiple records of internal affairs investigations is always less than the interest in disclosure of a particular instance. We disagree. <u>When multiple records are requested, conclusions can be drawn concerning the efficacy and fairness of the disciplinary procedures.</u>
>
> Because the trial court did not address these various concerns, we are unable to determine whether the conclusion reached by the trial court regarding the balancing of the public interests was correct. Therefore, we remand this case to the trial court for additional findings and for a determination whether the public interest in disclosure outweighs the public interest in nondisclosure of some, all, or none of the documents in their original or redacted versions.   *Newark* at 227.

The City has also repeatedly asserted a (false) claim that citizen complaints were deemed exempt in *Newark*.   As noted in the preceding passage, this Court remanded the matter with instructions to the trial court.   There is no reasonable basis to believe that <u>no</u> records were produced. The City relies on the same tactic in misrepresenting the records disclosed in the other two cases relied upon [sheriff Sutton]. These claims were refuted in Plaintiff's arguments on 4/2/18 (p.25):

> What they're trying to do is exactly the opposite of what *Newark* calls for. And *Newark* did not deem the records exempt. *Newark* remanded to the trial court.
>
> We have no idea if they had to produce the citizen complaints or not because we don't know what the trial court ruled after it got sent back there.
>
> But that request was for 14 years' worth of all documents and that case did not find its way back to the court on remand, so I'm guessing some documents were produced.
>
> The Defendant is saying that in all three cases, "they considered all the records as a whole and none were produced." Absolutely not true. In sheriff -- *Kent County Sheriff*, the Supreme Court decision specifically says approximately 30 some documents had already been produced totaling around 270 some--I believe--pages, *and that was just for the one investigation.*

RECEIVED by MSC 6/5/2018 4:07:01 PM

And in that investigation, <u>they already had the complaint. They already had the disposition.</u>   …The officers had been disciplined. They were trying to, you know, fight through a grievance issue and they wanted the very specific internal investigation records which would disclose "who ratted on us."

That's what they weren't going to disclose. *And that's not what I'm asking for*. But <u>they certainly had all the other records.</u>

So it's completely wrong to say in those -- in *Sutton*, the third case… -- where they also say "all the records were withheld", not true. In *Sutton*, it was the complainant who was asking for the internal affairs records. He already had the disposition. He already had the complaint. <u>He wrote it</u>. What he wanted was the confidential stuff and they said "no."   <u>…these three cases are absolutely inapplicable to what they're trying to establish.</u>

Even in the present application to the highest court of our state, the City still insists that "no citizen complaints were disclosed."   The City also replicates a corresponding error which was also identified by Rudd during the 4/2/18 hearing. The City quotes an excerpt from the *Newark* opinion which comes from the trial court below.   The Court of Appeals cited this portion of the trial court's opinion *with disfavor*.   It is provided as an example of what not to do. However, the City has repeatedly presented this very portion as if it were the ruling issued by the Court of Appeals in *Newark*.   The City states "The same result must follow here." (City's Application to MSC, pp.16-17).

### V.   The Court of Appeals got it right in *Federated* and they got it right now.

The City's reference to disclosure rendering an appeal moot cites *State News v Mich State Univ*, 481 Mich 692, 704 n 25; 753 NW2d 20 (2008) but originates in *Federated Publications, Inc. v. City of Lansing*, 467 Mich. 98, 649 N.W.2d 383 (2002). The entire body of **Federated** litigation is highly instructive for the present controversy.   These rulings categorically oppose the City's position regarding disclosure of the citizen complaints.   In *Federated* the Plaintiff sought disclosure of "any reports or other documents regarding complaints investigated by the Lansing Police Department Internal Affairs Bureau for the time period of January 1, 1997 through December 31, 1997."   The city asserted the law enforcement personnel