UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL WILLIAM RUDD,

                Plaintiff,

      v.

CITY OF NORTON SHORES, et al.,
.

                Defendants.

_____/

Case No.  1:18-cv-124

Honorable Gordon J. Quist
U.S. District Court Judge

---

# PLAINTIFF'S SUR-REPLY
## IN OPPOSITION TO THE CITY'S RULE 12(c) MOTION

---

Filed by Pro Se Plaintiff, Daniel W. Rudd
Oral Argument Requested
November 14, 2018

Table of Contents

I.      Plaintiff's claims against the City. .........................................................2

a.      Plaintiff's "*Count 2*" does allege *adverse actions* by the City Defendants. ...............................2

b.      The City's answer demonstrates an adequate understanding of Plaintiff's First Amendment claims.........................................................................................................................3

c.      The City has altered misrepresented the language in Plaintiff's complaint. ...........................4

d.      Liberal construction of a pro se complaint on a Rule 12(c) challenge.......................................7

e.      The City's claims are implausible. ............................................................9

f.      The City has failed oppose Plaintiff's central allegations......................................13

II.     The intra-corporate conspiracy doctrine does not bar anything in this case. .........................15

Conclusion ....................................................................................................16

*Cases*

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) _____ 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). _____ 6

*DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004). _____ 13

*DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604, 615-16 (6th Cir.2015) _____ 15

*Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982) _____ 12

*Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) _____ 8

*JACKIM v. City of Brooklyn*, No. 1:05-cv-1678 (N.D. Ohio Mar. 22, 2007) _____ 12

*Kinkus v. Vill. of Yorkville,* 476 F.Supp.2d 829, 839-40 (S.D.Ohio 2007) _____ 15

*Lacey v. Maricopa County*, 693 F.3d 896, 935-936 (9th Cir. 2012) _____ 10

*Mayhew v. Town of Smyrna, Tennessee*, 856 F.3d 456 (6th Cir. 2017 _____ 7

*Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000)._____ 13

*Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 909-10 (S.D. Ohio 2016) (Sargus, C.J.) _____ 13, 15

## I.   Plaintiff's claims against the City.

This City continues to offer arguments which distort the substance of Plaintiff's Complaint and the factual allegations which are offered in support.  The City now insists that direct acts of retaliation should not be considered because, "In Count II, Plaintiff specifically alleged it was all Defendants' participation in the "conspiracy" to retaliate against him that is the cause of action." The City further asserts that pleadings are closed and "Plaintiff's attempt at a 180° turn on his theory of liability must not be countenanced by this Court."  (ECF No. 82, PageID.817-818). These are remarkable claims.

### a.   Plaintiff's *"Count 2"* does allege *adverse actions* by the City Defendants.

Plaintiff's Complaint (ECF No. 1) begins by explicitly stating the nature of the primary claims in this lawsuit. (¶1): [1]

> This case is about a coordinated effort by the [NSPD] and City Government, **to retaliate** against a vulnerable citizen who alleged misconduct by police officers, criticized department policy, and alleged some of these individuals had broken the law.

Specific retaliatory acts by various City Defendants are described throughout the narrative portion of Plaintiff's complaint with substantial detail. Even the **7/20/15** Citizen Complaint, (ECF No. 1-1) placed the City on notice regarding the gravamen of Plaintiff's *cause of action* under the First Amendment (¶52: [the Citizen's Complaint detailed "plaintiff's concerns regarding the department's violations of plaintiffs constitutional rights, failure to enforce the law, and **retaliatory *actions*** in 2013"). (PageID.12.)   Plaintiff's Complaint before this Court alleges more specifically that in 2013, the Norton Shores Police Department "ignored the evidence, refused to help and ultimately threatened plaintiff with an unwarranted arrest. These **actions** were *retaliatory*." (¶26).

---

[1] A citation which only includes paragraph numbers [such as "(¶3)" or "(¶¶3-6")] will always be a reference to Plaintiff's Complaint (ECF NO. 1).  Plaintiff will occasionally include PageID.#'s.

