UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL WILLIAM RUDD,

      Plaintiff,

v.

CITY OF NORTON SHORES, et al.,

      Defendants.

Case No.  1:18-cv-124

Honorable Gordon J. Quist
U.S. District Court Judge

---

**PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS
AGAINST ATTORNEY MICHELLE MCLEAN & ATTORNEY STEVEN SCHULTZ**

Pursuant to Fed. R. Civ. P. 11, Plaintiff submits notice of the following deficiencies in the filings for dismissal of Plaintiff's claims which were submitted by Attorney Michelle McLean (ECF NO.54) and by Attorney Steven Schultz (ECF No.58) on 9/10/18. A copy of this motion was sent to all Defendants on 10/26/18, delivered electronically and also sent by prepaid first class mail.

1) Both Defendants (Bolhouse and Melissa Meyers) assert that Plaintiff's claim for malicious prosecution is time barred. (See PageId.364, 410). This claim appears to be frivolous and should have been promptly withdrawn. Plaintiff immediately addressed this concern to opposing counsel during concurrence discussions:

> **Plaintiff wrote (9/11/18 email):**
>
> I believe that Mr. Schultz and Ms. McLean are indicating that the 2 year statute of limitations for Malicious Prosecution expired a day before filing. If this is the case, then they are failing to factor in the weekend as contemplated by the court rules on computation of time.
>
> Mr. Schultz and Ms. McClean, please let me know if I am misunderstanding your argument on this. If the statute of limitations precludes a claim, I will dismiss it voluntarily.

1

> **Ms. McLean responded (9/11/18 email):**
>
> Our motion has been filed. We believe that you are incorrectly reading the court rules re: computation of time for filing. If you will agree to a voluntary dismissal, that would be great. Otherwise, I will no longer respond to this line of emails as I do not wish to argue the merits, or lack thereof, of the case.

2) The nature of the state court's 2013 rulings regarding the ex parte PPO obtained by Defendant Melissa Meyers are material and of central importance to many of the claims in this lawsuit. Although a Rule 12(c) challenge should focus exclusively on the sufficiency of the pleadings, Defendant Melissa Meyers and the Bolhouse Defendants both assert an identical counter-statement of facts:

> "Plaintiff subsequently moved to have the PPO set aside or terminated. Rather than terminate the PPO, Judge Pittman extended it indefinitely."

(PageID.360; PageID.402). The claim is false. The record of state court proceedings makes this very clear. There were numerous delays and adjournments (requested by Ms. Meyers) while the trial court heard from witnesses on Plaintiff's motion to terminate the PPO. (No motion to extend the PPO had been filed and an extension was never contemplated by the court). Near the end of the second hearing (11/26/13), Judge Pittman concluded the proceedings early (acknowledging that the presentation of evidence was incomplete) and issued a temporary ruling which he believed would afford some relief to each party. There is nothing in the record to suggest that Judge Pittman intended to extend the PPO indefinitely. He specifically stated that this was not the case. However, Judge Pittman **did** explicitly state his intention to terminate the PPO early—only allowing it to remain in place, as a prophylactic measure <u>for a few weeks</u> while a pending motion was resolved (11/26/13, see PageID.554-559).[1]

---

[1] See also the succinct summary of these rulings, filed as an Exhibit at PageID.535-537.

The wording "until further order of the court" was included in the 12/17/13 Order based on Judge Pittman's specific instructions and for a singular purpose:

> THE COURT: Well, let me give you a little guidance. The order should indicate that the protection order will remain in effect until further order of the Court. Okay? That gives me the discretion and authority to end it earlier, based on the agreements and the resolutions that we reach here in the custody, parenting time stuff.[2]

Judge Pittman's guidance for the written order <u>did not</u> include directions to indicate that Plaintiff's motion to terminate had been "adjudged" and/or "denied." This wording was unilaterally added by counsel for Melissa Meyers and submitted for entry via the "7-day rule" under circumstances where it was exceedingly difficult to raise any objection.[3] However, this wording does not comport with the actual rulings of the trial court. To the extent that there was a judicial determination, the term of the PPO was modified in Plaintiff's favor. This is confirmed by the same judge's findings of fact and conclusions of law which were placed on the record during a subsequent hearing (1/23/14, PageID.564-566).

