UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL WILLIAM RUDD,

    Plaintiff,

v.                                                                                          Case No. 1:18-CV-124

CITY OF NORTON SHORES, et al.,                              HON. GORDON J. QUIST

    Defendants.
_____/

**OPINION AND ORDER**

    Plaintiff, Daniel Rudd, proceeding pro se, has sued several Defendants, alleging a wide-ranging conspiracy between governmental and private actors to violate Rudd's federal constitutional rights and related state law rights in connection with Rudd's child custody dispute with his ex-wife. The Court has already dismissed Rudd's claims against Defendant Michigan State Police (MSP) Lieutenant Chris McIntire and Counts 1, 3, and 4 as to all Defendants. (ECF No. 51.) Thus, the remaining claims are Count 2 (First Amendment retaliation) and Counts 5-7 (state-law claims for abuse of process, malicious prosecution, and infliction of emotional distress). The remaining Defendants are Bolhouse, Hoffstee & McLean P.C. (f/k/a Bolhouse, Baar & Hofstee P.C.), Michelle McLean, and Joel Baar (Bolhouse Defendants); City of Norton Shores, Police Chief Jon Gale,[1] Mayor Gary Nelund, Police Chief Daniel Shaw, Sergeant Matthew Rhyndress, Officer Michael Wasilewski, Mark Meyers, Attorney Douglas Hughes, and William Hughes, PLLC (Norton Shores Defendants); and Melissa Meyers.

---

[1] The Court signed a stipulated order adding Jon Gale as a Defendant and directing the parties to list Jon Gale as a Defendant in the caption of future filings. (ECF No. 32.)

The Court has before it the Bolhouse Defendants' motion to dismiss (ECF No. 53), Melissa Meyers's motion to dismiss (ECF No. 58), and the Norton Shores Defendants' motion for judgment on the pleadings (ECF No. 60). Although the Bolhouse Defendants and Melissa Meyers characterize their dispositive motions as motions to dismiss for failure to state a claim, the motions are more accurately characterized as motions for judgment on the pleadings because the motions proceed under the standard of review pursuant to Federal Rule of Civil Procedure 12(c). Rudd filed a response with respect to all of the pending dispositive motions. (ECF No. 72.) Rudd then filed a motion to amend or correct his response. (ECF No. 75.) The Court will grant Rudd's motion as it has already considered and incorporated Rudd's arguments from the amended response. Also before the Court are Rudd's motions for sanctions against the Norton Shores Defendants (ECF No. 77) and against Attorneys Michelle McLean and Steven Schultz from Bolhouse, Hofstee & McLean (ECF No. 89).

## I. Background

The Court laid out detailed factual background, as alleged in Rudd's complaint, in its August 8, 2018, Opinion (ECF No. 50), but will provide a brief review of the allegations here:

In July 2013, in the midst of a contentious child custody case, Rudd claims that his ex-wife abducted his children and that Melissa Meyers, the attorney representing his ex-wife in the custody case, aided his ex-wife in the abduction. Rudd contacted the Norton Shores Police Department (NSPD) to report the abduction and request police assistance. According to Rudd, NSPD refused to take any action to retrieve the children because some of the officers had a personal relationship with Melissa Meyers, who was married to the City Manager of Norton Shores, Mark Meyers. A different police agency facilitated the return of the children.

Shortly after the abduction incident, Melissa Meyers obtained an ex parte personal protection order (PPO) against Rudd. Rudd alleges that NSPD inappropriately helped Melissa Meyers obtain the PPO by falsifying police reports, disclosing LEIN (Law Enforcement Information Network) information about Rudd to Mark Meyers, and concealing phone records that would have shown Melissa Meyer's claims to be false. Melissa Meyers withdrew as counsel for Rudd's ex-wife in the custody dispute and was replaced by Michelle McLean (one of the Bolhouse Defendants). Rudd was eventually awarded sole legal and physical custody of his children.

