UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL WILLIAM RUDD,

       Plaintiff,

   v.

CITY OF NORTON SHORES, et al.,

       Defendants.
_____/

Case No. 1:18-cv-124

Hon. Gordon J. Quist
U.S. District Court Judge
Hon. Ray Kent
Magistrate Judge

# RESPONSE IN OPPOSITION TO THE BOLHOUSE DEFENDANTS' REQUEST FOR A PROTECTIVE ORDER

The Bolhouse Defendants have moved for a protective order "that the plaintiff, Daniel Rudd be prohibited from self-recording depositions taken by the parties in this case." As described more fully Plaintiff's supporting brief (see below), the Bolhouse Defendants have not articulated a proper basis for a protective order to issue.

Plaintiff respectfully asks this Court to deny the request in full.

/s/   Daniel W. Rudd            2/25/2021
Daniel W. Rudd, Plaintiff (Pro Se)
201 S LAKE AVE, SPRING LAKE, MI 49456
daniel@stock20.com    231-557-2532

## I.   Plaintiff has articulated a valid need for the recordings.

For the sake of illustration, assume this litigation requires ten depositions at an average length of five hours per deposition. In that case, the total number of transcribed pages would likely range between 2,000 and 2,500 with a cost of $7,900-$9,875 for the original transcripts and $5,300-$6,625 for copies of the original transcripts.[1] As Plaintiff advised the parties:

> It is likely that I will not be able to immediately afford a copy of all the transcripts. Reviewing prior testimony is essential as I prepare for other depositions and for dispositive motion practice.

(Plaintiff's 2/4/21 email, ECF No. 139-1, PageID.1431). In a prior brief, Plaintiff has also explained that audiovisual recordings of deposition testimony will aid Plaintiff's future trial counsel in making critical decisions (See ECF No 139 at PageID.1428).

The Bolhouse Defendant's admit that "recording through Zoom is not invasive" but insist there is "simply no reason for the Plaintiff to demand that he record through the Court reporter, Zoom, and his GoPro." (Bolhouse Brief, 140-1, PageID.1442). While the Bolhouse Defendants may be dissatisfied with the reasons Plaintiff has provided, a different showing is required for the relief they seek.

The Bolhouse Defendants must specifically demonstrate why a protective order is necessary to prevent one of the harms described under Fed. R. Civ. P. 26(c)(1)(A). See *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) ("[W]e have not abandoned the requirement that one of the harms listed in Rule 26(c)(1)(A) must be specified in order to warrant a protective order.").

---

[1] These estimates, which do not include additional costs for the noticing party, are drawn from the rate card of the stenographer used by Norton Shore Defendants and the general estimated range of 40-50 transcript pages per hour of deposition testimony.

## II. The Bolhouse Defendants have identified no harm which could arise from the existence of <u>additional</u> recordings.

As it pertains to the "hybrid" (in-person/remote) deposition noticed by Norton Shores, the Bolhouse Defendants are mistaken regarding the official deposition record. Norton Shores has <u>not</u> arranged for their stenographer to record video of Plaintiff's deposition testimony (in person or via zoom). Accordingly, Plaintiff's additional recordings are the only form of audiovisual recording currently noticed.

Plaintiff only seeks to make an *in person* recording ("Gopro") of his own in-person testimony at the "hybrid" deposition noticed by Norton Shores. (The reasoning for this is described more fully at ECF No. 139 at PageID.1428). The remaining depositions (noticed by Plaintiff) will be conducted remotely in their entirety—with no need for any *in person* recording.

However, even if Plaintiff did seek to designate a third recording method, Rule 30(b)(3)(B) does not prohibit redundancy. Upon providing proper notice, any party may designate "another" recording method. If anything, the inherent language of the rule contemplates overlapping recording methods—each one "in addition to" that which has already been noticed.

A party's subjective belief that some number of recording methods is "too many" does not justify the issuance of a protective order. "To show good cause, the movant for a protective order must articulate specific facts" as to the harm they are attempting to avoid. See *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001).

