This transcript was exported on Mar 25, 2021 - view latest version here.

**EXHIBIT P**

Ms. Mclean (00:04):
... all right.

Mr. Baar (00:07):
So I'm here kind of as, I'm obviously not your attorney. Okay? I'm the managing partner of the law firm, but I'm also a witness because you sent a letter to our office recently that may become an issue in this proceeding. I'm trying to figure out where this thing is going and if there is any opportunity for a resolution to get this taken care of. What are looking for in a resolution?

Mr. Rudd (00:37):
Well, did you read the pleadings?

Mr. Baar (00:40):
Mm-hmm (affirmative). I'm familiar with what's going on.

Mr. Rudd (00:42):
Okay. Well, I mean that's what I'm looking for is just what I filed in my motion. I don't want to have issues bringing my kids to their games. I don't want to-

Mr. Baar (00:56):
So your concern is the soccer issues.

Mr. Rudd (00:58):
Well, you know but, you think it through, it's not just soccer, it could be anywhere.

Mr. Baar (01:06):
So it's important to you to have the PPO not be in place.

Mr. Rudd (01:07):
Yeah.

Mr. Baar (01:07):
Okay. Are you willing to make any concessions as far as a resolution to get to that point?

Mr. Rudd (01:18):
I mean I don't know what kind of concessions I could make beyond, I mean because it's not, I don't have the PPO going. I didn't file all these things. I didn't-

Mr. Baar (01:30):
Right. And that wasn't about-

Ms. Mclean (01:32):

This transcript was exported on Mar 25, 2021 - view latest version here.

I mean your motion that you filed, Mr. Rudd, you did say that what you're asking for was removal of the personal protection order from LEIN. instructing them to remove the improperly entered PPO on LEIN which is, I'm not going to get into the semantics or the logistics or legalities here, conduct a hearing and issue a ruling pursuant to MCR 2.605 declaring the rights and relations of the parties as determined by this court. And then alternatively, issue any other order ruling against whereby this controversy may be resolved. That's what your prayer for relief was so maybe you can explain a little more of what you're specifically looking for.

Mr. Rudd (02:16):

Yeah, I mean you said it very well. An order from the court that says the PPO is not in effect, take it out of the LEIN database. I think maybe the other thing I might have included and proposed findings of fact was that respondent can be in public places separately and at a distance. I mean I've never, ever tried to be in proximity to Attorney Meyers or her husband. And-

Ms. Mclean (02:45):

Well, I mean we have-- Our witnesses that are coming tell us quite a different story about some of your behavior and quite frankly, Mr. Rudd, I look at the things that you have been doing whether its you appear to be attempting to really lash out at Attorney Meyers and going after her husband, trying to get her husband in trouble with the police, the chief of police there and you're taking some investigation to the Michigan State Police despite having been told there is no case. You then send a letter to our firm basically alleging that improper statements were made and need to be retracted. It appeared to me you're trying to go after her indirectly and her employment with our firm. Obviously you want something more.

Mr. Rudd (03:29):
I don't care who you employ-

Ms. Mclean (03:33):
No, you're going after her.

Mr. Rudd (03:34):
I think it's fine for her to be employed by your firm.

Ms. Mclean (03:37):
So what I'm trying to understand here is obviously you want more than just the PPO dismissed.

Mr. Rudd (03:46):
Well, that's, well yeah. I mean I'd like to be entirely left alone.

Mr. Baar (03:52):
And I think that's fair. Meyers would like to be left alone too.

Ms. Mclean (03:53):
Well, her and her husband I think want to be left alone.

This transcript was exported on Mar 25, 2021 - view latest version here.

Mr. Rudd (03:57):
So what do they need for that?

Mr. Baar (04:02):
I thin k they're looking for an agreement that you're not going to continue along the lines of taking any action with respect to him, taking any action, with respect to her, just leaving them alone. That's huge for them. They are fearful. They are very concerned. That's why it's escalated to this situation.