Paragraphs 54-83 describe several retaliatory actions by the City (with cooperation by the private party Defendants) in reaction to Plaintiff's 7/20/15 Citizen's Complaint. These sections are captioned "Another Round of Retaliation Against Plaintiff" & "Plaintiff seeks declaratory relief—Defendants retaliate." The latter section culminates in the simultaneous initiation of baseless criminal contempt proceedings (by the private actors) and the City's 11/5/15 "Cease & Desist" letter. In that correspondence, the City sets forth cryptic accusations that Plaintiff has defamed and disparaged City officials. Doug Hughes warns that Plaintiff should be "mindful" about his speech, because Plaintiff is being "monitored" and the City will "take **whatever action** is legally necessary to protect the professional and privacy rights of Mr. Meyers." PageID.19-20).[2]

### b. The City's answer demonstrates an adequate understanding of Plaintiff's First Amendment claims.

On 3/5/18, the City filed their Answer (ECF No. 9) and clearly demonstrated their understanding that Plaintiff's complaint alleged **retaliatory acts** by officers and employees. This City denies retaliatory efforts—not conspiracy (PagID.63):

> **ALLEGATION 1**. This case is about a coordinated effort by the Norton Shores Police Department and City Government, to retaliate against a vulnerable citizen who alleged misconduct by police officers, criticized department policy, and alleged some of these individuals had broken the law.
>
> **ANSWER 1.** In that there has been no such effort on the part of Norton Shores or its officers or employees, the allegations contained in paragraph 1 are denied as untrue.

At PageID.102 the City's asserts qualified immunity as an affirmative defense asserts because "reasonable officials in their position could have believed their **actions** were lawful in light of clearly established law." (emphasis added)

---

[2] See PageID.636-637 for examples. The shared animus is easily observable in the temporal proximity and corresponding statements in documents produced by the City and by the private actors. Without offering any support, the Defendants urge the Court (in perfect unison) to deem this "parallel conduct." This is not a close call. If it were, the inferences would need to be drawn in Plaintiff's favor.

### c. The City has altered misrepresented the language in Plaintiff's complaint.

At the conclusion of the narrative portion, Plaintiff's Complaint sets forth a "Summary of Constitutional Violations." This section overwhelming asserts First amendment claims (PageID.24): "¶106...plaintiff had a constitutional right to petition the government for help, to insist upon equal protection under the law, to seek redress for grievances, and to challenge the customs and policies of the Norton Shores Police Department. Plaintiff had the right to persistently engage in these **protected activities** without fear of **retaliation**."

Plaintiff's original complaint does not include any Section 1985 Conspiracy claims. Only "Count 1" is labeled a conspiracy claim ("Denial of Access to State & Federal Court Remedies"), but even this claim was premised on underlying constitutional violations. Plaintiff's remaining federal claims (Counts 2-4) are not captioned to suggest that "Conspiracy" as the cause of action. (PageID.24-27):

---

COUNT 1. VIOLATION OF 42 U.S.C. 1983: **CONSPIRACY**
(Denial of Access to State & Federal Court Remedies)
COUNT 2. VIOLATION OF 42 U.S.C. 1983: **1st Amendment Retaliation**
COUNT 3. VIOLATION OF 42 U.S.C. 1983: **Malicious Prosecution**
COUNT 4. VIOLATION OF 42 U.S.C. 1983: **Abuse of Process**

---

However, on 9/10/18 Mr. Callahan sought Plaintiff's concurrence regarding the City's motion to dismiss. Plaintiff's e-mail response emphasizes the city's failure to address the most substantial portions of Plaintiff's claim:

---

However, on the primary claim (1st Amendment Retaliation) I would need to see a rational explanation for why some of the undisputed activities of the City were motivated by some legitimate (non-retaliatory) purpose.