> **THE COURT:** Well, I think by virtue of the decision that this Court reached, and whether you agree or not, that's certainly your prerogative, but by virtue of simply the idea that the term of the order was modified indicates that there was some arguable merit. **That I made a decision based upon that merit to shorten the term of the PPO's existence… Mr. Rudd did receive some relief as he was seeking here. There was a modification.**

---

[2] The same transcript also makes it clear that Judge Pittman meant resolution of *a specific issue* coming up in the next few weeks –NOT resolution of any and all future custody determinations.

[3] An order submitted for entry under the "7-day rule", or MCR 2.602(B)(3), will be submitted to the judge for entry if no objections are filed within 7 days. Some Attorneys exploit this procedure, along with creative mailing practices to gain an advantage in the litigation. Often, there is very little time to object, and the procedure is time consuming (expensive). In addition to the financial hardship it is well known that Judge Pittman has very little patience for hearing "7-day rule" objections. Plaintiff's attorneys advised that challenging the 12/17/13 Order in the PPO proceedings could result in an unfavorable posture toward Plaintiff on important custody determinations which were pending. Plaintiff was already several thousand dollars behind on legal billings and deeply in debt. Because costs or sanctions are rarely assessed against local attorneys, there is no risk in attempting to expand (or limit) the scope of judicial ruling by adding favorable language to the written order. Sadly, this is a common practice for several unethical attorneys who practice regularly in this court.

3) Both briefs falsely claim that the ruling to remove the LEIN entry and terminate the criminal contempt proceedings was based on an agreement by Plaintiff. (Melissa Meyers brief at PageID.403, 410-411; Bolhouse Def. brief at PageID.360, 364-365.) Plaintiff never made the concessions which are described in the preamble of the 2/4/16 Order which the Defendants now rely upon. This language is the product of the same fraudulent practice which is described in the footnote of the previous page.

Judge Pittman dismissed all claims because he finally reviewed the transcripts of rulings he had previously made back in 2013. The 12/15/15 transcript shows that Judge Pittman was genuinely surprised to learn that he had never extended the ex parte PPO as the Bolhouse Defendants had been claiming; and that the actual ruling indicated that term would be modified in Plaintiff's favor. (Exhibit B)

Although Attorney Michelle McLean tried very hard to prevent Judge Pittman from reviewing his prior rulings—repeatedly suggesting that the parties could work out "an agreement", Plaintiff pleaded with Judge Pittman to review the transcript and settle the matter immediately. Ms. McLean's efforts to force Plaintiff into some kind of agreement failed.

In the same hearing, Ms. McLean also suggested that the criminal contempt proceedings should remain pending against Plaintiff to be resolved in mediation. Judge Pittman ruled against Attorney McLean on this and ordered that the criminal contempt proceedings would also be dismissed.[4]

**The transcrtip of the 12/15/15 hearing is attached as Exhibit B.**

---

[4] While the contempt issues were not ever adjudicated, the record is clear that Attorney McLean's basis for initiating contempt proceedings were facially insufficient. The 11/9/15 hearing transcript is the only time that alleged PPO violations were discussed on the record. During that hearing, Judge Pittman flatly rejects each and every supporting basis for contempt proceedings which Attorney McLean raised (see PageID.576-581).

4

At all times, Plaintiff has expressed that he has absolutely no desire for proximity or personal contact with Melissa Meyers. However, in light of what Melissa Meyers and the Bolhouse Defendants had deemed "unconsented contact", Plaintiff did not want the dismissal of these actions to be premised upon any such agreement. During the 12/15/15 hearing, Plaintiff (only recently forced to proceed without counsel) worked up the courage to insist that Judge Pittman would take just a few more minutes to review transcripts of prior rulings.

In spite of Ms. McLean's interruptions (opposing a review of the transcript and suggesting that the parties could negotiate a dismissal), Plaintiff persuaded Judge Pittman to review the transcript 2013 ruling (quoted on page 2). This ruling was the basis for dismissal. Judge Pittman specifically instructed Ms. McLean to draft a written order indicating that these matters were being closed out **pursuant to the rulings he had made back in 2013**.[5] Nonetheless, Attorney McLean scripted her own narrative and inserted it into the preamble of the written order:

> The Court having been made aware of new developments related to the case, specifically that Petitioner (Ms. Meyers) was no longer representing Respondent's ex-wife in a custody action, *Daniel William Rudd v Andrea J. Averill (f/k/a Rudd),* Muskegon County Circuit Court, Case No. 07-36874-DM; the Respondent having acknowledged on the record that he will have no future contact with Petitioner.