On July 20, 2015, Rudd submitted a complaint to NSPD's new police chief, Jon Gale, regarding Rudd's allegations that NSPD failed to respond appropriately to Rudd's request for assistance in July 2013 and that the NSPD inappropriately aided Melissa Meyers in obtaining the PPO. Chief Gale assured Rudd that he would conduct an investigation of any internal policy violations by NSPD officers still employed by the City and would arrange for an independent investigation by the MSP for Rudd's complaints of criminal acts by officers. Chief Gale arranged for MSP Lieutenant McIntire to conduct the investigation, which, according to Rudd, was done without any documentation or scrutiny.

Rudd claims that Chief Gale provided a copy of Rudd's complaint to Mark and Melissa Meyers in violation of NSPD policy. About a week after Rudd submitted the complaint to Chief Gale, Melissa Meyers threatened to have Rudd held in criminal contempt for a PPO violation when Rudd appeared at the same soccer tournament as Melissa Meyers. Rudd maintains that the PPO had long expired by that time. Melissa Meyers, through her attorney, McLean, filed a motion to have a non-expiring PPO entered in the LEIN database, stating that the PPO from 2013 was indefinite and only through a clerical error was not already entered in the LEIN database. While the motion was pending and three days after Rudd had submitted a FOIA request to the NSPD

3

seeking documents pertaining to his July 20, 2015, complaint, the NSPD entered the PPO record into the LEIN database without a valid court order, which Rudd learned about on September 10, 2015, when he received an automated letter from the MSP. Rudd contacted the NSPD about the LEIN entry and was assured that his concerns would be immediately reviewed by Chief Gale, but Chief Gale did not take any corrective action.

On October 20, 2015, Rudd filed a motion seeking a declaratory judgment concerning the alleged unauthorized entry of the PPO in the LEIN database. Attorney McLean responded with several filings including a request to initiate criminal contempt proceedings against Rudd. On November 5, 2015, the court authorized criminal contempt proceedings, and on the same day, Rudd received a cease-and-desist letter from Attorney Hughes stating that the City would take any legally necessary action to protect Mark Meyers. On November 11, 2015, Rudd met Attorneys McLean and Baar in connection with the contempt proceedings to attempt to reach "a global resolution on all issues in the case," which Rudd interpreted as a threat to stop his complaints to the City and the NSPD. Attorney Hughes, Chief Gale, Mark Meyers, and Lt. McIntire were all present at the later contempt hearing. Ultimately, the court ordered the PPO entry to be removed from the LEIN database because the court acknowledged that Melissa Meyers was no longer representing Rudd's ex-wife in the custody proceedings.[2]

## II. Standard of Review

The standard of review for a judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6). *Roger Miller*

---

[2] Although, generally, the Court does not consider matters beyond the complaint in a motion under Rule 12(c), the Court "may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (quoting *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.,* 181 F.3d 410, 426 (3d Cir. 1999)). The Court will, therefore, take into account the circuit court orders regarding the PPO. (ECF Nos. 53-1, 53-2, 53-4.)

4

*Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 389 (6th Cir. 2007). Under that standard, the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1959 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)).

Because Rudd is proceeding pro se, the Court is instructed to construe his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972) (per curiam). But "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) (citing *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989)).

### III. Motions for Judgment on the Pleadings

The Bolhouse Defendants, the Norton Shores Defendants, and Melissa Meyers have all moved for judgment on the pleadings pursuant to Rule 12(c) on all remaining counts.

#### A. Federal Claim (First Amendment Retaliation)

To prove a claim under 42 U.S.C. § 1983, Rudd must show (1) that he has been deprived of a right "secured by the Constitution and the laws" of the United States and (2) that the

deprivation of that right was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56, 98 S. Ct. 1729, 1733 (1978). Regarding the first element, in a claim of First Amendment retaliation, Rudd must prove three sub-elements: (A) that he engaged in constitutionally protected conduct, (B) that he suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and (C) that the adverse action was motivated at least in part by Rudd's protected conduct. *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005). This Court will separately consider Rudd's § 1983 claim against private actors (Bolhouse Defendants and Melissa Meyers) and governmental actors (Norton Shores Defendants).