## III. The "factual" concerns identified do not justify a protective order.

The Bolhouse Defendants have described concerns which primarily fall under two categories: (1) the possibility of a video being "edited" at a later point; and (2) the possibility that private or privileged information (or "private chats") might be recorded.

### a. Any recording can be edited.

A video recording of a remote deposition is not more or less susceptible to alteration by editing than any other form of audio or video recording. It does not matter who presses the record button. If an unethical attorney or party wanted to perpetrate fraud on the court through digital editing, it would make no difference who had pressed the "record" button.

All digital recordings (self-recorded or professional recorded) can be edited. However, the court rules offer protection from this type of fraud by requiring an official to be certified as authentic by a qualified Rule 28 deposition officer. "These procedures are designed to ensure that a neutral individual administers the oath and that the deposition is an accurate reflection of the witness's testimony. It removes doubt as to whether a recording or transcript has been tampered with or edited by either party." *Alcorn v. City of Chicago*, 336 F.R.D. 440, 2020 WL 4904567 (N.D. Ill. 2020) at *2. If anyone attempted to pass of an altered recording, it would not match up to the official certified record.[2]

Additionally, Plaintiff has offered to promptly provide an exact copy of any recording to opposing counsel, which serves as an additional safeguard against any possibility of fraudulent alterations.

### b. The parties can manage their own privacy concerns.

During a remote deposition, any participant has the option of muting (or disconnecting) their microphone, covering their camera, or walking away from his/her computer. These steps provide the only failsafe mechanisms for avoiding disclosure of privileged information.

---

[2] The stenographers Plaintiff has worked with in the past keep a digital audio recording even if the official record is stenographic only. This is useful if there are any discrepancies disagreements as to the testimony which occurred.

An order prohibiting "self-recording" would not prevent sensitive disclosures from being overheard if counsel discloses the information through a remote connection. For similar reasons, the "private chat" concern, expressed by the Bolhouse Defendants, must also be addressed with improved privacy practices:

> Defendants who have been asked to appear via Zoom and who wish to privately communicate with their attorneys should not have to worry that their private communications may be secretly recorded by the account owner and later accessed by Plaintiff or any other 3rd party for that matter. The Bolhouse Defendants further object to recording via Zoom since their private, attorney-client messages could be recorded without their knowledge or consent.

(Bolhouse Brief, PageID.1443). However, a straightforward reading of the attached (Bolhouse Ex. E) makes clear that the "account owner" in question is none other than Ms. McLean herself. Only the user himself/herself can enable the recording of private chats through his or her own Zoom software. Further, they can only be "self-recorded" on that same person's computer. Unless, Ms. McLean shared that recording (from her own computer) the private chats would still remain private (ECF No. 140-8, PageID.1456-1458)—also clarifying that "the real privacy threat" only comes in to play "**if** you shared the chat log with another person." The article concludes by stating, in bold print, the simplest and best solution for the concerns at issue: "**Maybe Don't Send Sensitive Private Messages on Zoom**." (PageID.1458).

Plaintiff additionally notes that it would usually be improper for an attorney to be using any electronic communication device for private communications with the client while a deposition is pending. See e.g. the provisions set forth by U.S. Magistrate Judge Larem Wells Roby in *Antares Mar. Pte Ltd. v. Bd. of Comm'rs of Port of New Orleans*, 18-cv-12145 at *9 (E.D. La. Nov. 30, 2020)

> No participant in the deposition may utilize the "chat" function (or similar private communication function) of the video-conference platform, except to facilitate the sharing of documents during

> the deposition. In no event shall the "chat" function be used for any counsel to communicate directly with the witness.

*Id.* If the attorney is representing the deponent, and a concern regarding the assertion of a privilege arises, that attorney should disclose the need to confer and request a short break for that purpose.

> Given the technology now available, there is no significant difference between defense counsel sitting next to her client in the same room or by video. When warranted, counsel and her client can separately and privately confer during the deposition through a separate Zoom channel or via FaceTime.

*WCR, Inc. v. W. Can. Plate Exchanger, Ltd.*, No. 3:18-cv-00278, at *4 (S.D. Ohio Dec. 16, 2020). In short, the Bolhouse Defendants have full and exclusive control over any concerns with privacy and privilege during the course of a remote deposition.