Mr. Rudd (04:24):
Well, I'd be happy to draw up some kind of civil mutual injunctive order. They have them. I have absolutely no reason to be anywhere near them and I don't wish to be.

Ms. Mclean (04:37):
What is your purpose though on having, going to The City of Norton Shores over and over again demanding all these investigations, what are you trying to accomplish?

Mr. Rudd (04:48):
I think what you're describing is inaccurate, but that doesn't really have anything to do with this, does it?

Mr. Baar (04:57):
I think it does because it's being interpreted by the city quite differently than what you're interpreting it right now.

Mr. Rudd (05:03):
So are-

Mr. Baar (05:04):
That's why the representatives from the city are going to be here today.

Mr. Rudd (05:06):
Okay.

Ms. Mclean (05:08):
And those representatives are saying basically PPO should stay in place that this guy's violated and you're not following the court order so why would you follow a civil agreement?

Mr. Baar (05:16):
I think if there's going to be an agreement, there needs to be what I would call a significant incentive to abide by the terms of that agreement so that if it's broken, then it triggers what happens after that.

Mr. Rudd (05:30):
So what are you proposing?

This transcript was exported on Mar 25, 2021 - view latest version here.

Mr. Baar (05:33):

I am just trying to figure out if there's any way that we can get to a resolution.

Mr. Rudd (05:37):

Well, yeah, of course, but I need to know what it is that you're looking for, what you need from me in order to have resolution and what are you offering?

Ms. Mclean (05:48):

Well, I think Melissa might be willing to agree to dismiss or to not pursue the criminal contempt proceedings that she has filed a motion on today.

Mr. Baar (05:58):

We could basically adjourn them.

Ms. Mclean (06:00):

Adjourn them out and then you don't engage in any conduct that would be interpreted as possibly violating the PPO for six months. Mark Meyers was thinking about getting his own PPO. I don't know if necessarily he'd be willing to not do that or maybe add him on to her PPO, something along those lines and then put a provision in there that you can attend soccer games and things like that as long as you stay away from her and him. We could do something like that.

Mr. Rudd (06:38):

Well, that doesn't really sound like a much of a, as far as having the resolution that really takes this out of my stress field. For instance, Attorney Meyers got this PPO in July of 2013 and didn't really, I guess other than an errant email that was accidentally copied to her, clearly not addressed to her, clearly not something that I would even want her to read, but also not anything offensive or threatening in any way. Other than that, there's been nothing and then all the sudden, I basically hear about this PPO violation after a soccer game. And I've coached that tournament in previous years. I've never missed a soccer game of my children's ever and Attorney Meyers knows that.

Ms. Mclean (07:48):

But you're also heading up to where her kids play soccer. You live in Spring Lake, correct?

Mr. Rudd (07:54):

Yeah.

Ms. Mclean (07:54):

Okay and you right now still have primary custody of your boys, correct?

Mr. Rudd (07:58):

Mm-hmm (affirmative).

Ms. Mclean (07:59):

And there are the same soccer options available closer to you, correct?

2015-11-09-Baar-McLean-Rudd-mtng (Completed 09/24/18)
Transcript by Rev.com

This transcript was exported on Mar 25, 2021 - view latest version here.

Mr. Rudd (08:04):

No, not really. I mean Tri-City Strikers would be the most comparable select soccer program, but their practices and their games are not any closer.

Ms. Mclean (08:17):

So you know her kids are enrolled in that, correct? And you know obviously from Andrea that they're enrolled in that.

Mr. Rudd (08:23):

Well, I do now, but I had absolutely no idea or no way of knowing. I didn't even know her kids played soccer. I don't know much about her kids.

Ms. Mclean (08:30):

Okay, well-

Mr. Rudd (08:31):

So the knowledge of that was only one direction and I think that's a pretty significant thing that you should understand. I had absolutely no way of knowing that.