For example, does the City routinely get heavily involved in PPO and contempt litigation? Does Doug Hughes send a similar letter to everyone who files a citizen's complaint? Does the city routinely modify LEIN entries without a valid court order? Is there some rational basis for the officer's refusal of services back 2013, or the threat of a trespassing citation?

If you answer questions like this--and the answer checks out--I will be very quick to start dismissing claims that are not warranted. I would never sue, or maintain litigation against a police officer who simply made an honest mistake while acting in good faith.     (e-mail from Daniel Rudd 9/10/18)

---

This e-mail covered a few of the City's adverse acts which are described in Plaintiff's complaint.  The City proceeded to move for dismissal under Rule 12(c) the following day.  However, instead of demonstrating why Plaintiff's First Amendment claims are facially insufficient, the City began its efforts to alter the substance of Plaintiff's Complaint.  An important component of this strategy is the effort to transform the Plaintiff's First Amendment claims  into some kind of "stand-alone" conspiracy claim.

This objective is emphasized further in the City's motion for a stay of discovery and supporting brief (ECF No. 67). Mr. Callahan, simply <u>relabeled</u> three of Plaintiff's four federal claims as conspiracy claims—advising the Court that these were the counts which Plaintiff alleged (see PageID.458, emphasis added):

> ***Plaintiff alleged** counts for* conspiracy to violate federal constitutional rights (Count I); **conspiracy to retaliate** against Plaintiff for exercise of First Amendment Rights (Count II); **conspiracy to maliciously prosecute** Plaintiff in violation of the constitution (Count III); **conspiracy to abuse process** in violation of the constitution (Count IV)

The City's reply brief (ECF No. 82) also labors toward the goal of converting Plaintiff's First Amendment claims into a bald conspiracy claim.

> The Norton Shores Defendants moved for judgment on the pleadings. In their brief in support, Norton Shores Defendants were specific as to the **facts alleged by Plaintiff in support of his conspiracy theory.** (PageID.815)
>
> This Court also noted Plaintiff couched all of his §1983 claims – "**as conspiracy claims."** (PageID.816)
>
> **Count II is the only conspiracy claim** remaining.  (PageID.817, emphasis added)

Then City's reply brief sets forth the following claims (emphasis added):

> **A. Plaintiff Has Not Stated An Independent First Amendment Claim.**
>
> In Plaintiff's brief in opposition, he asserts he has a claim for retaliation against the Norton Shores Defendants independent of any conspiracy. ("As it pertains to direct acts of retaliation by the City, Plaintiff need not establish a conspiracy.") This revisionist pleading by Plaintiff must be rejected by this Court as nothing but empty rhetoric. Plaintiff is the master of his complaint.  In Count II, ***Plaintiff specifically alleged it was all Defendants' participation in the "conspiracy" to retaliate against him that is the cause of action.***
>
> (continued below)

By limiting consideration of Plaintiff's factual allegations to those which would establish *"participation in the conspiracy"* as "the *cause of action*" the City hopes to waive away the primary substance of this lawsuit. However, this is not the <u>*cause of action*</u> which Plaintiff has asserted under Count 2 (emphasis added):

---

**COUNT 2. VIOLATION OF 42 U.S.C. 1983: 1ˢᵗ Amendment Retaliation**

117) Plaintiff hereby realleges and incorporates by reference paragraphs 1-116.

118) All defendant's participated in the conspiracy to *retaliate against plaintiff with the <u>adverse actions described in this complaint.</u>* These **actions** were motivated, at least in part, by plaintiff's persistent efforts to seek assistance and the redress of grievances by the government.

119) Plaintiff brings this count against all defendants by way of retaliatory acts **<u>or</u>** participation in the conspiracy to retaliate against plaintiff.

---

(ECF No. 1, PageID.26). The paragraphs from the narrative portion of the complaint are grouped into reasonably organized sections with identifying captions and *incorporated by reference* into Count 2. While this may not be the work of a seasoned attorney, the Complaint certainly offers "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This is not "revisionist pleading" by any means. If these allegations were actually "empty rhetoric" it seems the City would address the First Amendment claims directly instead of straining so hard to prevent them from being considered.