Plaintiff advised the Bolhouse Defendant that he objected to this wording because: (1) Michelle McLean and Melissa Meyers had expanded the definition of "contact" to include scenarios like the beach soccer tournament and Plaintiff's complaint to the Norton Shores police department; (2) Because it was not true that Plaintiff placed the described "acknowledgment" on the record or that anything had been dismissed on the basis of such an agreement; (3) Plaintiff did not want this

---

[5] See page 19 of the 12/15/15 transcript. (which is already in the possession of Attorney Michelle McLean and Attorney Melissa Meyers).

language to be misconstrued in the future to suggest that Plaintiff had ever engaged in an any unconsented contact; and (4) Plaintiff did not want the language to suggest that the dismissal had been the result of any concessions or inducements by Plaintiff.

Although Ms. McLean used 7-day order *gamesmanship* to thwart any opportunity for Plaintiff to object, a hearing was set on the matter. The 2/4/16 transcript includes numerous misrepresentations by Ms. McLean. She falsely claimed that an agreement had been placed on the record, and advised the court that she could not understand the basis for Plaintiff's objection—a claim which seems especially dubious in light of what Ms. McLean is now telling this Court.

Ms. McLean's representations were intended to manipulate the judge's short temper and severe distaste for dealing with this particular case—causing him to hastily sign the order without allowing Plaintiff to fully state his objections.

This is exactly what occurred—however, Judge Pittman did still note that the language was part of the preamble, and therefore would not have any binding or enforceable impact on Plaintiff's rights and responsibilities (12/5/17 transcript, page):

> THE COURT: It's part of the preamble, though, more than anything. It's part of the preamble. I don't have any problem with this order. (Signing paper) I don't think this is one that should be entered here with the holes in it.
>
> Mr. Rudd, I don't want to—I'm not here to give you a lesson in law, but what I'm--what you're held to, what you're responsible for, what you could be held in contempt of, what is enforceable by the Court, is what's in the order, not what's in the preamble or caption above.

Nonetheless, Plaintiff still pleaded for a review of the transcript and asked Judge Pittman to strike the additional wording. This was fruitless *because* Ms. McLean had succeeded in her manipulations and provoked Judge Pittman's temper.

6

Although Judge Pittman considered the "preamble" to be innocuous, this is exactly the wording which Attorney McLean is now relying upon as evidence that Plaintiff made concessions and an agreement was placed on the record. Where such an agreement would serve as a bar to Plaintiff's claims, this is serious fraud.

> The Order further reflects a concession on Plaintiffs behalf in that Plaintiff expressly "acknowledged on the record that he would have no future contact with Ms. Meyers." Id at p. 2. This is important because "In Michigan, the general rule is that if termination of a criminal prosecution results from compromise or settlement or is brought about by an act of the accused as a courtesy or favor or by an act of the accused that prevents litigation, the proceeding has not terminated in favor of the accused for purposes of an action for malicious prosecution." *Cox v. Williams*, 233 Mich. App.388, 391 (1999). [6]

The totality of these actions by Attorney Michelle McLean reflects a shocking level of calculated and sustained dishonesty by a sworn officer of the court. Ms. McLean goes a step further in her brief where this same *preamble language* is framed as an actual statement by the judge. (See PageID.360, emphasis highlighted)

> meritless. The Court did not hold Mr. Rudd in contempt and the matter was ultimately amicably resolved with the entry of an order dismissing the PPO. ==Judge Pittman specifically stated== that the PPO would be dismissed, not because it lacked merit, but rather pursuant to a change in circumstances and an agreement between the parties.
>
>> The Court having been made aware of new developments related to the case, specifically that Petitioner (Ms. Meyers) was no longer representing Respondent's ex-wife in a custody action, *Daniel William Rudd v Andrea J. Averill (f/k/a Rudd)*, Muskegon County Circuit Court, Case No. 07-36874-DM; the Respondent having acknowledged on the record that he will have no future contact with Petitioner.