*1. Bolhouse Defendants and Melissa Meyers*

Courts are clear that "[a] plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S. Ct. 977, 985 (1999)). A private party can be considered a state actor "if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S. Ct. 924, 930 (2001) (internal quotation marks omitted).[3]

None of the actions in which the Bolhouse Defendants and Melissa Meyers allegedly engaged could be considered behavior attributed to the government, even if these Defendants benefitted from actions of government actors. Melissa Meyers sought, obtained, and took steps to enforce a PPO. The Bolhouse Defendants aided her in those actions. All of these actions were

---

[3] Though *Brentwood Academy* analyzed whether private parties could be considered state actors under the Fourteenth Amendment rather than under § 1983, the Supreme Court has recognized as equivalent the state-action requirement of the Fourteenth Amendment and the under-color-of-state-law requirement of § 1983. *Am. Mfrs.*, 526 U.S. 40, 50, 119 S. Ct. 977, 985 (1999).

6

purely private conduct—in fact, PPO refers to a *personal* protection order. Because a § 1983 claim cannot be brought against a private party, Rudd's claim against the Bolhouse Defendants and Melissa Meyers for First Amendment retaliation under § 1983 must be dismissed.

### 2. *Norton Shores Defendants*

The Norton Shores Defendants concede that they were acting under the color of state law in their dealings with Rudd. (ECF No. 61 at PageID.436.) Therefore, the Court simply has to determine whether Rudd has sufficiently pled facts supporting the elements of retaliation: (1) that Rudd engaged in protected conduct; (2) that Rudd suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was motivated at least in part by Rudd's protected conduct.

Rudd alleges that he engaged in protected conduct when he petitioned the Norton Shores Defendants—in July 2013 when he requested assistance from the NSPD to recover his children, in July 2015 when he submitted his complaint to Chief Gale, and in August 2015 when he submitted FOIA requests related to his earlier complaint. "The First Amendment guarantees 'the right of the people . . . to petition the Government for a redress of grievances.'" *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (quoting U.S. Const. amend. I). Thus, Rudd has sufficiently pled facts supporting the first element of retaliation.

Rudd's principal allegations in relation to adverse actions are (a) that the NSPD failed to investigate the alleged abduction of his children in July 2013; (b) that Chief Gale failed to investigate internal policy violations after Rudd submitted his complaint in July 2015; (c) that the NSPD entered a PPO entry into the LEIN database without a valid court order on August 28, 2015, after Rudd submitted FOIA requests to the NSPD three days earlier; (d) that Chief Gale failed to take corrective action with regard to the allegedly improper LEIN entry; and (e) that several of the

Norton Shores Defendants were present at the contempt hearing in connection with the alleged PPO violation.

Rudd's allegations (a), (b), and (d) involve claims that the NSPD failed to respond to Rudd's petitions. But a "citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views," and so the failure to respond is not actionable. *Apple*, 183 F.3d at 479.

In regard to Rudd's allegation (e), this Court continues to opine, as it did in its August 8, 2018, Order, that merely showing up to a hearing to testify would not deter a person of ordinary firmness from engaging in protected conduct. (ECF No. 50 at PageID.333.) This is particularly so when Rudd scheduled the hearing and should have anticipated that Melissa Meyers would have called witnesses to oppose the motion.

The last remaining allegation is Rudd's allegation (c)—that the NSPD entered the PPO into the LEIN database without a valid court order. However, this Court is empowered to "weed out . . . inconsequential actions" from First Amendment retaliation claims. *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). Because the PPO was still in effect on August 28, 2015,[4] mere entry into the LEIN system of a valid PPO is inconsequential, regardless of how the oversight came to the attention of the NSPD. Moreover, Rudd claims that the NSPD entered the PPO into the LEIN database, but he failed to name any individual or allege that the NSPD acted pursuant to an official policy. In other words, Rudd's "complaint failed to allege the requisite personal involvement to state a § 1983 claim." *Polk Cty. v. Dodson*, 454 U.S. 312, 315–16, 102 S. Ct. 445,

---

[4] The order of the circuit court stated that Rudd's motion to terminate the PPO in December 2013 was denied and that the PPO "shall remain in full force and effect until further order of the Court." (Bolhouse Defendants' Ex. 2, ECF No. 53-2 at PageID.345.) Defendants claim and Rudd does not contest that there were no further orders of the court regarding the PPO between the date of the order and the LEIN entry that would have terminated the PPO.