### c. Failure to comply with Local Rule 7.1(d)

Since the COVID-19 pandemic began, courts have frequently issued guidance and orders on conducting remote depositions. There is a wealth of information available to address the exact concerns the Bolhouse Defendants have raised in this motion. In this case, the Bolhouse Defendants are seeking a different form of relief than Norton Shores (prohibition on zoom recording), but failed to describe any of the "factual objections to zoom recording" set forth in their motion.

Plaintiff had repeatedly expressed his willingness to address any "specific" concerns by way of a stipulated protective order. At a minimum, the Bolhouse Defendants had an obligation to articulate the specific nature of their concerns before seeking a protective order. Asserting the possibility of federal wiretapping violations (See Bolhouse Exhibit C, PageID.1451) does not constitute a good faith effort to resolve the issues which the Bolhouse Defendants have actually raised in this motion.

"The hardships presented by the pandemic must inspire a higher level of cooperation, courtesy, and creative problem solving between counsel than that

demonstrated here." *Saps v. Ezcare Clinic, Inc.*, No. 19-11229 at *5 (E.D. La. Apr. 21, 2020). A failure to comply with Local Rule 7.1(d) is a sufficient basis for denial of the relief sought.

### IV. Requiring secondary deposition officers would needlessly increase the costs of deposition.

The current language of Rule 30(b)(3)(B) reflects a very intentional trajectory toward encouraging litigants to make use of nonstenographic methods:

> This authorization as reflected in the 1993 amendments to Rule 30 is a change from the former rule which required either a court order or the agreement of counsel to record a deposition by nonstenographic means. *See* Fed.R.Civ.P. 30 advisory committee's note to subdivision (b).
>
> *Courts have generally given Rule 30 a liberal interpretation designed to promote, rather than hinder, the practice of recording discovery proceedings through the use of nonstenographic means.*

*Ott v. Stipe Law Firm*, 169 F.R.D. 380, 381 (E.D. Okla. 1996) (emphasis added). The Advisory Committee Notes on the 1993 amendments also state the intention to "emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case." A requirement for hiring additional deposition officer for each *additional method* noticed by an or all of the parties, would certainly undermine the objectives described above. Under circumstances where the additional recording is intended for the party's internal review and case preparation purposes, the added expense of a vestigial court reporter serves no purpose. A secondary recording which will not be relied upon as evidence, need not be certified by deposition officer.

As long as a proper deposition officer has been procured to preside over the deposition, the requirements of Rule 28 are fully satisfied. "[N]either Rule 28(a) nor Rule 28(c) specifically prohibit a party's attorney from operating the video camera during the course of a video deposition otherwise conducted in compliance with Rule

30." *Ott v. Stipe Law Firm,* at 381. Long before video-recording became more commonplace, federal courts acknowledged the difference between certifying and presiding over the deposition—as opposed to simply pressing the record button on machine. An unbiased Rule 28 officer has always been essential for the former, but not necessarily for that latter.

> Rule 28(a) does not disqualify plaintiff's attorney from running the video taping equipment. That rule provides that this person may be appointed by the Court or designated by the parties. There is clearly nothing talismanic about having an official stenographer record the testimony much less to have such person operate the camera. Rule 28(c), which disqualifies persons from taking a deposition if they have an interest in the action, is important for stenographic depositions because the operator interprets what people say into words and puts them on paper. It has markedly less significance when the attorney is merely making a stationary video recording of a deposition which can be easily duplicated and given to all parties. That procedure does not involve any interpretation on his part and correspondingly diminishes concern of a conflict of interest.

*Ott* at 381, citing *Rice's Toyota World, Inc. v. Southeast Toyota Distributors, Inc.,* 114 F.R.D. 647 (M.D.N.C. 1987); (Also declining to require that an independent contractor be hired to record "because it would greatly increase the cost of the video deposition"). This same analysis has been cited favorably by a district court within our circuit.