Ms. Mclean (08:41):

Well, she disagrees with that, but and I'm not, like I said, I'm not going to argue the case right now, but is this just simply that you want to be able to play soccer? Because right now a judge did issue, both civil and criminal and this could turn into like an arraignment today. I'm looking, saying and it's always been my theory, right, on the case with your ex-wife is how can we deescalate? I don't like escalating litigation. I really don't.

Mr. Rudd (09:09):
Well, did you read your pleadings?

Ms. Mclean (09:12):
I did.

Mr. Rudd (09:12):
Okay.

Ms. Mclean (09:12):
But, what we file and what we do is why we're trying to talk to you ahead of time. I mean because-

Mr. Baar (09:18):
Which is why I'm here.

Mr. Rudd (09:19):
Wait. What you file and what you do what?

This transcript was exported on Mar 25, 2021 - view latest version here.

Ms. Mclean (09:21):
Well, I'm going to file. I'm going to fight if you require me to fight in court, I'll fight.

Mr. Rudd (09:25):
Right.

Ms. Mclean (09:25):
But I want to sit down and try to work it out if it's possible.

Mr. Rudd (09:30):
Okay. Well, what you've alleged in there is this story where I am a, I mean it's riveting. I'm a criminal, this awful person who for some reason after doing the most extensive custody evaluation imaginable at your request, he debunked every one of these stories because they've been, this is exactly like the pleadings from Attorney Meyers two years ago only it was I'm obsessed with Andrea and I'm doing all this to harass her.

Ms. Mclean (10:01):
I actually-

Mr. Rudd (10:01):
I mean this is kind of the same exact story.

Ms. Mclean (10:01):
I was very involved in that case and I have my own opinions of your behavior towards Andrea-

Mr. Rudd (10:07):
Right which is why I'm saying-

Ms. Mclean (10:09):
... and I am concerned about those behaviors.

Mr. Rudd (10:11):
... the courtroom in that case was the place for you to contest those behaviors; not in a different suit. The courtroom when we were discussing, if you had a problem with Randy Flood's findings, that was the place to raise those issues, but this seems more like just a new way to frame the same old story. And the fact that you do have that awareness of the case, is-

Ms. Mclean (10:35):
Well, Mr. Rudd, I am going to disagree with you. I don't mean to cut you off, but this is obviously not very productive unless you think it's productive. It doesn't seem-

Mr. Baar (10:42):

This transcript was exported on Mar 25, 2021 - view latest version here.

Well, I don't know of all the facts. I haven't read all the pleadings. I have no knowledge of the underlying custody issues. None, okay? Other than what your letter was to me.

Mr. Rudd (10:56):

Well, but I gave you the opportunity to take a look at those and make a decision. Are we going to keep pushing forward with this-

Mr. Baar (11:02):
Which is why I'm here.

Mr. Rudd (11:04):

... yeah. So I mean I think that's--you'll just have to make your own decision on that, but it would not have required any amount of due diligence. In fact, well, we can talk about that in court although I doubt we'll have much of a chance to argue it today.

Mr. Baar (11:23):

It's up to the judge and who knows what Judge Pittman is going to do.

Mr. Rudd (11:25):

But you guys do know a lot, well, you know a lot more about all the laws than I do, but I don't know if they for something like this, they plan out scheduling, you know we're going to do this hearing here and here's the witnesses.

Mr. Baar (11:41):

It's completely up to the judge and Judge. Judge Pittman may take-

Mr. Rudd (11:45):

But don't the attorneys kind of suggest something like that. I mean you've said in the past, wouldn't it be better for us to do a scheduling order and if you want to talk through any of those possibilities-

Ms. Mclean (11:59):

We're really, at this point, I have to see what the judge is going to say. I have my witnesses here.

Mr. Rudd (12:05):

Do you have, I don't know if you're supposed to tell me or not, but your witnesses that you have here, do you have everybody who had an affidavit?

Ms. Mclean (12:16):
Mm-hmm (affirmative).

Mr. Rudd (12:17):
So you have Andrea Averill-

Ms. Mclean (12:18):

This transcript was exported on Mar 25, 2021 - view latest version here.