---

(City's Reply Brief continuing)

In Count II, ***Plaintiff specifically alleged it was all Defendants' participation in the "conspiracy" to retaliate against him that is the cause of action.***

<u>This reality was clearly set forth by this Court in its August 18, 2018 Opinion.</u> The pleadings are closed. Plaintiff cannot now attempt to assert his complaint is something other than what it clearly is – a 29-page pleading alleging various and sundry "facts," conclusions, and illogical rhetoric of some vast conspiracy between Norton Shores officials, and private attorneys.

Plaintiff's attempt at a 180° turn on his theory of liability <u>must not be countenance by this Court.</u>

(ECF No. 82, PageID.817-818, citations omitted, emphasis added).

---

Mr. Callahan has mislead the Court in three ways: (1) Plaintiff did not allege that the conspiracy itself was the cause of action;  (2) This Court's 8/18/18 Opinion <u>did not</u> deem Plaintiff's cause of action to be a standalone conspiracy.  (3) If some technical adjustment to the statement of Plaintiff's legal theory *was* required, this Court would certainly have discretion to "countenance" such an amendment and/or adopt the most favorable interpretation of this pro se complaint.

### d.   Liberal construction of a pro se complaint on a Rule 12(c) challenge.

If Plaintiff's original complaint did include the relatively common pro se error of describing a conspiracy as a §1983 *cause of action*, the more important question would relate to the actual gravamen of the complaint and whether or not the factual allegations could support the inference of plausible First Amendment violations. Especially on a Rule 12(c) motion, all inferences are to be drawn in Plaintiff's favor. Mr. Callahan does not dictate what "must not be countenanced by this Court." However, the 6th Circuit Court of Appeals recently noted:

> The Federal Rules of Civil Procedure "<u>do not countenance dismissal of a</u> <u>complaint for imperfect statement of the legal theory supporting the claim</u> <u>asserted.</u>" The district court erred in concluding to the contrary.

*Mayhew v. Town of Smyrna, Tennessee*, 856 F.3d 456 (6th Cir. 2017). (internal citations omitted).  In *Mayhew,* the district court was reversed for dismissing a First Amendment claim upon an overly narrow reading of the complaint (disallowing a plausible inference which would have established the claim). Without offering any supporting authority, the City demands a dismissal of Plaintiff's primary claims via a *much narrower* reading.  Further, the plaintiff in *Mayhew* was well represented. Here the Court has an obligation to read Plaintiff's pro se complaint with added indulgence.[3]  Construing Plaintiff's cause of action as the *conspiracy itself* (instead of

---

[3] Because Plaintiff is proceeding without counsel, this Court must liberally construe his pleadings and other filings. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999); see *Owens v. Keeling*, 461 F.3d 763, 776 (6th Cir. 2006). This court has held that a pro se plaintiff's complaint should only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff

the actions in furtherance of the conspiracy) would be certainly be the *least favorable* construction of Plaintiff's complaint. Plaintiff believes his Complaint does not leave much room for doubt. Nonetheless, the court must resolve all doubts in the plaintiff's favor, and construe the complaint "liberally in favor of the pro se plaintiff." See *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). In *Boswell* this Court actually identified an unpled but viable First Amendment retaliation claim which could overcome the obstacle of standing:

> A sympathetic reading of Boswell's filings produces the claim that the defendants violated his First Amendment right to receive mail, as propounded by this court in its decisions in *Kensu* and *Muhammad*. His complaint and briefs readily permit the inference that he intended to lodge a complaint under the rule of Muhammad. We hold that Boswell has standing to bring a claim for an adequately-pled violation of his First Amendment right to receive mail.