The transcripts of the 12/15/15 and 2/4/16 hearings overwhelmingly establish that the dismissal of these claims was not the product of concessions by Plaintiff. Courts rely upon attorneys to be honest and diligent in conforming written orders to the actual rulings. Exploiting that trust to gain an illicit advantage is not

---

[6] Attorney Michelle McLean's brief at PageID.365, Attorney Schultz includes this same passage in his brief at PageId.411, however it is likely that Mr. Schultz was reasonably relying upon the the representations of his client and Ms. McLean—because he was not involved in the underlying proceedings at all.   See also PageId.360, 364, and 410.

zealous advocacy. Similarly, judges rely upon attorneys to accurately portray their direct knowledge of what occurred in other court proceedings. In the state court litigation, these obligations were egregiously and repeatedly violated. A similar violation, built on the prior misconduct, is now before this Court.

4) In this same section of Ms. McLean's brief (pictured above), Ms. McLean also suggests that matter was "amicably resolved" by agreement. This also is false, there was no agreement and the resolution was not amicable.

It is very clear from the correspondence of the parties and the transcripts of the proceedings that (1) the Bolhouse Defendants had no intention of withdrawing the criminal contempt proceedings on their own; and (2) the Bolhouse Defendants never stopped using these proceedings as a vehicle to harass and injure Plaintiff.

Plaintiff was a captive audience in these communications. Plaintiff could not afford an attorney. Plaintiff was required to participate in the arrangement of the mediation which had been ordered. Plaintiff was defending himself against the threat of incarceration (and the threat of a permanent criminal record). Knowing this, Ms. McLean repeatedly infused the circumstances with unnecessary hostility and demeaning commentary. Ms. McLean attempted to manufacture "PPO violations" by surreptitiously inserting Melissa Meyers's e-mail address into group email discussions which had previously been exchanged between Plaintiff and the appropriate Bolhouse attorneys. The intent was that Plaintiff would hit "reply all" and Ms. McLean could claim that "unconsented contact" had occurred. These practices continued without any respite until the final order was entered.

One example of this pervasive incivility relates to the preamble wording of the 12/4/16 order. Although Plaintiff had plainly articulated valid reasons for objecting to the *preamble* language discussed in the previous section, Attorney

McLean feigned confusion in her direct communication with Plaintiff. She simultaneously circulated demeaning comments about Plaintiff *to her staff* in correspondence that would be sent on to Plaintiff.   (e-mails attached, Exhibit C)

> From: Michelle McLean
> Sent: Wed, Dec 23, 2015 at 11:26 AM
> To: Daniel Rudd daniel@stock20.com
> Cc: Sally Ray <sallyr@bolhouselaw.com>
>
> Mr. Rudd-
>
> I am baffled that you would have any objections to the proposed orders.
>
> Michelle McLean
> 616 531-7711
> Cell 616-706-1127
> Michellem@bolhouselaw.com

> From: Michelle McLean
> Sent: Wednesday, **December 23, 2015 10:42 AM**
> Cc: Sally Ray sallyr@bolhouselaw.com
> Subject: Re: Proposed Order/Meyers v Rudd
>
> See he plans on objecting. What an ass.
>
> Michelle McLean
> 616 531-7711
> Cell 616-706-1127
> Michellem@bolhouselaw.com

It is obvious now that Ms. McLean was not "baffled" at all. Attorney McLean was simply giving Plaintiff a preview of what she would convincingly portray to Judge Pittman if Plaintiff filed an objection to the wording in her preamble. Ms. McLean's comment to her colleague (forwarded to Plaintiff with other correspondence) foreshadowed Attorney McLean's intention to portray Plaintiff as an obsessive pro-se litigant who was simply being unreasonable by raising an inexplicable objection. This strategy can be observed throughout the record.

The transcript of the 2/4/16 hearing shows that this is exactly what Ms. McLean did; and that she did it with great skill. (2/4/16 Transcript, Exhibit D) The combination of subtle deception and the judge's existing distaste for the litigation

9

the judge's frustration allowed Ms. McLean to preserve her clever preamble. However, that does not mean that the dismissal of anything was predicated upon any concession or agreement by Plaintiff. (See Exhibit B, 12/15/15 hearing).