448, 70 L. Ed. 2d 509 (1981). Therefore, Rudd's § 1983 claim against the Norton Shores Defendants also must be dismissed.

### B. State Law Claims

Having concluded that Rudd's last remaining federal law claim should be dismissed, the Court must decide whether to exercise supplemental jurisdiction over their state law claims. "A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (citing *Transcon. Leasing, Inc. v. Mich. Nat'l Bank of Detroit*, 738 F.2d 163, 166 (6th Cir. 1984)). In deciding whether to exercise its supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (affirming district court's order granting summary judgment on federal claim and dismissing state law claims without prejudice). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson*, 89 F.3d at 1254-55 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619 n.7 (1988)). Given the early stage of this litigation, as well as Michigan's interest in interpreting and applying its own tort laws, the Court concludes that this is an appropriate case to decline to exercise its supplemental jurisdiction.

### IV. Motions for Sanctions

Rudd has moved under Rule 11 for sanctions against the Norton Shores Defendants (ECF No. 77) and against Attorneys McLean and Schultz representing the Bolhouse Defendants and Melissa Meyers, respectively (ECF No. 89).

9

Pursuant to Rule 11, an attorney or an unrepresented party who files a pleading or other paper with a court certifies that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1), (2). Upon finding that Rule 11 has been violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

In the Sixth Circuit, the test for determining whether a party has violated Rule 11 is whether the individual's conduct was reasonable under the circumstances. *See Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997). The standard is an objective one. *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989); *see also First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002) (noting that "the imposition of Rule 11 sanctions requires a showing of 'objectively unreasonable conduct'" (quoting *United States v. Kouri-Perez*, 187 F.3d 1, 8 (1st Cir. 1999)). The attorney's conduct is to be judged at the time the pleading or paper was signed rather than on the basis of hindsight. *See INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987).

Rudd's primary argument in support of Rule 11 sanctions seems to be that he dislikes the arguments and characterizations in Defendants' motions for judgment on the pleadings. In regard to Attorneys McLean and Schultz, Rudd attempts to argue the circuit court judge's intent behind

10

the written orders and to supplement his arguments in response to Defendants' motions for judgment on the pleadings. But Rudd's arguments do not come close to forming the basis for Rule 11 sanctions.

The same is true of Rudd's motion for sanctions against the Norton Shores Defendants. Rudd takes issue with how Defendants paraphrased his allegations. But Defendants merely removed allegations that they considered conclusory and framed the remaining factual allegations in the light most favorable to their case, which is not unreasonable. Rudd also claims that Attorney Robert Callahan "needlessly includes disparaging remarks about the Plaintiff" in Defendants' motion for judgment on the pleadings and then goes on to detail an instance where Attorney Callahan told Rudd in an email that he was not invited to the law firm's office because Attorney Callahan was "appalled" at how Rudd had treated another firm employee in a different case. However, Rule 11 only applies to pleadings or other documents submitted to the Court, not to correspondence between the parties. And to the extent that Attorney Callahan made "disparaging remarks" about Rudd in the pleadings, that is also not actionable under Rule 11. Thus, Rudd does not have a basis for Rule 11 sanctions.

## V. Conclusion

For the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiff's motion to amend or correct his response to Defendants' dispositive motions (ECF No. 75) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' motions for judgment on the pleadings as to Count 2 (ECF Nos. 53, 58, 60) are **GRANTED.** Counts 5-7 (state-law claims) are **dismissed without prejudice**, pursuant to 28 U.S.C. § 1367(c)(3).

**IT IS FURTHER ORDERED** that Plaintiff's motions for sanctions against the Norton Shores Defendants (ECF No. 77) and Attorneys McLean and Schultz (ECF No. 89) are **DENIED.**

This case is **concluded**.  A separate judgment will enter.


Dated: January 8, 2019                                     /s/ Gordon J. Quist
                                                                GORDON J. QUIST
                                          UNITED STATES DISTRICT JUDGE