In *Duncan v. Husted*, (S.D. Ohio, 2015), the pro se Plaintiff (Mr. Duncan) sought to reduce the cost of taking deposition by hiring a notary public to preside over the deposition while Mr. Duncan himself operated an audio recording device. Unlike the present litigation, where Plaintiff's recording is for internal review, the pro se plaintiff in *Duncan* noticed self-recorded audio under Rule 30(b)(3)**(A)** as the *official* and <u>exclusive</u> method of recording the deposition. Nonetheless, this unconventional arrangement was permitted because a proper Rule 28 officer would still be presiding

over the deposition. Looking to the analysis set forth in *Ott v. Stipe Law Firm* (and *Rice's Toyota World),* the district court held:

> In short, if Mr. Duncan is proposing that he perform a purely mechanical task (i.e. providing the audio tape equipment and turning it on and off at the direction of the notary), and if the notary performs the other duties required by Rules 28 and 30, the Court believes the process is permissible.
>
> It is important to recall that Fed.R.Civ.P. 1 states that the Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." **There is no reason to put parties to additional expense if that serves no purpose.**
>
> Consequently, the Court grants Mr. Duncan's motion to the extent that it asks for leave for him to provide and operate audio recording equipment at the direction of the officer before whom the deposition is to be taken. The Court will deal with the issue of how the testimony is to be transcribed if and when that issue arises.

*Duncan v. Husted,* 13-cv-1157, 2015 WL 1540550 at *3 (S.D. Ohio Apr. 7, 2015), (emphasis added). Importantly, Rule 30(c)(1) includes no qualifications whatsoever in allowing "a person" to perform the *purely mechanical task* of operating a record button. As long as the deposition officer is present to provide direction, it does not matter who pushes the button.

> After putting the deponent under oath or affirmation, the officer must record the testimony *by the method designated under Rule 30(b)(3)(A).* The testimony must be recorded by the officer personally <u>or</u> by ***a person*** acting in the presence and under the direction of the officer.

Fed. R. Civ. P. 30(c)(1) (emphasis added). If the rules contemplate self-recording for the official deposition record under Rule 30(b)(3)(A), there can be no doubt that self-recording must be allowed for a party's internal use under Rule 30(b)(3)(B). The holdings in *Burgess v. Town of Wallingford* confirm this:

> The plain language of Rule 30(b)(3) reveals that the rule was designed for the convenience of any party who wishes to make a non-

> stenographic recording of deposition testimony, provided that the party give proper notice in advance. Such an audio recording is for the party's personal use in preparing for trial.

*Burgess v. Town of Wallingford,* 2012 WL 4344194, (D. Conn. Sep. 21, 2012)*,* at *27-28; (also holding that "Nowhere in the rule is there a provision specifying particular credentials of the operator, a mandatory quality of recording equipment…").

V.   **The cases prohibiting self-recording are distinguishable.**

Norton Shores and the Bolhouse defendants rely on two out of circuit cases where self-recording was not permitted. Both cases hail from outside the Sixth Circuit, both rulings were issued as an immediate ruling by phone, while a deposition was in progress. Such a ruling is only upon heightened showing of clear error. equiring a heightened showing of error to overturn on review by the district judge), and both cases involved notice issues which do not arise in the present controversy.

*Carvalho v. Reid*, 193 F.R.D. 149 (S.D.N.Y. 2000) is easily distinguished from the questions now before the court.  In that case, the pro se plaintiff had failed to meet the prior notice requirements of Rule 30(b)(3)(B) ***and*** also had a long history of disregard for the court rules. Neither concern applies in the present case.

The facts of *C.G. v. Winslow Twp. Bd. of Educ.*, No. CIV. 13-6278 RBK/KMW, 2015 WL 3794578, are also distinguishable.  While the attorney had noticed deposition video he failed to give notice that he intended to operate the recording himself. Also, the video recording in question was intended for official use in the proceedings—yet without the certification of an unbiased deposition officer.

In both cases, the lack of *complete* notice required a phone call to the magistrate judge for an immediate ruling.  These decisions do not have the benefit of proper briefing and arguments and should not be accorded the same weight as the rulings in *Ott v. Stipe Lawfirm, Alcorn v. City of Chicago, Burgess v. Town of Wallingford*, and *Duncan v. Husted* (a ruling from our own circuit).