I don't have Andrea here today. I didn't think that was appropriate though.

Mr. Rudd (12:22):
I mean she's kind of the linchpin of what you're trying to say.

Ms. Mclean (12:26):
I'm not going to argue my case with you at this point, Daniel-

Mr. Rudd (12:28):
No, I'm just-

Ms. Mclean (12:29):
I was trying to talk with you about reaching a resolution and it is obviously not going to happen and this is consistent with how you handled Andrea's case. So I'm really not surprised. All right?

Mr. Rudd (12:48):
Ok. So "no" on the retraction is the sense I'm getting from you.

Mr. Baar (12:53):
I don't know why we would do that.

Mr. Rudd (12:59):
Well, just to ... if there was merit to what I was saying, then that's why, but-

Mr. Baar (13:12):
I think given, I'm not going to say anything further. It's not beneficial.

Mr. Rudd (13:15):
All right.

Mr. Baar (13:16):
I came here to try to see if there was a resolution and you're basically saying well, what are you guys want and you're not telling us what you want.

Mr. Rudd (13:23):
Well, I did. I did tell you I want: the PPO gone.

Mr. Baar (13:26):
And you didn't tell us what you're willing to give as part of a resolution.

Mr. Rudd (13:29):
I don't know what I can give. I'm definitely willing to stay away from Melissa Meyers and Mark Meyers and anyone in her family. I have no problem with that at all.

This transcript was exported on Mar 25, 2021 - view latest version here.

Mr. Baar (13:40):
You're willing to discontinue these concerning behaviors? The showing up at the house and any of that stuff?

Ms. Mclean (13:48):
Continually going and trying and trying to get--trying to go to the city-

Mr. Rudd (13:50):
I'm definitely willing to not got to their house--

Ms. Mclean (13:52):
... interfere with employment, interfere with her husband's employment.

Mr. Rudd (13:55):
Well, are you saying am I willing to not make a--to file a grievance with the police department?

Ms. Mclean (14:03):
Not necessarily saying that.

Mr. Rudd (14:03):
I don't think it's even appropriate to ask me to do that.

Ms. Mclean (14:06):
Well, this would be your second grievance that you've essentially filed and that's not-

Mr. Baar (14:11):
You've got a first amendment right to-

Mr. Rudd (14:13):
I absolutely do.

Mr. Baar (14:14):
You've got a first amendment right to petition government and those government representatives have every right to act as witnesses and explain their observation and explain how they're looking at the situation. That's why they're here.

Mr. Rudd (14:30):
I would love to have anyone from Norton Shores on the stand.

Mr. Baar (14:35):
Well, they're here.

Ms. Mclean (14:39):

This transcript was exported on Mar 25, 2021 - view latest version here.

So is the city attorney. That's where they're feeling like your behavior is that you're lashing out against Attorney Meyers. My feeling is you've told Andrea you don't want loss of representing her in the underlying case anymore. You tried to coerce-

Mr. Rudd (14:54):
Well, that was definitely your idea. You said it. You said the reason I came on this case is because she's too close to it.

Ms. Mclean (15:00):
Well, we've all agreed to that, but at the same time-

Mr. Rudd (15:03):
But, she's still on the case.

Ms. Mclean (15:04):
... but that has nothing to do with what you're saying.

Mr. Baar (15:06):
I'm going to take care of that. That's something that I can take care of.

Ms. Mclean (15:09):
But here's the bottom line, that's none of your business and your job is not, you going to Andrea saying I will let you have custody back and give you parenting time if you get Meyers off the case.

Mr. Rudd (15:21):
You really think I would do that?

Ms. Mclean (15:22):
Yeah.

Mr. Rudd (15:22):
You think that would resolve any issue? You think that I would say-

Ms. Mclean (15:25):
I don't know why you would say that. I just know that that's what Miss Averill was saying was that-

Mr. Rudd (15:30):
Well, think about it.

Ms. Mclean (15:30):
Why do I have any-

Mr. Rudd (15:31):

This transcript was exported on Mar 25, 2021 - view latest version here.