*Boswell* at 388. The City suggests that the "chicken has flown the coop" but offers no basis why a non-futile amendment of Plaintiff's complaint could not be accepted by leave of the Court. On 10/28/18 the City argued, "we are in the early stages [of litigation]. We haven't even had the Rule 16 conference yet."[4]

The Rule 16 Conference is ordinarily the point in time where a deadline for amendment of pleadings is set. Plaintiff intended to advocate for a deadline that would afford more time to obtain representation before filing Plaintiff's first amended complaint.[5] Even after the Rule 16 deadline, this Court has discretion to grant leave to amend. The deadline which is established at the Rule 16 conference can be amended by the Court upon a showing a good cause. Plaintiff is prepared to file what

---

can prove no set of facts in support of his claim which would entitle him to relief." *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000).

[4] (Hearing on Motion for Stay of Discovery, at 14:30 ECF No. 80)

[5] This could potentially serve judicial economy in a number of ways – Plaintiff has been forthcoming about this matter with opposing counsel and opposing counsel has not identified any possible prejudice.

he currently has prepared (if necessary) and/or demonstrate the absence of any dilatory purpose or lack of diligence on his part.

Conversely, it was the City's Rule 12(c) motion which precipitated the cancelation of the Rule 16 conference.  The same filings have also saddled Plaintiff with the substantial burden of drafting responses.  In light of the City's contribution to these circumstances, it is not enough to simply assert that "the chicken has flown the coop."[6]

### e.  The City's claims are implausible.

The City's hyper-technical designation of a bald conspiracy claim is based on an obvious distortion of what "Plaintiff specifically alleged."

> In Count II, **Plaintiff specifically alleged** it was all Defendants' participation in the "conspiracy" to retaliate against him that is the cause of action.
>
> (PageID.817, ¶5 emph. added)

However, the conspiratorial elements stated under Count 2-4 are plead for specific purposes such as: demonstrating *joint action* with the private parties; supporting the inference of causation/retaliatory animus; establishing municipal liability.  This is "usually" the function of *conspiracy* in § 1983 Actions (emphasis added):

> [M]ere proof of a conspiracy is insufficient to establish a section 1983 claim. It does not enlarge the nature of the claims asserted by the plaintiff, as *there must always be an underlying constitutional violation*. Conspiracy may, however, enlarge the pool of responsible defendants by demonstrating their ***causal connections to the violation***; the fact of the conspiracy may make a party liable for the unconstitutional actions of the party with whom he has conspired. Conspiracy in § 1983 actions is **usually alleged** by plaintiffs to draw in private parties who would otherwise not be susceptible to a § 1983 action because of the state action doctrine, see *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

---

[6] The City has not cited any authority on this matter. If we must discuss this in the barnyard framework, Maybe the chicken is a conscientious egg-layer who took flight on account of some mischief on the part of the fox.  If that is the case, punishing the chicken will only serve to unjustly reward the fox's transgression.  It would make more sense to sanction the fox, mend the fence, and see what the chicken has to offer.

*Lacey v. Maricopa County*, 693 F.3d 896, 935-936 (9th Cir. 2012) (some internal citations omitted). As this Court noted in a more general sense, "the gravamen of a conspiracy charge is not the combination between actors, but the wrongful acts causing damage." (8/18/18 Opinion, at PageID.334).   Plaintiff's ¶118 alleges joint action/participation by all Defendants, but plainly designates the retaliatory acts as the *cause of action.*

> ¶118: All defendant's participated in the conspiracy **to retaliate** against plaintiff **with the adverse actions described** in this complaint. These **actions** were motivated, at least in part, by plaintiff's persistent efforts to seek assistance and the redress of grievances by the government.

The following paragraph (¶119) apportions liability to the various defendants based on whether they committed the "adverse actions described in this complaint" OR (disjunctive) jointly participated in some other manner.

Mr. Callahan has distorted the *cause of action*.  Instead of presenting a legitimate challenge to this Court's understanding of Plaintiff's "cause of action" under Count 2, Mr. Callahan projects his conjured "reality" onto what "was clearly set forth by this Court in its August 18, 2018 Opinion."