5) At PageId.361, ¶6, The Bolhouse Defendants misrepresent the substance of Plaintiff's factual allegations. (emphasis added):

> The ulterior purpose **alleged by Plaintiff** is that the show cause proceedings were commenced in an effort to *stop Plaintiff from harassing Ms. Meyers*. The settlement discussions engaged in between Mr. Baar, Ms. McLean and Plaintiff were, by **Plaintiff's own account**, geared towards dismissing the criminal contempt proceedings if Plaintiff agreed to stop harassing Ms. Meyers. See ECF No. 50 at PageID.21. Simply put, **the ulterior purpose alleged by Plaintiff** is the actual stated, intended and authorized purpose of PPO proceedings.

Plaintiff has not alleged that he ever harassed Melissa Meyers to begin with. Plaintiff alleges that the criminal contempt proceedings were leveraged to silence his complaints against the City—and not in an "effort to stop Plaintiff from harassing Ms. Meyers." More specifically, Plaintiff has alleged that Attorneys McLean & Baar indicated that Plaintiff could avoid incarceration by agreeing to drop his complaints against Mark Meyers and the City of Norton Shores.

Although the Bolhouse Defendants may believe that Plaintiff's complaints to the City of Norton Shores constitute harassment (instead of protected activity), they may not project their belief onto the very different claims which Plaintiff has asserted in this lawsuit. It is particularly inappropriate to distort what has been alleged on a challenge to the sufficiency of the pleadings.

6) Both the Bolhouse Defendants and Defendant Melissa Meyers have altered a legal citation in a manner which changes the substance of actual ruling (in their favor). See the discussion of the required "ulterior purpose" for an abuse of process claim (PageID.361 & PageID.406). By cutting off the end of an important sentence, the briefs distort an important element of the legal standard for establishing an abuse of process claim under Michigan law. (emphasis added):

> To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc*, 412 Mich. 1, 30 (1981). The pleadings must additionally allege "a use of process for a purpose outside of the intended purpose and must allege with specificity an act which itself corroborates the ulterior motive." *Young v Motor City Apartments*, 133 Mich App. 671, 681 (1984). With respect to the first element, the Court in Friedman went on to explain that the ulterior purpose has to be something other than settling a suit. **It must also be more than intimidation, "harassment, defamation, exposure to excessive litigation costs, <u>or even coercion."</u>** *Early Detection Center, P.C. v. New York Life Ins. Co.*, 157 Mich. App. 618, 629 (1986).

Both briefs alter the citation by inserting a period after "coercion." This renders a more expansive meaning. The pertinent portion of the cite from *Early Detection Center* should read as follows (emphasis added):

> However, the ulterior purpose alleged must be more than harassment, defamation, exposure to excessive litigation costs, or even <u>coercion</u> **to discontinue business**. *Young*, pp 682-683.

Here, *Early Detection Center* is citing to *Young v Motor City Apartments*, 133 Mich App 671, 675; 350 NW2d 790 (1984), and expressing that a specific type of coercive intent—which runs parallel to the actual object of the litigation—cannot be the "ulterior purpose" which is required to state a claim for abuse of process. *Early Detection Center* is not saying that the ulterior purpose must be something other than "coercion" in the general sense. However, that is what the Defendants have conveyed to this court by altering the citation.

11

**Conclusion:** Although this is not an exhaustive listing, the foregoing examples constitute violations of the standards set forth in Rule 11 of the Federal Rules of Civil Procedure. If not remedied within the time allotted by the Court, these violations should be addressed with appropriate sanctions, fashioned by this Court.

> Plaintiff certifies that all factual representations in this filing are true and accurate to the best of Plaintiff's knowledge, information and belief, and that this is not being filed for any improper purpose. Plaintiff further certifies that he sent a DRAFT of this document (by email and by prepaid first class mail) to counsel for all Defendants on 10/26/18.

Date: November 19, 2018.         /s/ Daniel William Rudd
                                 Daniel William Rudd, Plaintiff (Pro Se)
                                 daniel@stock20.com  231-557-2532
                                 201 S LAKE AVE. SPRING LAKE, MI 49456