## VI. *Alcorn* and *Burgess* offers a more complete analysis.

Norton Shores and the Bolhouse Defendants agree that *Alcorn v. City of Chicago*, 336 F.R.D. 440 (N.D. Ill. 2020), offers "an extensive and thoughtful discussion of the propriety of recording a deposition though Zoom."[3] *Alcorn* placed considerable emphasis on the import of proper certification of the deposition and official deposition record, while clearly differentiating between recordings intended for official use in the proceedings, and those which were designated for internal review. "If the video recording is not used as evidence, *then the Court sees no harm in allowing a recording to take place simply for use by the attorneys for their own internal trial preparation.*" *Alcorn v. City of Chicago*, 336 F.R.D. 440, 2020 WL 4904567 (N.D. Ill. 2020) at *8. Plaintiff has advised all defendants that the additional recording of his live testimony is not intended for official use in court proceedings, but rather for his own review and case preparation.

> I am not suggesting that my own recording will be admissible as an official record. I intend to rely exclusively on the official transcripts for submissions to the court.
>
> However, preparation of official transcripts will take time. It is likely that I will not be able to immediately afford a copy of all the transcripts. Reviewing prior testimony is essential as I prepare for other depositions and for dispositive motion practice.
>
> The "additional method" provided by Rule 30(b)(3)(B) affords an expedient and inexpensive solution for these exact circumstances. I do not believe my use of this solution "supersedes" or conflicts with the rules you are citing.
>
> If anyone has a concern regarding some specific harm which could arise, I'm happy to work with you. If anyone can cite some authority which clarifies, I will certainly consider it.

(Plaintiff's 2/4/21 email, ECF No. 139-1, PageID.1431).

---

[3] Bolhouse Brief at PageID.1444; Norton Shores Brief at PageID.1383.

This falls squarely within the provisions and intent of the rule. "The plain language of Rule 30(b)(3)(B) reveals that the rule was designed for the convenience of *any* party who wishes to make a non-stenographic recording of deposition testimony, provided that the party give proper notice in advance. Such an audio recording is for the party's personal use in preparing for trial." *Burgess* at *28. Also see *Burgess* Fn.19 at *22 ("Moreover, there has been no indication that Plaintiff's digital audio recorder is a problematically complex device, *such that **he**, … would be unable to operate it* without incident or error.").

## CONCLUSION

The rule itself sets forth a "notice" requirement—*not* stipulation or leave of the court. A court reporter has been retained to produce a certified stenographic record while performing all the "duties required by Rule 28 and 30." The defendants in this case have not identified any harm or prejudice which could arise from an *additional* recording wherein Plaintiff performs the "purely mechanical task" of pressing the record button. In this case, the Defendants have not identified any specific burden, cost, harm or injury which could arise from self-recorded deposition testimony for internal use. On the other hand, requiring Plaintiff to hire a redundant deposition officer attaches an unnecessary financial burden to a provision intended to "assist parties in preparing their cases." *Burgess at* *18. Both motions for a protective order should be denied.

Respectfully Submitted on February 25, 2021
(served on opposing counsel/parties via the ECF system)

/s/ Daniel W. Rudd
Daniel William Rudd, Plaintiff (Pro Se)
201 S LAKE AVE, SPRING LAKE, MI 49456
daniel@stock20.com  (231) 557-2532

| |
|---|
| **CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.3(b):** |
| The undersigned hereby certifies that the foregoing motion and brief includes less than 3,640 words according to the calculations of Microsoft Word for Mac Version 15.26 (160910).<br><br>　　　　　　　　　　　　　　　　　　／s／　　Daniel W. Rudd　　　　　　　2/25/2021<br>　　　　　　　　　　　　　　　　　　Daniel W. Rudd, Plaintiff (Pro Se)　　daniel@stock20.com<br>　　　　　　　　　　　　　　　　　　201 S LAKE AVE, SPRING LAKE, MI 49456　　(231) 557-2532 |