Think about it. They have been friends for years. Why would I say "I will give you custody back" when my concern is that the issues haven't been resolved with the step-dad? If Attorney Meyers was off the case today, that's not going to stop her from influencing Andrea's every decision. I don't know what information you're getting that from, that I would say to her "if you get rid of this attorney", that's ridiculous.

Ms. Mclean (15:55):
But she reports that you said.

Mr. Rudd (15:57):
You mean Andrea reports that?

Ms. Mclean (15:59):
Mm-hmm (affirmative).

Mr. Rudd (15:59):
And that's why you should have her here to testify instead of a bunch of hearsay that you're saying is your personal affidavit. All of that stuff in your complaint. You're saying you have personal knowledge of that.

Ms. Mclean (16:10):
I'm not saying I have personal knowledge of it. They are.

Mr. Rudd (16:12):
Read your motion. Your petition-

Ms. Mclean (16:16):
My witnesses have personal knowledge of it.

Mr. Rudd (16:19):
... but that's not what the petition says. It says I have personal knowledge and that's what's required to bring this. It's part of due process. Check it.

Ms. Mclean (16:27):
Okay. [crosstalk 00:16:28].

Mr. Rudd (16:34):
I think that would be best. You guys are, you came here to ask me to pull my complaint-

Mr. Baar (16:40):
No, I didn't.

Mr. Rudd (16:41):

This transcript was exported on Mar 25, 2021 - view latest version here.

... and resolve the custody issue.

Mr. Baar (16:42):
Not at all.

Ms. Mclean (16:43):
No, we didn't.

Mr. Baar (16:44):
No, sir, that is 100% incorrect.

Mr. Rudd (16:47):
Well, why-do you keep saying that?

Mr. Baar (16:48):
I'm here because I'm a profession problem solver. Ask her. Ask her what my reputation is in the community about being a problem solver.

Mr. Rudd (16:56):
I don't have to ask her because I know-

Mr. Baar (16:57):
Okay you know.

Mr. Rudd (16:59):
... you have a good reputation.

Ms. Mclean (16:59):
Well, here's why-

Mr. Baar (17:00):
That's why I'm here. You got my attention.

Ms. Mclean (17:03):
You obviously have a problem with Attorney Meyers to go so far as to continue to send letters to our partners at our firm alleging that we made misstatements to the court and that she's abused the reputation of our firm. You have a problem with her husband, which is again, indirectly through her alleging that they've somehow misused their positions to for whatever and you have a problem with Andrea.

Mr. Rudd (17:27):
Okay, but if he did abuse his position, wouldn't I have a problem with that? Wouldn't anyone have a problem with that?

This transcript was exported on Mar 25, 2021 - view latest version here.

Ms. Mclean (17:30):
You did, but you've already been told three times that there hasn't been, it's just continuing to go back. I have the transcript. I have the CD hearing of it all.

Mr. Rudd (17:38):
CD hearing of what?

Ms. Mclean (17:39):
Of when you talked to, when you had your-

Mr. Rudd (17:41):
So you've listened to it? In its entirety and you're standing behind your pleadings?

Ms. Mclean (17:45):
Yes.

Mr. Rudd (17:46):
That John Gale said to me, I have completed a full investigation and there is no wrong doing here and that I demanded a state police investigation. You're going to take the oath and say that?

Ms. Mclean (17:56):
I'm going to have Mr. Gale testify that he did a thorough investigation and that you have no valid complaints, but you continue to pursue the complaints.

Mr. Rudd (18:03):
Regardless of what Chief Gale testifies to today, you're saying that I went in there and he said to me I've done a full investigation, there's no wrong doing and that I demanded a state police investigation.

Ms. Mclean (18:18):
He did do that. And Mr. Gale is going to testify you said that.

Mr. Rudd (18:24):
And you've got the recording which you know doesn't include anything like that.

Ms. Mclean (18:26):
But you went again after that fact. I'm not going to argue it anymore. We're done. We're done here.