> In Count II, Plaintiff specifically alleged it was all Defendants' participation in the "conspiracy" to retaliate against him that is the cause of action. <u>This reality was clearly set forth by this Court in its August 18, 2018 Opinion.</u>
>
> (PageID.817, ¶5  emphasis added, citations removed)

This Court's sixteen-page opinion clearly contradicts this assertion.  In their parallel-but-not-choreographed briefs, all the Defendants emphasize this Court's observation that "Rudd **couches** all of his §1983 claims...as conspiracy claims." However, this falls a great distance short of a finding that *conspiracy* itself is the *cause of action* (to the exclusion of the constitutional violations which have actually been stated).  At numerous points, this Court's 8/18/18 Opinion conveys an understanding that Rudd's federal claims (especially Counts 2-4) are plead in the ordinary sense.  The allegations

of concerted action between the governmental and private entities play a supporting role. This is plainly apparent in this Court's analysis of Plaintiff's "Count 2."  In addition to reciting the standard First Amendment retaliation framework, the court expresses an understanding that Plaintiff is attempting "To establish a claim for retaliation in violation of the First Amendment."

**b. Count 2**

To establish a claim for retaliation in violation of the First Amendment, a plaintiff must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated, at least in part, by the plaintiff's protected conduct. *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).  Although Rudd fails to specifically identify his protected conduct in his

When Defendant McIntire moved for dismissal of Plaintiff's federal claims, he did not attempt to suggest that all of them asserted "conspiracy" as the *cause of action*. However, McIntire did express some confusion regarding the nature of Plaintiff's conspiracy claims as it pertained to the timeliness of the suit.  The Court addressed this error in footnote 3 at PageID.326.  These comments should have been instructive for Mr. Callahan (emphasis added):

> McIntire's statute of limitations argument lacks merit. First, McIntire incorrectly asserts that the statute of limitations on Rudd's § 1983 claims is jurisdictional. The statute of limitations is an affirmative defense subject to waiver. …Second, except for Counts 1 and 3, McIntire fails to sufficiently develop his statute of limitations argument.

> Last, as to Counts 1 and 3, McIntire gets it wrong—**Count 1 is not a naked conspiracy claim**, but a claim of conspiracy to deny access to the courts subject to a three-year statute of limitations, and the statute of limitations for the *malicious prosecution* claim under §1983 *alleged in Count 3* is three years, not two.

The Court's discussion of Count 2 (PageID.332) is brief.  However, it does clearly identify the central legal questions upon which Count 2 rises and falls: (1) Plaintiff's protected conduct; (2) Adverse actions by Defendants; and (3) Plausible inference of retaliatory motivation.

This Court did not dismiss Plaintiff's First Amendment retaliation claim against Defendant McIntire (Count 2) because Rudd failed to allege a "Conspiracy" cause of action.  Rather, this Court found that "Rudd's claim against McIntire fails *because Rudd does not allege that McIntire* <u>*took an adverse action*</u> *against Rudd.*" (PageID.332, emphasis added).  While it is also true that liability could attach through allegations of McIntire's *willing participation* in the adverse acts taken by others—this does not alter the underlying cause of action at all.  There is nothing in the 8/18/18 Opinion to suggest otherwise.

On the other hand, the 8/18/18 Opinion *did* dismiss a number of claims against non-movements upon finding that those claims were not supported by an adequate set of factual allegations.  This Court did not dismiss Plaintiff's First Amendment claims against the City or the civilian Defendants.  The Opinion included a "detailed recitation of the facts alleged in plaintiff's Complaint."[7]  While this recitation did not include every adverse action alleged against the City, it plainly stated many of them.

If Plaintiff were actually pleading a "conspiracy in the air"[8], it is likely that this Court would have also dismissed Count 2 on that basis. "A civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy." *Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 909-10

---

[7] The City's Rule 12(c) brief (ECF No. 61) begins with Mr. Callahan's acknowledgement that "The Court has set forth a detailed recitation of the facts alleged in plaintiff's Complaint in ruling on Lt. McIntire's motion to dismiss." (PageID.429).

[8] "There is no such thing as a "conspiracy in the air" — it must be predicated on an underlying civil rights violation." *JACKIM v. City of Brooklyn*, No. 1:05-cv-1678 (N.D. Ohio Mar. 22, 2007) Also citing *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982), where the court held: "[s]ection 1983 does not ... punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises.")

(S.D. Ohio 2016) (Sargus, C.J.)  The idea that such a glaring error would have escaped everyone's notice except Mr. Callahan, is a little far-fetched. Yet Mr. Callahan concludes that this Court simply needs to be more "discerning" in conducting a review of Plaintiff's complaint. See ¶2, PageId.820 (emphasis added):

> This Court has already determined many of the issues against Plaintiff in the course of its August 8, 2018 Opinion. It is respectfully submitted that **upon a discerning review of Plaintiff's complaint** asserted against the Norton Shores Defendants, **this Court must grant the motion** for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c).

Plaintiff believes that it is actually Mr. Callahan who needs to exercise more discernment.  Additionally, Plaintiff notes that claiming something is "respectfully submitted" does not alter the substance of a premise which is inherently disrespectful.

### f.   The City has failed oppose Plaintiff's central allegations.

To be clear, Plaintiff is not claiming that the Court has issued some kind of favorable dispositive ruling on his First Amendment claims. However, the Court's thorough analysis does offer some suggestion as to what the City should be addressing regarding the First Amendment claims (Count 2).

> "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000). "Once a prima facie case is established, the burden of producing some non-discriminatory reason falls upon the defendant." [Williams, 132 F.3d at 1131.] "If the defendant demonstrates such, the plaintiff then assumes the burden of showing that the reasons given by the defendant were a pretext for retaliation." *Id.*

*DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004).  The City has filled up many pages with colorful expressions and generalized critiques.  However, there has been no substantial discussion of the actual retaliatory acts which are alleged in Plaintiff's complaint.  The City's silence on central issues (such as the 11/5/15 Cease and Desist Letter) is profound.

All of the Defendants have meticulously avoided any real discussion of the temporal proximity and shared themes of this letter and the Bolhouse filings. The precise synchronization and glaring direct references to Plaintiff's petitioning activity **easily** establishes a prima fascia claim for First Amendment retaliation (with obvious collaboration between the City and the private entities). Instead the Defendants have offered an extraordinary number of lamentations regarding the "conclusory" nature of Plaintiff's claims.

> In conclusory fashion, Plaintiff alleged the Norton Shores Defendants conspired amongst each other. Plaintiff similarly alleged attorney Melissa Meyers conspired with the Norton Shores Defendants to "injure Plaintiff," and she was married to the Norton Shores City Manager. Interestingly, Plaintiff alleged in 2014 attorney Michelle McLean substituted in place of Myers as the attorney opposing Plaintiff in his custody proceedings.
>
> (City's Reply Brief, PageID.816)

Plaintiff remains perplexed by the City's devout belief in the significance of the Meyers marriage. The City does not explain what is interesting about Def. McLean's substitution into the custody litigation. The City does not identify any one of the "host of illogical conclusions" which are supposedly drawn by Plaintiff.

> Indeed, the "gossamer thread" in Plaintiff's conspiracy theory, as noted by Norton Shores Defendants in their initial brief, was Melissa Meyer. Plaintiff draws a whole host of illogical conclusions based upon the happenstance she is married to the Norton Shores City Manager. The illogical nature of these allegations and conclusions is most graphically demonstrated by Plaintiff's allegation that as of 2014, Melissa Meyers was no longer the attorney representing Plaintiff's ex-wife in the family law dispute. [9]  As Plaintiff clearly alleges, Michelle McLean substituted in place of Meyers in 2014. (PageID.816)

---

[9] The City seems to have missed ¶49, but these allegations only provide context. The only interesting question concerns why Melissa Meyers kept inserting herself *back into the custody litigation* which was allegedly so traumatic for her. See ¶48 at PageID.12, quoting a 7/11/14 custody hearing transcript "Attorney McLean did not challenge the extensive findings of the evaluator regarding plaintiffs exemplary conduct. In fact, attorney Michelle McLean advised the court that 'my coming into this case was in part because Ms. Meyers admitted she was a little too emotional. And I think the attorneys do have a lot of control. There's a lot of attorney control over our clients.' (7/11/14). [¶49] …in spite of her numerous statements that she would no longer be involved in the case, Attorney Melissa Meyers continued to insert herself into the custody litigation—perpetually creating needless conflict and discouraging her client from making actual progress in her therapeutic objectives.

Plaintiff is unable to discern what the City is trying to convey—or what is "most graphically demonstrated" by this background information.  However, none of this addresses the important questions raised by this lawsuit.

**II.   The intra-corporate conspiracy doctrine does not bar anything in this case.**

The recent reply brief finally acknowledges that Plaintiff "relies extensively" on something *other than* the marriage of Mark and Melissa Meyers to establish his claims against the City.  However, the subsequent extrapolation misses the mark.

> Plaintiff also relies extensively on communications between Norton Shores employees including the mayor, two chiefs of police, the city manager, the city attorney, and two police officers.  As such, Plaintiff is alleging the Norton Shores Defendants were conspiring amongst one another to violate his federal constitutional rights. The problem for Plaintiff with this type of allegation is such a claim is barred by the "Intra-Corporate Conspiracy Doctrine."
>
> City's Reply Brief, PageID.819

It is unlikely that the intra-corporate conspiracy doctrine would apply to a §1983 (or even §1985) Conspiracy claim under these circumstances. Plaintiff is not trying to establish Conspiracy as a *cause of action*. Even if Plaintiff were to bring a §1985 Conspiracy claim, further inquiry would be required if this doctrine were asserted as a defense.[10]  Obviously, this would have no bearing on conspiracies between separate government agencies and/or private actors.

---

[10] The conspiracy allegations in this case are more like those in *Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 909-10 (S.D. Ohio 2016) (Sargus, C.J.)  ---  Also noting (fn.14) that: "It is also uncertain whether the intra-corporate conspiracy doctrine even applies to municipal government officials in a § 1983 action. See *DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604, 615-16 (6th Cir.2015) (declining to hold that the intra-corporate conspiracy doctrine applies to municipal governmental officials in a § 1983 action and instructing the district court to make that determination on remand); see also *Kinkus v. Vill. of Yorkville*, 476 F.Supp.2d 829, 839-40 (S.D.Ohio 2007) ("The intra-corporate conspiracy doctrine, however, is not applicable in this case.... Defendants do not cite any precedent that supports Defendants' position that the intra-corporate conspiracy doctrine can be applied to a civil conspiracy claim under § 1983.").

Most importantly, the doctrine does not preclude plaintiff from relying upon these communications to establish various elements of his §1983 First Amendment claims. If that were the case, it would become extraordinarily difficult to establish municipal liability under circumstances where the unconstitutional practice or policy is expressed by department communications. Here, Plaintiff relies on these communications to support inferences which include: a shared awareness of Plaintiff's protected activity; shared animus toward Plaintiff's protected activity; retaliatory motivations driving adverse actions; the pretextual nature of certain justifications; participation and approval by final decision-makers; and unconstitutional customs or policies.

### Conclusion

Plaintiff believes that these arguments have been asserted because a dispositive motion was the only way to delay discovery.  The motion for judgement on the pleadings should be denied.

Respectfully Submitted on 11/14/2018:     **/s/ Daniel William Rudd**
                                            Daniel William Rudd, Plaintiff (Pro Se)
                                            201 S LAKE AVE, SPRING LAKE, MI 49456
                                            (231) 557-2532  daniel@stock20.com